# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

IN RE:  GENESIS HEALTH VENTURES
INC. et al.,

          Reorganized Debtors.

) Chapter 11
)
) Bankruptcy Case No. 00-2692 JHW
)
) (Jointly Administered)
)

**FILED**
2006 FEB -2  AM 9: 58
US BANKRUPTCY COURT
DISTRICT OF DEL
CLERK

## NOTICE OF APPEAL

Notice is hereby given that James J. Hayes, a member of the equity class in this

bankruptcy  appeals to the United States District Court for the District of Delaware the

bench decisions on Thursday January 19, 2006 of the United States Bankruptcy Court for

the District of Delaware denying:

1) reconsideration of the Orders allowing the Genesis and Multicare Senior Lender
   Claims; and the Genesis and Multicare Senior Subordinated Note Claims; and

2) the appointment of Pre-Final Decree Equity Committee; and granting

3) the Reorganized Debtors' sanctions.


Dated:  January 30, 2006

                                    James J. Hayes

James J. Hayes
4024 Estabrook Dr.
Annandale, VA 22003
(703) 941-4694

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              .  Chapter 11
                                    .
GENESIS HEALTH VENTURES, INC., .    Case No. 00-2692(JHW)
et al.,                             .
                                    .
          Reorganized Debtors. .
                                    .
_____.
IN RE:                              .  Chapter 11
                                    .
GENESIS ELDERCARE CORP.             .  Case No. 00-2564(JHW)
                                    .
                                    .
          Reorganized Debtors. .
                                    .
_____.
IN RE:                              .  Chapter 11
                                    .
NORRISTOWN NURSING AND              .  Case No. 00-2716(JHW)
REHABILITATION ASSOCIATES, L.P..
                                    .
                                    .
          Reorganized Debtors. .    January 19, 2006
                                    .  9:30 a.m.
                                    .  (Wilmington)

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JUDITH H. WIZMUR
UNITED STATES BANKRUPTCY COURT JUDGE

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1           THE CLERK: All rise.

2           THE COURT: Please be seated.

3           MR. SILBERGLIED: Good morning, Your Honor.

4           THE COURT: Good morning.

5           MR. SILBERGLIED: For the record, Russ Silberglied

6     of Richards, Layton, and Finger on behalf of the Reorganized

7     Debtors.  We have a short agenda for today.  The first matter

8     on the agenda is continued.  A brief word as to why it's

9     continued in case Your Honor wanted an update, that is the

10    motion for entry of a final decree itself.  The US Trustee

11    has pointed out that there are some quarterly operating

12    reports that were not filed, and we are working with the

13    company to get those quarterly operating reports filed.

14    There's been a series of post confirmation transactions at

15    the company, so employees are a little bit harder to find

16    than they once were.  But we're working on it, and we hope to

17    go forward with that at the next hearing which actually Ms.

18    Collins reminded me on our way over here we don't have a next

19    hearing.  So I don't know if Your Honor knows the next time

20    you're going to be in Delaware.

21          THE COURT: Turns out March 2nd might work.  I might

22    be here on February 16th.  It sounds like March 2nd might be

23    better for you.

24          MR. SILBERGLIED: March 2nd would be fine.  Thank

25    you, Your Honor.

1           THE COURT: Let's make that 9 o'clock.

2           MR. SILBERGLIED: Thank you, Your Honor.  The next

3    two items on the agenda are both motions of Mr. Hayes.  He's

4    here.  The first is with respect to the lenders themselves,

5    and the second is with respect to the appointment of an

6    equity committee, so I will cede the podium to Mr. Hayes.

7           THE COURT: Mr. Hayes.

8           MR. HAYES: Good morning, Your Honor.

9           THE COURT: Good morning.  You've filed 2 motions.

10   One, to reconsider the order allowing the senior lender

11   claims and two, to appoint an equity security committee.  At

12   this point I am more than puzzled, disturbed, by these

13   motions, because, as I've read the amazing post confirmation

14   history of these issues, I'm appalled, really, that the

15   issues are coming back.  And I say that with an understanding

16   that the reconsideration motion on the claims is really aimed

17   at, from your description of what you're looking for, a

18   restructuring of the plan, a re-prioritization of the

19   position of the secured lenders, a focus on your claim of

20   windfall on their part, of unfairness, of improper

21   allocations, and an adjustment of claims on those bases.  In

22   terms of the equity security holder committee, it was well

23   laid out by the objection to your motion that you - - this is

24   the 4th time that you're here on that.  Not - - perhaps 3

25   times before the Bankruptcy Court and one before the District

1   Court, with appeals to the Circuit.  I'm not sure about the

2   status of the last appeal.  That was apparently filed on the

3   denial of the District Court I think for - - on the motion

4   for appointment of an equity security committee.  I could be

5   corrected on that.  But you've been there, you've done that,

6   you've been denied your relief.  Why should I consider this

7   again?  What's different now?  How many times, how many bites

8   at the apple do you get?

