## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GENESIS HEALTH VENTURES, INC., et al., | ) | Case No. 00-2692 (JHW) |
| Debtors, | ) | |
| | ) | |
| | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| JAMES J. HAYES, | ) | |
| Appellant, | ) | |
| | ) | C.A. No. 06-103 JJF |
| v. | ) | |
| | ) | |
| | ) | |
| GENESIS HEALTH VENTURES, INC., et al., | ) | |
| Appellees. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

**Motion To Stay Briefing Schedule For Pro Se Appellant To Prepare A
Rule 9011 Motion To Sanction Debtors' Counsel And A Section 327
Motion To Disqualify Debtors' Counsel From Arguing This Appeal; Or
Alternatively, A 30-Day Extension, If The Sanctions Award Against
Appellant And The Motion To Reconsider Claims Are Stayed Until
After The Appeal For The Appointment Of A Pre-Termination Equity
<u>Committee Is Decided</u>**

### INTRODUCTION

1) Pursuant to this Court's March 9, 2006 Order that Appellant's Opening Brief

be filed within fifteen days of the date of this Order, James J. Hayes respectfully requests

that this Court stay the briefing schedule to provide adequate time for the Appellant to

prepare a motion pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure



```
FILED

MAR 2 4 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE
```

("F.R.B.P.") to sanction Debtors' counsel and another motion pursuant to 11 U.S.C. 327(a) to disqualify counsel from representing Genesis in this appeal. [1]

2) Alternatively, a 30-day extension to prepare the Opening Brief would suffice if this Court could set aside the sanctions issue and the appeal of the bankruptcy court's denial of the motion to reconsider the debt securities claims

3) Appellant has sought to work out a schedule with counsel for Genesis that would extend the briefing schedule and would stipulate an extensive record needed for full argument in the sanctions appeal. Counsel for Genesis would not agree with any extension of time nor consider stipulating to a record on appeal. There was no discussion of Appellant's decision to pursue sanctions against counsel or to disqualify counsel from arguing this appeal.

4) The conversations with Debtors' counsel were complicated, however, by the fact that the bankruptcy court, had filed on or about March 7, 2006 a written Order that assessed $20,000 in sanctions with $5,000 be paid to Debtors' counsel and $15,000 to the Senior Lenders' counsel that was to have been paid within ten days of the Order. Thus, when this Court issued its briefing schedule, the Appellant's time was focused on preparing a motion to stay the bankruptcy court order and this motion for extension. (Appendix Tab A) Debtors' counsel, however, was only interested in discussing the futility of further appeals while urging the Appellant to drop all his appeals in exchange for a waiver of the sanctions already awarded, and threatening to seek additional sanctions for continuing the appeals. (Appendix, Tab B) The conversations confirmed

---

[1] In pertinent part this section provides that the debtor "may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons to represent or assist the [debtor]..."

2

Appellant's long forming opinion that Debtors' counsel has little regard for their professional obligations in representing the debtors' varying constituencies but rather is wholly focused in maintaining business relationships with the Senior Lenders by surreptitiously representing the Senior Lender interests in a fraud on the bankruptcy court suit.

5) The fraud on bankruptcy court suit by 275 subordinated debenture holders headed by Richard Haskell alleges an Enron like accounting fraud. According to the complaint: "[t]he valuations of the Company, on which Court approval of the Plan was based, were based on fraudulent information." (*Haskell, et al. v. Goldman, Sachs & Co. et al.,* Complaint #4) (Enclosed as a Supplemental Appendix.) "Throughout this process defendants misled both the Court and the junior creditors at every turn. In fact, plaintiffs have subsequently discovered that both Budgeted EBITDA [earnings] projections and the LTM EBITDA were "cooked" to depress EBITDA and thereby depress the valuation of Genesis. Id. #8. "This action does not seek to set aside the Genesis Bankruptcy Plan or re-divide the Genesis 'pie'. Rather, it seeks to recover from the defendants the hundreds of millions of dollars of damages plaintiffs suffered as a result of defendant's misrepresentations to them, to the public and to the Bankruptcy Court." Id. #12. It is difficult to foresee circumstances where such an extensive fraud could be accomplished without an abundance of ethical lapses by the Debtors' counsel.

## ARGUMENT

6) The efforts of Debtors' counsel over several years to deny the equity class representation by an equity committee show a pattern of complicity in covering-up the fraud alleged by Haskell. Debtors' counsel, without further investigation, continues to

3

use the questioned valuations to argue that Genesis was "hopelessly insolvent" and that this is reason the bankruptcy court should continue denying equity holders representation of an equity committee and for appellate courts to affirm that decision.

## 11 U.S.C. Section 327 Requires Disqualification of Debtors' Counsel

7) Debtors' counsel, however, cannot be co-counsel for the Senior Lenders and Debtors' counsel at the same time. Debtors' counsel has the responsibility to act as a fiduciary to all the constituencies of the Debtors' estate including the equity holders. Upon learning of the *Haskell* allegations on or about January 27, 2004, Debtors' counsel knew or should have known that they had an "adverse interest" to the Debtors' estate in opposing the appointment of an equity committee. 28 U.S.C. 327(a) "requires that the professional retained by the [debtor] not hold or represent an interest adverse to the estate." If the Genesis estate was fraudulently undervalued as alleged by *Haskell*, the Senior Lenders received value in excess of their bankruptcy claims. If the allegations were proven, then the excess value would be returned to the estate. Debtors' counsel's ethical obligations required counsel to evaluate the *Haskell* allegations and if found credible to have initiated a fraud suit containing the *Haskell* allegations on behalf of the Debtors' estate.

8) The Debtors' counsel by opposing appointment of an equity committee or failing to initiate a fraud on the bankruptcy court on behalf of the Debtor acted on its adverse interest. "Total or partial disqualification ... is required without exception, if actual conflict of interest exists under 11 U.S.C.S. 327. *U.S. Code Service* 11 U.S.C.S. 327, n 36 summarizing: *In re Diamond Mortg. Corp.* 135 BR 78.

4

**Rule 9011 Requires Sanctions Against Debtors' Counsel**

8) Rule 9011 F.R.B.P. also required Debtor's counsel to investigate the merits of the *Haskell* allegations and all subsequent court pleadings and arguments should have reflected the results of that investigation. With the bankruptcy still open, Debtors' counsel had access to the estate's resources to employ investment banking and accounting expertise to make the analysis required to assess the truth of the *Haskell* allegations.

9) Rule 9011 does not permit debtors' counsel to continue to rely on the bankruptcy court's confirmation of the critical valuations once credible information suggests these valuations were fraudulent. "Rule 9011 places an affirmative duty on attorneys ... to make a reasonable investigation of the facts and the law before signing and submitting any petition, pleading, motion or other paper." It prohibits "later advocating" a position that subsequent discovery or research reveals to be factually or legally baseless. *Collier On Bankruptcy*, 10:9011-9.

10) Rule 9011.04[2] [b] provides that the "reasonableness of an attorney's... investigation of the facts and the law will depend on the circumstances of the case.... However, an attorney who has had extensive involvement with the case will be held accountable for the knowledge that the involvement imparted or should have imparted, even if a reasonable investigation conducted by an attorney unfamiliar with the case might not have resulted in that level of knowledge." *Collier On Bankruptcy*, 10:9011-10 citing *Artco Corp. v. Lynnhaven Dry Storage Marina, Inc.*, 898 F. 2d 953 (4th Cir. 1990) *Southern Leasing Partners, Ltd. V. McMullan*, 801 F. 2d 783 (5th Cir. 1986). In the Genesis bankruptcy, the Debtors' counsel was paid $5.8 million in legal fees.

