IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

```
--------------------------------------------------x
In re:                                   :         Chapter 11
                                         :
GENESIS HEALTH VENTURES, INC.,  :                  Case No. 00-2692 (PJW)
et al.,                                  :
                                         :
            Reorganized Debtors.         :
--------------------------------------------------x
JAMES J. HAYES,                          :
            Appellant,                   :
                                         :
      v.                                 :         C.A. No. 06-103 (JJF)
                                         :
GENESIS HEALTH VENTURES, INC.,  :
et al.                                   :
            Appellees.                   :
                                         :
--------------------------------------------------x
```

**APPELLEES' (I) OBJECTION TO APPELLANT'S MOTION TO STAY
THE BRIEFING SCHEDULE RELATING TO THIS APPEAL AND (II) CROSS-
MOTION FOR THE ENTRY OF AN ORDER (A) IMPOSING MONETARY
SANCTIONS AGAINST APPELLANT, (B) BARRING APPELLANT FROM
FILING ANY ADDITIONAL MOTIONS IN CONNECTION WITH THIS
APPEAL AND (C) RELIEVING THE REORGANIZED DEBTORS
OF THEIR OBLIGATION TO RESPOND TO
ANY ADDITIONAL PLEADINGS FILED BY APPELLANT**

Appellees Genesis Health Ventures, Inc. ("GHV") and Norristown

Nursing & Rehabilitation Associates, L.P. ("Norristown", collectively with GHV, the

"Reorganized Debtors") hereby (i) object to the "Motion to Stay Briefing Schedule for

Pro Se Appellant to Prepare a Rule 9011 Motion to Sanction Debtors' Counsel and a

Section 327 Motion to Disqualify Debtors' Counsel from Arguing this Appeal; or

Alternatively, a 30-Day Extension, if the Sanctions Award Against Appellant and the

Motion to Reconsider Claims Are Stayed Until After the Appeal for the Appointment of a

Pre-Termination Equity Committee Is Decided" (the "Stay Motion"), filed by Mr. James

Hayes ("Hayes"), and (ii) move for the entry of an order (a) imposing monetary sanctions against Mr. Hayes, (b) barring Mr. Hayes from filing additional motions in this case without prior leave of Court and (c) relieving the Reorganized Debtors of any obligation to respond to any such motions filed by Mr. Hayes absent the entry of an order directing them to do so (the "Cross-Motion").[1]    In support of this objection and Cross-Motion, the Reorganized Debtors respectfully represent as follows:

## INTRODUCTION

The Stay Motion is simply the latest in a long line of frivolous, repetitive pleadings filed by Mr. Hayes. The Court might recall that this is the third time that Mr. Hayes, who purports to represent common stockholders (but in actuality is not joined by any other stockholder), has been before this Court on appeal. Moreover, Mr. Hayes has filed no less than four separate motions seeking the appointment of an equity committee -- one motion in this Court and three additional motions in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). Mr. Hayes' requests for the appointment of an equity committee have been denied at every level, including the U.S. Supreme Court's denial of Mr. Hayes' petition for a writ of certiorari. Undeterred by an award of sanctions against him, he has filed the current motion and an equally frivolous motion in the Bankruptcy Court. The Cross-Motion provided with this response unfortunately appears to be necessary to put an end to this waste of judicial resources, as well as harm to the Reorganized Debtors in responding to these repeated, frivolous papers.

---

[1] Appellee Mellon Bank N.A. will be filing a *Joinder in Reorganized Debtors' (I) Objection to Appellant's Motion to Stay Briefing Schedule and (II) Cross-Motion for Sanctions*

## BACKGROUND

Rather than belabor the Court with a detailed discussion of the numerous pleadings filed by Mr. Hayes (and the procedural history thereof), the Reorganized Debtors refer the Court to the "Reorganized Debtors' (I) Objection to (A) 'Motion for Reconsideration of the Orders Allowing the Genesis and Multicare Senior Lender Claims; and the Genesis and Multicare Senior Subordinated Note Claims' and (B) 'Motion for Appointment of Pre-Final Decree Equity Committee' and (II) Cross-Motion for Sanctions", a copy of which is attached hereto as Exhibit A.

Most recently, Mr. Hayes filed the following motions in the Bankruptcy Court: (i) a motion for reconsideration of the Reorganized Debtors' senior secured lenders' (the "Senior Lenders") claims pursuant to section 502(j) of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and (ii) a fourth motion for the appointment of an equity committee. The Reorganized Debtors and Mellon Bank, N.A., administrative agent for the Senior Lenders ("Mellon"), each filed an objection in response to the motions and contemporaneously cross-moved for sanctions against Mr. Hayes in an effort to put an end to his abuse of the legal system and the costs being inflicted in defending against his frivolous, repetitive motions. (Mellon's objection is attached hereto as Exhibit B). At a hearing held on January 19, 2006, the Honorable Judith H. Wizmur denied both of Mr. Hayes' motions and granted the Reorganized Debtors' cross-motion for sanctions, finding that this case represented "the quintessential case for the application of sanctions." See Jan. 19, 2006 Hrg. Tr. at 29.[2] In connection with her ruling, Judge Wizmur instructed counsel to the Reorganized Debtors and Mellon to submit affidavits as to the amount of their attorneys' fees. See id. at 27. Judge

_____

[2] A copy of the January 19, 2006 hearing transcript is attached hereto as Exhibit C.

3

Wizmur stated that "Mr. Hayes may respond in terms of the amount of attorney's fees sought by the responders, and I will then enter an award on the papers." See id.

On February 2, 2006, Mr. Hayes commenced this appeal (the "Appeal") by filing a notice of appeal with the Bankruptcy Court relating to the Court's January 19, 2006 bench ruling.[3]  On March 20, 2006, Mr. Hayes filed the Stay Motion in this Court seeking to stay the briefing schedule in the Appeal apparently so that Mr. Hayes can flaunt the Bankruptcy Court's order by preparing even more frivolous motions which the Court will be forced to consider and deny:  (i) a motion, pursuant to rule 9011 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to sanction the Reorganized Debtors' counsel (even though Mr. Hayes has lost at every level, repeatedly) and (ii) a motion, pursuant to section 327(a) of the Bankruptcy Code, to disqualify the same counsel from representing the Reorganized Debtors in connection with this Appeal (even though Section 327(a) applies to retention of counsel during the course of a bankruptcy case, and here a Plan of Reorganization was approved 4 ½ years ago).  The Stay Motion is the latest in a long line of frivolous pleadings filed by Mr. Hayes, the defense of which has inflicted significant costs on the Reorganized Debtors and their constituents.  Accordingly, the Reorganized Debtors hereby (i) object to the relief requested in the Stay Motion and (ii) cross-move for the entry of an order awarding the Reorganized Debtors' costs and fees in connection with responding to the Stay Motion and barring Mr. Hayes from filing any additional motions in connection with the Appeal.

---

[3]  Mr. Hayes commenced the Appeal prior to the entry of an order by the Bankruptcy Court.  On March 2, 2006, the Bankruptcy Court entered an order denying Mr. Hayes' motions and granting the Reorganized Debtors' cross-motion with an award of attorneys' fees in the amount of $20,000 (the "Order").  On March 15, 2006, Mr. Hayes filed a motion in the Bankruptcy Court seeking to stay the Order due to the pendency of the Appeal, asserting, among other things, that the Bankruptcy Court did not have jurisdiction to enter the Order given his appeal of the bench ruling.  Contemporaneously with the filing of this objection and Cross-Motion, the Reorganized Debtors will be filing a motion with the Bankruptcy Court seeking similar relief as that sought in this Cross-Motion.

4

## **OBJECTION TO STAY MOTION**

By the Stay Motion, Mr. Hayes seeks to stay the briefing schedule in the Appeal so that he can prepare (i) a motion, pursuant to Bankruptcy Rule 9011, to sanction the Reorganized Debtors' counsel and (ii) a motion, pursuant to section 327(a) of the Bankruptcy Code, to disqualify the same counsel from representing the Reorganized Debtors in connection with this Appeal. The Reorganized Debtors will not dignify Mr. Hayes' baseless attacks by delving into the substance of his erroneous allegations. The Reorganized Debtors do, however, submit that the Stay Motion is fatally flawed, as Mr. Hayes has failed to establish a single element necessary to support his request for a stay pending appeal. See Copley Press, Inc. v. Peregrine Sys., Inc. (In re Peregrine Sys.), 312 B.R. 755, 756 (D. Del. 2004) (noting that a court must look at the following elements to determine whether to stay order: (i) likelihood that appellant will prevail on merits of appeal, (ii) extent appellant will be irreparably harmed if stay is denied, (iii) extent to which other parties will suffer irreparably harm if stay granted and (iv) public interest).[4] Indeed, Mr. Hayes simply argues that he wants to file a sanctions and disqualification motion. Even if these motions had a shred of merit, they would have nothing to do with whether the merits of this Appeal should or should not go forward now. Accordingly, the Stay Motion should be denied.

---

[4] Mr. Hayes also somehow argues that the Bankruptcy Court lacked jurisdiction to enter its order because he beat the Bankruptcy Court to the punch, by prematurely appealing before an order was entered. In addition to be an utterly impractical approach, this frivolous argument is directly prohibited by the Federal Rules of Bankruptcy Procedure, which provide: "[a] notice of appeal filed after the announcement of a decision or order but before entry of the judgment, order or decree shall be treated as filed after such entry and on the day thereof." Fed. R. Bankr. P. 8002(a). Thus, under Rule 8002(a), the appeal, despite being filed prematurely, is treated as having been filed after the order was entered. Nothing divested the Bankruptcy Court of jurisdiction to enter the Order.

The Reorganized Debtors would respond to the remainder of the Motion if, frankly, they understood what it was seeking. Instead, the Reorganized Debtors would be pleased to respond to any questions the Court might have at any oral argument the Court might schedule.

## REORGANIZED DEBTORS' CROSS-MOTION

The Court should award fees and costs in connection with this objection and Cross-Motion. However, that alone will not suffice as it has now become apparent that the only way to prevent Mr. Hayes from filing frivolous pleadings is to enjoin him from doing so.

