IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------x
In re:                                      :   Chapter 11
                                            :
GENESIS HEALTH VENTURES, INC., :            Case No. 00-2692 (PJW)
et al.,                                     :
                                            :
            Reorganized Debtor.             :
-----------------------------------------------------x
JAMES J. HAYES,                             :
                                            :
            Appellant,                      :
                                            :
            v.                              :   C.A. No. 06-103 (JJF)
                                            :
GENESIS HEALTH VENTURES, INC., :
et al.                                      :
                                            :
            Appellees.                      :
-----------------------------------------------------x
```

## APPELLEES' RESPONSE TO APPELLANT'S MOTION TO DISQUALIFY REORGANIZED DEBTORS' COUNSEL FROM REPRESENTING THE REORGANIZED DEBTORS OR ALTERNATIVELY REVERSING THE BANKRUPTCY COURT'S DENIAL OF AN EQUITY COMMITTEE

Appellees Genesis Health Ventures, Inc. and its former debtor affiliates (the "Reorganized Debtors") hereby object to Appellant's Motion to Disqualify Reorganized Debtors' Counsel from Representing the Reorganized Debtors or Alternatively Reversing the Bankruptcy Court's Denial of an Equity Committee (the "Motion"), filed by Mr. James Hayes ("Hayes"). In support of this Objection, the Reorganized Debtors respectfully represent as follows:

## INTRODUCTION

As demonstrated below, Mr. Hayes, a pro se litigant, has a long history of filing frivolous, repetitive motions against the Reorganized Debtors in both this Court and the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). While Mr.

Hayes' motions have been denied at every level, this Court and the Bankruptcy Court have been forced to waste their resources ruling on the frivolous motions and the Reorganized Debtors have incurred significant costs and expenses in responding to such pleadings. Indeed, Mr. Hayes has continued filing frivolous pleadings notwithstanding having been sanctioned by the Bankruptcy Court for doing so. In response to one of Mr. Hayes' more recent pleadings, the Reorganized Debtors filed a cross-motion (the "Cross-Motion") seeking protective relief (i) barring Mr. Hayes from filing any additional pleadings without leave of Court and (ii) relieving the Reorganized Debtors of their obligation to respond to any such pleadings absent the entry of an order directing them to do so. The Cross-Motion is currently pending before this Court.

Apparently undeterred by the relief requested in the Cross-Motion (and likely because of it), Mr. Hayes filed the current Motion seeking to disqualify Weil, Gotshal & Manges LLP ("WG&M") and Richards, Layton & Finger, P.A. ("RL&F") from representing the Reorganized Debtors in connection with the above-captioned appeal (the "Appeal"), purportedly pursuant to section 327(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). As discussed herein, the Motion is flawed on both procedural and substantive grounds. First, WG&M and RL&F have not been retained under section 327(a) of the Bankruptcy Code for the past four and one-half years (i.e., since plan confirmation). Second, assuming _arguendo_ that section 327(a) is applicable, the Motion should have been filed with the Bankruptcy Court in the first instance and is therefore not properly before this Court. Finally, Mr. Hayes does not allege any disqualifying contact that would warrant the relief requested in the Motion. The Motion is simply another baseless attack by Mr. Hayes against the Reorganized Debtors and is an example of precisely the type of motion that the Reorganized Debtors' Cross-Motion is intended to prevent.

2

## BACKGROUND

1.    In August 2001, at the hearing to consider confirmation of the Reorganized Debtors' joint plan of reorganization (the "Plan"), Mr. Hayes objected to the Plan and, for the first time, moved for the appointment of an equity committee (the "First Equity Committee Motion"). On September 12, 2001, the Bankruptcy Court issued an opinion in which it concluded that it would confirm the Plan, overruled Mr. Hayes' objection and denied the relief requested in the First Equity Committee Motion. Mr. Hayes immediately filed a notice of appeal (prior to the Bankruptcy Court entering an order). Mr. Hayes subsequently filed an amended notice of appeal following entry of the order confirming the Plan. Through a clerical error, however, the two notices of appeals resulted in the docketing of two separate appeals: (i) Civil Action No. 02-216; and (ii) Civil Action No. 01-718. The docketing of separate, duplicative appeals generated considerable confusion among the parties and the Court. The Reorganized Debtors proceeded under the impression that case number 02-016 was the operative appeal. Mr. Hayes, and in some instances, this Court, however, filed certain papers in case number 01-718.

2.    On January 2, 2002, this Court established a briefing schedule in case number 01-718, requiring appellant's brief to be filed by January 18, 2002. Instead of filing an appeal brief on that date, Mr. Hayes filed a motion seeking the appointment of an equity committee (the "Second Equity Committee Motion") for purposes of pursuing his appeal. On January 30, 2002, the Reorganized Debtors filed an opposition to the Second Equity Committee Motion and simultaneously moved to dismiss Mr. Hayes' appeal on the ground of equitable mootness. On September 30, 2002, this Court denied the Second Equity Committee Motion in an order entered in case number 01-718, finding that the Court had no authority to appoint an equity committee. On that same date, the Court granted the Reorganized Debtors' motion to

3

dismiss Mr. Hayes' appeal in an order entered in case number 02-016, based on the doctrine of equitable mootness. Mr. Hayes did not appeal the Court's order dismissing case number 02-016.

3.      On November 6, 2002, this Court *sua sponte* entered a further scheduling order in case number 01-718 requiring appellant to file his opening brief by November 22, 2002. The Reorganized Debtors, believing that Mr. Hayes' appeal had been fully resolved by the dismissal of case number 02-016, made an inquiry to the Clerk of the Court, who advised that the second appeal (01-718) had been docketed in error. When Mr. Hayes filed a brief in case number 01-718, the Reorganized Debtors wrote to the Court, advising the Court of its belief that 01-718 and 02-016 were in fact identical appeals from the same order of the Bankruptcy Court, and requesting guidance from the Court as to whether it was necessary to file a separate motion to dismiss case number 01-718. Mr. Hayes responded to the Reorganized Debtors' letter stating that the doctrine of equitable mootness did not apply to the second appeal. On March 12, 2003, the Court *sua sponte* entered an order in case number 01-718 concluding that case number 01-718 and case number 02-016 were in fact the same appeal, and dismissing case number 01-718 for the same reasons that it previously had dismissed case number 02-016.

4.      After this Court dismissed case number 01-718, Mr. Hayes filed a motion to reopen the case. On February 26, 2004, the Court issued a Memorandum Opinion denying Mr. Hayes' motion to reopen case number 01-718. Mr. Hayes appealed the February 26, 2004 Memorandum Order to the United States Court of Appeals for the Third Circuit (the "Third Circuit"). The appeal was fully briefed, and on December 6, 2004 the Third Circuit affirmed the Court's decision in its entirety and later denied a motion for rehearing en banc. Mr. Hayes petitioned for certiorari in the Supreme Court, which was denied by the Supreme Court on June 20, 2005. Hayes v. Genesis Health Ventures, Inc., 125 S. Ct. 2947, 162 L.Ed.2d 868 (2005).

5.      On October 5, 2001, Mr. Hayes filed yet another motion for appointment of an equity committee (the "Third Equity Committee Motion") with the Bankruptcy Court. Mr. Hayes never set the Third Equity Committee Motion for hearing and it remained undecided for approximately two and one-half years. On March 13, 2004, Mr. Hayes sent a letter to Judge Wizmur "respectfully requesting a decision on his Motion to Appoint an Official Committee of Equity Security Holders." On April 23, 2004, the Reorganized Debtors responded to the Third Equity Committee Motion. On May 13, 2004, the Bankruptcy Court heard the Third Equity Committee Motion. Judge Wizmur again listened to arguments on this issue from both sides and reviewed the history of Mr. Hayes' appeals. The Bankruptcy Court ultimately denied Mr. Hayes' motion on both substantive and procedural grounds, finding that: (1) Mr. Hayes' request for appointment of an equity committee was "grossly untimely;" (2) the doctrine of equitable mootness applied to the Plan; and (3) the appointment of a post-confirmation equity committee is only available in the most extraordinary situations, which was not the case here. Mr. Hayes again appealed the Bankruptcy Court's denial of the appointment of an equity committee.

6.      On July 23, 2005, this Court affirmed the Bankruptcy Court's denial of Mr. Hayes' request for the appointment of a post-confirmation equity committee. In affirming the Bankruptcy Court's decision, this Court found that Mr. Hayes had exhausted all avenues to challenge the confirmation order and that his challenge to the Bankruptcy Court's denial to appoint a post-confirmation equity committee was moot given the U.S. Supreme Court's denial of his petition for a writ of certiorari. Undeterred by the District Court's findings, Mr. Hayes appealed this Court's July 23, 2005 ruling to the Third Circuit.

7.      On March 15, 2006, Mr. Hayes filed the following motions in the Bankruptcy Court: (i) a motion for reconsideration of the Reorganized Debtors' senior secured

lenders (the "Senior Lenders") claims pursuant to section 502(j) of the Bankruptcy Code and (ii) a fourth motion for the appointment of an equity committee (the "Fourth Equity Committee Motion"). The Reorganized Debtors filed an objection to the motions and contemporaneously cross-moved for sanctions against Mr. Hayes in an effort to put an end to his abuse of the legal system and the costs being inflicted in defending against his frivolous, repetitive motions. At a hearing held on January 19, 2006, Judge Wizmur denied both of Mr. Hayes' motions and granted the Reorganized Debtors' cross-motion for sanctions, finding that the case represented "the quintessential case for the application of sanctions." See Jan. 19, 2006 Hrg. Tr. at 29. The Bankruptcy Court, however, deferred the entry of an order so that the parties could file papers regarding the appropriate amount of attorneys' fees. Prior to the entry of an order, however, Mr. Hayes commenced the Appeal by filing a notice of appeal with respect to the Bankruptcy Court's January 19, 2006 bench ruling. On March 2, 2006, the Bankruptcy Court entered an order denying Mr. Hayes' motions and granting the Reorganized Debtors' cross-motion with an award of attorneys' fees in the amount of $20,000 (the "Sanctions Order").

8.    On March 15, 2006, Mr. Hayes filed a motion in the Bankruptcy Court seeking to stay the Sanctions Order due to the pendency of this Appeal, asserting, among other things, the nonsensical argument that his appeal of the bench ruling divested the Bankruptcy Court of its jurisdiction to enter the Sanctions Order. Mr. Hayes also filed a motion in this Court seeking to stay the briefing schedule with respect to the Appeal so that he could, among other things, file a motion to disqualify the Reorganized Debtors' counsel from representing the Reorganized Debtors in connection with the Appeal. On March 30, 2005, the Reorganized Debtors filed separate objections to the motions. The Reorganized Debtors contemporaneously cross-moved in each court for the entry of an order barring Mr. Hayes from filing any additional

6

motions without prior leave of Court (other than the opening and reply briefs necessary to pursue the Appeal) and relieving the Reorganized Debtors of their obligation to respond to any such pleadings absent entry of an order by the Court directing them to do so. Prior to the Court ruling on the Cross-Motion, Mr. Hayes filed his Motion seeking the entry of an order disqualifying the undersigned counsel from representing the Reorganized Debtors in connection with the appeal.[1]

## ARGUMENT

9.    By the Motion, Mr. Hayes seeks to disqualify WG&M and RL&F from representing the Reorganized Debtors in connection with the Appeal pursuant to section 327(a) of the Bankruptcy Code. Mr. Hayes' request is flawed on a number of different procedural and substantive grounds. As an initial matter, WG&M and RL&F are no longer retained pursuant to section 327(a) of the Bankruptcy Code. 11 U.S.C. § 327(a). Section 327(a) governs the retention of "attorneys, accountants, appraisers, auctioneers, or other professional persons" to assist a debtor or trustee in carrying out its duties in the context of a bankruptcy case. Section 327(a) does not govern the post-confirmation retention of professionals by a reorganized entity. See In re Tri-L Corp., 65 B.R. 774, 778 (Bankr. D. Utah 1986) (staing that a reorganized debtor may retain professionals post-confirmation without obtaining authority from the bankruptcy court pursuant to 11 U.S.C. § 327(a)); In re Van Dyke, 275 B.R. 854, 861 (Bkrtcy. C.D. Ill.