9          MR. HAYES: Your Honor, the equity clients in this

10  - - throughout this bankruptcy has been denied

11  representation.  I don't think there's any dispute that at no

12  point - - at not time in the bankruptcy has the equity

13  interest been represented.  That is - -

14         THE COURT: Well, the equity interest has appeared

15  and been heard in - - at the confirmation hearing.  You,

16  yourself, presented objection to the plan, and your concerns

17  were addressed and denied.  Your contention is not that there

18  has been no opportunity to be heard - -

19         MR. HAYES: No.

20         THE COURT:  - - but no opportunity to be paid from

21  the estate for legal fees.

22         MR. HAYES: The equity class has not been adequately

23  represented.

24         THE COURT: Do you contend that there is an absolute

25  right to representation paid for by the estate in every case

1   for equity?

2       MR. HAYES: No.  But in this case, since there was

3   no - - I mean, adequate representation, there are a number of

4   ways that it can be provided.  The normal way, I mean, you

5   know, the shareholders are normally represented by company

6   management who has a fiduciary obligation to represent

7   shareholders interests.  And in a normal case, the company

8   officers, in fulfillment of the fiduciary obligations provide

9   representations for the equity class.  I mean, in the recent

10  Morale (phonetic) bankruptcy, which I cited, the chairman of

11  the company, Chairman Schwartz, argued that the valuations

12  prepared by the investment bankers were low.  But in this

13  case, which is rather unusual, the officers of the company

14  have now been charged with conspiracy to commit fraud.

15      THE COURT: Have now been charged in the Haskell

16  (phonetic) matter?  Is that what they're - -

17      MR. HAYES: Well, that was the allegations.

18      THE COURT: Those are - -

19      MR. HAYES: In the Haskell matter.

20      THE COURT:  - - the allegations, and that complaint

21  I dismissed, I believe.

22      MR. HAYES: But you - -

23      THE COURT: I think the District Court has affirmed,

24  if I'm not incorrect.

25      MR. SILBERGLIED: No, Your Honor.  We're in the

1    middle of briefing in the District Court.

2           THE COURT: I see.  So that's under appeal.

3           MR. HAYES: But your dismissal didn't address any of

4    the allegations.

5           THE COURT: That's correct.  So how can I address

6    the allegations here.  There were issues of *res judicata* and

7    collateral estoppel.  Issues under 1144.  What's different

8    here?  Why - -

9           MR. HAYES: Well, the shareholders have a

10   constitutional right.  Among all the creditors and

11   participants, the shareholders are the only ones whose

12   property rights are protected by the 5th Amendment of the

13   Constitution.  And as - -

14          THE COURT: And have you - -

15          MR. HAYES:  - - a protected right - -

16          THE COURT:  - - addressed that issue before?  Have

17   you - - is this the first time that you've raised the

18   constitutional dimensions of the shareholders opportunities?

19          MR. HAYES: I have attempted to raise it throughout.

20   But none - -

21          THE COURT: And you've been rejected.

22          MR. HAYES:  - - of the courts - -

23          THE COURT: Have you not?

24          MR. HAYES: None of the courts have addressed the

25   constitutional issue.

1        THE COURT: So that because they didn't address the
2   constitutional issue, because they decided that you were not
3   entitled, for any reason, to assert, because - - for a number
4   of reasons, including the timing of your request, that you
5   were not entitled to an equity security committee, including
6   back in September of 2001, including as late as May of 2004,
7   all of those times you had the opportunity - - you raised - -
8   you took the opportunity, whether you had it or not is
9   another question, you took the opportunity to raise the issue
10  of equity security committee on various grounds.  I don't
11  recall that you raised the constitutional grounds in front of
12  me, but you might have raised it otherwise.  It doesn't
13  matter whether it was taken up or not.  You're quite right to
14  assert that as a basic proposition constitutional issues
15  don't go away by the passage of time.  That's a valid
16  proposition.  But in this context you can't just keep coming
17  back and thinking up new theories to raise the same request
18  for relief that you have all along.

19        MR. HAYES: I'm not raising new theories.  I mean,
20  both the law and the constitution require that adequate
21  representation be provided to the equity class.  No court has
22  said that the equity class has been provided adequate
23  representation.

24        THE COURT: There has, there was - - I did say, in
25  my confirmation opinion, that the value in the company - -

1    you may disagree with it, other people have disagreed with it

2    - - the proofs as I found them to be were that there was no

3    value to reach equity, and therefore equity could be - - the

4    plan as proposed could be confirmed, and the plan proposed

5    that there would be no distribution to equity.  That was the

6    decision.  If - - and that's the decision, I believe, was

7    appealed and approved.  And there it stands right or wrong.

8    And nobody can say whether a particular decision, in

9    retrospect, was right or wrong.  But there it stands as a

10   final judgment.  If that's so, then how can we say that the

11   equity was not adequately represented?

12            MR. HAYES: Well, adequate representation requires

13   some form of representation.