5

11) Debtors' counsel would have additional representational issues if Goldman Sachs were considered an "affiliate" or controlling owner of the Debtor. An affiliate is defined as voting ownership of 20%.   Genesis is dominantly owned by the defendant investment banks. The *Haskell* complaint put the defendant bank ownership at 70% in 2001. (Supplemental Appendix # 8) Debtors' counsel with the country's largest bankruptcy practice could not be expected to investigate an investment bank affiliate that could be expected to be an important source of future business.[2]  The only way Debtors' counsel could resolve their  conflict is through the appointment of an independent counsel to investigate the alleged fraud. Even better would be to appoint an equity committee. With the lowest bankruptcy priority, an equity committee is most incented to manage the effort to evaluate and recover the estate's fraud losses.

## Bankruptcy Court's Sanctions Order is Invalid

12) Rule 9011 is the only sanctions provision in the Bankruptcy Code. The rule can be employed by any party or the court to insure that "the claims, defenses, and other legal contentions... are warranted by existing law or by non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." The rule also provides that written motions are "not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;" *Collier On Bankruptcy*, 10:9011-1.

---

[2] As alleged in the *Haskell* complaint: "...Goldman perceived [Genesis] as an investment opportunity.... Goldman, for example, set up an entire division to invest in the debt of distressed companies.... This division invested in at least seven distressed companies in the healthcare industry....[In addition,] Goldman [provided Genesis] (i) underwriting and administering the DIP financing, (ii) underwriting the exit financing, and (iii) becoming the largest holder of the synthetic lease financing facility...Goldman's control over the fate of Genesis continued after Genesis emerged from bankruptcy, to this very day. ( Supplemental Appendix #'s 30 & 32)

6

13) In assessing sanctions against the Appellant, however, the bankruptcy court avoided the use of Rule 9011. At the hearing where the Motion for a Pre-Termination Equity Committee was denied and the Cross-Motion for Sanctions was granted, the Debtors' counsel explained:

> I mean, we could have done it as 9011. Frankly, Your Honor, the main reason we didn't do 9011 is because the hearing was in 2 weeks, and 9011 doesn't translate that well to a contested matter in a Bankruptcy Court because you have to give it 20 days safe – I think it's 20 days – whatever it is safe harbor notice. We would have been more than happy to file a safe harbor notice and proceed under 9011, but we didn't have sufficient time before today's hearing. I think the principles of 9011 apply.

Hearing Transcript 18:8-16, Appendix Tab C.

14) In other words, treating the sanctions question with the seriousness required by 9011 would not have permitted Debtors' counsel to stick a cross-motion for sanctions in a reply brief arguing the merits of appointing a Pre-Termination Equity Committee and another to Reconsider the Debt Securities Claims that was received by the Appellant four business days before the hearing on his motions. Rule 9011 would not have permitted Debtors' counsel to ambush a pro se appellant, prejudice a fair hearing of serious bankruptcy and constitutional representational and due process issues raised in Appellant's motions with the unfounded insinuation that: "Mr. Hayes' frivolous, repetitive motions are an abuse of the legal system." Indeed, most of the activity upon which the cross-motion was based occurred in this Court and was the basis for a similar cross-motion for sanctions then. Debtors' counsel did not inform the bankruptcy court that this Court had denied their earlier motion for sanctions.

15) On February 28, 2006, Debtors' counsel prompted the bankruptcy court to enter "at the earliest convenience" a proposed form of order submitted to the court on

February 8, 2006. (Appendix Tab. D) In urging the bankruptcy court to enter a written order, Debtors' counsel failed to inform the bankruptcy court that on February 15, 2006 the district court had docketed the appeal of the bankruptcy court's bench decision. Under these circumstances, the bankruptcy court did not have the jurisdiction to issue a written order. "Generally a bankruptcy court has wide latitude to reconsider and vacate its own decision. [cite omitted] A pending appeal however, divests a bankruptcy court of jurisdiction." *In Re Adams Apple, Inc*. 829 F 2d 1484 1489 (9th Cir. 1987).

16) In addition, the proposed order asserted that the bankruptcy court had jurisdiction to order sanctions pursuant to 28 U.S.C. 157, finding at the hearing "this is a core proceeding pursuant to 28 U.S.C. [section] 157(b) (2)..." (Appendix Tab D) The itemized matters in 157(b) (2) did not include any matters related to sanctions and there was no mention of 157 at the hearing. (Transcript 26:9 - 27:19, Appendix Tab C) Without a finding that assessing sanctions is a core proceeding, "the bankruptcy courts does not have 'inherent power' under U.S.C.S. 157 to assess attorneys' fees against counsel who act in bad faith, vexatiously, wantonly, or for oppressive reasons." U.S. Code Service (Lawyers Ed.) 28 U.S.C.S. 157 n. 11 citing: *In re Richardson*, 52 B.R. 527 (B.C. W.D. Md. 1985)

17) The bankruptcy court's legal conclusions at the hearing was that 105 was the appropriate section of the Bankruptcy Code authorizing sanctions. "Nevertheless, counsel is certainly correct to reflect that 105 offers, and indeed I think compels, a Bankruptcy Court to control proceedings, and to address issues of vexatious and unreasonable litigation." (Transcript 27:5-8, Appendix Tab C) Thus, Debtors' counsel's

8

proposed order that the bankruptcy court adopted as its written order misrepresented the bankruptcy court's legal conclusions.

## CONCLUSION

16.    For all the foregoing reasons, James J. Hayes respectfully requests this Court a) stay the briefing schedule; at least with respect to the sanctions and claims issues and/or b) extend the briefing schedule for the appointment of an equity committee by 30 days.

Dated: March 20, 2006
Annandale, VA.

Respectfully Submitted,

James J. Hayes
Pro Se
4024 Estabrook Dr.
Annandale, VA 22003
(703) 941-4694

## CERTIFICATE OF SERVICE

I certify a copy of the foregoing Motion was mailed from the Northern Virginia Regional Post Office on March 20, 2006 to the following counsel:

Russell C. Silberglied
Richards Layton and Finger P.A.
One Rodney Square
Wilmington, DE 19899; and

Adam P. Strochak
Weil, Gotshal & Manges LLP
1300 Eye Street, NW, Suite 900
Washington, DC 20005; and

Katherine B. Gresham
Assistant General Counsel
Bankruptcy and Appellate Litigation
Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549

James J. Hayes

9

## APPENDIX

Bankruptcy Court Written Order Filed March 7, 2006.................................................. Tab A

Weil, Gotshal & Manges March 10, 2006 ....................................................................Tab B

January 19, 2006 Hearing Transcript ..........................................................................Tab C

Certification of Counsel and Proposed Order.............................................................. Tab D