As Judge Wizmur recognized, pursuant to section 1927 of title 28 of the United States Code, a court may assess costs against any person that unreasonably and vexatiously multiplies the proceedings in a case. More specifically, section 1927 provides as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927; see In re Volpert, 177 B.R. 81 (N.D. Ill. 1995) (holding that bankruptcy court has jurisdiction to award sanctions under 28 U.S.C. § 1927); Knepper v. Skekloff, 154 B.R. 75 (N.D. Ill. 1993) (same). A number of courts addressing the issue, including Judge Wizmur in connection with the previous cross motion, have held that a court's authority to issue sanctions under section 1927 extends to non-lawyer litigants. See, e.g., Brown v. Adidas Int., 938 F. Supp. 628 (S.D. Cal. 1996) (applying section 1927 to non-lawyer litigants appearing *in propria persona*); Odbert v United States, 576 F.

Supp. 825 (E.D. Cal. 1983) (finding that section 1927 applied to petitioner appearing *in propria persona* either as party or as counsel). The Reorganized Debtors ask that this Court do so here.

Additionally, it has become apparent that monetary sanctions will not deter Mr. Hayes, and accordingly further remedies are required. This Court has the inherent authority under section 1651 of Title 28 to issue all "writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. Courts have repeatedly used this inherent authority to issue orders to manage their case loads and/or stem vexatious litigation. See, e.g., Armstrong v. Ruston (In re Armstrong), 309 B.R. 799 (10th Cir. B.A.P. 2004) *cert. denied*, 125 S. Ct. 431 (2004), *petition for rehearing denied*, 125 S.C. 950 (2005) (appellate court upheld bankruptcy court's imposition of specific filing restrictions upon a pro-se chapter 11 debtor pursuant to 11 U.S.C. § 105 and 28 U.S.C. § 1651(a) whose record demonstrated he was a vexatious litigant who repeatedly attempted to challenge the confirmation order with repetitive and frivolous motions); Woodward v. June Dicks (In re Dicks), 306 B.R. 700 (Bankr. M.D. Fla. 2004) ("This Court has inherent authority to enjoin vexatious litigation by litigants who have settled on a course of conduct involving the repetitive filing of duplicative legal papers rearguing a position rejected a multitude of times by numerous trial and appellate courts, where such litigation causes needless expense to other parties, where the litigants have no objective, good-faith expectation of prevailing, and where the multiple filings place an unnecessary burden on the courts.").

Further, it is well settled that federal courts have the inherent power to enforce decorum and to sanction those who pursue vexatious litigation. As the Supreme Court has explained:

> Courts of justice are universally acknowledged to be vested by their very creation, with the power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates . . . . These powers are governed not by rule or statute, but by control necessarily vested in courts to manage their own affairs so at to achieve the orderly and expeditious disposition of cases.

Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) (internal citations omitted). Courts in this Circuit have repeatedly upheld the authority of bankruptcy courts to impose monetary sanctions on litigants and their counsel under the inherent power of the court, even when the criteria of Rule 9011 has not been met. See Fellhei mer, Eichen & Braveman, P.C. v. Charter Technologies, Inc., 57 F.3d 1215, 1224-25 (3d Cir. 1995); D'Auria v. Minniti (In re John F. Minniti), 242 B.R. 843, 849 (Bankr. E.D. Pa. 2000); see also Mapother & Mathoper, P.S.C. v. Cooper (In re Downs), 103 F.3d 472, 477 (6th Cir. 1996). This power includes the power to sanction parties that pursue multiple and bad faith filings. "The inherent power to sanction bad-faith conduct is separate and distinct source of authority, which is not displaced by federal statutes and rules. It is broader than Rule 9011 sanctions and 'extends to a full range of litigation abuses.'" See Deville v. Cardinale (In re Deville), 280 B.R. 483, 495 (9th Cir. B.A.P. 2002) (internal citations omitted), aff'd 361 F.3d 539 (9th Cir. 2004).

As Judge Wizmur recognized at the January 19, 2006 hearing, Mr. Hayes has a history of filing frivolous and duplicative pleadings in both this Court and the Bankruptcy Court. The Reorganized Debtors were hopeful that the Bankruptcy Court's award of sanctions would send a clear message to Mr. Hayes and discourage his

8

continued abuse of the legal system and the filing of any additional frivolous pleadings. As is evident from the recent filing of the Stay Motion and a similar motion in the Bankruptcy Court, that has not been the case.  Accordingly, the Reorganized Debtors respectfully request the entry of an order directing Mr. Hayes to bear the Reorganized Debtors' fees and costs in filing this pleading.

Additionally, in light of Mr. Hayes' history of abuse of the legal process before both this Court and the District Court, the Reorganized Debtors respectfully request that the Court enter an order (i) enjoining Mr. Hayes from filing any additional motions in connection with this Appeal without first obtaining leave of Court and (ii) relieving the Reorganized Debtors of any obligation to respond to any such motion without an order of the Court directing them to do so.  While the Reorganized Debtors do not seek to take away Mr. Hayes' right to file an opening and reply brief in connection with the Appeal, the Reorganized Debtors submit that it is necessary for the Court to limit Mr. Hayes' ability to file any additional extraneous motions or any new appeals after this one, given his abuse of the legal system to date.

WHEREFORE, the Reorganized Debtors respectfully request an order denying the Hayes Stay Motion, ordering Mr. Hayes to pay the costs and fees of this response, enjoining Hayes from filing any additional motions in this case, and any further appeals, without leave of Court and relieving the Reorganized Debtors of any obligation to respond to any such pleadings without an order of the Court directing them to do so.

Dated: March 30, 2006
      Wilmington, Delaware

*Russell C. Silberglied*

Mark D. Collins (No. 2981)
Russell C. Silberglied (No. 3462)
Cynthia L. Collins (No. 4337)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801

and

Michael F. Walsh
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153

and

Adam P. Strochak
Joanne M. Guerrera
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, NW
Suite 900
Washington, D.C. 20005

Attorneys for Appellees Genesis Health Ventures, Inc. and Norristown Nursing & Rehabilitation Associates, L.P.

10

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------x
In re:                                          :    **Chapter 11**
                                                :
**GENESIS HEALTH VENTURES, INC.,** :    **Case No. 00-2692 (JHW)**
*et al.,*                                       :
                                                :
              Reorganized Debtor.               :
------------------------------------------------x
In re:                                          :    **Chapter 11**
                                                :
**NORRISTOWN NURSING AND**                      :    **Case No. 00-2716 (JHW)**
**REHABILITATION ASSOCIATES, L.P.** :
                                                :    Re: Docket Nos. 2294, 2299, 2303 and 2306
              Reorganized Debtor.               :    Hearing Date: January 19, 2006 at 9:30 a.m.
                                                :    Objection Deadline on Cross-Motion: At Hearing
------------------------------------------------x

### REORGANIZED DEBTORS' (I) OBJECTION TO (A) "MOTION FOR RECONSIDERATION OF THE ORDERS ALLOWING THE GENESIS AND MULTICARE SENIOR LENDER CLAIMS; AND THE GENESIS AND MULTICARE SENIOR SUBORDINATED NOTE CLAIMS" AND (B) "MOTION FOR APPOINTMENT OF PRE-FINAL DECREE EQUITY COMMITTEE" AND (II) CROSS-MOTION FOR SANCTIONS

Genesis Health Ventures, Inc. ("GHV") and Norristown Nursing & Rehabilitation Associates, L.P. ("Norristown", collectively with GHV, the "Reorganized Debtors") hereby (I) object to (a) the Motion for Reconsideration of the Orders Allowing the Genesis and Multicare Senior Lender Claims; and the Genesis and Multicare Senior Subordinated Note Claims [Docket No. 2303], filed by Mr. James Hayes ("Hayes"), and (b) the Motion for Appointment of Pre-Final Decree Equity Committee [Docket No. 2306] (the "Fourth Equity Committee Motion"), filed by Mr. Hayes; and (II) cross-move for sanctions against Mr. Hayes (the "Cross-Motion"). In support of this objection and the Cross-Motion, the Reorganized Debtors respectfully represent as follows:

**INTRODUCTION**

On November 23, 2005, the Reorganized Debtors filed their motion for a final decree [Docket No. 3022] (the "Final Decree Motion") seeking the entry of an order closing the above-captioned chapter 11 cases pursuant to section 350(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). In response to the Final Decree Motion, Mr. Hayes, who purports to represent common stockholders (but in actuality is not joined by any other stockholder), has filed, inter alia, (i) a motion for reconsideration of the Reorganized Debtors' senior secured lenders' (the "Senior Lenders") claims pursuant to section 502(j) of the Bankruptcy Code and (ii) the Fourth Equity Committee Motion. The Reorganized Debtors object to each of these motions for the reasons set forth below.

Additionally, the Reorganized Debtors have filed the Cross-Motion against Mr. Hayes for reimbursement of their costs and fees in filing this pleading. As discussed herein, Mr. Hayes has previously filed three motions for the appointment of an equity committee -- two motions in this Court and an additional motion with the United States District Court for the District of Delaware (the "District Court"). Mr. Hayes' requests for the appointment of an equity committee have been denied at every level, including the U.S. Supreme Court's denial of Mr. Hayes' petition for a writ of certiorari. Notwithstanding the denial of such requests, Mr. Hayes has inconceivably filed a fourth motion for the appointment of an equity committee. The Reorganized Debtors' Cross-Motion is intended to finally put an end to Mr. Hayes' abuse of the legal system and the costs he is inflicting on the constituents of these bankruptcy cases in pursuit of his frivolous, repetitive motions. The Reorganized Debtors respectfully request that the Court send a clear message to Mr. Hayes by ordering that he bear the Reorganized Debtors' costs and fees in filing this pleading.

2

## RELEVANT BACKGROUND

1.    On June 5, 2001, the Reorganized Debtors, together with certain of their affiliates, filed a joint plan of reorganization (as amended, the "Plan") and disclosure statement, pursuant to section 1125 of the Bankruptcy Code. The hearing to consider confirmation of the Plan was held on August 28-29, 2001 (the "Confirmation Hearing"). At the Confirmation Hearing, Mr. Hayes objected to the Plan and, for the first time, moved for the appointment of an equity committee (the "First Equity Committee Motion"). On September 12, 2001, the Bankruptcy Court issued an opinion in which it concluded that it would confirm the Plan, overruled Mr. Hayes' objection and denied the relief requested in the First Equity Committee Motion.