---

[1]    The Motion requests, in the alternative, that the Court overturn the Bankruptcy Court's denial of the Fourth Equity Committee Motion. This is perhaps one of Mr. Hayes' most puzzling requests. First, there is no discussion in the Motion or the accompanying brief in support of this request. Second, the Bankruptcy Court's denial of the Fourth Equity Committee Motion is the underlying issue in this Appeal. Accordingly, this issue should be addressed through the parties' briefs filed in connection with the Appeal, rather than by separate motion. Third, Mr. Hayes actually moved this Court to stay the briefing schedule on such issue so that he could file a motion to disqualify WG&M and RL&F. Thus, it is disingenuous to request a stay of the briefing schedule in the Appeal, only to immediately ask the Court to decide the issue in connection with a separate motion. For these reasons, the Reorganized Debtors do not intend to address Mr. Hayes' alternative request in this response, but, rather, fully reserve their right to address the issue in their answering brief to be filed in connection with the Appeal.

2002) ("As a general rule, upon confirmation of a Chapter 11 plan of reorganization, the restructured entity no longer operates under the protection of the bankruptcy court, but stands on its own feet, free to conduct its business without supervision or approval."). The Bankruptcy Court entered an order confirming the Plan on September 20, 2001. Accordingly, WG&M and RL&F have not been operating under a section 327(a) retention in over four and one-half years. Mr. Hayes' Motion should be denied on this basis alone.

10.    Assuming arguendo that WG&M and RL&F are still subject to section 327(a) of the Bankruptcy Code, which they are not, the Motion is not properly before this Court. WG&M and RL&F were retained by order of the Bankruptcy Court on July 24, 2000 pursuant to section 327(a) of the Bankruptcy Code. Mr. Hayes did not object to the proposed retention of WG&M or RL&F, nor did Mr. Hayes appeal the Bankruptcy Court's orders retaining such professionals. Accordingly, the retention of WG&M and RL&F is not an issue before this Court on appeal. Moreover, as this Court has previously stated (in response to prior pleadings filed by Mr. Hayes), it does not have original jurisdiction to consider motions relating to the bankruptcy cases. Thus, even if WG&M and RL&F were still retained under section 327(a) of the Bankruptcy Code, any motion relating to their continued retention should have been filed with the Bankruptcy Court in the first instance.

11.    In addition to the procedural issues discussed above, Mr. Hayes' Motion is substantively devoid of any merit. In connection with their retention by the Reorganized Debtors, WG&M and RL&F filed affidavits (the "Disclosure Affidavits") with the Bankruptcy Court disclosing any and all current and former (within the previous five years) representations of other potential parties-in-interest in the chapter 11 cases, including any representations of the

Senior Lenders.[2] The Bankruptcy Court carefully reviewed such disclosures and found WG&M and RL&F to be "disinterested" as such term is defined under section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code. WG&M and RL&F were "disinterested" then, and are "disinterested" now. Mr. Hayes has not pled any disqualifying contact in his Motion which would support disqualification of either professional.[3]

12. The Motion is simply one more example of Mr. Hayes causing the Reorganized Debtors and their estates to needlessly incur attorneys' fees and expenses in responding to a frivolous motion that is intended to do nothing more than that. Indeed, the Motion is precisely the type of pleading that the Reorganized Debtors intended to prevent in filing their Cross-Motion. Accordingly, the Reorganized Debtors request that the Motion be denied in its entirety and respectfully request that the Court exercise its inherent authority (in accordance with the relief requested in the Cross-Motion) to stem Mr. Hayes' pattern of vexatious litigation.

---

[2] The applications, Disclosure Affidavits and orders relating to the retention of WG&M and RL&F by the Bankruptcy Court are attached hereto as Exhibits A and B, respectively.

[3] Given the patently ridiculous nature of the allegations made by Mr. Hayes in his Motion, the Reorganized Debtors will not belabor the Court with a point-by-point refutation of each of the allegations. The Reorganized Debtors do, however, reserve their right to do so should the Court determine that such a response is warranted.

WHEREFORE, the Reorganized Debtors respectfully request the entry of an order denying the relief requested in the Motion, ordering Mr. Hayes to pay the Reorganized Debtors' costs and fees in filing this response and granting such other and further relief as the Court deems just and proper.

Dated: May 12, 2006
Wilmington, Delaware

Mark D. Collins (No. 2981)
Russell C. Silberglied (No. 3462)
Michael J. Merchant (No. 3854)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899

and

Michael F. Walsh
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153

and

Adam P. Strochak
Joanne M. Guerrera
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, NW
Suite 900
Washington, D.C. 20005

Attorneys for Appellees

10

**EXHIBIT A**

Objection Deadline: July 8, 2000 @ 4:00 p.m.
Hearing Date: Negative Notice

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| GENESIS HEALTH VENTURES, INC., et al , | : | 00-2692 (PJW) |
| Debtors. | : | (Jointly Administered) |

## NOTICE OF APPLICATION

PLEASE TAKE NOTICE that the above-captioned debtors and debtors in possession (the "Debtors") filed an **Application and Order Pursuant to Section 327(a) of the Bankruptcy Code Authorizing the Employment of Weil, Gotshal & Manges LLP as Co-Attorneys for the Debtors** (the "Application") with the United States Bankruptcy Court, 824 Market Street, 5ᵗʰ Floor, Wilmington, Delaware 19801 (the "Court")  The Application was filed with the Court on June 23, 2000.

PLEASE TAKE FURTHER NOTICE that objections or responses to the Applications, if any, must be made in writing, filed with the Court, served upon and received by the undersigned attorneys for the Debtors, on or before July 8, 2000 at 4:00 p.m

PLEASE TAKE FURTHER NOTICE that if no responses are timely filed, served and received, the Bankruptcy Court may enter an order approving the Application without further

notice or hearing. If responses or objections are timely filed. served and received. a hearing will

be held at the convenience of the Bankruptcy Court.

Dated:   June 23, 2000
         Wilmington, Delaware

Mark D. Collins (No. 2981)
Deborah E. Spivack (No. 3220)
Margreta M. Sundelin (No. 3873)
RICHARDS, LAYTON & FINGER
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
302-658-6541

- and -

WEIL, GOTSHAL & MANGES. LLP
Michael F. Walsh
Gary T. Holzer
767 Fifth Avenue
New York, NY 10153
212-310-8000

Counsel for Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

```
-------------------------------------------------------- x
                                           :
In re                                      :      Chapter 11 Case No.
                                           :
GENESIS HEALTH VENTURES, INC., et al.,     :      00-2692 (___)
                                           :
                                           :
                      Debtors.             :      (Jointly Administered)
-------------------------------------------------------- x
```

### APPLICATION OF THE DEBTORS PURSUANT TO SECTION 327(a) OF THE BANKRUPTCY CODE FOR AUTHORIZATION TO EMPLOY WEIL, GOTSHAL & MANGES LLP AS ATTORNEYS FOR THE DEBTORS

Genesis Health Ventures, Inc. ("GHV") and certain of its direct and

indirect subsidiaries, as debtors and debtors in possession (collectively, the "Debtors"),

respectfully represent:

#### Introduction

1.      On the date hereof (the "Commencement Date"), GHV, Genesis

ElderCare Network Services, Inc. ("GENS"), and each of the other Debtors commenced a

case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The

Debtors continue to operate their businesses and manage their properties as debtors in

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

Simultaneously with the filing of their petitions and this Motion, the Debtors have

requested an order for the joint administration of their chapter 11 cases pursuant to

Federal Rule of Bankruptcy Procedure 1015(b).

2.      The Multicare Companies, Inc., certain of its direct and indirect

subsidiaries, and its corporate parent, Genesis ElderCare Corp. (collectively, the

"Multicare Debtors") also commenced chapter 11 cases under the Bankruptcy Code on

the Commencement Date. GHV owns 43.6% of Genesis ElderCare Corp. and GENS
manages the Multicare Debtors. Due to the separate capital structures of the Multicare
Debtors, their chapter 11 cases will be not be jointly administered with the chapter 11
cases of the Debtors.

### Background

3.      The Debtors are leading providers of healthcare and support
services to the elderly. They operate inpatient facilities in five regional areas of the
United States and a national pharmacy and medical supply business. They also provide
rehabilitation therapy and other related healthcare services.

4.      Including the Multicare Debtors, the Debtors own, lease, or
manage approximately 311 inpatient eldercare centers in 15 states with approximately
38,000 nursing and assisted living beds. The nursing centers provide skilled,
intermediate, and personal nursing care, including ventilator care, intravenous therapy,
post-surgical recovery, respiratory management, orthopedic or neurological
rehabilitation, terminal care, and various forms of coma, pain. and wound management.
The assisted living facilities serve elderly patients who require some assistance with daily
activities, but do not require the level of care provided by a nursing center.

5.      The Debtors operate 61 institutional pharmacies, 22 medical
supply distribution centers, and 33 community-based pharmacies in over 40 states. The
Debtors provide pharmacy and medical supply services through their Neighbor Care
pharmacy subsidiaries, typically in the form of prescription and non-prescription
pharmaceuticals, infusion therapy, and medical supplies and equipment. These services
are predominantly provided to institutional healthcare providers that are not affiliated

with the Debtors. The services include highly specialized packaging and dispensing systems, computerized medical records processing, and 24-hour emergency services. The Debtors' community-based pharmacies provide prescription and over-the-counter medications, medical supplies, and pharmacy consulting services to the surrounding communities in the five regional areas where the Debtors operate.

6.     The Debtors also provide an extensive range of rehabilitation therapy services, including speech pathology and physical and occupational therapy, through six certified rehabilitation agencies. The Debtors have a network of approximately 2,600 licensed, rehabilitation therapists and assistants. Other related healthcare services provided by the Debtors include management of elder care centers, group purchasing and shared services programs, portable x-ray, diagnostic, home healthcare, physician, adult day care, staffing, transportation and consulting services.

7.     For the quarter ended March 31, 2000, the Debtors had net revenues of approximately $605 million on a consolidated basis. The Debtors have over 33,000 employees, of which approximately 24,000 are full-time. Approximately 18% of the Debtors' employees are physicians, nurses, and professional staff.

### Jurisdiction

8.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Retention of Weil, Gotshal & Manges LLP

9.     The Debtors have employed Weil, Gotshal & Manges LLP ("WG&M") as their attorneys in connection with the commencement and prosecution of their chapter 11 cases. Beginning in March of this year, WG&M has advised the Debtors

concerning their overall capital structure, debt and lease obligations, restructuring alternatives, and various related corporate and other legal issues. Pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, the Debtors request that the Court approve the employment of WG&M, under a general retainer, as their attorneys to perform the legal services that will be necessary during their chapter 11 cases. The Debtors have been informed that Michael F. Walsh and Gary T. Holtzer, members of WG&M, as well as other members of, counsel to, and associates of WG&M who will be employed in these chapter 11 cases, are members in good standing of, among others, the Bar of the State of New York and the United States District Court for the Southern District of New York, and contemporaneously herewith are seeking admission *pro hac vice* to practice before this Court.