14            THE COURT: Well you represented the equity, didn't

15   you?  I mean you - -

16            MR. HAYES: I - -

17            THE COURT:  - - took it upon yourself.

18            MR. HAYES: Well nobody has said that it's adequate.

19   Everybody is saying my representation has been quite

20   inadequate.

21            THE COURT: Did you contemplate hiring an attorney

22   to help you make your presentation in the first instance?

23            MR. HAYES: Yes I did.  I have talked to attorneys.

24            THE COURT: Um-hum.

25            MR. HAYES: $34 million is spent on professional

1   fees in this case. I'm an individual shareholder. I am not

2   wealthy. As part of adequate representation is having

3   representation equivalent to what, to what the other side

4   has. And I - - even if I'm considered to be representing, I

5   - - and I guess I don't see objecting. When I objected, I

6   didn't have any - - couldn't cross examine a witness,

7   couldn't present any evidence, couldn't do anything but

8   complain.

9           THE COURT: You didn't have the chance to cross

10  examine witnesses or - -

11          MR. HAYES: No.

12          THE COURT:  - - at the hearing? At the

13  confirmation hearing?

14          MR. HAYES: No.

15          THE COURT: Did you - -

16          MR. HAYES:  All the objectors were told that their

17  objections would be heard at the end of the proceeding.  I

18  mean, it was kind of a - -

19          THE COURT: There was testimony presented, cross

20  examination of witnesses.  Did you stand up and say, I would

21  like to cross examine a particular witness?

22          MR. HAYES: No.  Because the Debtors' counsel said

23  - - told me what the procedure was.

24          THE COURT: I see.

25          MR. HAYES: Even the objectors - - well.

1           THE COURT: We did consider experts presented by
2   some of the objectors.  Let me remind myself that - -
3           MR. HAYES: But they weren't equity members.
4           THE COURT: They weren't equity.  Did you have - -
5   do you understand that you had a chance to present expert
6   witnesses if you chose to do that?
7           MR. HAYES: No I didn't.
8           THE COURT: Let me ask you another question just to
9   round out the record.  Before - - when was the first time
10  that you raised the issue of an equity committee?  You'll
11  recall that you filed a motion before confirmation that was
12  ruled on in the context of confirmation asking for that
13  relief.  That was in August of 2001.  Did you raise the issue
14  before then?
15          MR. HAYES: The issue of an equity committee?
16          THE COURT: Yes.
17          MR. HAYES: No.  I raised the issue of an equity
18  committee after - - immediately - - fairly soon after I had
19  gotten the disclosure statement that indicated that
20  shareholders were not going to participate in the
21  distribution.  And I - - and almost on the same day.  It was
22  kind of fortuitous.  I'm not an attorney, and I don't - - I'm
23  an investor.  I don't follow the bankruptcies of the
24  companies I happen to own.  But it was somewhat fortuitous
25  that I was notified of the bankruptcy at the same time that I

1    had gotten a new copy of my Investor's Daily Graphs

2    (phonetic). As a part of the daily graphs, it shows stock

3    appreciation at certain indexes. And the leading performer

4    had been the healthcare index. And that's when I started

5    looking, reading the disclosure statement. Seeing that the

6    valuation of the company was done in April, and that since

7    April, the Healthcare index that I was looking at had

8    appreciated by 60%. I mean that told - - that significant

9    thing said, you know, everything in this disclosure statement

10   is inaccurate. Everything that it's based on.

11              THE COURT: And you did address me at confirmation,

12   did you not?

13              MR. HAYES: Yes.

14              THE COURT: And I considered your comments. Let me

15   ask you this, you've - - the level of litigation that you've

16   conducted since then is quite impressive. You've traveled to

17   the District Court and to the Court of Appeals. On several

18   occasions you've asked for *en banc* consideration. You've

19   tried to have the Supreme Court weigh in on these issues.

20   You've really tried to exhaust your opportunities to have

21   these issues considered. How can I - - why wouldn't the - -

22   the attorneys are seeking sanctions against you saying enough

23   is enough, he's dragging us into this again, we've briefed

24   these issues up and down the chart of the Federal court

25   system, and we've received the same answer. Why shouldn't we

1    impose upon Mr. Hayes to pay our court fees at this point in
2    light of the fact that he's dragging us, again, yet again,
3    into court?  What's my answer to that?  Why shouldn't I say,
4    You know, you're right?  I'm amazed at this history of up and
5    down.  And back again.
6          MR. HAYES: I think their motion for sanctions is
7    completely out of order at this time.
8          THE COURT: Why?
9          MR. HAYES: Because it's prejudicing the Court
10   against the merits of the case.
11         THE COURT: In other words, I shouldn't consider the
12   fact that this - - these issues have been up and down and
13   around and through?  That these issues have been - - don't I
14   have to consider that?  Isn't there such a thing as finality,
15   and principles that govern the way that we do business in the
16   court system?
17         MR. HAYES: You know, there cannot be any finality
18   until the courts address the constitutional issues.  Let me
19   - - this isn't in my brief, but it's part of what I prepared.
20   This Court cannot avoid the constitutional issues of adequate
21   representation of the equity clients.  In Marlboro versus
22   Madison (phonetic) Chief Justice Marshall's opinion stated,
23   It is emphatically the province and the duty of the judicial
24   department to say what the law is.  Those who apply the rules
25   to a particular case must, of necessity, expound and