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------x
In re:                                  :        Chapter 11
                                        :
GENESIS HEALTH VENTURES, INC., :        Case No. 00-2692 (JHW)
et al.,                                 :
                                        :        Re: Docket No. 2310
            Reorganized Debtor.         :
                                        :
-------------------------------------------------x
```

## ORDER GRANTING REORGANIZED DEBTORS' CROSS-MOTION FOR SANCTIONS AND DENYING (1) MOTION FOR RECONSIDERATION OF THE ORDERS ALLOWING THE GENESIS AND MULTICARE SENIOR LENDER CLAIMS; AND THE GENESIS AND MULTICARE SENIOR SUBORDINATED NOTE CLAIMS AND (2) MOTION FOR APPOINTMENT OF PRE-FINAL DECREE EQUITY COMMITTEE

Upon consideration of the (1) *Motion for Reconsideration of the Orders Allowing the Genesis and Multicare Senior Lender Claims; and the Genesis and Multicare Senior Subordinated Note Claims,* filed by James J Hayes on December 12, 2005 (the "Motion for Reconsideration") [Dkt No. 2303]; (2) *Motion for Appointment of Pre-Final Decree Equity Committee* (the "Fourth Equity Committee Motion"), filed by James J Hayes on December 15, 2005 [Dkt. No 2306]: (3) *Objection of Mellon Bank, N.A. to Motion for Reconsideration of the Orders Allowing the Genesis and Multicare Senior Lender Claims* ("Mellon Objection") [Dkt No. 2309], filed on January 10, 2006 and (4) *Reorganized Debtors' (I) Objection to (a) the Motion for Reconsideration of the Orders Allowing the Genesis and Multicare Senior Lender Claims; and the Genesis and Multicare Senior Subordinated Note Claims and (b) the Motion for Appointment of Pre-Final Decree Equity Committee; and (II) Cross-Motion for Sanctions* ("Reorganized Debtors' Objection and Cross Motion") [Dkt No. 2310], filed on January 11, 2006; the Court having reviewed the Motion for Reconsideration, Fourth Equity Committee

Motion, the Mellon Objection and the Reorganized Debtors' Objection and Cross Motion and all pleadings relating thereto, and after holding a hearing regarding the relief requested in the motions; the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (c) notice of the motions were proper and sufficient under the circumstances, and the Court having determined that just cause exists for the relief granted herein; and the Court having found that good and sufficient cause exists for denying the Motion for Reconsideration and Fourth Equity Committee Motion and for granting the Cross Motion and, it is hereby

ORDERED that the Motion for Reconsideration is denied; and it is further

ORDERED that the Fourth Equity Committee Motion is denied; and it is further

ORDERED that the Cross Motion is granted; and it is further

ORDERED that attorneys fees and costs are awarded to: (1) the Reorganized Debtors in the amount of $5000 ; and (2) the Lenders in the amount of $15 000 . Mr. Hayes shall pay such fees and costs within 10 business days of the entry of this order, and send them to, respectively, Russell C. Silberglied, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801, on behalf of the Reorganized Debtors; and Menachem O. Zelmanovitz, Morgan Lewis & Bockius LLP, 101 Park Avenue, New York, NY 10178-0060, on behalf of the lenders.

Dated: 3/1 , 2006
Wilmington, Delaware

THE HONORABLE JUDITH H. WIZMUR
UNITED STATES BANKRUPTCY JUDGE



# WEIL, GOTSHAL & MANGES LLP

1300 EYE STREET, NW
SUITE 900
WASHINGTON, DC 20005
(202) 682-7000
FAX: (202) 857-0939

AUSTIN
BOSTON
BRUSSELS
BUDAPEST
DALLAS
FRANKFURT
HOUSTON
LONDON
MIAMI
MUNICH
NEW YORK
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
SILICON VALLEY
SINGAPORE
WARSAW

ADAM P. STROCHAK
DIRECT LINE (202) 682-7001
E-MAIL: adam.strochak@weil.com

March 10, 2006

## OFFER OF COMPROMISE - - SUBJECT TO F.R.E. 408

James J. Hayes
4024 Estabrook Drive
Annandale, VA 22003

          Re:     Genesis Health Ventures

Dear Mr. Hayes:

        I enclose a copy of Judge Wizmur's order awarding sanctions against you in the amount of $20,000. I note that you now have two more appeals pending -- one in the district court and one in the Third Circuit. We will continue to seek sanctions for what we believe to be frivolous and vexatious litigation. As a good faith effort to put an end to this unnecessary litigation, the reorganized debtors will agree to waive the sanctions already awarded if you agree to dismiss all pending appeals and to refrain from filing any further motions, in any court. Counsel for Mellon Bank has advised me his client will consent to the same agreement. Please let me know by March 17 whether you will agree to this proposal.

                            Sincerely,

                            Adam P. Strochak

cc:    Russell Silberglied
       Menachem Zelmanovitz

DC1:\221646\01\4R0%01!.DOC\50505.0003



UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              .    Chapter 11

GENESIS HEALTH VENTURES, INC., .    Case No. 00-2692(JHW)
et al.,                             .

          Reorganized Debtors. .

                                    .

IN RE:                              .    Chapter 11

GENESIS ELDERCARE CORP.             .    Case No. 00-2564(JHW)
                                    .

          Reorganized Debtors. .

                                    .

IN RE:                              .    Chapter 11

NORRISTOWN NURSING AND              .    Case No. 00-2716(JHW)
REHABILITATION ASSOCIATES, L.P..
                                    .

          Reorganized Debtors. .    January 19, 2006
                                    .    9:30 a.m.
                                    .    (Wilmington)

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JUDITH H. WIZMUR
UNITED STATES BANKRUPTCY COURT JUDGE

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

1    THE CLERK: All rise.

2    THE COURT: Please be seated.

3    MR. SILBERGLIED: Good morning, Your Honor.

4    THE COURT: Good morning.

5    MR. SILBERGLIED: For the record, Russ Silberglied

6    of Richards, Layton, and Finger on behalf of the Reorganized

7    Debtors.  We have a short agenda for today.  The first matter

8    on the agenda is continued.  A brief word as to why it's

9    continued in case Your Honor wanted an update, that is the

10   motion for entry of a final decree itself.  The US Trustee

11   has pointed out that there are some quarterly operating

12   reports that were not filed, and we are working with the

13   company to get those quarterly operating reports filed.

14   There's been a series of post confirmation transactions at

15   the company, so employees are a little bit harder to find

16   than they once were.  But we're working on it, and we hope to

17   go forward with that at the next hearing which actually Ms.

18   Collins reminded me on our way over here we don't have a next

19   hearing.  So I don't know if Your Honor knows the next time

20   you're going to be in Delaware.

21   THE COURT: Turns out March 2nd might work.  I might

22   be here on February 16th.  It sounds like March 2nd might be

23   better for you.

24   MR. SILBERGLIED: March 2nd would be fine.  Thank

25   you, Your Honor.

1    THE COURT: Let's make that 9 o'clock.

2    MR. SILBERGLIED: Thank you, Your Honor.  The next

3  two items on the agenda are both motions of Mr. Hayes.  He's

4  here.  The first is with respect to the lenders themselves,

5  and the second is with respect to the appointment of an

6  equity committee, so I will cede the podium to Mr. Hayes.

7    THE COURT: Mr. Hayes.

8    MR. HAYES: Good morning, Your Honor.

9    THE COURT: Good morning.  You've filed 2 motions.

10  One, to reconsider the order allowing the senior lender

11  claims and two, to appoint an equity security committee.  At

12  this point I am more than puzzled, disturbed, by these

13  motions, because, as I've read the amazing post confirmation

14  history of these issues, I'm appalled, really, that the

15  issues are coming back.  And I say that with an understanding

16  that the reconsideration motion on the claims is really aimed

17  at, from your description of what you're looking for, a

18  restructuring of the plan, a re-prioritization of the

19  position of the secured lenders, a focus on your claim of

20  windfall on their part, of unfairness, of improper

21  allocations, and an adjustment of claims on those bases.  In

22  terms of the equity security holder committee, it was well

23  laid out by the objection to your motion that you - - this is

24  the 4th time that you're here on that.  Not - - perhaps 3

25  times before the Bankruptcy Court and one before the District

1    Court, with appeals to the Circuit.  I'm not sure about the

2    status of the last appeal.  That was apparently filed on the

3    denial of the District Court I think for - - on the motion

4    for appointment of an equity security committee.  I could be

5    corrected on that.  But you've been there, you've done that,

6    you've been denied your relief.  Why should I consider this

7    again?  What's different now?  How many times, how many bites

8    at the apple do you get?

9        MR. HAYES: Your Honor, the equity clients in this

10   - - throughout this bankruptcy has been denied

11   representation.  I don't think there's any dispute that at no

12   point - - at not time in the bankruptcy has the equity