2.    Immediately following the entry of the judgment, Mr. Hayes filed a notice of appeal. On September 20, 2001, following the entry of an order confirming the Plan (the "Confirmation Order"), Mr. Hayes filed an amended notice of appeal. The only difference between the September 13th and September 20th notices of appeal was the handwritten notation on the latter reflecting that the "judgment, order or decree" appealed from was the Confirmation Order dated September 20, 2001 rather than the opinion on confirmation dated September 12, 2001. The filing of the second notice of appeal, however, resulted in the docketing of two separate appeals: (i) Civil Action No. 02-216; and (ii) Civil Action No. 01-718. The docketing of separate, duplicative appeals in the District Court generated considerable confusion among the parties and the District Court. GHV proceeded under the impression that case number 02-016 was the operative appeal. Mr. Hayes, and in some instances, the District Court, however, filed certain papers in case number 01-718.

3

3.    On January 2, 2002, the District Court established a briefing schedule in case number 01-718, requiring appellant's brief to be filed by January 18, 2002. On that date, instead of filing an appeal brief, Mr. Hayes filed a motion with the District Court seeking the appointment of an equity committee (the "Second Equity Committee Motion") for the purpose of pursuing his appeal of the Plan and Confirmation Order and requesting a postponement of the briefing deadline. On January 30, 2002, GHV filed an opposition to the Second Equity Committee Motion and simultaneously filed a motion to dismiss Mr. Hayes' appeal on the ground of equitable mootness.

4.    On September 30, 2002, the District Court denied the Second Equity Committee Motion in an order entered in case number 01-718, on the grounds that the District Court had no authority to appoint an equity committee. On that same date, the District Court granted GHV's motion to dismiss Mr. Hayes' appeal in an order entered in case number 02-016, based on the doctrine of equitable mootness. Mr. Hayes did not appeal the District Court's order dismissing case number 02-016.

5.    On November 6, 2002, the District Court *sua sponte* entered a further scheduling order in case number 01-718 requiring appellant to file his opening brief by November 22, 2002. GHV, believing that Mr. Hayes' appeal had been fully resolved by the dismissal of case number 02-016, made an inquiry to the Clerk of the District Court, who advised that the second appeal (01-718) had been docketed in error. When Mr. Hayes filed a brief in case number 01-718, GHV wrote to the District Court, advising the District Court of its belief that 01-718 and 02-016 were in fact identical appeals from the same order of the Bankruptcy Court, and requesting guidance from the District Court as to whether it was necessary to file a separate motion to dismiss case number 01-718. Mr. Hayes responded to

4

the GHV letter stating that the doctrine of equitable mootness did not apply to the second appeal. On March 12, 2003, the District Court *sua sponte* entered an order in case number 01-718 concluding that case number 01-718 and case number 02-016 were in fact the same appeal, and dismissing case number 01-718 for the same reasons that it previously had dismissed case number 02-016.

6.    After this Court dismissed case number 01-718, Mr. Hayes filed a motion to reopen that case. On February 26, 2004, the District Court issued a Memorandum Opinion denying Mr. Hayes' motion to reopen case number 01-718. Mr. Hayes appealed the February 26, 2004 Memorandum Order in case number 01-718 to the United States Court of Appeals for the Third Circuit (the "Third Circuit"). The appeal was fully briefed, and on December 6, 2004 the Third Circuit affirmed the District Court's decision in its entirety and later denied a motion for rehearing en banc. Mr. Hayes petitioned for certiorari in the Supreme Court, which was denied by the Supreme Court on June 20, 2005. Hayes v. Genesis Health Ventures, Inc., 125 S. Ct. 2947, 162 L.Ed.2d 868 (2005).

7.    On October 5, 2001, Mr. Hayes filed yet another motion for appointment of an equity committee (the "Third Equity Committee Motion") with the Bankruptcy Court. Mr. Hayes never set the Third Equity Committee Motion for hearing and it remained undecided for approximately two and one-half years. On March 13, 2004, Mr. Hayes sent a letter to Judge Wizmur "respectfully requesting a decision on his Motion to Appoint an Official Committee of Equity Security Holders." On April 23, 2004, GHV responded to the Third Equity Committee Motion.

8.    On May 13, 2004, the Bankruptcy Court heard the Third Equity Committee Motion. Judge Wizmur again listened to arguments on this issue from both sides

5

and reviewed the history of Mr. Hayes' appeals  The Bankruptcy Court ultimately denied

Mr. Hayes' motion on both substantive and procedural grounds, finding that: (1) Mr. Hayes'

request for appointment of an equity committee was "grossly untimely;" (2) the doctrine of

equitable mootness applied to the Plan; and (3) the appointment of a post-confirmation equity

committee is only available in the most extraordinary situations, which was not the case here

        9.     Disregarding all of these rulings, Mr. Hayes again appealed the

Bankruptcy Court's denial of the appointment of an equity committee, and on April 27, 2005,

the District Court *sua sponte* entered a scheduling order in case number 04-0477.  On July

23, 2005, the District Court affirmed the Bankruptcy Court's denial of the appointment of an

equity committee finding that the Bankruptcy Court had correctly denied Mr. Hayes' request

for the appointment of a post-confirmation equity committee.  The District Court also noted

that Mr. Hayes had exhausted all avenues to challenge the confirmation order, his challenge

to the Bankruptcy Court's denial to appoint a post-confirmation equity committee to guide

the appeal of the confirmation order, was actually moot given that appeal the U.S. Supreme

Court denied Hayes' petition for a writ of certiorari on June 20, 2005.

        10.     Not content with the District Court's ruling on August 23, 2005, Hayes

filed a notice of appeal with the Third Circuit.  A briefing schedule was circulated to the

parties on January 6, 2006

6

## ARGUMENT

I.   **THE REORGANIZED DEBTORS' OBJECTIONS TO THE HAYES' MOTIONS**

A.   **The Reorganized Debtors Join in the Objection of Mellon Bank,
     N.A. to Motion for Reconsideration of the Senior Lender Claims.**

11.   Mr. Hayes has filed a motion for reconsideration of the Senior Lenders' claims pursuant to section 502(j) of the Bankruptcy Code. On January 10, 2006, Mellon Bank, N.A., acting as administrative agent for the Senior Lenders, filed the Objection of Mellon Bank, N.A. to Motion for Reconsideration of the Senior Lender Claims (the "Senior Lender's Objection"). The Reorganized Debtors hereby join in the Senior Lender's Objection and incorporate by reference the positions adopted therein.

B.   **Mr. Hayes' Fourth Equity Committee Motion Should Be Denied for
     the Same Reasons That His Three Prior Motions Were Denied.**

12.   As discussed in detail above, Mr. Hayes has filed two prior motions with this Court, and an additional motion with the District Court, requesting the appointment of an equity committee. Notwithstanding denial of the requested relief at every level, including the U.S. Supreme Court having denied his petition for a writ of certiorari, Mr. Hayes filed the Fourth Equity Committee Motion requesting the appointment of an equity committee, this time for the "sole" purpose of challenging a ministerial motion to finally close these fully administered bankruptcy cases.

13.   Mr. Hayes' additional request for the appointment of an equity committee is even more "grossly untimely" than his last one, not supported by the facts of this case, barred by the doctrines of *res judicata* and collateral estoppel and moot as a result of the U.S. Supreme Court having denied his petition for a writ of certiorari. This Court is intimately familiar with the application of the relevant legal standards to this case, having

7

previously denied Mr. Hayes' requests for such relief on September 12, 2001 and May 13, 2004, respectively. Accordingly, the Reorganized Debtors will not belabor the Court with additional briefing on such issues and hereby incorporate by reference their pleadings filed in connection with Mr. Hayes' prior requests for the appointment of an equity committee.

## II.    THE REORGANIZED DEBTORS' CROSS-MOTION FOR REIMURSEMENT OF THEIR FEES AND EXPENSES INCURRED IN FILING THIS PLEADING

14.    Pursuant to section 1927 of title 28 of the United States Code, a court may assess costs against any person that unreasonably and vexatiously multiplies the proceedings in a case. More specifically, section 1927 provides as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct

28 U.S.C. § 1927; see In re Volpert, 177 B.R. 81 (N.D. Ill 1995) (holding that bankruptcy court has jurisdiction to award sanctions under 28 U.S.C. § 1927); Knepper v. Skekloff, 154 B.R. 75 (N.D. Ill. 1993) (same). A number of courts addressing the issue have held that a court's authority to issue sanctions under section 1927 extends to non-lawyer litigants. See, e.g., Brown v. Adidas Int, 938 F. Supp. 628 (S.D. Cal. 1996) (applying section 1927 to non-lawyer litigants appearing in propria persona); Odbert v United States, 576 FSupp 825 (E.D. Cal. 1983) (finding that section 1927 applied to petitioner appearing in propria persona either as party or as counsel).

15.    Additionally, a court has the inherent authority under section 1651 of Title 28 to issue all "writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C § 1651 Courts have repeatedly

used this inherent authority to issue orders to manage their case loads and/or stem vexatious litigation. See, e.g., Armstrong v. Ruston (In re Armstrong), 309 B.R. 799 (10th Cir. B.A.P. 2004) cert. denied, 125 S. Ct. 431 (2004), petition for rehearing denied, 125 S.C. 950 (2005) (appellate court upheld bankruptcy court's imposition of specific filing restrictions upon a pro-se chapter 11 debtor pursuant to 11 U.S.C.A. § 105 and 28 U.S.C.A. § 1651(a) whose record demonstrated he was a vexatious litigant who repeatedly attempted to challenge the confirmation order with repetitive and frivolous motions); Woodward v. June Dicks (In re Dicks), 306 B.R. 700 (Bankr. M.D. Fla. 2004) ("This Court has inherent authority to enjoin vexatious litigation by litigants who have settled on a course of conduct involving the repetitive filing of duplicative legal papers rearguing a position rejected a multitude of times by numerous trial and appellate courts, where such litigation causes needless expense to other parties, where the litigants have no objective, good-faith expectation of prevailing, and where the multiple filings place an unnecessary burden on the courts").[1]

      16.    The Reorganized Debtors respectfully request that the Court exercise its authority under each of these statutes by ordering Mr. Hayes to reimburse the Reorganized Debtors for their fees and costs incurred in filing this pleading. As discussed above, Mr. Hayes has previously filed three separate motions for the appointment of an equity committee. Each of his motions has been denied, both at the Bankruptcy Court level and on multiple levels of appeal. Notwithstanding such results, Mr. Hayes has filed a fourth motion for appointment of an equity committee. This must stop. Mr. Hayes' frivolous, repetitive motions are an abuse of the legal system, which have inflicted significant costs and expenses on the constituents of these bankruptcy cases and wasted many Courts' time. The

---

[1] The concepts underlying Fed. R. Bankr. Proc. 9011, which also apply to pro se litigants, further support this application.