10. Although WG&M does not have an office in Delaware, WG&M will represent the Debtors in coordination with the Delaware law firm of Richards, Layton & Finger, P.A. ("RL&F"). WG&M and RL&F have discussed a division of responsibilities in connection with representation of the Debtors and will make every effort to avoid and/or minimize duplication of services in the representation of the Debtors.

11. The Debtors have selected WG&M as their attorneys because of the firm's knowledge of the Debtors' business and financial affairs and its extensive general experience and knowledge, and in particular, its recognized expertise in the field of debtors' protections and creditors' rights and business reorganizations under chapter 11 of the Bankruptcy Code. In connection herewith, WG&M has become familiar with the Debtors' business, affairs, and capital structure. Accordingly, WG&M has the

necessary background to deal effectively with the potential legal issues and problems that may arise in the context of the Debtors' chapter 11 cases. The Debtors believe that WG&M is both well-qualified and uniquely able to represent them in these chapter 11 cases in an efficient and timely manner.

12.    The employment of WG&M under a general retainer is appropriate and necessary to enable the Debtors to execute faithfully their duties as debtors and debtors in possession and to formulate, negotiate, and implement a restructuring of their business and financial affairs. Subject to further order of this Court, it is proposed that WG&M be employed to:

(a)    take all necessary action to protect and preserve the Debtors' estates, including the prosecution of actions on the Debtors' behalf, the defense of any actions commenced against the Debtors, the negotiation of disputes in which the Debtors are involved, and the preparation of objections to claims filed against the Debtors' estates;

(b)    prepare on behalf of the Debtors, as debtors in possession, all necessary motions, applications, answers, orders, reports, and papers in connection with the administration of the Debtors' estates;

(c)    negotiate and prepare on behalf of the Debtors any plan(s) of reorganization and all related documents; and

(d)    perform all other necessary legal services in connection with these chapter 11 cases.

13.    It is necessary for the Debtors to employ attorneys under a general retainer to render the foregoing professional services.

14.    WG&M has stated its desire and willingness to act in these cases and render the necessary professional services as attorneys for the Debtors and debtors in possession.

15.    To the best of the Debtors' knowledge, the members and associates of WG&M do not have any connection with or any interest adverse to the Debtors, their creditors, or any other party in interest, or their respective attorneys and accountants, except as set forth in the affidavit of Gary T. Holtzer, a member of WG&M (the "Holtzer Affidavit"), annexed hereto as Exhibit "A."

16.    For the period from March 6, 2000 to June 22, 2000, WG&M has received from the Debtors an aggregate of $1,398,228.56 for professional services and expenses incurred, including an estimate for the period June 19, 2000 through June 22, 2000 and approximately $100,000 as an advance against additional services to be performed and related expenses.

17.    The Debtors understand that WG&M hereafter intends to apply to the Court for allowances of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the local rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") and orders of this Court for all services performed and expenses incurred after the Commencement Date.

18.    The Debtors, subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and further orders of the Court, propose to pay WG&M its customary hourly rates for services rendered that are in effect from time to time, as set forth in the Holtzer Affidavit, and to reimburse WG&M according to its customary reimbursement policies, and submit that such rates are reasonable.

19.    No trustee, examiner, or creditors' committee has been appointed in the Debtors' chapter 11 cases. Notice of this Application has been provided to (i) the

United States Trustee for the District of Delaware, (ii) attorneys for the Debtors'

prepetition senior lenders and bondholders, (iii) attorneys for the Debtors' proposed

postpetition lenders, (iv) attorneys representing holders of a significant portion of the

Debtors' public debt, and (v) the creditors holding the twenty (20) largest unsecured

claims. The Debtors submit that no other or further notice need be provided.

          20.     No previous application for the relief sought herein has been made

to this or any other court.

          WHEREFORE, the Debtors respectfully request authorization to employ

Weil, Gotshal & Manges LLP as their attorneys and such other and further relief as is

just.

Dated:    Wilmington, Delaware
        June 22, 2000

                            GENESIS HEALTH VENTURES, INC.
                            (for itself and on behalf of its debtor
                            affiliates)

                            By: _____
                                George V. Hager, Jr.
                                Executive Vice President and Chief
                                Financial Officer

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

```
-------------------------------------------------- x
                                         :
In re                                    :    Chapter 11 Case No.
                                         :
GENESIS HEATH VENTURES, INC., et al.,    :    00-2692 (___)
                                         :
                                         :    (Jointly Administered)
                      Debtors.           :
-------------------------------------------------- x
```

## AFFIDAVIT AND DISCLOSURE STATEMENT ON BEHALF OF WEIL, GOTSHAL & MANGES LLP PURSUANT TO SECTIONS 328(a), 329, AND 504 OF THE BANKRUPTCY CODE AND RULES 2014(a) AND 2016(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

```
STATE OF NEW YORK    )
                     )    ss.:
COUNTY OF NEW YORK   )
```

GARY T. HOLTZER, being duly sworn, deposes and says:

1.      I am an attorney at law contemporaneously seeking admission *pro hac vice* to practice before this Court and a member of the firm of Weil, Gotshal & Manges LLP ("WG&M" or the "Firm"). WG&M is an international law firm with its principal place of office located at 767 Fifth Avenue, New York, New York 10153, and regional offices in Washington, D.C.; Houston, Texas; Dallas, Texas; Miami, Florida; and Menlo Park, California, and international offices in London, United Kingdom; Budapest, Hungary; Brussels, Belgium; Prague, the Czech Republic; and Warsaw, Poland.

2.      I submit this affidavit in support of the application of Genesis Health Ventures, Inc. ("GHV") and certain of its direct and indirect subsidiaries, as debtors and debtors in possession (collectively, the "Debtors"), for authorization to employ WG&M as their attorneys in the above-captioned chapter 11 cases and in

compliance with sections 328(a), 329, and 504 of title 11, United States Code (the

"Bankruptcy Code"), as well as to provide the disclosure required under Rules 2014(a)

and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

Unless otherwise stated in this affidavit, I have personal knowledge of the facts

hereinafter set forth. To the extent that any information disclosed herein requires

amendment or modification upon WG&M's completion of further analysis or as

additional creditor information becomes available to it, a supplemental affidavit will be

submitted to the Court reflecting same.

   3. Neither I, WG&M, nor any member of, associate of, or of counsel

to WG&M represents any entity (or its attorneys or accountants) other than the Debtors in

connection with the Debtors' chapter 11 cases. In addition, except as set forth herein, to

the best of my knowledge, after due inquiry, neither I, WG&M, nor any member of,

associate of, or of counsel to WG&M represents any party in interest in these chapter 11

cases (or its attorneys or accountants) in connection with matters unrelated to the

Debtors' chapter 11 cases.

WG&M's Prepetition Relationship with the Debtors

   4. The Debtors have employed WG&M as their attorneys in

connection with the commencement and prosecution of their chapter 11 cases. Since

March of this year, WG&M has advised the Debtors concerning their overall capital

structure, debt and lease obligations, restructuring alternatives, and various related

corporate and other legal issues.

   5. WG&M is not a creditor of the Debtors. For the period from

March 6, 2000 to June 22, 2000, WG&M has received from the Debtors an aggregate of

2

$1,398,228.56 for professional services rendered and expenses incurred, including an estimate for the period June 19, 2000 through June 22, 2000, and approximately $100,000 as an advance against additional services to be performed and related expenses.

WG&M Disclosure Procedures

6.    WG&M has in the past represented, currently represents, and may in the future represent entities that are claimants or interest holders of the Debtors in matters totally unrelated to the Debtors' pending chapter 11 cases. WG&M, which employs approximately 700 attorneys, has a large and diversified legal practice that encompasses the representation of many financial institutions and commercial corporations, some of which are or may consider themselves to be creditors, parties in interest in the Debtors' pending chapter 11 cases, or otherwise have interests in these cases.

7.    In preparing this affidavit, I used a set of procedures developed by WG&M to ensure full compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and any local rules of the Court regarding the retention of professionals by a debtor under the Bankruptcy Code (the "Firm Disclosure Procedures"). Pursuant to the Firm Disclosure Procedures, I performed, or caused to be performed, the following actions to identify the parties relevant to this affidavit and to ascertain WG&M's connection to such parties:

a.    A comprehensive list of the types of entities who may have contacts with the Debtors was developed through discussions with the WG&M attorneys who have provided services to the Debtors and in consultation with senior management

of the Debtors (the "Retention Checklist"). A copy of the Retention Checklist is annexed hereto as Exhibit "1."

        b.      WG&M obtained from the Debtors information that was responsive to the Retention Checklist. Specifically, WG&M personnel conducted several inquiries with senior management of the Debtors to identify the entities that are responsive to the categories on the Retention Checklist.

        c.      Using the Retention Checklist and additional information identified by WG&M, a list of the names of entities who may be parties in interest to these chapter 11 cases (the "Potential Parties in Interest") was assembled.

        d.      WG&M maintains a database of current, former, and potential clients and related information that has been collected since 1980 (the "Database"). The Database includes the names of such entities, as well as the names of entities who are or were adverse and the names of the WG&M personnel who are or were responsible for such matters. Using the information in the Database and its billing records, WG&M compiled a list of the names of the entities for which any WG&M attorney charges were recorded at any time during the past two years (the "Current Client List").

        e.      WG&M compared the names of the Potential Parties in Interest to the names in the Database and on the Current Client List to identify any matches, determine whether such matches (after excluding name coincidences) are current clients (the "Current Client Match List"), and identify the WG&M personnel responsible for such matters.

f.      Using information in the Database and by making general
and, when applicable, specific inquiries of WG&M personnel, WG&M verified that it did
not represent any entity on the Current Client Match List in connection with the Debtors
or these chapter 11 cases.

g.      In addition, a general inquiry to all WG&M personnel was
sent by email to determine whether (i) any such individuals or their immediate family
members held any securities of or claims against the Debtors, and (ii) any such
individuals were ever employed by the Debtors or any of the Debtors' underwriting
investment banks.

h.      Answers to the inquiries were compiled for purposes of
preparing this affidavit.

WG&M's Connections with Parties in Interest
in Matters Unrelated to the Chapter 11 Cases

8.      I have reviewed the Current Client Match List and have
determined that, in respect of each connection between WG&M and such party, WG&M
does not hold or represent an interest that is adverse to the Debtors' estates, and that
WG&M is a "disinterested person" as such term is defined in section 101(14) of the
Bankruptcy Code for the reasons discussed below.

9.      WG&M has represented, currently represents, and may represent
in the future the entities described below (or their affiliates), in matters totally unrelated
to the Debtors. The following list is based on the relationship of the indicated entities
with the Debtors as follows: (a) secured creditors (with potentially undersecured claims)
under the Debtors' senior credit facility, (b) major unsecured creditors, including lessors,

(c) officers, directors, and other insiders, (d) investment bankers for securities of the

Debtors, and (e) indenture trustees.