1    interpret that rule.  If two laws conflict with each other,

2    the courts must decide on the operation of each.  So if a law

3    be in opposition to the constitution and both the law and the

4    constitution apply to a particular case so that the court

5    must either decide that a case conforming to the law,

6    disregarding the constitution, or conforming to the

7    constitution disregarding the law, the court must decide

8    which of these conflicting rules govern the case.  This is

9    the very essence of judicial duty.  None of the courts have

10   addressed one, whether the 5th Amendment applies to, or

11   whether the property of an equity holder is the property

12   that's under the definition of the 5th Amendment.  There's no

13   opinion that talks about whether adequate representation is

14   required by the constitution.  About what adequate

15   representation is.

16          THE COURT: Understood.  Thank you Mr. Hayes.

17          MR. SILBERGLIED: For the record again, Russ

18   Silberglied on behalf of Genesis.  I'm not going to take a

19   lot of time, Your Honor.  I'm going to respond to a couple of

20   points briefly, and then talk about the sanctions motion.  I

21   don't think Your Honor needs to hear much more from me about

22   the background of this, because it's quite clear Your Honor

23   has read the papers.  A couple of points raised by Mr. Hayes.

24   One, this issue of nobody has addressed the constitutional

25   argument.  Leaving aside for a minute that there simply is no

1   constitutional argument here, and it's not a constitutional

2   issue, let's leave that aside for a moment. I believe what

3   Mr. Hayes read is word for word out of his brief to the 3rd

4   Circuit Court of Appeals. He briefed this to the 3rd Circuit

5   Court of Appeals. I don't recall specifically on what

6   grounds the 3rd Circuit rejected his argument, but suffice it

7   to say it did. It rejected it again en banc. He made the

8   same constitutional argument in his petition for cert.

9   (phonetic) to the United States Supreme Court, and cert. was

10  denied. This issue is finished. It's not equitably moot,

11  it's actually moot in the words of Judge Farnan. Second,

12  Your Honor, the point that Mr. Hayes made that he couldn't

13  cross examine witnesses and that he couldn't present

14  evidence. Frankly I don't remember whether he cross examined

15  or not, it's too long ago in my memory to remember that level

16  of detail. I do remember that he made oral argument. I do

17  remember, obviously, that counsel for Mr. Grimes, counsel for

18  GMS cross examined our witnesses and put on their own

19  witnesses as well. Cross examined Mr. Zelmonvitz's witnesses

20  as well. And what I would additionally add to the record,

21  Your Honor might recall that Mr. Hayes in fact did attempt to

22  introduce evidence to this Court in the form of the famous

23  cartoons that he submitted. Not only did Your Honor admit

24  those cartoons into evidence, but Your Honor - - but Mr.

25  Hayes has also attached them to pretty much every appellate

1    brief he has filed since then.  So it's flatly incorrect that

2    he didn't have the opportunity to present evidence.  It's

3    flatly incorrect that he didn't present evidence.  So I will,

4    then, skip over, in the remainder of my argument, why his two

5    motions today ought to be denied.  I'm sure Mr. Zelmonvitz

6    might want to say something more on the motion leveled to his

7    client.  I'm going to skip right to the sanctions portion,

8    unless Your Honor has questions about the first portion.

9            THE COURT: Please proceed.

10           MR. SILBERGLIED: Thank you, Your Honor.  You know,

11   in short this does has to stop.  Have to stop, excuse me.  It

12   doesn't cost Mr. Hayes anything to file these motions because

13   he's not paying an attorney, but it most assuredly does cost

14   my client something.  Courts expect responses.  And that

15   means that my client must pay me or Weil Gotshal or somebody

16   else to respond to these motions.  And it is inflicting a

17   cost upon us.  It's inflicting a cost also on the federal

18   system because Your Honor has to keep hearing these, the

19   District Court has to keep hearing these, the 3rd Circuit has

20   to keep hearing these.  And in short Mr. Hayes needs a

21   message that this is time to stop.  If Your Honor has any

22   doubts whatsoever about what Mr. Hayes' intentions are if he

23   is not sanctioned today, all you have to do is open up to

24   paragraph 14 of his motion itself, and look at the sentence

25   that starts in the second to last line of page 6 in paragraph

1   14 where he says, quote, "Ratification of the - - and this is

2   the motion for today. Quote, "Ratification of the

3   confirmation by an equity committee would set the stage for a

4   final decree that would really be final and not just another

5   intermediate point in this saga." End quote. In other

6   words, he has absolutely no intention of letting a final

7   decree, if entered by Your Honor at the March hearing, stand

8   in his way of continuing to file these motions. He thinks

9   that that would be an intermediate point in the saga. That's

10  exactly why we need an order from your court awarding

11  sanctions.