13   interest been represented.  That is - -

14       THE COURT: Well, the equity interest has appeared

15   and been heard in - - at the confirmation hearing.  You,

16   yourself, presented objection to the plan, and your concerns

17   were addressed and denied.  Your contention is not that there

18   has been no opportunity to be heard - -

19       MR. HAYES: No.

20       THE COURT:  - - but no opportunity to be paid from

21   the estate for legal fees.

22       MR. HAYES: The equity class has not been adequately

23   represented.

24       THE COURT: Do you contend that there is an absolute

25   right to representation paid for by the estate in every case

1    for equity?

2         MR. HAYES: No.   But in this case, since there was

3    no - - I mean, adequate representation, there are a number of

4    ways that it can be provided.  The normal way, I mean, you

5    know, the shareholders are normally represented by company

6    management who has a fiduciary obligation to represent

7    shareholders interests.  And in a normal case, the company

8    officers, in fulfillment of the fiduciary obligations provide

9    representations for the equity class.  I mean, in the recent

10   Morale (phonetic) bankruptcy, which I cited, the chairman of

11   the company, Chairman Schwartz, argued that the valuations

12   prepared by the investment bankers were low.  But in this

13   case, which is rather unusual, the officers of the company

14   have now been charged with conspiracy to commit fraud.

15        THE COURT: Have now been charged in the Haskell

16   (phonetic) matter?  Is that what they're - -

17        MR. HAYES: Well, that was the allegations.

18        THE COURT: Those are - -

19        MR. HAYES: In the Haskell matter.

20        THE COURT:  - - the allegations, and that complaint

21   I dismissed, I believe.

22        MR. HAYES: But you - -

23        THE COURT: I think the District Court has affirmed,

24   if I'm not incorrect.

25        MR. SILBERGLIED: No, Your Honor.  We're in the

1 | middle of briefing in the District Court.

2 | THE COURT: I see. So that's under appeal.

3 | MR. HAYES: But your dismissal didn't address any of

4 | the allegations.

5 | THE COURT: That's correct. So how can I address

6 | the allegations here. There were issues of *res judicata* and

7 | collateral estoppel. Issues under 1144. What's different

8 | here? Why – –

9 | MR. HAYES: Well, the shareholders have a

10 | constitutional right. Among all the creditors and

11 | participants, the shareholders are the only ones whose

12 | property rights are protected by the 5th Amendment of the

13 | Constitution. And as – –

14 | THE COURT: And have you – –

15 | MR. HAYES: – – a protected right – –

16 | THE COURT: – – addressed that issue before? Have

17 | you – – is this the first time that you've raised the

18 | constitutional dimensions of the shareholders opportunities?

19 | MR. HAYES: I have attempted to raise it throughout.

20 | But none – –

21 | THE COURT: And you've been rejected.

22 | MR. HAYES: – – of the courts – –

23 | THE COURT: Have you not?

24 | MR. HAYES: None of the courts have addressed the

25 | constitutional issue.

1        THE COURT: So that because they didn't address the

2   constitutional issue, because they decided that you were not

3   entitled, for any reason, to assert, because - - for a number

4   of reasons, including the timing of your request, that you

5   were not entitled to an equity security committee, including

6   back in September of 2001, including as late as May of 2004,

7   all of those times you had the opportunity - - you raised - -

8   you took the opportunity, whether you had it or not is

9   another question, you took the opportunity to raise the issue

10  of equity security committee on various grounds.  I don't

11  recall that you raised the constitutional grounds in front of

12  me, but you might have raised it otherwise.  It doesn't

13  matter whether it was taken up or not.  You're quite right to

14  assert that as a basic proposition constitutional issues

15  don't go away by the passage of time.  That's a valid

16  proposition.  But in this context you can't just keep coming

17  back and thinking up new theories to raise the same request

18  for relief that you have all along.

19        MR. HAYES: I'm not raising new theories.  I mean,

20  both the law and the constitution require that adequate

21  representation be provided to the equity class.  No court has

22  said that the equity class has been provided adequate

23  representation.

24        THE COURT: There has, there was - - I did say, in

25  my confirmation opinion, that the value in the company - -

1  you may disagree with it, other people have disagreed with it

2  - - the proofs as I found them to be were that there was no

3  value to reach equity, and therefore equity could be - - the

4  plan as proposed could be confirmed, and the plan proposed

5  that there would be no distribution to equity.  That was the

6  decision.  If - - and that's the decision, I believe, was

7  appealed and approved.  And there it stands right or wrong.

8  And nobody can say whether a particular decision, in

9  retrospect, was right or wrong.  But there it stands as a

10  final judgment.  If that's so, then how can we say that the

11  equity was not adequately represented?

12        MR. HAYES: Well, adequate representation requires

13  some form of representation.

14        THE COURT: Well you represented the equity, didn't

15  you?  I mean you - -

16        MR. HAYES: I - -

17        THE COURT:  - - took it upon yourself.

18        MR. HAYES: Well nobody has said that it's adequate.

19  Everybody is saying my representation has been quite

20  inadequate.

21        THE COURT: Did you contemplate hiring an attorney

22  to help you make your presentation in the first instance?

23        MR. HAYES: Yes I did.  I have talked to attorneys.

24        THE COURT: Um-hum.

25        MR. HAYES: $34 million is spent on professional

1   fees in this case.  I'm an individual shareholder.  I am not
2   wealthy.  As part of adequate representation is having
3   representation equivalent to what, to what the other side
4   has.  And I - - even if I'm considered to be representing, I
5   - - and I guess I don't see objecting.  When I objected, I
6   didn't have any - - couldn't cross examine a witness,
7   couldn't present any evidence, couldn't do anything but
8   complain.

9          THE COURT: You didn't have the chance to cross
10  examine witnesses or - -

11         MR. HAYES: No.

12         THE COURT:  - - at the hearing?  At the
13  confirmation hearing?

14         MR. HAYES: No.

15         THE COURT: Did you - -

16         MR. HAYES:  All the objectors were told that their
17  objections would be heard at the end of the proceeding.  I
18  mean, it was kind of a - -

19         THE COURT: There was testimony presented, cross
20  examination of witnesses.  Did you stand up and say, I would
21  like to cross examine a particular witness?

22         MR. HAYES: No.  Because the Debtors' counsel said
23  - - told me what the procedure was.

24         THE COURT: I see.

25         MR. HAYES: Even the objectors - - well.

THE COURT: We did consider experts presented by
some of the objectors.  Let me remind myself that - -

MR. HAYES: But they weren't equity members.

THE COURT: They weren't equity.  Did you have - -
do you understand that you had a chance to present expert
witnesses if you chose to do that?

MR. HAYES: No I didn't.

THE COURT: Let me ask you another question just to
round out the record.  Before - - when was the first time
that you raised the issue of an equity committee?  You'll
recall that you filed a motion before confirmation that was
ruled on in the context of confirmation asking for that
relief.  That was in August of 2001.  Did you raise the issue
before then?

MR. HAYES: The issue of an equity committee?

THE COURT: Yes.

MR. HAYES: No.  I raised the issue of an equity
committee after - - immediately - - fairly soon after I had
gotten the disclosure statement that indicated that
shareholders were not going to participate in the
distribution.  And I - - and almost on the same day.  It was
kind of fortuitous.  I'm not an attorney, and I don't - - I'm
an investor.  I don't follow the bankruptcies of the
companies I happen to own.  But it was somewhat fortuitous
that I was notified of the bankruptcy at the same time that I

1   had gotten a new copy of my Investor's Daily Graphs

2   (phonetic).  As a part of the daily graphs, it shows stock

3   appreciation at certain indexes.  And the leading performer

4   had been the healthcare index.  And that's when I started

5   looking, reading the disclosure statement.  Seeing that the

6   valuation of the company was done in April, and that since

7   April, the Healthcare index that I was looking at had

8   appreciated by 60%.  I mean that told - - that significant

9   thing said, you know, everything in this disclosure statement

10  is inaccurate.  Everything that it's based on.

11          THE COURT: And you did address me at confirmation,

12  did you not?

13          MR. HAYES: Yes.

14          THE COURT: And I considered your comments.  Let me