Reorganized Debtors should not be forced to incur additional legal fees in objecting to the Fourth Equity Committee Motion given the Court's previous decisions on the issue in these cases  Accordingly, the Reorganized Debtors respectfully request that the Court send a clear message to Mr. Hayes by ordering that he bear the Reorganized Debtors' fees in filing this pleading.

[REMINDER OF PAGE INTENTIONALLY LEFT BLANK]

RLF1-2966509-2

## CONCLUSION

WHEREFORE, the Reorganized Debtors respectfully request that this Court enter an order (1) denying Mr. Hayes' motion for reconsideration of the Senior Lenders' claims, (ii) denying the relief requested in the Fourth Equity Committee Motion, (iii) granting the Reorganized Debtors' Cross-Motion for sanctions and (d) granting such other and further relief as the Court deems just and proper.

Dated: January 11, 2006
      Wilmington, Delaware

                          /s/ *Russell C. Silberglied*
                      Mark D. Collins (No. 2981)
                      Russell C. Silberglied (No. 3462)
                      Cynthia L. Collins (No. 4337)
                      RICHARDS, LAYTON & FINGER, P.A.
                      One Rodney Square
                      P.O. Box 551
                      Wilmington, Delaware 19899

                      and

                      Michael F. Walsh
                      WEIL, GOTSHAL & MANGES LLP
                      767 Fifth Avenue
                      New York, New York 10153

                      and
                      Adam P. Strochak
                      Joanne M. Guerrera
                      WEIL, GOTSHAL & MANGES LLP
                      1300 Eye Street, NW
                      Suite 900
                      Washington, D.C. 20005

                      Attorneys for Reorganized Debtors Genesis
                      Health Ventures, Inc. and Norristown Nursing
                      & Rehabilitation Associates, L.P.