| MATCHED ENTITY | RELATIONSHIP TO DEBTORS | RELATIONSHIP TO WG&M |
|---|---|---|
| Abbott Laboratories | Unsecured | Current Client |
| ABN AMRO Bank, N.V. | Secured | Current Client |
| AT&T | Unsecured | Former Client |
| Aetna US Healthcare | Unsecured | Current Client |
| Alex. Brown & Sons Incorporated | Underwriter | Current Client |
| Alliance Capital Management LP | Secured | Affiliate of a Client |
| Alliance Investments, Limited | Secured | Maybe an Affiliate of a Client |
| Baltimore Development Corp. | Affiliation of a Director | Maybe an Affiliate of a Client |
| Bankers Trust Company | Unsecured | Current Client |
| Bank Austria Creditanstalt Corporation Finance, Inc. | Secured | Maybe an Affiliate of Client |
| Bank of America, N.A. | Secured | Current Client |
| The Bank of New York | Secured and Indenture Trustee | Current Client |
| Bank of Nova Scotia | Unsecured | Current Client |
| Bank of Tokyo-Mitsubishi Trust Company | Secured | Current Client or Affiliate of Current Client |
| Bankers Trust Company | Secured | Current Client |
| Baxter Healthcare Corporation | Unsecured | Maybe an Affiliate of a Client |
| Baxter | Unsecured | Maybe an Affiliate of a Client |
| Bell Atlantic | Unsecured | Current Client |
| Blank Rome Comisky & McCauley | Unsecured | Former Client |
| Bristol Group | Joint Venture | Maybe an Affiliate of a Client |
| Bristol Myers Squibb Company | Unsecured | Current Client |
| Brown Healthcare Holdings Co. | Joint Venture | Maybe an Affiliate of a Client |
| Brown Healthcare, Inc. | Joint Venture | Maybe an Affiliate of a Client |
| BT Securities Corporation | Underwriter | Current Client |
| Canadian Imperial Bank of Commerce | Secured | Current Client |
| Ceres Finance LTD | Secured | Maybe an Affiliate of a Client |
| Chase | Secured | Current Client |
| Chase Securities, Inc. | Secured | Current Client |
| CIBC, Inc. | Secured | Current Client |
| Cigna Healthcare | Unsecured | Current Client |
| Citibank, N.A. | Unsecured | Current Client |
| City National Bank | Secured | Former Client |
| Commonwealth of Pennsylvania | Regulatory Agency | Current Client |
| Credit Lyonnais New York Branch | Secured | Current Client |
| Cushman & Wakefield of Penn. Inc | Unsecured | Current Client |

| CS First Boston/Credit Suisse First Boston | Secured and Underwriter | Current Client |
|---|---|---|
| Crestar Bank | Secured | Affiliate of a Current Client |
| The Dai-Ichi Kangyo Bank, Ltd. | Secured | Current Client |
| Department of State | Regulatory Agency | Former Client |
| Deutche Bank AG New York Branch a/o Grand Cayman Islands Branch | Secured | Current Client |
| UBS Warburg f/k/a Dillon, Read & Co., Inc. | Underwriter, Indenture Trustee | Current Client |
| Doctors Hospital | Unsecured | Maybe an Affiliate of a Current Client |
| Donaldson, Lufkin & Jenrette Securities | Underwriter | Current Client |
| DLJ Capital Funding, Inc. | Secured | Current Client |
| Dresdner Bank AG New York Branch and Grand Cayman Brach | Secured | Current Client |
| Eaton Vance Institutional Senior Loan Fund | Secured | Affiliate of a Current Client |
| Erste Bank Der Oesterreichischen Sparkassen AG | Secured | Affiliate of a Current Client |
| ET-Sub Highgate, L.P. | Landlord | Maybe an Affiliate of a Client |
| ET-Sub Willowbrook Limited Partnership | Landlord | Maybe an Affiliate of a Client |
| Fairmont Associates, Inc. | Landlord | Maybe an Affiliate of a Client |
| Finova Capital Corporation | Secured | Former Client |
| First National Bank of Chicago | Secured | Former Client |
| First Union Bank | Indenture Trustee | Current Client |
| First Union Capital Markets | Underwriter | Current Client or Affiliate of a Current Client |
| First Union National Bank | Secured | Current Client |
| First Union Trust Company, National Association | Secured | Current Client |
| Fleet National Bank | Secured | Current Client |
| Fortis | Affiliation of a Director | Current Client |
| Franklin Healthcare Associates | Unsecured-Landlord | Maybe an Affiliate of a Current Client |
| Franklin Mutual Advisers | Unsecured | Current Client |
| GMAC | Secured | Current Client |
| General Electric Capital Corporation | Secured | Current Client |
| Goldman Sachs & Company | Unsecured | Current Client |
| Guida Seibert Dairy CO. | Unsecured | Current Client |
| Harborside Health I Corp. | Joint Venture | Maybe an Affiliate of a Client |
| HCR Manor Care, Inc. | Preferred Shareholder of GHV and Vendee | Current Client |
| HSBC Bank USA | Secured | Former Client |

| IBM | Secured and Unsecured | Former Client |
|---|---|---|
| ING High Income Principal Preservation Fund Holdings, LDC | Secured | Affiliate of a Current Client |
| ING Senior Debt Portfolio | Secured | Affiliate of a Current Client |
| Indosuez Capital Funding III, Limited | Secured | Maybe an Affiliate of a Current Client |
| The Industrial Bank of Japan, Limited | Secured | Maybe an Affiliate of a Current Client |
| Invesco Senior Secured Management Inc. | Secured | Affiliate of a Current Client |
| J&H Marsh & McLennan | Unsecured | Maybe an Affiliate of a Current |
| KeyBank National Assoc. | Unsecured | Former Client |
| KPMG, LLP | Unsecured | Current Client |
| Lehman Commercial Paper Inc. | Secured | Current Client |
| MCI | Unsecured | Affiliate of a Current Client |
| Massachusetts Mutual Life Insurance Company | Secured | Current Client |
| Medical Marketing, Inc. | Unsecured | Former Client |
| Mellon Bank, N.A. | Secured | Current Client |
| Mellon Financial Services | Unsecured-Landlord | Affiliate of a Current Client |
| Mellon Financial Services Corporation #4 | Unsecured-Landlord | Affiliate of a Current Client |
| Merrill Lynch & Company | Underwriter | Current Client |
| Merrill Lynch, Pierce, Fenner & Smith Incorporated | Secured and Unsecured | Current Client |
| Montgomery County Revenue Authority | Landlord | Former Client |
| Montgomery Securities | Underwriter | Current Client or Affiliate of a Current Client |
| Morgan Stanley & Co., Incorporated | Underwriter | Current Client |
| Morgan Stanley Dean Witter Prime Income Trust | Secured | Current Client |
| Natexis Banque BFCE | Secured | Affiliate of a Current Client |
| National City Bank of Pennsylvania | Secured | Affiliate of a Current client |
| National Westminster Bank PLC | Secured | Current Client |
| NationsBanc Montgomery Securities LLC | Underwriter | Current Client or Affiliate of a Current Client |
| Nestle USA | Unsecured | Affiliate of a Current Client |
| New York Life Insurance and Annuity Corporation | Secured | Former Client |
| New York Life Insurance Company | Secured | Former Client |
| Northern Life Insurance Company | Secured | Maybe an Affiliate of a Former Client |

| The Northwestern Mutual Life Insurance Company | Secured | Former Client |
|---|---|---|
| Oak Hill Securities Fund, LP | Secured | Current Client or Affiliate of a Current Client |
| Paribas | Secured | Current Client |
| Paribas Capital Funding LLC | Secured | Current Client |
| Phoenix Holdings, Inc. | Affiliation of a Director | Maybe an Affiliate of a Current Client |
| Provident Bank of Maryland | Secured | Maybe an Affiliate of a Current Client |
| "Rabobank Nederland", New York Branch | Secured | Current Client |
| The Royal Bank of Scotland PLC | Secured | Former Client |
| SBE, Inc. | Unsecured | Affiliate of a Former Client |
| The Sakura Bank, Limited | Secured | Current Client or Affiliate of a Current Client |
| The Sanwa Bank, Limited | Secured | Former Client |
| Smith & Nephew, Inc. | Unsecured | Affiliate of a Current Client |
| State of Florida | Regulatory Agency | Former Client |
| Summit Bank | Secured | Current Client |
| Toronto-Dominion (New York). Inc. | Secured | Current Client |
| Township of Middletown | Regulatory Agency | Current Client or Affiliate of a Current Client |
| TPG Partners II, L.P. | Stockholder | Affiliate of a Former Client |
| TPG MC Coinvestment L.P. | Stockholder | Affiliate of a Former Client |
| United Parcel Customer House Brokerage | Unsecured | Maybe an Affiliate of a Current Client |
| Universal Health Services | Affiliation of a Director | Maybe an Affiliate of a Current Client |
| U.S. Food Service – Florida Division | Unsecured | Maybe an Affiliate of a Current Client |
| Van Kampen CLO I, Limited | Secured | Affiliate of a Current Client |
| Van Kampen Prime Rate Income Trust | Secured | Affiliate of a Current Client |
| Van Kampen Senior Income Trust | Secured | Affiliate of a Current Client |

10.    In addition to the entities identified above, WG&M currently

represents the official committee of unsecured creditors (the "MPAN Committee") in the

chapter 11 cases captioned *In re Mariner Post-Acute Network, Inc.*, chapter 11 case nos

00-113(MFW) through 00-214(MFW).  To the best of my knowledge, the only members

of the MPAN Committee that have connections with the Debtors are NeighborCare, Inc.,

which is one of the Debtors, and Sun America, which is an insurance carrier and a

creditor of the Debtors. It is possible that some of the creditors represented by the

MPAN Committee are also creditors of the Debtors.

11.    WG&M will continue to apply the Firm Disclosure Procedures as

additional information concerning entities with a connection to the Debtors is developed

and will file supplemental disclosure with this Court if necessary.

12.    WG&M has not, does not, and will not represent any of the

aforementioned entities, or any of their respective affiliates or subsidiaries, in matters

directly related to the Debtors or their chapter 11 cases.

WG&M is Disinterested

13.    Based on the foregoing, insofar as I have been able to ascertain

after diligent inquiry, I believe WG&M does not hold or represent an interest adverse to

the Debtors' estates in the matters upon which WG&M is to be employed, and WG&M is

"disinterested" as such term is defined in section 101(14) of the Bankruptcy Code.

WG&M's Rates and Billing Practices

14.    WG&M's current customary hourly rates, subject to change from

time to time, are $360-$650 for members and counsel, $155-$490 for associates, and $45-

$115 for paraprofessionals.

15.    No promises have been received by WG&M or any member of

WG&M, any attorney who is of counsel to WG&M, or any associate of WG&M, as to

payment or compensation in connection with these cases other than in accordance with

the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

WG&M has no agreement with any other entity to share with such entity any compensation received by WG&M.

16.     WG&M, consistent with the Bankruptcy Code. the Bankruptcy Rules, and the Rules and Orders of the Court (the "Local Rules"), intends to apply for compensation for professional services rendered at its customary hourly rates and for reimbursement of expenses.

17.     WG&M understands that the Debtors will seek to employ the law firm of Richards, Layton & Finger, P.A. ("RL&F"), as local attorneys, to act with WG&M in connection with the prosecution of the chapter 11 cases.  WG&M and RL&F previously have acted jointly and efficiently in the representation of debtors in other cases in this Court and will coordinate their efforts carefully and clearly delineate their respective duties so as to prevent inefficient duplication of services.  Rather than resulting in any extra expense to the Debtors' estates, it is anticipated that the efficient coordination of services of the respective firms will materially add to the progress and effective administration of these chapter 11 cases.

18.     The foregoing constitutes the statement of WG&M pursuant to

sections 328(a), 329, and 504 of the Bankruptcy Code and Bankruptcy Rules 2014(a) and

2016(b).

Dated:  Wilmington, Delaware
         June 22, 2000

_____
Gary T. Holtzer, Esq.
A Member of the Firm

        Sworn to and subscribed before me, a notary public for the State of
Delaware, County of New Castle, this 22' day of June, 2000.