12          THE COURT: As a point of procedure, if the appeals

13  are still pending, what opportunities do I have to enter a

14  final decree?

15          MR. SILBERGLIED: And that's - - perhaps that's for

16  the March hearing. We have put that in the motion. That

17  there was case law on the subject of being able to enter a

18  final decree when there's nothing currently pending in the

19  Bankruptcy Court as opposed to things that are on appeal to

20  appellate courts from the Bankruptcy Court. While I guess I

21  didn't necessarily spell it - - there are cases - -

22          THE COURT: I'm sure there are, and - -

23          MR. SILBERGLIED:  - - and they're cited in that

24  motion.

25          THE COURT:  - - I'm not deciding the issue.  My

1    facial expression is that there may be some doubt on the

2    issue since the jurisdictional opportunity to hear the case

3    comes up as it's opened, as it's referred from the District

4    Court.  And so it's an interesting issue.

5           MR. SILBERGLIED: Well, understood, Your Honor.  And

6    I'll be prepared to speak more to those cases at the March

7    hearing.  But suffice it to say that I believe the proper

8    remedy would be - - we really don't think the Haskell case is

9    coming back.  We really don't think that the Hayes motion is

10   coming back on remand.  But that's my opinion, obviously.  If

11   it does, there's always the ability to reopen the bankruptcy

12   case.  Just as if somebody needs to file a motion.  You know,

13   if you enter the final decree in March and some creditor

14   comes and violates the confirmation order, and violates the

15   discharge injunction in May, well then what I would do, like

16   is done in many, many cases, is I would file a motion that

17   asks for the Court to reopen the case for the sole purposes

18   of hearing a motion for sanctions for violating discharge

19   injunction and confirmation order, or something of the like.

20          THE COURT: Yeah.  You've cited $1927 - -

21          MR. SILBERGLIED: Yes, Your Honor.

22          THE COURT:  - - of Title 28 as a basis for awarding

23   sanctions, and you're aware that there is some controversy

24   about whether the Bankruptcy Court qualifies as any court of

25   the United States.  There is case law around the country that

1   disagrees with that proposition.  I gather that you're also

2   relying, for instance, on the United States Supreme Court

3   Chambers case for inherent authority of a court to address an

4   abuse of the process, if you will.  In a limited way.

5   Because we're not talking about 9011, it's not a separate

6   motion.  Well, it is, I guess.  But it's - -

7           MR. SILBERGLIED: It's a cross motion.  It is a

8   separate motion.  I mean, we could have done it as 9011.

9   Frankly, Your Honor, the main reason why we didn't do 9011 is

10  because the hearing was in 2 weeks, and 9011 doesn't

11  translate that well to a contested matter in a Bankruptcy

12  Court because you have to give it 20 days safe - - I think

13  it's 20 days - - whatever it is safe harbor notice.  We would

14  have been more than happy to file a safe harbor notice and

15  proceed under 9011, but we didn't have sufficient time before

16  today's hearing.  I think that the principles of 9011 apply.

17  I think 1927 itself, there is case law that supports it under

18  - -

19          THE COURT: I don't recall that the 3rd Circuit has

20  ever weighed in on the issue of whether a Bankruptcy Court

21  can utilize 1927.  Am I right?

22          MR. SILBERGLIED: You're right, Your Honor.  Or, at

23  least we uncovered no such case.

24          THE COURT: Yeah.  I'm not aware of any, but anyhow.

25          MR. SILBERGLIED: So there are those principles.

1   And, you know, and of course there is the inherent power of

2   the Court, and there's equitable principles in 105 for Your

3   Honor to be able to control your own docket.  And as we just

4   read from paragraph 14 of Mr. Hayes own motion, he's

5   admitting to the Court that he's going to keep filing

6   motions.  And I think that, you know, 105 would also support

7   - - would support the issue in terms of the Court controlling

8   its own docket.

9         THE COURT: Indeed it would.  I'm confident of that.

10  Thank you Mr. Silberglied.

11        MR. SILBERGLIED: Thank you, Your Honor.

12        THE COURT:  Other comments?  Sir.

13        MR. ZELMONVITZ: Menachem Zelmonvitz of Morgan Lewis

14  on behalf of Mellon Bank, the agent for the senior lenders.