15  ask you this, you've - - the level of litigation that you've

16  conducted since then is quite impressive.  You've traveled to

17  the District Court and to the Court of Appeals.  On several

18  occasions you've asked for en banc consideration.  You've

19  tried to have the Supreme Court weigh in on these issues.

20  You've really tried to exhaust your opportunities to have

21  these issues considered.  How can I - - why wouldn't the - -

22  the attorneys are seeking sanctions against you saying enough

23  is enough, he's dragging us into this again, we've briefed

24  these issues up and down the chart of the Federal court

25  system, and we've received the same answer.  Why shouldn't we

1     impose upon Mr. Hayes to pay our court fees at this point in

2     light of the fact that he's dragging us, again, yet again,

3     into court? What's my answer to that? Why shouldn't I say,

4     You know, you're right? I'm amazed at this history of up and

5     down. And back again.

6     MR. HAYES: I think their motion for sanctions is

7     completely out of order at this time.

8     THE COURT: Why?

9     MR. HAYES: Because it's prejudicing the Court

10     against the merits of the case.

11     THE COURT: In other words, I shouldn't consider the

12     fact that this - - these issues have been up and down and

13     around and through? That these issues have been - - don't I

14     have to consider that? Isn't there such a thing as finality,

15     and principles that govern the way that we do business in the

16     court system?

17     MR. HAYES: You know, there cannot be any finality

18     until the courts address the constitutional issues. Let me

19     - - this isn't in my brief, but it's part of what I prepared.

20     This Court cannot avoid the constitutional issues of adequate

21     representation of the equity clients. In Marlboro versus

22     Madison (phonetic) Chief Justice Marshall's opinion stated,

23     It is emphatically the province and the duty of the judicial

24     department to say what the law is. Those who apply the rules

25     to a particular case must, of necessity, expound and

PENGAD · 1-800-631-6989

FORM FED-25

1   interpret that rule. If two laws conflict with each other,

2   the courts must decide on the operation of each. So if a law

3   be in opposition to the constitution and both the law and the

4   constitution apply to a particular case so that the court

5   must either decide that a case conforming to the law,

6   disregarding the constitution, or conforming to the

7   constitution disregarding the law, the court must decide

8   which of these conflicting rules govern the case. This is

9   the very essence of judicial duty. None of the courts have

10   addressed one, whether the 5th Amendment applies to, or

11   whether the property of an equity holder is the property

12   that's under the definition of the 5th Amendment. There's no

13   opinion that talks about whether adequate representation is

14   required by the constitution. About what adequate

15   representation is.

16         THE COURT: Understood. Thank you Mr. Hayes.

17         MR. SILBERGLIED: For the record again, Russ

18   Silberglied on behalf of Genesis. I'm not going to take a

19   lot of time, Your Honor. I'm going to respond to a couple of

20   points briefly, and then talk about the sanctions motion. I

21   don't think Your Honor needs to hear much more from me about

22   the background of this, because it's quite clear Your Honor

23   has read the papers. A couple of points raised by Mr. Hayes.

24   One, this issue of nobody has addressed the constitutional

25   argument. Leaving aside for a minute that there simply is no

1   constitutional argument here, and it's not a constitutional

2   issue, let's leave that aside for a moment.  I believe what

3   Mr. Hayes read is word for word out of his brief to the 3rd

4   Circuit Court of Appeals.  He briefed this to the 3rd Circuit

5   Court of Appeals.  I don't recall specifically on what

6   grounds the 3rd Circuit rejected his argument, but suffice it

7   to say it did.  It rejected it again *en banc*.  He made the

8   same constitutional argument in his petition for cert.

9   (phonetic) to the United States Supreme Court, and cert. was

10  denied.  This issue is finished.  It's not equitably moot,

11  it's actually moot in the words of Judge Farnan.  Second,

12  Your Honor, the point that Mr. Hayes made that he couldn't

13  cross examine witnesses and that he couldn't present

14  evidence.  Frankly I don't remember whether he cross examined

15  or not, it's too long ago in my memory to remember that level

16  of detail.  I do remember that he made oral argument.  I do

17  remember, obviously, that counsel for Mr. Grimes, counsel for

18  GMS cross examined our witnesses and put on their own

19  witnesses as well.  Cross examined Mr. Zelmonvitz's witnesses

20  as well.  And what I would additionally add to the record,

21  Your Honor might recall that Mr. Hayes in fact did attempt to

22  introduce evidence to this Court in the form of the famous

23  cartoons that he submitted.  Not only did Your Honor admit

24  those cartoons into evidence, but Your Honor - - but Mr.

25  Hayes has also attached them to pretty much every appellate

15

1   brief he has filed since then.  So it's flatly incorrect that

2   he didn't have the opportunity to present evidence.  It's

3   flatly incorrect that he didn't present evidence.  So I will,

4   then, skip over, in the remainder of my argument, why his two

5   motions today ought to be denied.  I'm sure Mr. Zelmonvitz

6   might want to say something more on the motion leveled to his

7   client.  I'm going to skip right to the sanctions portion,

8   unless Your Honor has questions about the first portion.

9           THE COURT: Please proceed.

10          MR. SILBERGLIED: Thank you, Your Honor.  You know,

11   in short this does has to stop.  Have to stop, excuse me.  It

12   doesn't cost Mr. Hayes anything to file these motions because

13   he's not paying an attorney, but it most assuredly does cost

14   my client something.  Courts expect responses.  And that

15   means that my client must pay me or Weil Gotshal or somebody

16   else to respond to these motions.  And it is inflicting a

17   cost upon us.  It's inflicting a cost also on the federal

18   system because Your Honor has to keep hearing these, the

19   District Court has to keep hearing these, the 3rd Circuit has

20   to keep hearing these.  And in short Mr. Hayes needs a

21   message that this is time to stop.  If Your Honor has any

22   doubts whatsoever about what Mr. Hayes' intentions are if he

23   is not sanctioned today, all you have to do is open up to

24   paragraph 14 of his motion itself, and look at the sentence

25   that starts in the second to last line of page 6 in paragraph

PENGAD • 1-800-631-6989

FORM FED-25

1   14 where he says, quote, "Ratification of the - - and this is
2   the motion for today.  Quote, "Ratification of the
3   confirmation by an equity committee would set the stage for a
4   final decree that would really be final and not just another
5   intermediate point in this saga."  End quote.  In other
6   words, he has absolutely no intention of letting a final
7   decree, if entered by Your Honor at the March hearing, stand
8   in his way of continuing to file these motions.  He thinks
9   that that would be an intermediate point in the saga.  That's
10  exactly why we need an order from your court awarding
11  sanctions.

12          THE COURT:  As a point of procedure, if the appeals
13  are still pending, what opportunities do I have to enter a
14  final decree?

15          MR. SILBERGLIED:  And that's - - perhaps that's for
16  the March hearing.  We have put that in the motion.  That
17  there was case law on the subject of being able to enter a
18  final decree when there's nothing currently pending in the
19  Bankruptcy Court as opposed to things that are on appeal to
20  appellate courts from the Bankruptcy Court.  While I guess I
21  didn't necessarily spell it - - there are cases - -

22          THE COURT:  I'm sure there are, and - -

23          MR. SILBERGLIED:  - - and they're cited in that
24  motion.

25          THE COURT:  - - I'm not deciding the issue.  My

1  facial expression is that there may be some doubt on the

2  issue since the jurisdictional opportunity to hear the case

3  comes up as it's opened, as it's referred from the District

4  Court.  And so it's an interesting issue.

5       MR. SILBERGLIED: Well, understood, Your Honor.  And

6  I'll be prepared to speak more to those cases at the March

7  hearing.  But suffice it to say that I believe the proper

8  remedy would be - - we really don't think the Haskell case is

9  coming back.  We really don't think that the Hayes motion is

10 coming back on remand.  But that's my opinion, obviously.  If

11 it does, there's always the ability to reopen the bankruptcy

12 case.  Just as if somebody needs to file a motion.  You know,

13 if you enter the final decree in March and some creditor

14 comes and violates the confirmation order, and violates the

15 discharge injunction in May, well then what I would do, like

16 is done in many, many cases, is I would file a motion that