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
----------------------------------------------x
In re:                                        :    Chapter 11
                                              :
GENESIS HEALTH VENTURES, INC.,                :    Case No. 00-2692 (JHW)
et al.,                                       :
                                              :
        Reorganized Debtors                   :
                                              :
----------------------------------------------x
----------------------------------------------x
In re:                                        :    Chapter 11
                                              :
MULTICARE AMC, INC., et al.                   :    Case No. 00-2494 (JHW)
                                              :
                                              :
        Reorganized Debtors                   :
                                              :
                                              :
----------------------------------------------x
```

## OBJECTION OF MELLON BANK, N.A. TO MOTION FOR RECONSIDERATION OF THE SENIOR LENDER CLAIMS

Mellon Bank, N.A. ("Mellon"), by its counsel, Morgan, Lewis & Bockius LLP and Klett Rooney Lieber & Schorling P.C., for its Objection to the Motion for Reconsideration of the Genesis and Multicare Senior Lender Claims and the Genesis and Multicare Senior Subordinated Claims dated December 12, 2005 (the "Motion"), filed by James J. Hayes ("Hayes"), respectively represents as follows:[1]

---

[1] Mellon is responding to the Motion although it was never served with the Motion. Mellon also joins in the Debtors' responses to this Motion and to Hayes' separate Motion for Appointment of Pre-Final Decree Equity Committee dated December 11, 2005.

## RELEVANT FACTS

1.    Mellon acted as administrative agent for the senior secured lenders (the "Senior Lenders") under the prepetition and post-petition credit agreements of Genesis Health Ventures, Inc. ("Genesis") and Multicare AMC, Inc. ("Multicare"). At confirmation of Genesis' and Multicare's joint plan of reorganization (the "Plan"), in excess of $1.2 billion and $443 million were due and outstanding under Genesis' and Multicare's prepetition credit agreements, respectively. In addition, under the post-petition credit agreements, Mellon, as administrative agent, and certain of the Senior Lenders provided Genesis and Multicare with debtor-in-possession financing up to the respective maximum amounts of $250,000,000 and $50,000,000.

2.    The Plan was confirmed by this Court by order entered on September 20, 2001. The Plan became effective and was substantially consummated on or about October 2, 2001.

3.    Hayes is a former common stock holder of Genesis who has litigated pro se against the Plan continuously and unsuccessfully since prior to the confirmation hearings. Among other things, Hayes filed an objection to the Plan, several motions for the appointment of an equity committee, and numerous appeals from the confirmation order and other orders of this Court, all of which were denied or dismissed.

## THE MOTION

4.    In the instant Motion,[2] Hayes for the first time seeks reconsideration of the Senior Lenders' claims pursuant to Section 502(j) of the Bankruptcy Code, more than four years after the Plan was substantially consummated.

5.    Many grounds, both substantive and procedural, exist requiring the denial of the Motion. However, the Court need look no further than the basic requirement of Section 502(j) - - that a claim may be reconsidered only "for cause" - - to determine that the Motion is utterly without merit.

6.    The only discernable arguments that Hayes proffers as "cause" for reconsideration of the Senior Lender claims essentially reduce down to two points: (a) the claims asserted in the action captioned Haskell, et al. v. Goldman, Sachs & Co., et al., Adv. No. 04-53375 (JHW) (the "Haskell Litigation") are a sufficient basis for reconsideration; and (b) certain of the Senior Lenders reaped "windfall profits" by purchasing their claims from the original lenders at a discount and should, therefore, be equitably subordinated. (Motion ¶¶ 4-5, 9). As set forth below, neither of these arguments constitutes cause for this Court's reconsideration of the Senior Lender claims.

## ARGUMENT

7.    Section 502(j) of the Bankruptcy Code provides that claims in bankruptcy that have been allowed or disallowed may be "reconsidered for cause". See 11 U.S.C. § 502(j); Fed. R. Bankr. P. 3008. In order for such a motion for reconsideration to be

---

[2] Hayes has styled the Motion as brought by the "Genesis Common Stock Class" although no other former equityholder has joined in his Motion.

2

granted, "cause" invoking in a timely manner "at least one" of the grounds set forth in

either Fed. R. Civ. P. 59 or Fed. R. Civ. P. 60(b) must be articulated. See, e.g., In re

Colley, 814 F.2d 1008 (5th Cir.), cert. denied, 484 U.S. 898 (1987); In re Motor Freight

Express, 91 B.R. 705, 711 (Bankr. E.D.Pa. 1988); In re Rabzak, 79 B.R. 960, 964 (Bankr.

E.D.Pa. 1987).

     8.    Setting aside the patent staleness of the Motion, no grounds have been

asserted for reconsideration of the Senior Lender claims.

## I. The Haskell Litigation Has Been Dismissed
## And Is Not Cause For Reconsideration of the Claims

     9.    This Court dismissed the Haskell Litigation in its entirety on grounds of

res judicata, collateral estoppel, and the limitations period for revocation of confirmation

orders set forth in Section 1144 of the Bankruptcy Code. See In re Genesis Health

Ventures, Inc., 324 B.R. 510 (Bankr. D. Del 2005). Accordingly, the Haskell Litigation

and the claims asserted therein cannot in any manner constitute "cause" for

reconsideration of the Senior Lender claims.

## II. Creditors Who Purchase Notes At a Discount
## Are Entitled to Claims in the Face Value of the Notes

     10.    Hayes asserts that certain Senior Lenders reaped windfall profits because

they purchased notes at a discount and then were treated as "equal in priority to the

claims of the original lenders". (Motion ¶ 12). Hayes alleges that purchase of the notes

at a discount constitutes cause for reconsideration of the Senior Lender claims and the

equitable subordination of such claims under Section 510(c) of the Bankruptcy Code.[3]
Id.

11.    However, the draconian remedy of equitable subordination is "not to be invoked lightly" and requires that there have been some form of egregious or inequitable conduct by the creditor whose claim is to be subordinated. See, e.g., Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims, 160 F.3d 982, 986-987 (3d Cir. 1998); In re After Six, Inc., 177 B.R. 219, 231 (Bankr. E.D.Pa. 1995).

12.    Courts have routinely held that a creditor who purchases a note at a discount is entitled to a claim in the face amount of the note. See, e.g., In re Fairfield Exec. Assocs., 161 B.R. 595 (D.N.J. 1993); see also In re Pittsburgh Rys. Co., 159 F.2d 630 (3d Cir. 1946), cert. denied, 331 U.S. 819 (1947) (a claim is determined by the consideration received by the debtor not the amount paid by the current holder of the claim). By purchasing their notes at a discount, the Senior Lenders were guilty of no egregious or inequitable conduct and were entitled to allowed claims in the full face amount of the notes they acquired.

13.    Thus, Hayes has failed to enunciate any cause for reconsideration of the Senior Lender claims, and the Motion is patently devoid of any merit.

---

[3] The form by which Hayes seeks such relief is also improper. A proceeding to equitably subordinate a claim must be brought as an adversary proceeding. See Fed. R. Bankr. P. 7001(7).

## CONCLUSION

14.    For the reasons noted above, the Motion should be denied, and the Court should consider appropriate sanctions against Hayes pursuant to Fed. R. Bankr. P. 9011(b)(2) and 9011(c)(1)(B), together with such other and further relief as the Court deems just and proper.

Dated:  January 10, 2006
         Wilmington, Delaware

Teresa K.D. Currier (3080)
KLETT ROONEY LIEBER &
SCHORLING, PC
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, Delaware  19801
(302) 552-4200

-and-

Richard S. Toder
Menachem O. Zelmanovitz
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York  10178
(212) 309-6000

Attorneys for Mellon Bank, N.A.

# EXHIBIT C

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | . | Chapter 11 |
| | . | |
| GENESIS HEALTH VENTURES, INC., | . | Case No. 00-2692(JHW) |
| et al., | . | |
| | . | |
| Reorganized Debtors. | . | |
| | . | |

| | | |
|---|---|---|
| IN RE: | . | Chapter 11 |
| | . | |
| GENESIS ELDERCARE CORP. | . | Case No. 00-2564(JHW) |
| | . | |
| Reorganized Debtors. | . | |

| | | |
|---|---|---|
| IN RE: | . | Chapter 11 |
| | . | |
| NORRISTOWN NURSING AND | . | Case No. 00-2716(JHW) |
| REHABILITATION ASSOCIATES, L.P. | . | |
| | . | |
| Reorganized Debtors. | . | January 19, 2006 |
| | . | 9:30 a.m. |
| | . | (Wilmington) |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JUDITH H. WIZMUR
UNITED STATES BANKRUPTCY COURT JUDGE

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1          THE CLERK: All rise.

2          THE COURT: Please be seated.

3          MR. SILBERGLIED: Good morning, Your Honor.

4          THE COURT: Good morning.

5          MR. SILBERGLIED: For the record, Russ Silberglied

6   of Richards, Layton, and Finger on behalf of the Reorganized

7   Debtors. We have a short agenda for today. The first matter

8   on the agenda is continued. A brief word as to why it's

9   continued in case Your Honor wanted an update, that is the

10   motion for entry of a final decree itself. The US Trustee

11   has pointed out that there are some quarterly operating

12   reports that were not filed, and we are working with the

13   company to get those quarterly operating reports filed.

14   There's been a series of post confirmation transactions at

15   the company, so employees are a little bit harder to find

16   than they once were. But we're working on it, and we hope to

17   go forward with that at the next hearing which actually Ms.

18   Collins reminded me on our way over here we don't have a next

19   hearing. So I don't know if Your Honor knows the next time

20   you're going to be in Delaware.

21         THE COURT: Turns out March 2nd might work. I might

22   be here on February 16th. It sounds like March 2nd might be

23   better for you.

24         MR. SILBERGLIED: March 2nd would be fine. Thank

25   you, Your Honor.

1          THE COURT: Let's make that 9 o'clock.

2          MR. SILBERGLIED: Thank you, Your Honor. The next

3    two items on the agenda are both motions of Mr. Hayes. He's

4    here. The first is with respect to the lenders themselves,

5    and the second is with respect to the appointment of an

6    equity committee, so I will cede the podium to Mr. Hayes.

7          THE COURT: Mr. Hayes.

8          MR. HAYES: Good morning, Your Honor.

9          THE COURT: Good morning. You've filed 2 motions.

10   One, to reconsider the order allowing the senior lender

11   claims and two, to appoint an equity security committee. At

12   this point I am more than puzzled, disturbed, by these

13   motions, because, as I've read the amazing post confirmation

14   history of these issues, I'm appalled, really, that the

15   issues are coming back. And I say that with an understanding

16   that the reconsideration motion on the claims is really aimed

17   at, from your description of what you're looking for, a

18   restructuring of the plan, a re-prioritization of the

19   position of the secured lenders, a focus on your claim of

20   windfall on their part, of unfairness, of improper

21   allocations, and an adjustment of claims on those bases. In

22   terms of the equity security holder committee, it was well

23   laid out by the objection to your motion that you - - this is

24   the 4th time that you're here on that. Not - - perhaps 3

25   times before the Bankruptcy Court and one before the District

4

1   Court, with appeals to the Circuit.  I'm not sure about the

2   status of the last appeal.  That was apparently filed on the

3   denial of the District Court I think for - - on the motion

4   for appointment of an equity security committee.  I could be

5   corrected on that.  But you've been there, you've done that,

6   you've been denied your relief.  Why should I consider this

7   again?  What's different now?  How many times, how many bites

8   at the apple do you get?

9        MR. HAYES: Your Honor, the equity clients in this

10  - - throughout this bankruptcy has been denied

11  representation.  I don't think there's any dispute that at no

12  point - - at not time in the bankruptcy has the equity

13  interest been represented.  That is - -

14       THE COURT: Well, the equity interest has appeared

15  and been heard in - - at the confirmation hearing.  You,

16  yourself, presented objection to the plan, and your concerns

17  were addressed and denied.  Your contention is not that there

18  has been no opportunity to be heard - -

19       MR. HAYES: No.

20       THE COURT:  - - but no opportunity to be paid from

21  the estate for legal fees.

22       MR. HAYES: The equity class has not been adequately

23  represented.

24       THE COURT: Do you contend that there is an absolute

25  right to representation paid for by the estate in every case

1    for equity?

2         MR. HAYES: No. But in this case, since there was

3    no - - I mean, adequate representation, there are a number of

4    ways that it can be provided. The normal way, I mean, you

5    know, the shareholders are normally represented by company

6    management who has a fiduciary obligation to represent

7    shareholders interests. And in a normal case, the company

8    officers, in fulfillment of the fiduciary obligations provide

9    representations for the equity class. I mean, in the recent

10   <u>Morale</u> (phonetic) bankruptcy, which I cited, the chairman of

11   the company, Chairman Schwartz, argued that the valuations

12   prepared by the investment bankers were low. But in this

13   case, which is rather unusual, the officers of the company

14   have now been charged with conspiracy to commit fraud.

15        THE COURT: Have now been charged in the Haskell

16   (phonetic) matter? Is that what they're - -

17        MR. HAYES: Well, that was the allegations.

18        THE COURT: Those are - -

19        MR. HAYES: In the Haskell matter.

20        THE COURT:  - - the allegations, and that complaint

21   I dismissed, I believe.

22        MR. HAYES: But you - -

23        THE COURT: I think the District Court has affirmed,

24   if I'm not incorrect.

25        MR. SILBERGLIED: No, Your Honor. We're in the

1    middle of briefing in the District Court.

2              THE COURT: I see.  So that's under appeal.

3              MR. HAYES: But your dismissal didn't address any of

4    the allegations.

5              THE COURT: That's correct.  So how can I address

6    the allegations here.  There were issues of *res judicata* and

7    collateral estoppel.  Issues under 1144.  What's different

8    here?  Why - -

9              MR. HAYES: Well, the shareholders have a

10   constitutional right.  Among all the creditors and

11   participants, the shareholders are the only ones whose

12   property rights are protected by the 5th Amendment of the

13   Constitution.  And as - -

14             THE COURT: And have you - -

15             MR. HAYES:  - - a protected right - -

16             THE COURT:  - - addressed that issue before?  Have

17   you - - is this the first time that you've raised the

18   constitutional dimensions of the shareholders opportunities?

19             MR. HAYES: I have attempted to raise it throughout.

20   But none - -

21             THE COURT: And you've been rejected.

22             MR. HAYES:  - - of the courts - -

23             THE COURT: Have you not?

24             MR. HAYES: None of the courts have addressed the

25   constitutional issue.

1        THE COURT: So that because they didn't address the
2    constitutional issue, because they decided that you were not
3    entitled, for any reason, to assert, because - - for a number
4    of reasons, including the timing of your request, that you
5    were not entitled to an equity security committee, including
6    back in September of 2001, including as late as May of 2004,
7    all of those times you had the opportunity - - you raised - -
8    you took the opportunity, whether you had it or not is
9    another question, you took the opportunity to raise the issue
10   of equity security committee on various grounds.  I don't
11   recall that you raised the constitutional grounds in front of
12   me, but you might have raised it otherwise.  It doesn't
13   matter whether it was taken up or not.  You're quite right to
14   assert that as a basic proposition constitutional issues
15   don't go away by the passage of time.  That's a valid
16   proposition.  But in this context you can't just keep coming
17   back and thinking up new theories to raise the same request
18   for relief that you have all along.
19       MR. HAYES: I'm not raising new theories.  I mean,
20   both the law and the constitution require that adequate
21   representation be provided to the equity class.  No court has
22   said that the equity class has been provided adequate
23   representation.
24       THE COURT: There has, there was - - I did say, in
25   my confirmation opinion, that the value in the company - -

1    you may disagree with it, other people have disagreed with it

2    - - the proofs as I found them to be were that there was no

3    value to reach equity, and therefore equity could be - - the

4    plan as proposed could be confirmed, and the plan proposed

5    that there would be no distribution to equity. That was the

6    decision. If - - and that's the decision, I believe, was

7    appealed and approved. And there it stands right or wrong.

8    And nobody can say whether a particular decision, in

9    retrospect, was right or wrong. But there it stands as a

10   final judgment. If that's so, then how can we say that the

11   equity was not adequately represented?

12          MR. HAYES: Well, adequate representation requires

13   some form of representation.

14          THE COURT: Well you represented the equity, didn't

15   you? I mean you - -

16          MR. HAYES: I - -

17          THE COURT: - - took it upon yourself.

18          MR. HAYES: Well nobody has said that it's adequate.

19   Everybody is saying my representation has been quite

20   inadequate.

21          THE COURT: Did you contemplate hiring an attorney

22   to help you make your presentation in the first instance?

23          MR. HAYES: Yes I did. I have talked to attorneys.

24          THE COURT: Um-hum.

25          MR. HAYES: $34 million is spent on professional

1    fees in this case.  I'm an individual shareholder.  I am not

2    wealthy.  As part of adequate representation is having

3    representation equivalent to what, to what the other side

4    has.  And I - - even if I'm considered to be representing, I

5    - - and I guess I don't see objecting.  When I objected, I

6    didn't have any - - couldn't cross examine a witness,

7    couldn't present any evidence, couldn't do anything but

8    complain.

9              THE COURT: You didn't have the chance to cross

10   examine witnesses or - -

11             MR. HAYES: No.

12             THE COURT:  - - at the hearing?  At the

13   confirmation hearing?

14             MR. HAYES: No.

15             THE COURT: Did you - -

16             MR. HAYES:  All the objectors were told that their

17   objections would be heard at the end of the proceeding.  I

18   mean, it was kind of a - -

19             THE COURT: There was testimony presented, cross

20   examination of witnesses.  Did you stand up and say, I would

21   like to cross examine a particular witness?

22             MR. HAYES: No.  Because the Debtors' counsel said

23   - - told me what the procedure was.

24             THE COURT: I see.

25             MR. HAYES: Even the objectors - - well.

1        THE COURT: We did consider experts presented by

2   some of the objectors.  Let me remind myself that - -

3        MR. HAYES: But they weren't equity members.

4        THE COURT: They weren't equity.  Did you have - -

5   do you understand that you had a chance to present expert

6   witnesses if you chose to do that?

7        MR. HAYES: No I didn't.

8        THE COURT: Let me ask you another question just to

9   round out the record.  Before - - when was the first time

10  that you raised the issue of an equity committee?  You'll

11  recall that you filed a motion before confirmation that was

12  ruled on in the context of confirmation asking for that

13  relief.  That was in August of 2001.  Did you raise the issue

14  before then?

15       MR. HAYES: The issue of an equity committee?

16       THE COURT: Yes.

17       MR HAYES: No.  I raised the issue of an equity

18  committee after - - immediately - - fairly soon after I had

19  gotten the disclosure statement that indicated that

20  shareholders were not going to participate in the

21  distribution.  And I - - and almost on the same day.  It was

22  kind of fortuitous.  I'm not an attorney, and I don't - - I'm

23  an investor.  I don't follow the bankruptcies of the

24  companies I happen to own.  But it was somewhat fortuitous

25  that I was notified of the bankruptcy at the same time that I

1   had gotten a new copy of my Investor's Daily Graphs

2   (phonetic).  As a part of the daily graphs, it shows stock

3   appreciation at certain indexes.  And the leading performer

4   had been the healthcare index.  And that's when I started

5   looking, reading the disclosure statement.  Seeing that the

6   valuation of the company was done in April, and that since

7   April, the Healthcare index that I was looking at had

8   appreciated by 60%.  I mean that told - - that significant

9   thing said, you know, everything in this disclosure statement

10  is inaccurate.  Everything that it's based on.

11          THE COURT: And you did address me at confirmation,

12  did you not?

13          MR. HAYES: Yes.

14          THE COURT: And I considered your comments.  Let me

15  ask you this, you've - - the level of litigation that you've

16  conducted since then is quite impressive.  You've traveled to

17  the District Court and to the Court of Appeals.  On several

18  occasions you've asked for *en banc* consideration.  You've

19  tried to have the Supreme Court weigh in on these issues.

20  You've really tried to exhaust your opportunities to have

21  these issues considered.  How can I - - why wouldn't the - -

22  the attorneys are seeking sanctions against you saying enough

23  is enough, he's dragging us into this again, we've briefed

24  these issues up and down the chart of the Federal court

25  system, and we've received the same answer.  Why shouldn't we

1   impose upon Mr. Hayes to pay our court fees at this point in

2   light of the fact that he's dragging us, again, yet again,

3   into court?  What's my answer to that?  Why shouldn't I say,

4   You know, you're right?  I'm amazed at this history of up and

5   down.  And back again.

6        MR. HAYES: I think their motion for sanctions is

7   completely out of order at this time.

8        THE COURT: Why?

9        MR. HAYES: Because it's prejudicing the Court

10  against the merits of the case.

11       THE COURT: In other words, I shouldn't consider the

12  fact that this - - these issues have been up and down and

13  around and through?  That these issues have been - - don't I

14  have to consider that?  Isn't there such a thing as finality,

15  and principles that govern the way that we do business in the

16  court system?

17       MR. HAYES: You know, there cannot be any finality

18  until the courts address the constitutional issues.  Let me

19  - - this isn't in my brief, but it's part of what I prepared.

20  This Court cannot avoid the constitutional issues of adequate

21  representation of the equity clients.  In <u>Marlboro versus</u>

22  <u>Madison</u> (phonetic) Chief Justice Marshall's opinion stated,

23  It is emphatically the province and the duty of the judicial

24  department to say what the law is.  Those who apply the rules

25  to a particular case must, of necessity, expound and

1    interpret that rule.  If two laws conflict with each other,

2    the courts must decide on the operation of each.  So if a law

3    be in opposition to the constitution and both the law and the

4    constitution apply to a particular case so that the court

5    must either decide that a case conforming to the law,

6    disregarding the constitution, or conforming to the

7    constitution disregarding the law, the court must decide

8    which of these conflicting rules govern the case.  This is

9    the very essence of judicial duty.  None of the courts have

10   addressed one, whether the 5th Amendment applies to, or

11   whether the property of an equity holder is the property

12   that's under the definition of the 5th Amendment.  There's no

13   opinion that talks about whether adequate representation is

14   required by the constitution.  About what adequate