_____
Notary Public

**MONICA A. MOLITOR**
**NOTARY PUBLIC-DELAWARE**
My Commission Expires Mar. 12, 2003

## EXHIBIT 1

### RETENTION CHECKLIST

- 100 largest unsecured creditors of the consolidated Debtors – Including holders of claims for borrowed money or similar indebtedness (actual, contingent, liquidated or unliquidated), including claims on account of guarantees and legal judgments.

- Lessors.

- Major secured creditors of GHV and its subsidiaries – To the extent known at the Commencement Date.

- State regulatory agencies.

- 20 largest bondholders.

- Partnerships – If Debtor is a partnership, its general and limited partners.

- Limited liability companies – If Debtor is an LLC, its members.

- Significant Stockholders – If Debtor is a corporation, any significant stockholders (greater than 5%).

- Directors – Current and former (up to three years) members of a corporation's board of directors and, with respect to GHV, the names of the entities with whom such directors were, during their tenure with the Debtor, affiliated.

- Former employees of debtor or underwriting investment bankers – All persons who were officers, directors or employees of Debtor or any underwriting investment banker during the two years prior to the Commencement Date, who are now attorneys at Weil, Gotshal & Manges LLP.

- Underwriting investment bankers for Debtors' securities for all securities issued or outstanding on the Commencement Date or during the three years prior to the Commencement Date.

- Indenture trustee – In respect of all securities outstanding at the Commencement Date and those outstanding for the prior three years.

FROM RICHARDS LAYTON & FINGER P.

NED   T 29 00   ET 37   34 TO 4333333 33 P 2

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 Case No. |
| GENESIS HEALTH VENTURES, INC., *et al.*, | 00-2692 (RW) |
| Debtors. | (Jointly Administered) |

## ORDER PURSUANT TO SECTION 327(a) OF THE BANKRUPTCY CODE FOR AUTHORIZATION TO EMPLOY WEIL, GOTSHAL & MANGES LLP AS ATTORNEYS FOR THE DEBTORS

Upon the application dated June 22, 2000 (the "Application") of Genesis

Health Ventures, Inc. and certain of its direct and indirect subsidiaries, as debtors and

debtors in possession (collectively, the "Debtors"), pursuant to section 327(a) of title 11,

United States Code (the "Bankruptcy Code"), for authorization to employ Weil, Gotshal

& Manges LLP ("WG&M") as their attorneys under a general retainer, as is more fully

set forth in the Application; and upon the annexed affidavit of Gary T. Holtzer, a member

of the firm of WG&M, sworn to on the 22nd day of June, 2000 (the "Holtzer Affidavit");

and upon consideration of the Affidavit of George V. Hager, Jr. in Support of First-Day

Motions and Applications sworn to on the 21st day of June, 2000; and it appearing that

the members and associates of WG&M who will be engaged in these cases are

contemporaneously requesting admission *pro hac vice* to practice before this Court in

these chapter 11 cases; and the Court being satisfied, based on the representations made

in the Application and the Holtzer Affidavit, that WG&M represents or holds no interest

adverse to the Debtors or to their estates as to the matters upon which it is to be engaged

and is disinterested under section 101(14) of the Bankruptcy Code, as modified by

A:\F187609 V1 - WEIL GOTSHAL & MANGES RETENTION ORDER.DOC

204

FROM RICHARDS LAYTON & FINGER P.

section 1107(b) of the Bankruptcy Code, and that the employment of WG&M is

necessary and would be in the best interests of the Debtors and their estates; and the

Court having jurisdiction to consider the Application and the relief requested therein in

accordance with 28 U.S.C. §§ 157 and 1334; and due notice of the Application having

been provided to (i) the United States Trustee for the District of Delaware (the "United

States Trustee"), (ii) attorneys for the Debtors' prepetition senior lenders and

bondholders, (iii) attorneys for the Debtors' proposed postpetition lenders, (iv) attorneys

representing holders of a significant portion of the Debtors' public debt, and (v) the

creditors holding the twenty (20) largest unsecured claims, and it appearing that no other

or further notice need be provided; and the Court having determined that the relief sought

in the Application is in the best interests of the Debtors, their creditors, and all parties in

interest; and upon the Application and all of the proceedings had before the Court; and

after due deliberation and sufficient cause appearing therefor, it is

ORDERED that, pursuant to section 327(a) of the Bankruptcy Code, the

Debtors are authorized to employ and retain WG&M as their attorneys under a general

retainer upon the terms and conditions set forth in the Application effective *nunc pro tunc*

to the date of the commencement of these chapter 11 cases; and it is further

ORDERED that WG&M shall be compensated in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, applicable Federal Rules of Bankruptcy Procedure, local rules of the Court, and such procedures as may be fixed by order of this Court.

Dated:   Wilmington, Delaware
         June       , 2000
         24

                                               JUDGE

cc: A.M.Sondelius, Esq., U.S. Trustee

9/24/05

**EXHIBIT B**



Objection Deadline: July 8, 2000 @ 4:00 p.m.
Hearing Date: Negative Notice

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| GENESIS HEALTH VENTURES, INC., et al., | : | 00-2692 (PJW) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

### NOTICE OF APPLICATION

PLEASE TAKE NOTICE that the above-captioned debtors and debtors in possession (the "Debtors") filed an **Application of the Debtors for an Order Authorizing the Retention and Employment of Richards, Layton & Finger, P.A. as Co-Counsel to the Debtors** (the "Application") with the United States Bankruptcy Court, 824 Market Street, 5th Floor, Wilmington, Delaware 19801 (the "Court"). The Application was filed with the Court on June 23, 2000.

PLEASE TAKE FURTHER NOTICE that objections or responses to the Applications, if any, must be made in writing, filed with the Court, served upon and received by the undersigned attorneys for the Debtors, on or before July 8, 2000 at 4:00 p.m.

PLEASE TAKE FURTHER NOTICE that if no responses are timely filed, served and received, the Bankruptcy Court may enter an order approving the Application without further

notice or hearing.  If responses or objections are timely filed, served and received, a hearing will

be held at the convenience of the Bankruptcy Court.

Dated:   June 23, 2000
         Wilmington, Delaware

                           _____

                           Mark D. Collins (No. 2981)
                           Deborah E. Spivack (No. 3220)
                           Margreta M. Sundelin (No. 3873)
                           RICHARDS, LAYTON & FINGER
                           One Rodney Square
                           P.O. Box 551
                           Wilmington, Delaware 19899
                           302-658-6541

                           - and -

                           WEIL, GOTSHAL & MANGES, LLP
                           Michael F. Walsh
                           Gary T. Holzer
                           767 Fifth Avenue
                           New York, NY 10153
                           212-310-8000

                           Counsel for Debtors and Debtors-in-Possession

Objection Deadline: July 7, 2000 at 4:00 p.m.
Hearing Date: Negative Notice

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| GENESIS HEALTH VENTURES, INC., et al., | : | 00- 2692 ( ) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

## APPLICATION OF THE DEBTORS FOR AN ORDER
## AUTHORIZING THE RETENTION AND EMPLOYMENT OF
## RICHARDS, LAYTON & FINGER, P.A. AS CO-COUNSEL TO THE DEBTORS

Genesis Health Ventures, Inc., and its direct and indirect wholly-owned

subsidiaries, which are the debtors and debtors in possession in these chapter 11 cases

(collectively, the "Debtors"), file this Application for an Order Authorizing the Retention and

Employment of Richards, Layton & Finger, P.A. as Co-Counsel to the Debtors (the

"Application"), and in support thereof, respectfully represents as follows.

### I. JURISDICTION

1.      This Court has jurisdiction to consider this Application pursuant to 28

U.S.C. §§ 157 and 1334. Consideration of this Application is a core proceeding pursuant to 28

U.S.C. § 157(b).  Venue of this proceeding is proper in this District pursuant to 28 U.S.C.

§§ 1408 and 1409.

### II.    BACKGROUND

2.      The Debtors are leading providers of healthcare and support services to

the elderly. They operate inpatient facilities in five regional areas of the United States and a

national pharmacy and medical supply business.  They also provide rehabilitation therapy and

other related healthcare services.

3.     Including the Multicare Debtors, the Debtors own, lease, or manage approximately 311 inpatient eldercare centers in 15 states with approximately 38,000 nursing and assisted living beds. The nursing centers provide skilled, intermediate, and personal nursing care, including ventilator care, intravenous therapy, post-surgical recovery, respiratory management, orthopedic or neurological rehabilitation, terminal care, and various forms of coma, pain, and wound management. The assisted living facilities serve elderly patients who require some assistance with daily activities, but do not require the level of care provided by a nursing center.

4.     The Debtors operate 61 institutional pharmacies, 22 medical supply distribution centers, and 33 community-based pharmacies in over 40 states. The Debtors provide pharmacy and medical supply services through their Neighbor Care pharmacy subsidiaries, typically in the form of prescription and non-prescription pharmaceuticals, infusion therapy, and medical supplies and equipment. These services are predominantly provided to institutional healthcare providers that are not affiliated with the Debtors. The services include highly specialized packaging and dispensing systems, computerized medical records processing, and 24-hour emergency services. The Debtors' community-based pharmacies provide prescription and over-the-counter medications, medical supplies, and pharmacy consulting services to the surrounding communities in the five regional areas where the Debtors operate.

5.     The Debtors also provide an extensive range of rehabilitation therapy services, including speech pathology and physical and occupational therapy, through six certified rehabilitation agencies. The Debtors have a network of approximately 2,600 licensed, rehabilitation therapists and assistants. Other related healthcare services provided by the Debtors include management of elder care centers, group purchasing and shared services programs,

2

portable x-ray, diagnostic, home healthcare, physician, adult day care, staffing, transportation and consulting services.

      6      For the quarter ended March 31, 2000, the Debtors had net revenues of approximately $605 million on a consolidated basis. The Debtors have over 33,000 employees, of which approximately 24,000 are full-time. Approximately 18% of the Debtors' employees are physicians, nurses, and professional staff.

### III. RETENTION OF RICHARDS, LAYTON & FINGER, P.A.

      7      Subject to approval of this Court, the Debtors wish to employ Richards, Layton & Finger, P.A. ("Richards Layton") of Wilmington, Delaware as their bankruptcy co-counsel in connection with the commencement and prosecution of their chapter 11 cases, effective as of the commencement of these cases. Pursuant to section 327(a) of the Bankruptcy Code, the Debtors request the Court to approve the employment of Richards Layton under a general retainer, as their co-counsel, to perform the extensive legal services that will be necessary during the Debtors' chapter 11 cases.

      8.      In addition to Richards Layton, by separate application filed simultaneously herewith, the Debtors are seeking to employ and retain, pursuant to section 327(a) of the Bankruptcy Code, the law firm of Weil, Gotshal & Manges ("WG&M") as co-counsel in these cases. The Debtors submit that it is essential for the Debtors to employ co-counsel in these cases. Moreover, pursuant to Rule 83.5(e) of the Local Rules of the United States District Court for the District of Delaware, the Debtors are required to retain Delaware counsel. WG&M and Richards Layton have discussed a division of responsibilities regarding representation of the Debtors and will make every effort to avoid and/or minimize duplication of effort in these cases between their two firms

      9.      The Debtors have selected Richards Layton as their co-counsel because of

the firm's extensive experience and knowledge in the field of debtors' and creditors' rights and
business reorganizations under chapter 11 of the Bankruptcy Code and because of its expertise,
experience, and knowledge practicing before this Court, its proximity to the Court, and its ability
to respond quickly to emergency hearings and other emergency matters in this Court. Richards
Layton's appearance before this Court for the miscellaneous applications, motions, and matters
in these chapter 11 cases will be more efficient and cost effective for the Debtors' estates.