15  I'll be very brief, Your Honor.  I just wanted to touch on

16  first of all the reconsideration motion, which is addressed

17  not only to our clients, but also actually to our opponents

18  in the Haskell litigation.  Because he's seeking to

19  essentially have their claims also reconsidered.  The basic

20  requirement, as we've noted in our short objection, is that

21  there has to be cause for reconsideration.  Absolutely no

22  cause has been shown.  The only one even suggested would be

23  either the Haskell litigation, which has been dismissed, and

24  secondly really the ability of some of the senior lenders, or

25  the other lenders, who have gotten a so-called windfall.  But

1   that is not the test. As the 3rd Circuit has said, a claim is

2   determined by the consideration received by the Debtor, not

3   the amount paid by the current holder of the claim. That's

4   been upheld by every case that I'm aware of. So that if you

5   purchase a note, you're entitled to a claim in the amount of

6   that note, not the amount of what you paid for that

7   particular claim.

8          THE COURT: What about cause in terms of

9   constitutional impairment?

10         MR. ZELMONVITZ: Well that really deals with also

11  the equity committee motion. And I don't understand where

12  there is a constitutional issue here. There's a right to

13  counsel. No one has deprived Mr. Hayes that right of

14  counsel. He could have gone out and retained his own

15  counsel. The issue here is do you pay for that counsel out

16  of the estate? The estate was not his money. The estate was

17  our client's money. And that's what Your Honor actually

18  found in the valuation part of the confirmation hearing. The

19  equity holders actually had no stake left in this company.

20  And therefore, it was not right to even suggest that they, or

21  their counsel, be paid from the estate. No one deprived him

22  of counsel. He had every right to go out and retain counsel.

23  Therefore, I don't see any issue here. Any constitutional

24  issue here whatsoever. And that was the second point which I

25  really wanted to get to, Your Honor. And the final thing I

1    wanted to mention is what Your Honor touched upon on the

2    final decree.  We actually had a conversation yesterday.  The

3    senior lenders are, to some extent, a little bit concerned to

4    make sure that this Court retains jurisdiction until the

5    Haskell litigation is over and done with.  We do agree with

6    Mr. Silberglied that there is law out there which would allow

7    for the reopening of the case in the unlikely event of a

8    remand, which we agree with Mr. Silberglied is very, very

9    unlikely.  However, it may be for consideration by the Court

10   to at least leave one of the cases open so that there is

11   continuing jurisdiction.  We can leave this of course for

12   further discussion for March 2nd.

13            THE COURT: Indeed.

14            MR. ZELMONVITZ: Thank you, Your Honor.

15            THE COURT: Thank you.  If there are no other - -

16            MR. HAYES: May I respond to these?

17            THE COURT: You may, Mr. Hayes.  Come on up.  Last

18   comment.

19            MR. HAYES: On the motion for reconsideration.  I

20   mean, they're misreading what I propose in the

21   reconsideration.  I am not saying - - I am not reducing the

22   claims of the secondary purchasers.  They're retaining their

23   claims.  I'm just dividing a claim into 2 parts.  That's the

24   reconsideration proposal.  Part of the claim would be - -

25   maintain the same priority as it has now, what I call the

1    speculative part of the claim would still remain a claim.  It

2    would be given a lower priority in a separate class with all

3    the speculative claims, which include the subordinated note

4    holders and the shareholders.  So I'm not reducing the claim.

5    And in the very case that, the Richfield Property Case, I

6    mean this parallels the way in which a mortgage obligation

7    which was secured by property as treated.  A valuation of the

8    property was less than the mortgage, and part of the claim is

9    considered as secured and part of it is considered as

10   unsecured.  I mean, this parallels that in every respect.

11              THE COURT: Understood.

12              MR. HAYES: And the second thing on cause.  These

13   claims, the assertion is made in the cases cited that cause

14   has to be from a Rule 60 cause, because Rule 60 is the normal

15   means for reconsideration.  But that only applies in cases

16   where the claims were considered in the first place.  These

17   claims were never considered, these claims were merely

18   asserted as - - and it didn't come out until, as far as I

19   know, until the Haskell litigation, that the secondary

20   claims, or secondary transactions in the loans was to the

21   extent that it is.  I mean, Haskell they just - - 75% of the

22   senior loan were acquired secondarily.  That these senior

23   lenders, and these are the investment banks and these are the

24   defendants in the Haskell litigation, never paid Genesis

25   anything.  They acquired these claims in the secondary

1   market.  And the claims were, senior lender claims are like

2   $1.4 billion, and 75% of that, and the allegation is made or

3   alleged that these loans were picked up at 50¢ on the dollar.

4   I mean, that's a $500 million shift in priority of claims.

5   And it would allow money to fully compensate the other senior

6   lenders who I think that the bankruptcy laws are trying to

7   protect.  Creditors who actually provided capital to the

8   corporation and are trying to recover a hundred percent of

9   their claim, and are being prevented by doing so by

10  speculators who are asserting that their claim should be of

11  equal priority to those.

12              THE COURT: Thank you Mr. Hayes.

13              MR. HAYES: And - -

14              THE COURT: Did you - - go ahead.

15              MR. HAYES: And I think Mellon Bank has a conflict

16  of interest in representing only the defendants in the

17  Haskell litigation and ignoring the original senior lenders

18  who have a claim.  Because they would be very much in support

19  of this motion.