17 asks for the Court to reopen the case for the sole purposes

18 of hearing a motion for sanctions for violating discharge

19 injunction and confirmation order, or something of the like.

20       THE COURT: Yeah.  You've cited §1927 - -

21       MR. SILBERGLIED: Yes, Your Honor.

22       THE COURT:  - - of Title 28 as a basis for awarding

23 sanctions, and you're aware that there is some controversy

24 about whether the Bankruptcy Court qualifies as any court of

25 the United States.  There is case law around the country that

1    disagrees with that proposition.  I gather that you're also

2    relying, for instance, on the United States Supreme Court

3    Chambers case for inherent authority of a court to address an

4    abuse of the process, if you will.  In a limited way.

5    Because we're not talking about 9011, it's not a separate

6    motion.  Well, it is, I guess.  But it's - -

7              MR. SILBERGLIED:  It's a cross motion.  It is a

8    separate motion.  I mean, we could have done it as 9011.

9    Frankly, Your Honor, the main reason why we didn't do 9011 is

10   because the hearing was in 2 weeks, and 9011 doesn't

11   translate that well to a contested matter in a Bankruptcy

12   Court because you have to give it 20 days safe - - I think

13   it's 20 days - - whatever it is safe harbor notice.  We would

14   have been more than happy to file a safe harbor notice and

15   proceed under 9011, but we didn't have sufficient time before

16   today's hearing.  I think that the principles of 9011 apply.

17   I think 1927 itself, there is case law that supports it under

18   - -

19             THE COURT:  I don't recall that the 3rd Circuit has

20   ever weighed in on the issue of whether a Bankruptcy Court

21   can utilize 1927.  Am I right?

22             MR. SILBERGLIED:  You're right, Your Honor.  Or, at

23   least we uncovered no such case.

24             THE COURT:  Yeah.  I'm not aware of any, but anyhow.

25             MR. SILBERGLIED:  So there are those principles.

PENGAD • 1-800-631-6989

FORM FED-25

1    And, you know, and of course there is the inherent power of

2    the Court, and there's equitable principles in 105 for Your

3    Honor to be able to control your own docket.  And as we just

4    read from paragraph 14 of Mr. Hayes own motion, he's

5    admitting to the Court that he's going to keep filing

6    motions.  And I think that, you know, 105 would also support

7    - - would support the issue in terms of the Court controlling

8    its own docket.

9          THE COURT: Indeed it would.  I'm confident of that.

10    Thank you Mr. Silberglied.

11          MR. SILBERGLIED: Thank you, Your Honor.

12          THE COURT:  Other comments?  Sir.

13          MR. ZELMONVITZ: Menachem Zelmonvitz of Morgan Lewis

14    on behalf of Mellon Bank, the agent for the senior lenders.

15    I'll be very brief, Your Honor.  I just wanted to touch on

16    first of all the reconsideration motion, which is addressed

17    not only to our clients, but also actually to our opponents

18    in the Haskell litigation.  Because he's seeking to

19    essentially have their claims also reconsidered.  The basic

20    requirement, as we've noted in our short objection, is that

21    there has to be cause for reconsideration.  Absolutely no

22    cause has been shown.  The only one even suggested would be

23    either the Haskell litigation, which has been dismissed, and

24    secondly really the ability of some of the senior lenders, or

25    the other lenders, who have gotten a so-called windfall.  But

1   that is not the test. As the 3rd Circuit has said, a claim is

2   determined by the consideration received by the Debtor, not

3   the amount paid by the current holder of the claim.  That's

4   been upheld by every case that I'm aware of.  So that if you

5   purchase a note, you're entitled to a claim in the amount of

6   that note, not the amount of what you paid for that

7   particular claim.

8          THE COURT: What about cause in terms of

9   constitutional impairment?

10         MR. ZELMONVITZ: Well that really deals with also

11  the equity committee motion.  And I don't understand where

12  there is a constitutional issue here.  There's a right to

13  counsel.  No one has deprived Mr. Hayes that right of

14  counsel.  He could have gone out and retained his own

15  counsel.  The issue here is do you pay for that counsel out

16  of the estate?  The estate was not his money.  The estate was

17  our client's money.  And that's what Your Honor actually

18  found in the valuation part of the confirmation hearing.  The

19  equity holders actually had no stake left in this company.

20  And therefore, it was not right to even suggest that they, or

21  their counsel, be paid from the estate.  No one deprived him

22  of counsel.  He had every right to go out and retain counsel.

23  Therefore, I don't see any issue here.  Any constitutional

24  issue here whatsoever.  And that was the second point which I

25  really wanted to get to, Your Honor.  And the final thing I

PENGAD • 1-800-631-6989

FORM FED-25

1   wanted to mention is what Your Honor touched upon on the
2   final decree. We actually had a conversation yesterday. The
3   senior lenders are, to some extent, a little bit concerned to
4   make sure that this Court retains jurisdiction until the
5   Haskell litigation is over and done with. We do agree with
6   Mr. Silberglied that there is law out there which would allow
7   for the reopening of the case in the unlikely event of a
8   remand, which we agree with Mr. Silberglied is very, very
9   unlikely. However, it may be for consideration by the Court
10  to at least leave one of the cases open so that there is
11  continuing jurisdiction. We can leave this of course for
12  further discussion for March 2nd.

13              THE COURT: Indeed.

14              MR. ZELMONVITZ: Thank you, Your Honor.

15              THE COURT: Thank you. If there are no other - -

16              MR. HAYES: May I respond to these?

17              THE COURT: You may, Mr. Hayes. Come on up. Last
18  comment.

19              MR. HAYES: On the motion for reconsideration. I
20  mean, they're misreading what I propose in the
21  reconsideration. I am not saying - - I am not reducing the
22  claims of the secondary purchasers. They're retaining their
23  claims. I'm just dividing a claim into 2 parts. That's the
24  reconsideration proposal. Part of the claim would be - -
25  maintain the same priority as it has now, what I call the

1    speculative part of the claim would still remain a claim.  It

2    would be given a lower priority in a separate class with all

3    the speculative claims, which include the subordinated note

4    holders and the shareholders.  So I'm not reducing the claim.

5    And in the very case that, the Richfield Property Case, I

6    mean this parallels the way in which a mortgage obligation

7    which was secured by property as treated.  A valuation of the

8    property was less than the mortgage, and part of the claim is

9    considered as secured and part of it is considered as

10    unsecured.  I mean, this parallels that in every respect.

11              THE COURT: Understood.

12              MR. HAYES: And the second thing on cause.  These

13    claims, the assertion is made in the cases cited that cause

14    has to be from a Rule 60 cause, because Rule 60 is the normal

15    means for reconsideration.  But that only applies in cases

16    where the claims were considered in the first place.  These

17    claims were never considered, these claims were merely

18    asserted as - - and it didn't come out until, as far as I

19    know, until the Haskell litigation, that the secondary

20    claims, or secondary transactions in the loans was to the

21    extent that it is.  I mean, Haskell they just - - 75% of the

22    senior loan were acquired secondarily.  That these senior

23    lenders, and these are the investment banks and these are the

24    defendants in the Haskell litigation, never paid Genesis

25    anything.  They acquired these claims in the secondary

1  market.  And the claims were, senior lender claims are like

2  $1.4 billion, and 75% of that, and the allegation is made or

3  alleged that these loans were picked up at 50¢ on the dollar.

4  I mean, that's a $500 million shift in priority of claims.

5  And it would allow money to fully compensate the other senior

6  lenders who I think that the bankruptcy laws are trying to

7  protect.  Creditors who actually provided capital to the

8  corporation and are trying to recover a hundred percent of

9  their claim, and are being prevented by doing so by

10  speculators who are asserting that their claim should be of

11  equal priority to those.

12       THE COURT: Thank you Mr. Hayes.

13       MR. HAYES: And - -

14       THE COURT: Did you - - go ahead.

15       MR. HAYES: And I think Mellon Bank has a conflict

16  of interest in representing only the defendants in the

17  Haskell litigation and ignoring the original senior lenders

18  who have a claim.  Because they would be very much in support

19  of this motion.

20       THE COURT: I don't see them here.  Thank you Mr.

21  Hayes.

22       MR. HAYES: But - -

23       THE COURT: That's enough.  Thank you, sir.  I read,