15   representation is.

16           THE COURT: Understood.  Thank you Mr. Hayes.

17           MR. SILBERGLIED: For the record again, Russ

18   Silberglied on behalf of Genesis.  I'm not going to take a

19   lot of time, Your Honor.  I'm going to respond to a couple of

20   points briefly, and then talk about the sanctions motion.  I

21   don't think Your Honor needs to hear much more from me about

22   the background of this, because it's quite clear Your Honor

23   has read the papers.  A couple of points raised by Mr. Hayes.

24   One, this issue of nobody has addressed the constitutional

25   argument.  Leaving aside for a minute that there simply is no

1   constitutional argument here, and it's not a constitutional

2   issue, let's leave that aside for a moment.  I believe what

3   Mr. Hayes read is word for word out of his brief to the 3rd

4   Circuit Court of Appeals.  He briefed this to the 3rd Circuit

5   Court of Appeals.  I don't recall specifically on what

6   grounds the 3rd Circuit rejected his argument, but suffice it

7   to say it did.  It rejected it again *en banc*.  He made the

8   same constitutional argument in his petition for cert.

9   (phonetic) to the United States Supreme Court, and cert. was

10  denied.  This issue is finished.  It's not equitably moot,

11  it's actually moot in the words of Judge Farnan.  Second,

12  Your Honor, the point that Mr. Hayes made that he couldn't

13  cross examine witnesses and that he couldn't present

14  evidence.  Frankly I don't remember whether he cross examined

15  or not, it's too long ago in my memory to remember that level

16  of detail.  I do remember that he made oral argument.  I do

17  remember, obviously, that counsel for Mr. Grimes, counsel for

18  GMS cross examined our witnesses and put on their own

19  witnesses as well.  Cross examined Mr. Zelmonvitz's witnesses

20  as well.  And what I would additionally add to the record,

21  Your Honor might recall that Mr. Hayes in fact did attempt to

22  introduce evidence to this Court in the form of the famous

23  cartoons that he submitted.  Not only did Your Honor admit

24  those cartoons into evidence, but Your Honor - - but Mr.

25  Hayes has also attached them to pretty much every appellate

1    brief he has filed since then. So it's flatly incorrect that

2    he didn't have the opportunity to present evidence. It's

3    flatly incorrect that he didn't present evidence. So I will,

4    then, skip over, in the remainder of my argument, why his two

5    motions today ought to be denied. I'm sure Mr. Zelmonvitz

6    might want to say something more on the motion leveled to his

7    client. I'm going to skip right to the sanctions portion,

8    unless Your Honor has questions about the first portion.

9           THE COURT: Please proceed.

10          MR. SILBERGLIED: Thank you, Your Honor. You know,

11   in short this does has to stop. Have to stop, excuse me. It

12   doesn't cost Mr. Hayes anything to file these motions because

13   he's not paying an attorney, but it most assuredly does cost

14   my client something. Courts expect responses. And that

15   means that my client must pay me or Weil Gotshal or somebody

16   else to respond to these motions. And it is inflicting a

17   cost upon us. It's inflicting a cost also on the federal

18   system because Your Honor has to keep hearing these, the

19   District Court has to keep hearing these, the 3rd Circuit has

20   to keep hearing these. And in short Mr. Hayes needs a

21   message that this is time to stop. If Your Honor has any

22   doubts whatsoever about what Mr. Hayes' intentions are if he

23   is not sanctioned today, all you have to do is open up to

24   paragraph 14 of his motion itself, and look at the sentence

25   that starts in the second to last line of page 6 in paragraph

1   14 where he says, quote, "Ratification of the - - and this is

2   the motion for today.  Quote, "Ratification of the

3   confirmation by an equity committee would set the stage for a

4   final decree that would really be final and not just another

5   intermediate point in this saga."  End quote.  In other

6   words, he has absolutely no intention of letting a final

7   decree, if entered by Your Honor at the March hearing, stand

8   in his way of continuing to file these motions.  He thinks

9   that that would be an intermediate point in the saga.  That's

10  exactly why we need an order from your court awarding

11  sanctions.

12          THE COURT: As a point of procedure, if the appeals

13  are still pending, what opportunities do I have to enter a

14  final decree?

15          MR. SILBERGLIED: And that's - - perhaps that's for

16  the March hearing.  We have put that in the motion.  That

17  there was case law on the subject of being able to enter a

18  final decree when there's nothing currently pending in the

19  Bankruptcy Court as opposed to things that are on appeal to

20  appellate courts from the Bankruptcy Court.  While I guess I

21  didn't necessarily spell it - - there are cases - -

22          THE COURT: I'm sure there are, and - -

23          MR. SILBERGLIED:  - - and they're cited in that

24  motion.

25          THE COURT:  - - I'm not deciding the issue.  My

1    facial expression is that there may be some doubt on the

2    issue since the jurisdictional opportunity to hear the case

3    comes up as it's opened, as it's referred from the District

4    Court.  And so it's an interesting issue.

5         MR. SILBERGLIED: Well, understood, Your Honor.  And

6    I'll be prepared to speak more to those cases at the March

7    hearing.  But suffice it to say that I believe the proper

8    remedy would be - - we really don't think the Haskell case is

9    coming back.  We really don't think that the Hayes motion is

10   coming back on remand.  But that's my opinion, obviously.  If

11   it does, there's always the ability to reopen the bankruptcy

12   case.  Just as if somebody needs to file a motion.  You know,

13   if you enter the final decree in March and some creditor

14   comes and violates the confirmation order, and violates the

15   discharge injunction in May, well then what I would do, like

16   is done in many, many cases, is I would file a motion that

17   asks for the Court to reopen the case for the sole purposes

18   of hearing a motion for sanctions for violating discharge

19   injunction and confirmation order, or something of the like.

20        THE COURT: Yeah.  You've cited §1927 - -

21        MR. SILBERGLIED: Yes, Your Honor.

22        THE COURT:  - - of Title 28 as a basis for awarding

23   sanctions, and you're aware that there is some controversy

24   about whether the Bankruptcy Court qualifies as any court of

25   the United States.  There is case law around the country that

1    disagrees with that proposition.  I gather that you're also

2    relying, for instance, on the United States Supreme Court

3    Chambers case for inherent authority of a court to address an

4    abuse of the process, if you will.  In a limited way.

5    Because we're not talking about 9011, it's not a separate

6    motion.  Well, it is, I guess.  But it's - -

7              MR. SILBERGLIED: It's a cross motion.  It is a

8    separate motion.  I mean, we could have done it as 9011.

9    Frankly, Your Honor, the main reason why we didn't do 9011 is

10   because the hearing was in 2 weeks, and 9011 doesn't

11   translate that well to a contested matter in a Bankruptcy

12   Court because you have to give it 20 days safe - - I think

13   it's 20 days - - whatever it is safe harbor notice.  We would

14   have been more than happy to file a safe harbor notice and

15   proceed under 9011, but we didn't have sufficient time before

16   today's hearing.  I think that the principles of 9011 apply.

17   I think 1927 itself, there is case law that supports it under

18   - -

19             THE COURT: I don't recall that the 3rd Circuit has

20   ever weighed in on the issue of whether a Bankruptcy Court

21   can utilize 1927.  Am I right?

22             MR. SILBERGLIED: You're right, Your Honor.  Or, at

23   least we uncovered no such case.

24             THE COURT: Yeah.  I'm not aware of any, but anyhow.

25             MR. SILBERGLIED: So there are those principles.

1    And, you know, and of course there is the inherent power of

2    the Court, and there's equitable principles in 105 for Your

3    Honor to be able to control your own docket. And as we just

4    read from paragraph 14 of Mr. Hayes own motion, he's

5    admitting to the Court that he's going to keep filing

6    motions. And I think that, you know, 105 would also support

7    - - would support the issue in terms of the Court controlling

8    its own docket.

9            THE COURT: Indeed it would. I'm confident of that.

10   Thank you Mr. Silberglied.

11           MR. SILBERGLIED: Thank you, Your Honor.

12           THE COURT: Other comments? Sir.

13           MR. ZELMONVITZ: Menachem Zelmonvitz of Morgan Lewis

14   on behalf of Mellon Bank, the agent for the senior lenders.

15   I'll be very brief, Your Honor. I just wanted to touch on

16   first of all the reconsideration motion, which is addressed

17   not only to our clients, but also actually to our opponents

18   in the Haskell litigation. Because he's seeking to

19   essentially have their claims also reconsidered. The basic

20   requirement, as we've noted in our short objection, is that

21   there has to be cause for reconsideration. Absolutely no

22   cause has been shown. The only one even suggested would be

23   either the Haskell litigation, which has been dismissed, and

24   secondly really the ability of some of the senior lenders, or

25   the other lenders, who have gotten a so-called windfall. But

1   that is not the test.  As the 3rd Circuit has said, a claim is

2   determined by the consideration received by the Debtor, not

3   the amount paid by the current holder of the claim.  That's

4   been upheld by every case that I'm aware of.  So that if you

5   purchase a note, you're entitled to a claim in the amount of

6   that note, not the amount of what you paid for that

7   particular claim.

8           THE COURT: What about cause in terms of

9   constitutional impairment?

10          MR. ZELMONVITZ: Well that really deals with also

11  the equity committee motion.  And I don't understand where

12  there is a constitutional issue here.  There's a right to

13  counsel.  No one has deprived Mr. Hayes that right of

14  counsel.  He could have gone out and retained his own

15  counsel.  The issue here is do you pay for that counsel out

16  of the estate?  The estate was not his money.  The estate was

17  our client's money.  And that's what Your Honor actually

18  found in the valuation part of the confirmation hearing.  The

19  equity holders actually had no stake left in this company.

20  And therefore, it was not right to even suggest that they, or

21  their counsel, be paid from the estate.  No one deprived him

22  of counsel.  He had every right to go out and retain counsel.

23  Therefore, I don't see any issue here.  Any constitutional

24  issue here whatsoever.  And that was the second point which I

25  really wanted to get to, Your Honor.  And the final thing I

1    wanted to mention is what Your Honor touched upon on the

2    final decree. We actually had a conversation yesterday. The

3    senior lenders are, to some extent, a little bit concerned to

4    make sure that this Court retains jurisdiction until the

5    Haskell litigation is over and done with. We do agree with

6    Mr. Silberglied that there is law out there which would allow

7    for the reopening of the case in the unlikely event of a

8    remand, which we agree with Mr. Silberglied is very, very

9    unlikely. However, it may be for consideration by the Court

10   to at least leave one of the cases open so that there is

11   continuing jurisdiction. We can leave this of course for

12   further discussion for March 2nd.

13            THE COURT: Indeed.

14            MR. ZELMONVITZ: Thank you, Your Honor.

15            THE COURT: Thank you. If there are no other - -

16            MR. HAYES: May I respond to these?

17            THE COURT: You may, Mr. Hayes. Come on up. Last

18   comment.

19            MR. HAYES: On the motion for reconsideration. I

20   mean, they're misreading what I propose in the

21   reconsideration. I am not saying - - I am not reducing the

22   claims of the secondary purchasers. They're retaining their

23   claims. I'm just dividing a claim into 2 parts. That's the

24   reconsideration proposal. Part of the claim would be - -

25   maintain the same priority as it has now, what I call the

1   speculative part of the claim would still remain a claim.  It

2   would be given a lower priority in a separate class with all

3   the speculative claims, which include the subordinated note

4   holders and the shareholders.  So I'm not reducing the claim.

5   And in the very case that, the Richfield Property Case, I

6   mean this parallels the way in which a mortgage obligation

7   which was secured by property as treated.  A valuation of the

8   property was less than the mortgage, and part of the claim is

9   considered as secured and part of it is considered as

10  unsecured.  I mean, this parallels that in every respect.

11          THE COURT: Understood.

12          MR. HAYES: And the second thing on cause.  These

13  claims, the assertion is made in the cases cited that cause

14  has to be from a Rule 60 cause, because Rule 60 is the normal

15  means for reconsideration.  But that only applies in cases

16  where the claims were considered in the first place.  These

17  claims were never considered, these claims were merely

18  asserted as - - and it didn't come out until, as far as I

19  know, until the Haskell litigation, that the secondary

20  claims, or secondary transactions in the loans was to the

21  extent that it is.  I mean, Haskell they just - - 75% of the

22  senior loan were acquired secondarily.  That these senior

23  lenders, and these are the investment banks and these are the

24  defendants in the Haskell litigation, never paid Genesis

25  anything.  They acquired these claims in the secondary

1   market. And the claims were, senior lender claims are like

2   $1.4 billion, and 75% of that, and the allegation is made or

3   alleged that these loans were picked up at 50¢ on the dollar.

4   I mean, that's a $500 million shift in priority of claims.

5   And it would allow money to fully compensate the other senior

6   lenders who I think that the bankruptcy laws are trying to

7   protect. Creditors who actually provided capital to the

8   corporation and are trying to recover a hundred percent of

9   their claim, and are being prevented by doing so by

10  speculators who are asserting that their claim should be of

11  equal priority to those.

12          THE COURT: Thank you Mr. Hayes.

13          MR. HAYES: And - -

14          THE COURT: Did you - - go ahead.

15          MR. HAYES: And I think Mellon Bank has a conflict

16  of interest in representing only the defendants in the

17  Haskell litigation and ignoring the original senior lenders

18  who have a claim. Because they would be very much in support

19  of this motion.

20          THE COURT: I don't see them here. Thank you Mr.

21  Hayes.

22          MR. HAYES: But - -

23          THE COURT: That's enough. Thank you, sir. I read,

24  Mr. Hayes, your recitation and you've included these

25  comments, many of them, in your papers. By these comments

1   you seek that I basically rewrite the Bankruptcy Code.  That

2   I inject my own sense of what I think is fair, what I think

3   is appropriate, what I think may have been unfair in the

4   process into the equation of who gets what and how.  That's

5   not the way it works.  I am duty bound to apply the

6   Bankruptcy Code as Congress has passed it, and that's what I

7   will do.  There are 2 motions presented here.  One is a

8   motion to reconsider the order allowing the Genesis and

9   Multicare senior lender claims.  And we understand that

10  502(j) requires that cause be established in order to justify

11  such a reconsideration, if you will, and no such cause has

12  been provided here.  One suggestion is that because there are

13  allegations in a complaint that has been dismissed that one

14  senior lender, or several senior lenders, who were senior

15  lenders at the time of the confirmation achieved their

16  position at a discount, that that is a basis to warrant a re-

17  prioritization of the entire plan that was confirmed over 4

18  years ago.  That's mind boggling.  That's not available as an

19  opportunity for relief.  There is no opportunity to

20  reclassify into speculative and non-speculative portions.

21  There's no provision of the Bankruptcy Code that allows for

22  that.  Indeed, out there in the marketplace this may be an

23  area that generates abuse of one sort or another.  There have

24  been all kinds of, I think, articles and concerns expressed

25  about transfers of claims, about manipulation of the process.

1    And indeed it may be a proper area of congressional review.

2    To determine whether any, excuse me, any control should be

3    applied, any modifications of the Bankruptcy Code

4    appropriate, to control or revise the processes by which

5    investors can operate.  Right now we're operating in the

6    framework that it does not permit a division of a claim based

7    on the price at which the holder of the claim achieved that

8    interest.  Not to mention that it's 4 years after

9    confirmation and what's sought is a complete revision of the

10   confirmed plan, which has been affirmed on appeal and which

11   cannot be disturbed at this point.  So that motion must be

12   denied.  On the motion for the appointment of pre-final

13   decree equity committee, I will not belabor this record to

14   recite the very lengthy and difficult history of attempts by

15   Mr. Hayes to have this issue considered.  I will adopt the

16   recitation that has been provided in the response to the

17   motion   Suffice it to say that Mr. Hayes has turned the

18   system inside and out to try to obtain this particular

19   relief.  Whether or not he has raised the constitutional

20   dimensions, to the extent that there are any, of the issue he

21   has had his chance, more than once and over the course of

22   years, to assert this position and it is time to stop.  There

23   is no opportunity in this system to keep coming back to the

24   same issue.  The same party, the same issue, the same

25   response.  The response being that there was no entitlement

26

1   to have the estate pay for representation of equity in this

2   case.  There was every opportunity to retain representation.

3   Mr. Hayes, for one, chose to present his case on his own.  He

4   was heard at confirmation, he was heard on appeal at various

5   junctures.  Enough is enough.  Indeed there is the need for

6   sanctions, there is a need to impress upon Mr. Hayes the fact

7   that he cannot continue to try to assert issues in the

8   Bankruptcy Court, or in the District Court, or in the Court

9   of Appeals, without consequences.  Once you have an answer to

10  a question that you raise, a basic tenet of of our court

11  system, or our jurisprudence, is that you cannot continue to

12  come back to assert those issues again, and again, and again.

13  The consequence here, and I do rely on 105, indeed if 1470, I

14  think it is, is available, then that may also be a basis.

15  The kinds of activities that are seen here are clearly in

16  line with the proscription of that statute.  I'm sorry, 1927.

17  I don't know where I got 1940.  Where a litigant unreasonably

18  and vexatiously multiplies the proceedings.  That's exactly

19  what we have here.  But even if, and there is frankly

20  reasonable basis to conclude that a Bankruptcy Court is not

21  quote, "any court of the United States", unquote, only

22  because - - and this I'm going on memory, I think it's 28 USC

23  451, I'm not positive about that cite - - defines, quote,

24  "any court of the United States", unquote, for purposes of

25  this statute.  And that statute does not include Bankruptcy

1    Courts. One could argue that it should, but nevertheless,

2    that kind of analysis is fairly straightforward. It's, you

3    know, not too complicated, and does cause a shadow to be

4    placed upon the application of this statute by the Bankruptcy

5    Court. Nevertheless, counsel is certainly correct to reflect

6    that 105 offers, and indeed I think compels, a Bankruptcy

7    Court to control proceedings, and to address issues of

8    vexatious and unreasonable litigation. And indeed it

9    dovetails on the Chambers' expressions in - - offered by the

10   United States Supreme Court. And there has been, I think, I

11   could be wrong on this, but I think unanimous support for the

12   proposition that Chambers and its recitation of the inherent

13   authority of all Federal Courts, where the tools otherwise

14   available are not present to rely on its inherent authority

15   to control the processes in its court, and that includes, for

16   instance, and I think this was the context of the Chambers

17   decision, the imposition of attorney's fees where litigation

18   is unreasonable and vexatious, to use the words of 1927. So

19   I think that that sanction is appropriate in this case. I

20   will ask counsel to submit affidavits of services, and of

21   course with a copy to Mr. Hayes. Mr. Hayes may respond in

22   terms of the amount of attorneys fees sought by the

23   responders, and I will then enter an award on the papers. I

24   don't believe there will be a need to address, by further

25   argument, any issues. So I would ask that the affidavit of

28

1    services be filed within 20 days, perhaps. If that's doable.

2         MR. SILBERGLIED: We can certainly do that, Your

3    Honor.

4         THE COURT: And then Mr. Hayes, you're welcome to

5    take another 15 days to respond to those affidavits, if you

6    choose to do that. Any questions?

7         MR. HAYES: May I be heard?

8         THE COURT: Your last comment, sir. Come on up.

9         MR. HAYES: Before you assess sanctions, I would

10   request that you refer to the case in re: Ken Davis Holdings

11   Company 249 f3rd 383, 5th Circuit, 2001. I mean, this was an

12   issue that was at the heart of that case.

13        THE COURT: I'll gladly refer to it. I stand by my

14   ruling. If I look at that case, and I see that there's some

15   basis to depart from it, I will do that. I believe I'm

16   familiar with the case. Could you give me the name of it

17   again?

18        MR. HAYES: In re: Ken Davis, d-a-v-i-s, Holdings

19   Company.

20        THE COURT: Oh, no.

21        MR. HAYES: 249 f3rd 383. It's an Oklahoma

22   bankruptcy case.

23        THE COURT: Actually no, I don't recall it. I will

24   tell you that I've certainly looked closely at this issue,

25   generally and extensively over time. So the issue is not new

29

1    to me.  The 1927 issue, the inherent authority issue, the 105

2    aspects, the 9011 aspects, these are areas, these are

3    subjects that come up, as you might imagine, and I'm quite

4    confident that this is the quintessential case for the

5    application of sanctions.  It is meant to, as I said, impress

6    upon you that you cannot return again and again without

7    consequences.  Where the issues are the same, where you're

8    seeking the same relief, and where - - I don't want it

9    reargued now.  I'm done.  And I've ruled.  And I thank you

10    all.  If there's nothing else, the matter is adjourned.

11         MR. SILBERGLIED: Thank you, Your Honor.

12         (Whereupon at 10:13 a.m. the hearing in this matter was

13    concluded for this date.)

14

15

16

17

18

19         I, Jennifer Ryan Enslen, approved transcriber for

20    the United States Courts, certify that the foregoing is a

21    correct transcript from the electronic sound recording of the

22    proceedings in the above-entitled matter.

23

24    _____          _____
      Jennifer Ryan Enslen
      18 Bar Drive
      Newark, DE 19702
      (302) 836-1905

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------x
In re:                                        :        Chapter 11
                                              :
GENESIS HEALTH VENTURES, INC.,  :               Case No. 00-2692 (PJW)
et al.,                                       :
                                              :
             Reorganized Debtors.             :
------------------------------------------------------x
JAMES J. HAYES,                               :
             Appellant,                       :
                                              :
       v.                                     :        C.A. No. 06-103 (JJF)
                                              :
GENESIS HEALTH VENTURES, INC.,  :
et al.                                        :
             Appellees.                       :
                                              :
------------------------------------------------------x
```