Moreover, Richards Layton has rendered legal services and advice to the Debtors in the past with
respect to the preparation of this filing. During the course of this representation, Richards
Layton has acquired knowledge of these Debtors' businesses, financial affairs and capital
structure. The Debtors believe that Richards Layton is both well qualified and uniquely able to
represent them in these chapter 11 cases in a most efficient and timely manner.

       10.     The services of Richards Layton under a general retainer are necessary to
enable the Debtors to execute faithfully their duties as debtors in possession and to develop,
propose and consummate a chapter 11 plan. Subject to further order of this Court, Richards
Layton will be required to render the following professional services:

      (a)    to advise the Debtors of their rights, powers, and duties as debtors
and debtors in possession;

      (b)    to take all necessary action to protect and preserve the Debtors'
estates, including the prosecution of actions on the Debtors' behalf,
the defense of any actions commenced against the Debtors, the
negotiation of disputes in which the Debtors are involved, and the
preparation of objections to claims filed against the Debtors'
estates;

      (c)    to prepare on behalf of the Debtors, as debtors in possession, all
necessary motions, applications, answers, orders, reports, and
papers in connection with the administration of the Debtors'
estates;

      (d)    to negotiate and prepare on behalf of the Debtors a plan of
reorganization and all related documents; and

      (e)    to perform all other necessary legal services in connection with the
Debtors' chapter 11 cases.

4

11.    It is necessary that the Debtors employ attorneys under a general retainer to render the foregoing professional services.

12.    Richards Layton has stated its desire and willingness to act in these cases and to render the necessary professional services as co-counsel for the Debtors.

13.    To the best of the Debtors' knowledge, the directors and associates of Richards Layton do not have any connection with or any interest adverse to the Debtors, their creditors, or any other party in interest, or their respective attorneys, except as set forth herein and in the annexed affidavit of Mark D. Collins, a director of Richards Layton (the "Collins Affidavit").

14.    Richards Layton intends to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and orders of this Court. The Debtors, subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, propose to pay Richards Layton its customary hourly rates in effect from time to time as set forth in the Collins Affidavit. The Debtors submit that these rates are reasonable.

15    Prior to the Petition Date, the Debtors paid Richards Layton a $123,840.00 retainer in connection with and in contemplation of the Debtors' chapter 11 filings. The Debtors propose that the retainer monies paid to Richards Layton and not expended for prepetition services and disbursements be treated as a retainer paid in contemplation of services to be rendered by Richards Layton as bankruptcy co-counsel, pursuant to this Application, and that these amounts be applied to services performed in connection with the Court's order authorizing the employment of Richards Layton

## IV.  NOTICE

16    Notice of this application has been given to the Office of the United States Trustee, counsel for the Debtors' prepetition lenders, counsel for the Debtors' postpetition lenders, bondholders and the Debtors' top fifty unsecured creditors. In light of the nature of the

relief requested, the Debtors submit that no further notice need be given.

17.    Pursuant to Local District Court Rule 7.1.2.(a), incorporated by reference into the Local Rules of the Bankruptcy Court by General Order 9D, and because there are no novel issues of law presented in this application, the Debtors waive their right to file a brief in support of this application.

18.    No previous application for the relief sought herein has been made to this or any other court.

WHEREFORE the Debtors respectfully request entry of an order authorizing the retention of Richards Layton on a general retainer, pursuant to section 327(a) of the Bankruptcy Code, and granting such other and further relief as the Court may deem just and proper.

DATED:  June 22, 2000
        Wilmington, Delaware

                                Genesis Health Ventures, Inc., et al.
                                Debtors and Debtors in Possession

                        By: _____
                                George V. Hager, Jr.
                                Chief Financial Officer
                                Executive Vice President

6

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE. | : | CHAPTER 11 |
| | : | |
| GENESIS HEALTH VENTURES. INC , et al., | : | 00-2692 ( ) |
| | : | |
| Debtors. | : | (Jointly Administered) |

**AFFIDAVIT OF MARK D. COLLINS IN SUPPORT OF
APPLICATION OF THE DEBTORSS FOR AN ORDER
AUTHORIZING THE RETENTION AND EMPLOYMENT OF
RICHARDS, LAYTON & FINGER, P.A. AS CO-COUNSEL TO THE DEBTORSS**

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | SS: |
| COUNTY OF NEW CASTLE | ) | |

MARK D. COLLINS, being first duly sworn to oath, deposes and says:

1.    I am an attorney admitted to practice in the State of Delaware and before this

Court, and am a director of the firm of Richards, Layton & Finger, P A ("Richards Layton")

Richards Layton is a Delaware law firm with its offices at One Rodney Square, Wilmington,

Delaware.

2.    Subject to approval of this Court and in compliance with the applicable provisions

of the Bankruptcy Code, the Bankruptcy Rules and the local rules and orders of this Court,

Richards Layton intends to apply for compensation for professional services rendered in

connection with these chapter 11 cases, plus reimbursement of actual, necessary expenses and

other charges incurred by Richards Layton during these cases   The principal professionals and

paraprofessionals designated to represent the Debtors and their current standard hourly rates are as follows.

|     |                        |                 |
| --- | ---------------------- | --------------- |
| (a) | Mark D. Collins        | $310 per hour   |
| (b) | Daniel J. DeFranceschi | $260 per hour   |
| (c) | Deborah E. Spivack     | $225 per hour   |
| (e) | Margreta M. Sundelin   | $130 per hour   |
| (f) | Laura B. Ahtes         | $105 per hour   |
| (g) | Monica A. Molitor      | $95  per hour   |

The hourly rates set forth above are subject to periodic adjustments to reflect economic and other conditions. Other attorneys and paralegals within Richards Layton may from time to time serve the Debtors in connection with the matters herein described.

3.      I submit this affidavit in support of the application of the above-captioned debtors and debtors in possession (the "Debtors") for an order approving the employment of Richards Layton as their co-counsel in the above-captioned cases, in compliance with and to provide disclosure pursuant to sections 329 and 504 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Unless otherwise stated in this affidavit, I have personal knowledge of the facts hereinafter set forth. To the extent that any information disclosed herein requires amendment or modification upon Richards Layton's completion of further analysis or as additional creditor information becomes available to it, a supplemental affidavit will be submitted to the Court.

4.      Commencing in May of 2000, Richards Layton rendered legal services to the Debtors in connection with the preparation and commencement of these chapter 11 cases.

5.      Neither I, Richards Layton, nor any director or associate of Richards Layton, insofar as I have been able to ascertain, has in the past represented the Debtors' creditors, equity security holders, or any other party in interest in these cases, except as hereinafter set forth

6.      In preparing this affidavit, we used a set of procedures established by Richards Layton to insure compliance with the requirements of the Bankruptcy Code and the Bankruptcy Rules regarding retention of professionals by a debtor or official committee under the Bankruptcy Code.

7.      In that connection, Richards Layton requested and obtained from Weil, Gotshal & Manges, L.L.P., the proposed co-counsel in these cases, a list of the names of entities who may be parties in interest in these chapter 11 cases (the "Potential Parties in Interest")

8.      Richards Layton maintains and systematically updates its conflict check system in the regular course of its business, and it is the regular practice of Richards Layton to make and maintain these records. The conflict check maintained by Richards Layton is designed to include (i) every matter on which it is now or has been engaged, (ii) the entity by which it is now or has engaged, (iii) the identity of related parties, (iv) the identity of adverse parties, and (v) the attorney in Richards Layton that is knowledgeable about the matter. It is the policy of Richards Layton that no new matter may be accepted or opened within the Firm without completing and submitting to those charged with maintaining the conflict check system the information necessary to check each such matter for conflicts, including the identity of the prospective client, the matter and related and adverse parties. Accordingly, the database is updated for every new matter undertaken by Richards Layton. The scope of the system is a function of the completeness and accuracy of the information submitted by the attorney opening a new matter

9.    Richards Layton has in the past represented, currently represents, and/or may in the future represent, in matters wholly unrelated to these cases, certain Potential Parties in Interest (including, without limitation, those entities set forth on Exhibit "A" attached hereto who are current clients or are affiliates thereof, and those entities or affiliates thereof set forth on Exhibit "B" attached hereto who have been represented by Richards Layton within the last five (5) years). I do not believe that any single matter is a major engagement that would involve either the billing of fees in excess of one half of one percent (.5%) of Richards Layton's annual fees billed, or that, in the aggregate for any affiliated group of entities, exceeds one percent (1%) of Richards Layton's annual fees billed. In any event, Richards Layton will not represent any of the foregoing claimants or any party in interest in any facet of the Debtors' cases.

10.    In addition to those parties listed on Exhibit "A", prior to the petition date, Richards Layton served as Delaware counsel to Manor Care, Inc. (now known as Manor Care of America, Inc.), HCR Manor Care, Inc. (now known as Manor Care, Inc.), Paul A. Ormond and Stuart Bainum, Jr. (collectively, the "Manor Care Parties") in actions pending in the United States District Court for the District of Delaware against Genesis Health Ventures, Inc., one of the Debtors (the "Litigation"). The Manor Care Parties are Potential Parties in Interest. Upon learning of this potential conflict of interest, Richards Layton began working with the Manor Care Parties and the Debtors to resolve definitively this potential conflict of interest. Pursuant to a letter agreement, dated May 19, 2000, a true and correct copy of which is attached hereto as Exhibit "C" (the "May 19 Letter"), Richards Layton sought and obtained the consent of the Manor Care Parties to withdraw as their counsel in the Litigation, subject to the terms and conditions contained therein. In connection with Richards Layton's withdrawal as counsel to the Manor Care Parties in the Litigation, it was agreed by the parties that Richards Layton would not

represent the Debtors in the bankruptcy cases with respect to the matters contained in paragraph 1 of the May 19 Letter. These matters will be handled by the Debtors' primary bankruptcy counsel, Weil, Gotshal & Manges and, if necessary, by different local counsel. Pursuant to a letter agreement, dated May 19, 2000, a true and correct copy of which is attached hereto as Exhibit "D", Richards Layton obtained the consent of the Debtors to the terms and conditions of the letter agreement between Richards Layton and the Manor Care Parties.

11.     In addition to the parties listed on Exhibit "A", Richards Layton currently represents the debtors in the chapter 11 cases captioned *In re Mariner Post-Acute Network, Inc.*, chapter 11 case nos. 00-113 (MFW) through 00-214 (MFW) (collectively, the "MPAN Debtors"), and the debtors in the chapter 11 cases captioned *In re Mariner Health Group, Inc.*, chapter 11 case nos. 00-215 (MFW) through 00-301 (MFW). NeighborCare, Inc., which is one of the Debtors, is a member of the unsecured creditors' committee in the MPAN Debtors' bankruptcy cases. In addition, Sun America, which is an insurance carrier and creditor of the Debtors, is also a member of the unsecured creditors' committee in the MPAN Debtors' cases.

12.     I do not believe that there is any connection or interest (as such terms are used in section 101(14)(E) of the Bankruptcy Code and Bankruptcy Rule 2014(a)) of Richards Layton and (i) the United States Trustee or any person employed by the Office of the United States Trustee, or (ii) any counsel, accountants, financial consultants and investment bankers who represent or may represent claimants or other parties in interest in these cases. In addition, as part of its practice, Richards Layton appears in cases, proceedings, and transactions involving many different attorneys, accountants, financial consultants and investment bankers, some of which now or may in the future represent claimants and parties in interest in these cases. Richards Layton has not and will not represent any such entities in relation to the Debtors and

these chapter 11 cases nor have any relationship with any such entities that would be adverse to the Debtors or their estates in the matters upon which Richards Layton is to be employed.