20              THE COURT: I don't see them here.  Thank you Mr.

21  Hayes.

22              MR. HAYES: But - -

23              THE COURT: That's enough.  Thank you, sir.  I read,

24  Mr. Hayes, your recitation and you've included these

25  comments, many of them, in your papers.  By these comments

1    you seek that I basically rewrite the Bankruptcy Code.  That

2    I inject my own sense of what I think is fair, what I think

3    is appropriate, what I think may have been unfair in the

4    process into the equation of who gets what and how.  That's

5    not the way it works.  I am duty bound to apply the

6    Bankruptcy Code as Congress has passed it, and that's what I

7    will do.  There are 2 motions presented here.  One is a

8    motion to reconsider the order allowing the Genesis and

9    Multicare senior lender claims.  And we understand that

10   502(j) requires that cause be established in order to justify

11   such a reconsideration, if you will, and no such cause has

12   been provided here.  One suggestion is that because there are

13   allegations in a complaint that has been dismissed that one

14   senior lender, or several senior lenders, who were senior

15   lenders at the time of the confirmation achieved their

16   position at a discount, that that is a basis to warrant a re-

17   prioritization of the entire plan that was confirmed over 4

18   years ago.  That's mind boggling.  That's not available as an

19   opportunity for relief.  There is no opportunity to

20   reclassify into speculative and non-speculative portions.

21   There's no provision of the Bankruptcy Code that allows for

22   that.  Indeed, out there in the marketplace this may be an

23   area that generates abuse of one sort or another.  There have

24   been all kinds of, I think, articles and concerns expressed

25   about transfers of claims, about manipulation of the process.

1    And indeed it may be a proper area of congressional review.

2    To determine whether any, excuse me, any control should be

3    applied, any modifications of the Bankruptcy Code

4    appropriate, to control or revise the processes by which

5    investors can operate.  Right now we're operating in the

6    framework that it does not permit a division of a claim based

7    on the price at which the holder of the claim achieved that

8    interest.  Not to mention that it's 4 years after

9    confirmation and what's sought is a complete revision of the

10   confirmed plan, which has been affirmed on appeal and which

11   cannot be disturbed at this point.  So that motion must be

12   denied.  On the motion for the appointment of pre-final

13   decree equity committee, I will not belabor this record to

14   recite the very lengthy and difficult history of attempts by

15   Mr. Hayes to have this issue considered.  I will adopt the

16   recitation that has been provided in the response to the

17   motion.  Suffice it to say that Mr. Hayes has turned the

18   system inside and out to try to obtain this particular

19   relief.  Whether or not he has raised the constitutional

20   dimensions, to the extent that there are any, of the issue he

21   has had his chance, more than once and over the course of

22   years, to assert this position and it is time to stop.  There

23   is no opportunity in this system to keep coming back to the

24   same issue.  The same party, the same issue, the same

25   response.  The response being that there was no entitlement

1    to have the estate pay for representation of equity in this

2    case.  There was every opportunity to retain representation.

3    Mr. Hayes, for one, chose to present his case on his own.  He

4    was heard at confirmation, he was heard on appeal at various

5    junctures.  Enough is enough.  Indeed there is the need for

6    sanctions, there is a need to impress upon Mr. Hayes the fact

7    that he cannot continue to try to assert issues in the

8    Bankruptcy Court, or in the District Court, or in the Court

9    of Appeals, without consequences.  Once you have an answer to

10   a question that you raise, a basic tenet of of our court

11   system, or our jurisprudence, is that you cannot continue to

12   come back to assert those issues again, and again, and again.

13   The consequence here, and I do rely on 105, indeed if 1470, I

14   think it is, is available, then that may also be a basis.

15   The kinds of activities that are seen here are clearly in

16   line with the proscription of that statute.  I'm sorry, 1927.