24  Mr. Hayes, your recitation and you've included these

25  comments, many of them, in your papers.  By these comments

1    you seek that I basically rewrite the Bankruptcy Code.   That
2    I inject my own sense of what I think is fair, what I think
3    is appropriate, what I think may have been unfair in the
4    process into the equation of who gets what and how.   That's
5    not the way it works.   I am duty bound to apply the
6    Bankruptcy Code as Congress has passed it, and that's what I
7    will do.   There are 2 motions presented here.   One is a
8    motion to reconsider the order allowing the Genesis and
9    Multicare senior lender claims.   And we understand that
10   502(j) requires that cause be established in order to justify
11   such a reconsideration, if you will, and no such cause has
12   been provided here.   One suggestion is that because there are
13   allegations in a complaint that has been dismissed that one
14   senior lender, or several senior lenders, who were senior
15   lenders at the time of the confirmation achieved their
16   position at a discount, that that is a basis to warrant a re-
17   prioritization of the entire plan that was confirmed over 4
18   years ago.   That's mind boggling.   That's not available as an
19   opportunity for relief.   There is no opportunity to
20   reclassify into speculative and non-speculative portions.
21   There's no provision of the Bankruptcy Code that allows for
22   that.   Indeed, out there in the marketplace this may be an
23   area that generates abuse of one sort or another.   There have
24   been all kinds of, I think, articles and concerns expressed
25   about transfers of claims, about manipulation of the process.

25

1   And indeed it may be a proper area of congressional review.
2   To determine whether any, excuse me, any control should be
3   applied, any modifications of the Bankruptcy Code
4   appropriate, to control or revise the processes by which
5   investors can operate.  Right now we're operating in the
6   framework that it does not permit a division of a claim based
7   on the price at which the holder of the claim achieved that
8   interest.  Not to mention that it's 4 years after
9   confirmation and what's sought is a complete revision of the
10  confirmed plan, which has been affirmed on appeal and which
11  cannot be disturbed at this point.  So that motion must be
12  denied.  On the motion for the appointment of pre-final
13  decree equity committee, I will not belabor this record to
14  recite the very lengthy and difficult history of attempts by
15  Mr. Hayes to have this issue considered.  I will adopt the
16  recitation that has been provided in the response to the
17  motion.  Suffice it to say that Mr. Hayes has turned the
18  system inside and out to try to obtain this particular
19  relief.  Whether or not he has raised the constitutional
20  dimensions, to the extent that there are any, of the issue he
21  has had his chance, more than once and over the course of
22  years, to assert this position and it is time to stop.  There
23  is no opportunity in this system to keep coming back to the
24  same issue.  The same party, the same issue, the same
25  response.  The response being that there was no entitlement

1   to have the estate pay for representation of equity in this

2   case.   There was every opportunity to retain representation.

3   Mr. Hayes, for one, chose to present his case on his own.   He

4   was heard at confirmation, he was heard on appeal at various

5   junctures.   Enough is enough.   Indeed there is the need for

6   sanctions, there is a need to impress upon Mr. Hayes the fact

7   that he cannot continue to try to assert issues in the

8   Bankruptcy Court, or in the District Court, or in the Court

9   of Appeals, without consequences.   Once you have an answer to

10  a question that you raise, a basic tenet of of our court

11  system, or our jurisprudence, is that you cannot continue to

12  come back to assert those issues again, and again, and again.

13  The consequence here, and I do rely on 105, indeed if 1470, I

14  think it is, is available, then that may also be a basis.

15  The kinds of activities that are seen here are clearly in

16  line with the proscription of that statute.   I'm sorry, 1927.

17  I don't know where I got 1940.   Where a litigant unreasonably

18  and vexatiously multiplies the proceedings.   That's exactly

19  what we have here.   But even if, and there is frankly

20  reasonable basis to conclude that a Bankruptcy Court is not

21  quote, "any court of the United States", unquote, only

22  because - - and this I'm going on memory, I think it's 28 USC

23  451, I'm not positive about that cite - - defines, quote,

24  "any court of the United States", unquote, for purposes of

25  this statute.   And that statute does not include Bankruptcy

1  Courts.  One could argue that it should, but nevertheless,

2  that kind of analysis is fairly straightforward.  It's, you

3  know, not too complicated, and does cause a shadow to be

4  placed upon the application of this statute by the Bankruptcy

5  Court.  Nevertheless, counsel is certainly correct to reflect

6  that 105 offers, and indeed I think compels, a Bankruptcy

7  Court to control proceedings, and to address issues of

8  vexatious and unreasonable litigation.  And indeed it

9  dovetails on the Chambers' expressions in - - offered by the

10 United States Supreme Court.  And there has been, I think, I

11 could be wrong on this, but I think unanimous support for the

12 proposition that Chambers and its recitation of the inherent

13 authority of all Federal Courts, where the tools otherwise

14 available are not present to rely on its inherent authority

15 to control the processes in its court, and that includes, for

16 instance, and I think this was the context of the Chambers

17 decision, the imposition of attorney's fees where litigation

18 is unreasonable and vexatious, to use the words of 1927.  So

19 I think that that sanction is appropriate in this case.  I

20 will ask counsel to submit affidavits of services, and of

21 course with a copy to Mr. Hayes.  Mr. Hayes may respond in

22 terms of the amount of attorneys fees sought by the

23 responders, and I will then enter an award on the papers.  I

24 don't believe there will be a need to address, by further

25 argument, any issues.  So I would ask that the affidavit of

FORM FED-25   PENGAD - 1-800-631-6989

1   services be filed within 20 days, perhaps. If that's doable.

2        MR. SILBERGLIED: We can certainly do that, Your

3   Honor.

4        THE COURT: And then Mr. Hayes, you're welcome to

5   take another 15 days to respond to those affidavits, if you

6   choose to do that. Any questions?

7        MR. HAYES: May I be heard?

8        THE COURT: Your last comment, sir. Come on up.

9        MR. HAYES: Before you assess sanctions, I would

10   request that you refer to the case in re: Ken Davis Holdings

11   Company 249 f3rd 383, 5th Circuit, 2001. I mean, this was an

12   issue that was at the heart of that case.

13        THE COURT: I'll gladly refer to it. I stand by my

14   ruling. If I look at that case, and I see that there's some

15   basis to depart from it, I will do that. I believe I'm

16   familiar with the case. Could you give me the name of it

17   again?

18        MR. HAYES: In re: Ken Davis, d-a-v-i-s, Holdings

19   Company.

20        THE COURT: Oh, no.

21        MR. HAYES: 249 f3rd 383. It's an Oklahoma

22   bankruptcy case.

23        THE COURT: Actually no, I don't recall it. I will

24   tell you that I've certainly looked closely at this issue,

25   generally and extensively over time. So the issue is not new

1    to me.   The 1927 issue, the inherent authority issue, the 105

2    aspects, the 9011 aspects, these are areas, these are

3    subjects that come up, as you might imagine, and I'm quite

4    confident that this is the quintessential case for the

5    application of sanctions.   It is meant to, as I said, impress

6    upon you that you cannot return again and again without

7    consequences.   Where the issues are the same, where you're

8    seeking the same relief, and where - - I don't want it

9    reargued now.   I'm done.   And I've ruled.   And I thank you

10   all.   If there's nothing else, the matter is adjourned.

11            MR. SILBERGLIED: Thank you, Your Honor.

12        (Whereupon at 10:13 a.m. the hearing in this matter was

13   concluded for this date.)

14

15

16

17

18

19            I, Jennifer Ryan Enslen, approved transcriber for

20   the United States Courts, certify that the foregoing is a

21   correct transcript from the electronic sound recording of the

22   proceedings in the above-entitled matter.

23

24   Jennifer Ryan Enslen

25   18 Bar Drive
     Newark, DE 19702
     (302) 836-1905

1/30/06



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------x
In re:                                :    Chapter 11
                                      :
GENESIS HEALTH VENTURES, INC., :    Case No. 00-2692 (JHW)
et al.,                               :
                                      :    Re: Docket No. 2310
        Reorganized Debtor.           :
-------------------------------------------------x
```