**ORDER GRANTING APPELLEES' CROSS-MOTION FOR THE ENTRY OF
AN ORDER (A) IMPOSING MONETARY SANCTIONS AGAINST APPELLANT,
(B) BARRING APPELLANT FROM FILING ANY ADDITIONAL MOTIONS IN
CONNECTION WITH THIS APPEAL AND (C) RELIEVING THE REORGANIZED
DEBTORS OF THEIR OBLIGATION TO RESPOND TO ANY ADDITIONAL
PLEADINGS FILED BY APPELLANT AND DENYING APPELLANT'S
<u>MOTION TO STAY THE BRIEFING SCHEDULE RELATING TO THIS APPEAL</u>**

Upon consideration of the (1) *Motion to Stay Briefing Schedule for Pro Se
Appellant to Prepare a Rule 9011 Motion to Sanction Debtors' Counsel and a Section 327
Motion to Disqualify Debtors' Counsel from Arguing this Appeal, or Alternatively, a 30-Day
Extension, if the Sanctions Award Against Appellant and the Motion to Reconsider Claims Are
Stayed Until After the Appeal for the Appointment of a Pre-Termination Equity Committee Is
Decided* (the "Stay Motion"), (2) *Reorganized Debtors' (I) Objection to Appellant's Motion to
Stay the Briefing Schedule Relating to this Appeal and (II) Cross Motion for the Entry of an
Order (a) Imposing Monetary Sanctions Against Mr. Hayes, (b) Barring Mr. Hayes from Filing*