13.    Richards Layton received prepetition approximately $123,840 00 for prepetition and postpetition services and expenses related thereto that Richards Layton has provided and intends to provide to the Debtors prior to and after the Petition Date.

14.    The hourly rates set forth above are Richards Layton's standard hourly rates for work of this nature. These rates are set at a level designed to compensate Richards Layton fairly for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses  It is Richards Layton's policy to charge its clients in all areas of practice for all other expenses incurred in connection with the client's case  The expenses charged to clients include, among other things, telephone and telecopier toll and other charges, regular mail and express mail charges, special or hand delivery charges, document processing, photocopying charges, travel expenses, expenses for "working meals," computerized research, transcription costs, as well as non-ordinary overhead expenses such as secretarial and other overtime. Richards Layton will charge the Debtors for these expenses in a manner and at rates consistent with charges made generally to Richards Layton's other clients or as previously fixed by this Court  Richards Layton believes that it is fairer to charge these expenses to the clients incurring them than to increase the hourly rates and spread the expenses among all clients.

15    Except as set forth herein, and based upon the information available to me, neither I, Richards Layton, nor any director or associate thereof, insofar as I have been able to ascertain, holds or represents any interest adverse to the Debtors or their estates in the matters upon which Richards Layton is to be employed  Based upon the information available to me, I believe that

Richards Layton is a "disinterested person" as that term is defined in section 101(14) of the

Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

16.    No promises have been received by Richards Layton, nor by any director or

associate thereof, as to compensation in connection with these cases other than in accordance

with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the local rules and orders

of this Court  Richards Layton has no agreement with any other entity to share with such entity

any compensation received by Richards Layton.

DATED:  June 22, 2000
       Wilmington, Delaware

                                 Mark D. Collins (Atty  No. 2981)


SWORN TO AND SUBSCRIBED before
me this 22nd day of June, 2000

                                                
Notary Public
My Commission Expires:  4/6/01

# *Exhibit A*

## Exhibit A

## CREDITORS AND AFFILIATES THEREOF CURRENTLY REPRESENTED BY RICHARDS LAYTON

| Party in Interest that Employs Richards Layton | Nature of Interest in Debtors' Chapter 11 Cases | Description of Employment |
|---|---|---|
| ABN Amro Bank | Party to Mellon Bank Credit Agreement | • General corporate advice<br>• Formation of corporate entities<br>• Transactional advice |
| Alliance Capital Mangement | Party to Mellon Bank Credit Agreement | • Representation in civil matters<br>• Formation of corporate entities |
| Bank of America | Party to Mellon Bank Credit Agreement | • General corporate advice/ trust advice<br>• Representation in civil matter<br>• Formation of corporate entites/trusts<br>• Transactional advice<br>• Bankruptcy representation (Breed Technologies, Fruit of the Loom, Ameriserve, Genicom, General Rental, Wilcox & Gibbs) |
| The Bank of New York | Party to Mellon Bank Credit Agreement | • Formation of corporate entites/trusts<br>• General corporate advice/trust advice<br>• Issuance of Securities<br>• Bankruptcy Representation (Adversary Proceeding in Continental Airlines) |
| CIBC, Inc. | Party to Mellon Bank Credit Agreement | • Formation of corporate entities |
| Citicorp USA, Inc. | Party to Mellon Bank Credit Agreement | • General corporate advice |
| Credit Suisse First Boston | Party to Mellon Bank Credit Agreement | • Bankruptcy representation (Westbridge Capital Corp., Imagyn Medical Technologies)<br>• Formation of corporate entities |
| Crestar Bank | Party to Mellon Bank Credit Agreement | • Formation of corporate entities/trusts |
| Deutsche Bank AG | Party to Mellon Bank Credit Agreement | • Restructuring advice<br>• General corporate advice<br>• Financing advice |

| | | |
|---|---|---|
| | | • Formation of corporate entities |
| DLJ | Party to Mellon Bank Credit Agreement | • Formation of corporate entities<br>• |
| Eaton Vance | Party to Mellon Bank Credit Agreement | • Charitable donation advice |
| Erste Bank Sparkassen AG | Party to Mellon Bank Credit Agreement | • Legal opinion work |
| Finova Capital Corporation | Party to Mellon Bank Credit Agreement | • Bankruptcy representation (Trism, Inc.)<br>• Formation of corporate entities<br>• General transactional advice |
| First Union National Bank | Party to Mellon Bank Credit Agreement | • Representation in civil action<br>• General transactional advice<br>• Issuance of securities<br>• Formation of corporate entities/trusts<br>• General corporate advice<br>• Bankruptcy representation (Primary Health Systems, Loewen Group International, Inc.) |
| Fleet Bank | Party to Mellon Bank Credit Agreement | • Bankruptcy representation (Pittsburgh & Lake Erie Properties)<br>• Legal opinion work<br>• Formation of corporate trusts |
| General Electric Capital Corporation | Party to Mellon Bank Credit Agreement | • Representation in civil matters<br>• Bankruptcy representation (Renaissance Cosmetics, Mondi, Boston Chicken, Rickel, Unitel Video)<br>• General corporate advice |
| ING Group | Party to Mellon Bank Credit Agreement | • Formation of corporate trusts |
| INVESCO | Party to Mellon Bank Credit Agreement | • Formation of corporate entity |
| Keycorp Capital | Party to Mellon Bank Credit Agreement | • General transactional advice |
| Lehman Commercial Paper, Inc. | Party to Mellon Bank Credit Agreement | • Bankruptcy representation (Axiohm) |
| Mellon Bank, N.A. | Party to Mellon Bank Credit Agreement | • Formation of corporate trusts<br>• Representation in civil matters<br>• General corporate / transactional advice |

| Merrill Lynch & Co. | Party to Mellon Bank Credit Agreement | • Formation of corporate trusts<br>• Issuance of securities<br>• General corporate/ transactional advice<br>• Bankruptcy representation (Geotek) |
|---|---|---|
| Metropolitan Life Insurance Company | Party to Mellon Bank Credit Agreement | • General corporate / transactional advice<br>• Issuance of securities |
| Morgan Stanley Dean Witter | Party to Mellon Bank Credit Agreement | • General corporate / transactional advice<br>• Representation in civil matter<br>• Formation of corporate entities/ trusts<br>• Issuance of securities |
| Natexis Banque BFCE | Party to Mellon Bank Credit Agreement | • Formation of corporate entities/trusts |
| Octagon Loan Investors | Party to Mellon Bank Credit Agreement | • Formation of corporate entity |
| Toronto-Dominion, Inc. | Party to Mellon Bank Credit Agreement | • Bankruptcy representation (Safety Kleen, OpTel) |
| First Union Trust Company | Top 20 Bondholder | • General corporate / transactional advice<br>• Formation of corporate entities/trusts |
| Bankers Trust Company | Top 20 Bondholder | • Bankruptcy representation (Cambridge, Mid-American Waste)<br>• Formation of corporate entities/trusts<br>• General corporate / transactional advice<br>• Legal opinion work<br>• Issuance of securities |
| First Union National Bank | Top 20 Bondholder | • Bankruptcy representation (Loewen Group, Primary Health Systems)<br>• Representation in civil matter<br>• Formation of corporate entities/trusts |
| HSBC Bank USA | Top 20 Bondholder | • General corporate advice<br>• Formation of corporate trust |
| Mellon Financial Corporation | Landlord | • Formation of corporate entity |
| ManorCare Health Services, Inc. | Partnerships and Limited Liability Companies | • Bankruptcy representation (Med Lab, Inc.)<br>• General corporate advice<br>• Representation in civil matters |

| | | |
|---|---|---|
| Bristol Myers Squibb Co. | Top 100 Unsecured Creditor | • General corporate advice |
| Doctors Hospital | Top 100 Unsecured Creditor | • Representation in real estate matter |
| J&H Marsh & McLennan, Inc. | Top 100 Unsecured Creditor | • Formation of corporate entities |
| KPMG, LLP | Top 100 Unsecured Creditor | • Formation of corporate entities<br>• Representation in civil matter<br>• Issuance of securities |
| MCI | Top 100 Unsecured Creditor | • Issuance of securities<br>• Representation in civil matters<br>• General corporate advice |
| Medical Marketing, Inc. | Top 100 Unsecured Creditor | • Formation of corporate entity |
| MicroAge, Inc. | Top 100 Unsecured Creditor | • General corporate advice |
| Nestle Holdings, Inc. | Top 100 Unsecured Creditor | • General corporate advice |
| PECO Energy | Top 100 Unsecured Creditor | • General transactional advice |
| Simplex Time Recorder Co. | Top 100 Unsecured Creditor | • Formation of corporate entity |
| Stuever Brothers Eccles & Rouse | Top 100 Unsecured Creditor | • Transactional advice |
| Tartan Textile Services, Inc. | Top 100 Unsecured Creditor | • General corporate advice |
| US Food Service | Top 100 Unsecured Creditor | • General corporate advice |

12

# *Exhibit B*

## Exhibit B

# CREDITORS AND AFFILIATES THEREOF FORMERLY REPRESENTED BY RICHARDS LAYTON WITHIN LAST FIVE YEARS

| Party in Interest that Employed Richards Layton in Last 5 Years | Nature of Interest in Debtors' Chapter 11 Cases | Description of Previous Employment |
|---|---|---|
| Bank of Tokyo-Mitsubishi, LTD | Party to Mellon Bank Credit Agreement | • Representation in civil action |
| Canadian Imperial Bank of Commerce | Party to Mellon Bank Credit Agreement | • General transactional advice<br>• |
| City National Bank | Party to Mellon Bank Credit Agreement | • Bankruptcy representation (DEP) |
| Cooperative Centrale Raiffeisen-Boerenleenbank B.A. | Party to Mellon Bank Credit Agreement | • General transactional advice |
| Credit Lyonnais | Party to Mellon Bank Credit Agreement | • General corporate advice<br>• Corporate opinion work<br>• Formation of corporate entities<br>• Representation in civil action<br>• Bankruptcy representation (TWA) |
| The Dai-Ichi Kangyo Bank, Ltd. | Party to Mellon Bank Credit Agreement | • Representation in civil action |
| Dresdner Bank AG | Party to Mellon Bank Credit Agreement | • Legal opinion work |
| First National Bank of Chicago | Party to Mellon Bank Credit Agreement | • Bankruptcy representation (UCG Corporation, HHL Financial Services) |
| The Industrial Bank of Japan | Party to Mellon Bank Credit Agreement | • General transactional advice |
| KZH Holding Corporation II | Party to Mellon Bank Credit Agreement | • Formation of corporate trust |
| Massachusetts Mutual Life Insurance Company | Party to Mellon Bank Credit Agreement | • Bankruptcy Representation (TWA)<br>• General corporate advice<br>• Legal opinion work |
| National Westminster Bank PLC | Party to Mellon Bank Credit Agreement | • Issuance of securities<br>• Formation of corporate trusts<br>• Corporate/restructuring Advice<br>• Bankruptcy representation (SLM International) |
| New York Life Insurance Company | Party to Mellon Bank Credit Agreement | • Representation in civil matter<br>• General corporate advice |
| Northwestern Mutual Life Insurance Company | Party to Mellon Bank Credit Agreement | • Board representation |

| Paribas North America, Inc. | Party to Mellon Bank Credit Agreement | • Legal opinion work |
|---|---|---|
| Provident Bank of Maryland | Party to Mellon Bank Credit Agreement | • General transactional advice |
| Bank of Scotland | Party to Mellon Bank Credit Agreement | • Bankruptcy representation (Conston) <br> • Legal opinion work |
| The Sanwa Bank | Party to Mellon Bank Credit Agreement | • Issuance of securities |
| Summit Bank | Party to Mellon Bank Credit Agreement | • Issuance of securities |
| Van Kampen American Capital Prime Rate Income trust | Party to Mellon Bank Credit Agreement | • Bankruptcy representation (Harvest Foods) |
| Genesis Health Ventures, Inc. | Partnerships and Limited Liability Companies | • General transactional advice |
| Liberty Tax Credit Plus, III | Partnerships and Limited Liability Companies | • Representation in civil matter <br> • General corporate advice <br> • Formation of corporate entities / trusts |
| State Street Associates, Inc. | Partnerships and Limited Liability Companies | • Formation of corporate entities <br> • General restructuring advice |
| Abbott Labratories | Top 100 Unsecured Creditor | • General corporate advice |
| Baltimore Gas & Electric Co. | Top 100 Unsecured Creditor | • Issuance of securities |
| Baxter International, Inc. | Top 100 Unsecured Creditor | • Representation in civil matters <br> • General corporate advice |
| Bell Atlantic (Delaware) | Top 100 Unsecured Creditor | • General corporate advice |
| Mediq Incorporated | Top 100 Unsecured Creditor | • Representation in civil matters |
| MicroAge, Inc. | Top 100 Unsecured Creditor | • General corporate advice |

*Exhibit C*

05-31-2000 07:40    419 252 5599    HCR LEGAL DEPT.    P.02    — MⱭℓ

FROM RICHARDS, LAYTON & FINGER #8    (TUE) 5.23'00 11:57/ST. 11:55/NO. 4862636305 P 2

# RICHARDS, LAYTON & FINGER

### A PROFESSIONAL ASSOCIATION

### ONE RODNEY SQUARE

### P.O. BOX 551

### WILMINGTON, DELAWARE 19899

### TELEPHONE: (302) 658-6541

### TELECOPIER: (302) 658-6548

### WEBSITE: WWW.RLF.COM

WRITER'S E-MAIL ADDRESS
COLLINS@RLF.COM

WRITER'S DIRECT DIAL NUMBER
(302) 651-7531

May 19, 2000