17   I don't know where I got 1940.  Where a litigant unreasonably

18   and vexatiously multiplies the proceedings.  That's exactly

19   what we have here.  But even if, and there is frankly

20   reasonable basis to conclude that a Bankruptcy Court is not

21   quote, "any court of the United States", unquote, only

22   because - - and this I'm going on memory, I think it's 28 USC

23   451, I'm not positive about that cite - - defines, quote,

24   "any court of the United States", unquote, for purposes of

25   this statute.  And that statute does not include Bankruptcy

```
1    Courts.  One could argue that it should, but nevertheless,
2    that kind of analysis is fairly straightforward.  It's, you
3    know, not too complicated, and does cause a shadow to be
4    placed upon the application of this statute by the Bankruptcy
5    Court.  Nevertheless, counsel is certainly correct to reflect
6    that 105 offers, and indeed I think compels, a Bankruptcy
7    Court to control proceedings, and to address issues of
8    vexatious and unreasonable litigation.  And indeed it
9    dovetails on the Chambers' expressions in - - offered by the
10   United States Supreme Court.  And there has been, I think, I
11   could be wrong on this, but I think unanimous support for the
12   proposition that Chambers and its recitation of the inherent
13   authority of all Federal Courts, where the tools otherwise
14   available are not present to rely on its inherent authority
15   to control the processes in its court, and that includes, for
16   instance, and I think this was the context of the Chambers
17   decision, the imposition of attorney's fees where litigation
18   is unreasonable and vexatious, to use the words of 1927.  So
19   I think that that sanction is appropriate in this case.  I
20   will ask counsel to submit affidavits of services, and of
21   course with a copy to Mr. Hayes.  Mr. Hayes may respond in
22   terms of the amount of attorneys fees sought by the
23   responders, and I will then enter an award on the papers.  I
24   don't believe there will be a need to address, by further
25   argument, any issues.  So I would ask that the affidavit of
```

1   services be filed within 20 days, perhaps.  If that's doable.

2          MR. SILBERGLIED: We can certainly do that, Your

3   Honor.

4          THE COURT: And then Mr. Hayes, you're welcome to

5   take another 15 days to respond to those affidavits, if you

6   choose to do that.  Any questions?

7          MR. HAYES: May I be heard?

8          THE COURT: Your last comment, sir.  Come on up.

9          MR. HAYES: Before you assess sanctions, I would

10  request that you refer to the case in re: Ken Davis Holdings

11  Company 249 f3rd 383, 5th Circuit, 2001.  I mean, this was an

12  issue that was at the heart of that case.

13         THE COURT: I'll gladly refer to it.  I stand by my

14  ruling.  If I look at that case, and I see that there's some

15  basis to depart from it, I will do that.  I believe I'm

16  familiar with the case.  Could you give me the name of it

17  again?

18         MR. HAYES: In re: Ken Davis, d-a-v-i-s, Holdings

19  Company.

20         THE COURT: Oh, no.

21         MR. HAYES: 249 f3rd 383.  It's an Oklahoma

22  bankruptcy case.

23         THE COURT: Actually no, I don't recall it.  I will

24  tell you that I've certainly looked closely at this issue,

25  generally and extensively over time.  So the issue is not new

```
 1   to me.  The 1927 issue, the inherent authority issue, the 105
 2   aspects, the 9011 aspects, these are areas, these are
 3   subjects that come up, as you might imagine, and I'm quite
 4   confident that this is the quintessential case for the
 5   application of sanctions.  It is meant to, as I said, impress
 6   upon you that you cannot return again and again without
 7   consequences.  Where the issues are the same, where you're
 8   seeking the same relief, and where - - I don't want it
 9   reargued now.  I'm done.  And I've ruled.  And I thank you
10   all.  If there's nothing else, the matter is adjourned.
11            MR. SILBERGLIED: Thank you, Your Honor.
12       (Whereupon at 10:13 a.m. the hearing in this matter was
13   concluded for this date.)
14
15
16
17
18
19            I, Jennifer Ryan Enslen, approved transcriber for
20   the United States Courts, certify that the foregoing is a
21   correct transcript from the electronic sound recording of the
22   proceedings in the above-entitled matter.
23
24   _____          _____
     Jennifer Ryan Enslen
     18 Bar Drive
     Newark, DE 19702
     (302) 836-1905
```

**TRANSMITTAL SHEET FOR APPEAL SUBMITTED TO U.S. DISTRICT COURT**

Case Number: **00-2692**
Deputy Clerk Transferring Case: Lisa M. Ciconte (302) 252-2900 ext. 5115
Case Type: Appeal **- AP-06-10**

**Order, Date Entered and Issues**
Oral Bench Ruling on January 19, 2006, denying Mr. Hayes 1)  Motion to Reconsider The Orders
Allowing The Genesis And Multicare Senior Lender Claims; And The Genesis And Multicare Senior
Subordinated Note Claims 2) Motion to Appoint Pre-Final Decree Equity Committee 3) Reorganized
Debtors' Sanctions

| | |
|---|---|
| **Debtor:** | Genesis Health Ventures |
| **Counsel:** | **Russell C. Silberglied** |
| | Richards, Layton & Finger |
| | One Rodney Square |
| | P.O. BOX 551 |
| | Wilmington, DE 19899 |
| **Telephone:** | **(302) 651-7700** |
| | |
| **Appellant(s):** | James J. Hayes |
| **Counsel:** | **Pro Se** |
| | 4024 Estabrook Drive |
| | Annandale, VA 22003 |
| **Telephone:** | **(703) 941-4694** |
| | |
| **Appellees:** | Genesis Health Ventures |
| **Counsel:** | **Russell C. Silberglied** |
| | Richards, Layton & Finger |
| | One Rodney Square |
| | P.O. BOX 551 |
| | Wilmington, DE 19899 |
| **Telephone:** | **(302) 651-7700** |

***There were no physical orders entered on the docket, Judge Wizmur orally ruled on them at the
hearing on January 19, 2006.