### CERTIFICATION OF COUNSEL

The undersigned counsel hereby certifies as follows.

1.     On December 12, 2005 and December 15, 2005, respectively, James J. Hayes ("Hayes") filed the *Motion for Reconsideration of the Order Allowing the Genesis and Multicare Senior Lender Claims; and the Genesis Multicare Senior Subordinated Note Claims [Genesis Dkt. No. 2303/Multicare Docket No. 1792]* and the *Motion for Appointment of Pre-Final Decree Equity Committee [Genesis Dkt. No. 2306]*(collectively the "Hayes Motions").

2.     On January 10, 2006, Mellon Bank, N.A. ("Mellon Bank") filed the *Objection of Mellon Bank N.A. to Motion for Reconsideration of the Senior Lender Claims [Genesis Docket No. 2309/Multicare Docket No. 1794; filed 1/10/06]* (the "Mellon Bank Objection"). On January 11, 2006, Genesis Health Ventures, Inc. and their former debtor affiliates (collectively, the "Reorganized Debtors") filed their *Objection to (A) "Motion for Reconsideration of the Orders Allowing the Genesis and Multicare Senior Lender Claims; and the Genesis and Multicare Senior Subordinated Note Claims" and (B) "Motion for Appointment of Pre-Final Decree Equity Committee" and (II) Cross-Motion for Sanctions [Genesis Dkt. No. 2310]* (the "Cross Motion").

3.      At the January 19, 2006 hearing, the Court denied the Hayes Motions, granted the

Cross Motion and announced that it would award the Reorganized Debtors and Mellon Bank

their attorneys fees and costs for responding to the Hayes Motions. The Court requested that

counsel for the Reorganized Debtors and Mellon Bank submit affidavits detailing their fees and

costs associated with responding to the Hayes Motions by February 8, 2006 and allowed Hayes

until February 23, 2006 to object to or otherwise respond to the affidavits of the Reorganized

Debtors and/or Mellon Bank.

4.      On February 7, 2006, Mellon Bank's counsel filed affidavits in support of the

award of attorneys' fees [Genesis Dkt. Nos. 2322 & 2323] ("Mellon Bank Affidavits"). On

February 8, 2006, counsel for the Reorganized Debtors filed an affidavit in support of the Cross

Motion [Genesis Dkt. No. 2325] (the "Reorganized Debtors' Affidavit").

5.      More than the allotted fifteen days have expired, and Mr. Hayes has not objected

nor responded to the Mellon Bank Affidavits nor the Reorganized Debtors' Affidavit.

WHEREFORE, the Reorganized Debtors respectfully request that the proposed form of

order which was attached to the Reorganized Debtors' Affidavit, and which for the convenience

of the Court is also annexed hereto as Exhibit 1, be entered at the earliest convenience of the

Court.

Dated: February 28, 2006
Wilmington, Delaware

Mark D. Collins (No. 2981)
Russell C. Silberglied (No. 3462)
Cynthia L. Collins (No. 4337)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware  19899
(302) 651-7700
(302) 651-7701

-and-

Michael F. Walsh
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
(212) 310-8007

-and-

Adam P. Strochak
Joanne M. Guerrera
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, NW
Suite 900
Washington, DC 20005

Attorneys for Reorganized Debtors Genesis Health
Ventures, Inc. and Norristown Nursing & Rehabilitation
Associates, LP

# *EXHIBIT 1*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------x
```
In re:                                            :        **Chapter 11**

                                                  :

**GENESIS HEALTH VENTURES, INC.,** :        **Case No. 00-2692 (JHW)**
*et al.,*                                         :

                                                  :        Re: Docket No.  2310

                **Reorganized Debtor.**           :

                                                  :
```
------------------------------------------------------x
```

## ORDER GRANTING REORGANIZED DEBTORS' CROSS-MOTION FOR SANCTIONS AND DENYING (1) MOTION FOR RECONSIDERATION OF THE ORDERS ALLOWING THE GENESIS AND MULTICARE SENIOR LENDER CLAIMS; AND THE GENESIS AND MULTICARE SENIOR SUBORDINATED NOTE CLAIMS AND (2) MOTION FOR APPOINTMENT OF PRE-FINAL DECREE EQUITY COMMITTEE

Upon consideration of the (1) *Motion for Reconsideration of the Orders Allowing the Genesis and Multicare Senior Lender Claims; and the Genesis and Multicare Senior Subordinated Note Claims,* filed by James J. Hayes on December 12, 2005 (the "Motion for Reconsideration") [Dkt. No. 2303]; (2) *Motion for Appointment of Pre-Final Decree Equity Committee* (the "Fourth Equity Committee Motion"), filed by James J. Hayes on December 15, 2005 [Dkt. No. 2306]: (3) *Objection of Mellon Bank, N.A. to Motion for Reconsideration of the Orders Allowing the Genesis and Multicare Senior Lender Claims* ("Mellon Objection") [Dkt. No. 2309], filed on January 10, 2006 and (4) *Reorganized Debtors' (I) Objection to (a) the Motion for Reconsideration of the Orders Allowing the Genesis and Multicare Senior Lender Claims; and the Genesis and Multicare Senior Subordinated Note Claims and (b) the Motion for Appointment of Pre-Final Decree Equity Committee; and (II) Cross-Motion for Sanctions* ("Reorganized Debtors' Objection and Cross Motion") [Dkt. No. 2310], filed on January 11, 2006; the Court having reviewed the Motion for Reconsideration, Fourth Equity Committee

RLF1-2973288-1

Motion, the Mellon Objection and the Reorganized Debtors' Objection and Cross Motion and all pleadings relating thereto, and after holding a hearing regarding the relief requested in the motions; the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (c) notice of the motions were proper and sufficient under the circumstances, and the Court having determined that just cause exists for the relief granted herein; and the Court having found that good and sufficient cause exists for denying the Motion for Reconsideration and Fourth Equity Committee Motion and for granting the Cross Motion and, it is hereby

ORDERED that the Motion for Reconsideration is denied; and it is further

ORDERED that the Fourth Equity Committee Motion is denied; and it is further

ORDERED that the Cross Motion is granted; and it is further

ORDERED that attorneys fees and costs are awarded to: (1) the Reorganized Debtors in the amount of _____; and (2) the Lenders in the amount of _____. Mr. Hayes shall pay such fees and costs within 10 business days of the entry of this order, and send them to, respectively, Russell C. Silberglied, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE  19801, on behalf of the Reorganized Debtors; and Menachem O. Zelmanovitz, Morgan Lewis & Bockius LLP, 101 Park Avenue, New York, NY 10178-0060, on behalf of the lenders.

Dated: _____, 2006
Wilmington, Delaware

THE HONORABLE JUDITH H. WIZMUR
UNITED STATES BANKRUPTCY JUDGE

2

RLF1-2973288-1



4024 Estabrook Dr
Annandale, VA 22003

PRIORITY
MAIL

Office of the Clerk
U.S. District Court
J Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801



UNITED STATES
POSTAL SERVICE

0000

19801