*Additional Pleadings in this Case and (c) Relieving the Reorganized Debtors of their Obligation to Respond to any Additional Pleadings Filed by Mr. Hayes* (the "Cross Motion") and (3) Appellee Mellon Bank N.A.'s *Joinder in Reorganized Debtors' (I) Objection to Appellant's Motion to Stay Briefing Schedule and (II) Cross-Motion for Sanctions*; the Court having reviewed the Stay Motion and the Cross Motion and all pleadings relating thereto; finding that notice of the motions were proper and sufficient under the circumstances, and the Court having determined that just cause exists for the relief granted herein; and the Court having found that good and sufficient cause exists for denying the Stay Motion and for granting the Cross Motion and, it is hereby

ORDERED that the Stay Motion is denied; and it is further

ORDERED that the Cross Motion is granted; and it is further

ORDERED that Mr. Hayes shall not file any future pleadings in this case without first obtaining leave of the Court to file said pleading; and it is further

ORDERED that the Reorganized Debtors and Mellon Bank, N.A., as administrative agent for the Senior Lenders ("Mellon") shall not be required to respond to any pleading filed by Mr. Hayes in this Court unless an order from this Court is entered directing the Reorganized Debtors or Mellon to respond to said pleading; and it is further

ORDERED that attorneys fees and costs are awarded to: (1) the Reorganized Debtors in the amount of _____ and (2) Mellon in the amount of _____. Mr. Hayes shall pay such fees and costs within 10 business days of the entry of this order, and send them to, respectively, Russell C. Silberglied, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE  19801, on behalf of the Reorganized Debtors, and

2

Menachem O. Zelmanovitz, Morgan, Lewis & Bockius LLP, 101 Park Avenue, New York, NY

10178, on behalf of Mellon.

Dated: _____, 2006
        Wilmington, Delaware

                        _____
                        THE HONORABLE JOSEPH J. FARNAN, JR.
                        UNITED STATES DISTRICT JUDGE

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Cynthia L. Collins, hereby certify that on the 30th day of March, 2006, I electronically

filed the **Appellees' (I) Objection to Appellant's Motion to Stay the Briefing Schedule**

**Relating to this Appeal and (II) Cross-Motion for the Entry of an Order (A) Imposing**

**Monetary Sanctions Against Appellant, (B) Barring Appellant from Filing any Additional**

**Motions in Connection with this Appeal and (C) Relieving the Reorganized Debtors of their**

**Obligation to Respond to any Additional Pleadings Filed by Appellant** with the Clerk of the

Court using CM/ECF which will send notifications of such filing to the following :

> Russell C. Silberglied
> Silberglied@rlf.com

I, Cynthia L. Collins, hereby certify that on the 30th day of March, 2006, I sent via

Federal Express (Non-Local) the **Appellees' (I) Objection to Appellant's Motion to Stay the**

**Briefing Schedule Relating to this Appeal and (II) Cross-Motion for the Entry of an Order**

**(A) Imposing Monetary Sanctions Against Appellant, (B) Barring Appellant from Filing**

**any Additional Motions in Connection with this Appeal and (C) Relieving the Reorganized**

**Debtors of their Obligation to Respond to any Additional Pleadings Filed by Appellant** to

the following participant:

> **Via Federal Express**
> James J. Hayes
> 4024 Estabrook Dr.
> Annandale, VA 22003

Cynthia L Collins (No 4337)
RICHARDS, LAYTON & FINGER, P A
One Rodney Square
P O Box 551
Wilmington, DE 19899
(302) 651-7700
ccollins@rlf.com