R. Jeffrey Bixler, Esq.
Vice President, General Counsel
  and Secretary
Manor Care, Inc.
333 North Summit Street
Toledo, OH 43699

Re:    Manor Care, Inc./Genesis Health Ventures, Inc.

Dear Mr. Bixler:

This is to confirm our agreement regarding Richards, Layton & Finger's ("RL&F") representation of Genesis Health Ventures, Inc. and its affiliates (collectively, "Genesis") in any chapter 11 case that Genesis may file in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Case").

1.    Subject to the other provisions of this letter, RL&F may represent Genesis as Delaware bankruptcy counsel in any and all matters that may arise in the Bankruptcy Case. Notwithstanding the foregoing, RL&F will not represent Genesis in the Bankruptcy Case with respect to the following: (i) any matter directly relating to any agreement between Manor Care, Inc. or any direct or indirect subsidiary thereof (collectively, "Manor Care") and Genesis; (ii) any claim or cause of action asserted by Manor Care against Genesis; (iii) any claim or cause of action that may be asserted by Genesis against Manor Care or (iv) any matter relating to the Litigation (defined below)).

2.    RL&F will continue to represent Manor Care in any pending matter (other than the Litigation), and will be available to represent Manor Care in any future matter, that is unrelated to Genesis or the Bankruptcy Case. Manor Care's consent to RL&F's representation of Genesis in the Bankruptcy Case shall not

R. Jeffrey Bixler, Esq.
May 19, 2000
Page 2

be effective until Genesis has executed and delivered to Manor Care a written
conflicts waiver and consent to such effect (the "Genesis Consent"). Manor
Care's consent to RL&F's representation of Genesis in the Bankruptcy Case
shall automatically terminate unless the order of the Bankruptcy Court that
authorizes Genesis' retention of RL&F in the Bankruptcy Case specifically
approves and authorizes the Genesis Consent and RL&F's continued
representation of Manor Care in matters unrelated to Genesis or the Bankruptcy
Case and such order remains in full force and effect in the Bankruptcy Case.
RL&F agrees to send Manor Care a copy of the order authorizing its retention on
the Bankruptcy Case promptly after its entry.

3.    RL&F will withdraw as Delaware counsel to Manor Care, Inc. (now known as
"Manor Care of America, Inc."), HCR Manor Care, Inc. (now known as "Manor
Care, Inc."), Paul A. Ormond and Stuart Bainum, Jr. in the actions pending in
the United States District Court for the District of Delaware and styled Genesis
Health Ventures, Inc. v. HCR Manor Care, Inc., et al., C.A. No. 99-287-SLR and
Manor Care, Inc. v. Genesis Health Ventures, Inc., C.A. No. 99-580-SLR (the
"Litigation"), and prior to such withdrawal, Manor Care shall have retained
substitute Delaware counsel acceptable to it in the Litigation. RL&F will work
with Manor Care's new Delaware counsel to ensure a smooth transition of these
matters.

Please evidence your consent and waiver as set forth above by signing and returning a
copy of this letter. We greatly appreciate your cooperation in reaching the foregoing agreement. If you
should have any questions regarding this matter, please call me.

Very truly yours,

Mark D. Collins

MDC/lma

AGREED:

R. Jeffrey Bixler
Vice President, General Counsel
and Secretary

RLF1-2143283-2

*Exhibit D*

# RICHARDS, LAYTON & FINGER

A PROFESSIONAL ASSOCIATION

ONE RODNEY SQUARE

P.O. BOX 551

WILMINGTON, DELAWARE 19899

TELEPHONE: (302) 658-6541

TELECOPIER: (302) 658-6548

WEBSITE: WWW.RLF.COM

WRITER'S E-MAIL ADDRESS
COLLINS@RLF.COM

WRITER'S DIRECT DIAL NUMBER
(302) 651-7531

May 19, 2000

<u>**VIA FACSIMILE**</u>

James Wankmiller, Esq.
Vice President, General Counsel
  and Corporate Secretary
Genesis Health Ventures Inc.
101 E. State Street
Kennett Square, PA  19348

      Re:   Manor Care, Inc./Genesis Health Ventures, Inc.

Dear Jim:

      Enclosed herewith is a copy of the letter (the "Consent Letter") to be executed by Richards, Layton & Finger, P.A. ("RL&F") and Manor Care, Inc. regarding RL&F's representation of Genesis Health Ventures, Inc. and its affiliates (collectively, "Genesis") in any chapter 11 case that Genesis may file in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Case").

      Paragraph 2 of the Consent Letter requires Genesis to execute and deliver to Manor Care, Inc. written confirmation that RL&F may continue to represent Manor Care, Inc. or any direct or indirect subsidiaries thereof in any pending matter (other than the Litigation (as defined in the Consent Letter)) and will be available to represent Manor Care in any future matter, provided that such representations are unrelated to Genesis or the Bankruptcy Case.

      Please evidence your consent to (i) the terms contained in the Consent Letter, including RL&F's agreement to not represent Genesis in the Bankruptcy Case with respect to the

James Wankmiller, Esq.
May 19, 2000
Page 2

matters set forth in paragraph 1 of the Consent Letter, and (ii) RL&F's continued and future
representation of Manor Care in matters wholly-unrelated to Genesis and the Bankruptcy Case,
by signing and returning a copy of this letter to me.

Upon your execution and return of this letter to me, I will forward a copy of same
to Genesis in satisfaction of paragraph 2 of the Consent Letter.

If you should have any questions regarding this matter, please call me. Thank you
very much for your time and consideration.

Very truly yours,

Mark D. Collins

MDC/lms
cc:    Michael Walsh, Esq. (via facsimile)


AGREED:

James Wankmiller
Vice President, General Counsel
and Corporate Secretary

RLF1-2159660-1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| GENESIS HEALTH VENTURES, INC., et al., | : | 00-2692 (JW) |
| | : | |
| Debtors. | : | (Jointly Administered) |

## ORDER PURSUANT TO SECTION 327(a) OF THE BANKRUPTCY CODE AUTHORIZING THE EMPLOYMENT OF RICHARDS, LAYTON & FINGER, P.A. AS CO-COUNSEL FOR THE DEBTORS

Upon consideration of the application (the "Application") by Genesis Health Ventures, Inc., and its direct and indirect wholly owned subsidiaries (collectively, the "Debtors") as debtors in possession, seeking an order pursuant to section 327(a) of title 11 of the United States Code (the "Bankruptcy Code") authorizing and approving the employment and retention of Richards, Layton & Finger, P.A. ("Richards Layton") as their attorneys under a general retainer, as is more fully set forth in the Application; and upon the annexed affidavit of Mark D. Collins, a director of Richards Layton (the "Collins Affidavit"); and upon consideration of the Affidavit of George V. Hager, Jr. in Support of First-Day Motions and Applications; and the Court being satisfied, based upon the representation made in the Application and the Collins Affidavit, that Richards Layton represents or holds no interest adverse to the Debtors' estates with respect to the matters upon which it is to be engaged and is disinterested as that term is defined under section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and that the employment of Richards Layton is necessary and would be in the best interests of the Debtors and their estates; and it appearing that due notice of the Application has been given to the Office of the United States Trustee for the District of Delaware, the Debtors' lenders, the

205/50

Debtors' bondholders and the Debtors' top fifty unsecured creditors, and that no other or further

notice need be given and sufficient cause appearing therefor, it is

ORDERED that, in accordance with section 327(a) of the Bankruptcy Code, the

Debtors, as debtors in possession, be, and they hereby are, authorized to employ and retain

Richards Layton as their co-counsel under a general retainer effective as of the commencement of

these cases; and it is further

ORDERED that nothing in this order shall be construed as preventing Richards

Layton from representing Manor Care, Inc. or any of its affiliates in any pending or future matter

that is unrelated to the Debtors or these cases; it is further

ORDERED that Richards Layton shall be compensated in accordance with the

procedures set forth in sections 330 and 331 of the Bankruptcy Code and such Federal Rules of

Bankruptcy Procedure as may then be applicable from time to time, and such procedures as may

be fixed by order of this Court.

DATED:    July 2 Y, 2000
          Wilmington, Delaware


_____
UNITED STATES BANKRUPTCY JUDGE

RLF#2163838-W

cc: M M Surdeles·, Esq·, J.S Trustee·

2

7/24/00

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I, Michael J. Merchant, hereby certify that on the 12th day of May, 2006, I electronically

filed the **Appellees' Response to Appellant's Motion to Disqualify Reorganized Debtors'**

**Counsel from Representing the Reorganized Debtors or Alternatively Reversing the**

**Bankruptcy Court's Denial of an Equity Committee** with the Clerk of the Court using

CM/ECF which will send notifications of such filing to the following :

> Teresa K.D. Currier
> currier@klettrooney.com

I, Michael J. Merchant, hereby certify that on the 12th day of May, 2006, I sent via

Federal Express (Non-Local) the **Appellees' Response to Appellant's Motion to Disqualify**

**Reorganized Debtors' Counsel from Representing the Reorganized Debtors or**

**Alternatively Reversing the Bankruptcy Court's Denial of an Equity Committee** to the

following participant:

> **Via Federal Express**
> James J. Hayes, Pro Se
> 4024 Estabrook Dr.
> Annandale, VA 22003

Michael J. Merchant (No. 3854)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
merchant@rlf.com

RLF1-3013451-1