IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GENESIS HEALTH VENTURES, INC., et al., | ) | Case No. 00-2692 (PJW) |
| Debtors, | ) | |
| | ) | |
| ──────────────────── | ) | |
| | ) | |
| JAMES J. HAYES, | ) | |
| Appellant, | ) | |
| | ) | C.A. No. 06-103 JJF |
| v. | ) | |
| | ) | |
| GENESIS HEALTH VENTURES, INC., et al., | ) | |
| Appellees. | ) | |

FILED
MAY 30 2006
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

RO Scanned

**APPELLANT'S REPLY TO APPELLEES' RESPONSE TO DISQUALIFY REORGANIZED DEBTORS' COUNSEL FROM REPRESENTING THE REORGANIZED DEBTORS**

**INTRODUCTION**

Weil, Gotshal & Manges' and Richards, Layton & Fingers', Response to the Motion to Disqualify them as the Reorganized Debtors' Counsel only raises additional conflict of interest issues that should be considered by this Court in conjunction with the Motion to Disqualify. Attached as exhibits to the their Response are their Affidavits that were submitted by the Genesis Debtors to the bankruptcy court in support of their applications for employment as Co-Attorneys for the Debtors. Both firms listed as

"current clients" several banks who were Senior Lenders in the under-secured Mellon Bank Credit agreement.[1]

Most significantly, Richards Layton listed Mellon Bank and Weil Gotshal listed Goldman Sachs as "current clients". These Senior Lenders are named as defendants in the *Haskell* suit that alleges a conspiracy, which also included George Hager the Genesis CFO, to undervalue the Genesis estate by understating the firms EBITDA earnings.[2] Other "current clients" included UBS Warberg & Company (Weil Gotshal), and Credit Suisse First Boston (Richards Layton and Weil Gotshal) who were appointed as the Joint Debtors' financial advisors. The two financial advisors used the allegedly fraudulently understated EBITDA to value the Genesis and Multicare estates.

The Weil Gotshal Affidavit also disclosed that it had received $1.4 million for pre-petition representation of Genesis.[3] According to the *Haskell* complaint, Weil Gotshal's pre-petition representation began at the same time that its client Goldman emerged as the leading Senior Lender and began advocating for Genesis to file for bankruptcy protection. C. 162.

---

[1] The Senior Lenders listed by Weil Gotshal as current clients included: ABM AMRO Bank, N.V., Bank America, N.A., Bankers Trust Co., Bank of Nova Scotia, CIBC, Inc., Chase, Citi Bank, N.A. Credit Suisse First Boston, DLJ Capital Funding, Dresdner Bank AG, First Union Bank, Fleet National Bank, and General Electric Capital.

The Senior Lenders listed by Richards Layton as current clients included: ABM AMRO Bank, Alliance Capital Management, Bank America, The Bank of New York, CIBC, Inc., Citicorp USA, Inc., Credit Suisse First Boston, Crestar Bank, Deutsche Bank AG, DLJ, Eaton Vance, Erste Bank Sparkassen AG, First Union National Bank, Fleet Bank, General Electric Capital Corporation, ING Group, INVESCO, Keycorp Capital, Lehman Commercial Paper, Inc., Mellon Bank, N.A., Keycorp Capital, Lehman Commercial Paper, Inc., Merrill Lynch & Co., Metropolitan Life Insurance Company, Morgan Stanley Dean Witter, Natexis Banque BFCE, Octagon Loan Investors and Toronto-Dominion, Inc..

[2] The Genesis Debtors application for employment of Richards Layton and Weil Gotshal as the Debtors' attorneys was executed by George Hager.

[3] Debtors' Application for Weil Gotshal, paragraph 5, p. 3. (Exhibit A to Response)

2

The Weil Gotshal Affidavit stated that the firm would:

> continue to apply the Firm Disclosure Procedures as additional information concerning entities with a connection to the Debtors is developed and will file supplemental disclosure with this Court if necessary.... and
>
> will not represent any of the aforementioned entities, or any of their respective affiliates or subsidiaries, in matters directly related to the Debtors or their chapter 11 cases.

Affidavit, paragraphs 11 & 12, p. 10. (Exhibit A to Response)

### REBUTTAL ARGUMENT

The Debtors' applied to employ Richards Layton and Weil Gotshal under a general retainer that specifically required these firms to: "take all necessary action to protect and preserve the Debtors' estates, including the prosecution of actions on the Debtors' behalf.... [and] to negotiate and prepare on behalf of the Debtors a plan of reorganization.$^4$

From the onset of the Genesis bankruptcy, as more fully explained in Appellant's Motion to Disqualify, Richards Laytons' and Weil Gotshals' representation of the Debtors inexplicably favored the interests of the Senior Lenders over the interests of the Debtors in protecting and preserving their estate. The clearest example was the Debtors' negotiation of a plan of reorganization that provided payments of $112 million in post-petition interest to the Senior Lenders despite the fact that under the Bankruptcy Code the Lenders were not entitled to post-petition interest because their loans were under-secured. The district court for the Northern District of Texas found such surreptitious

---

$^4$ Debtors' Application for Weil Gotshal, paragraph 12, p. 5. (Exhibit A to Response) and Debtors' Application for Richards Layton, paragraph 10, p. 4. (Exhibit B to Response)

3

representation a conflict of interest under 327(a). *In re Ken Davis Industries Intern. Inc.*, 91 B.R. 742, 751 (Bkrtcy. N.D. Tex. 1988)

The Debtors' Counsels' disclosure that Goldman and Mellon were current clients, at the same time that Debtors' Counsel was negotiating with Goldman and Mellon for a post-petition interest award for the Senior Lenders, many of whom who were also their clients, shows that Debtors' Counsel was representing an interest adverse to the Debtors.[5] This conclusion is inescapable considering the fact that the Bankruptcy Code would not allow post-petition interest on the Senior Lender's under-secured claims.

## I. Attorney Retention Under 327(a)

In their Response, the Reorganized Debtors' Counsel argues that they "are no longer retained pursuant to section 327(a) of the Bankruptcy Code." (R., p. 7:9)[6] This puzzling statement requires further explanation. Counsel does not state, for example, the date they claim their retention under 327(a) ended. On November 23, 2005, the Reorganized Debtors filed a Motion For Entry of a Final Decree and a final report in this bankruptcy case. Is this the date Counsel claims representation under 327(a) ended? One of the factors considered in granting a final decree is whether all motions, contested matters, and adversary proceedings have been fully resolved.[7] In any event, the hearing on the Motion for a Final Decree was postponed indefinitely.

---

[5] In their Response, the Reorganized Debtors state "Mr. Hayes has not pled any disqualifying contact in his Motion which would support disqualification of either professional. Their own client disclosures now allow this contention to be refuted.

[6] Response page 7 paragraph 9.

[7] Advisory Committee Notes to Bankruptcy Rule 3022.

The Reorganized Debtors' Counsel also state that: "[s]ection 327(a) does not govern the post-confirmation retention of professionals by a reorganized entity." Id. 7:9. This statement says nothing about whether professionals hired pursuant to 327(a) continue in their positions after confirmation. The Debtors' application for Richards Laytons' and Weil Gotshals' employment states a general retainer is "appropriate and necessary to formulate, negotiate, and implement a restructuring of their business and financial affairs."[8] The implementation of the Plan certainly followed confirmation and this continuing representation was contemplated by the 327(a) retention agreement.[9] Absent documentary evidence to the contrary, Richards Laytons' and Weil Gotshals' employment pursuant to 327(a) continues until a Final Decree Order is granted.

## II. Jurisdiction

The Reorganized Debtors' Counsel also argue that their retention "is not an issue before this Court on appeal. because Mr. Hayes did not object to the proposed retention... nor appeal the Bankruptcy Court's retention order.[10] (R., p.8:10) This is true, but irrelevant, as the real issue before this Court is Counsels continuing to act on its conflict of interest with Goldman, Mellon and other Senior Lender clients by working to deny shareholders an equity committee that could recover hundreds of millions in windfall

---

[8] Debtors' Application for Weil Gotshal, paragraph 12, p. 5. (Exhibit A to Opposition) and Debtors' Application for Richards Layton, paragraph 10, p. 4. (Exhibit B to Opposition)

[9] This question actually came up in the Ken Davis bankruptcy when the bankruptcy court confirmed a plan by the unsecured creditors' committee. Following confirmation, the reorganized debtor sought to replace the debtors' counsel, but was unsuccessful as the debtors' counsel prosecuted an appeal of the confirmation. *In re Ken Davis Industries Intern. Inc.*, 91 B.R. at 745.

[10] This argument is better justification for the appointment of an equity committee, as individual shareholder participation is simply not possible before shareholders have been notified of their right to participaate.

5

gains from the Senior Lenders for the benefit of the Genesis estate. The Third Circuit has stated that:

> 1) Section 327(a), as well as section 327(c), imposes a per se disqualification as trustee's counsel of any attorney who has an actual conflict of interest; 2) the district court may within its discretion – pursuant to section 327(a) and consistent with section 327(c) – disqualify an attorney who has a potential conflict of interest...

*In re Marvel Entertainment Group Inc.*, 140 F. 3rd 463, 476 ( 3d Cir. 1998)

The Reorganized Debtors' Counsel then argue that "any motion relating to their continued retention should have been filed with the Bankruptcy Court in the first instance." (R., p.8:10) "Generally a bankruptcy court has wide latitude to reconsider and vacate its own decision. [cite omitted] A pending appeal however, divests a bankruptcy court of jurisdiction." *In Re Adams Apple, Inc.* 829 F. 2d 1484, 1489 (9th Cir. 1987). In an earlier decision, the Ninth Circuit determined:

> The general rule is that once a notice of appeal has been filed, the lower court loses jurisdiction over the subject matter of the appeal.... This rule is clearly necessary to prevent the procedural chaos that would result if concurrent jurisdiction were permitted.

*In re Combined Metals Reduction Co.*, 557 F. 2d 179 (9th Cir. 1977)

When Hayes filed a Notice of Appeal, the Bankruptcy Court lost its jurisdiction over the appointment of a Pre-Final Decree Equity Committee. For the same reason, it does not have jurisdiction over arguments particular to this appeal that Reorganized Debtors' Counsels' representation of the Appellee is a continuing representation of interests adverse to the Debtors' estate in favor of the interests of their Senior Lender clients.

6

### III. Prior Disclosure Is Not Dispositive

Finally, the Reorganized Debtors argue that because Richards Layton and Weil Gotshal disclosed their current representation of the Senior Lenders, including Goldman and Mellon, and the investment banks UBS Warberg & Company and Credit Suisse First Boston, to the Bankruptcy Court in their 327(a) applications; that "Mr. Hayes' Motion is substantively devoid of any merit." (R., p. 8:11) There are factual problems with this argument. The bankruptcy court judge, the Hon. Peter Walsh – who reviewed the 327(a) disclosures and signed the Orders appointing counsel – did not preside over this complex bankruptcy reorganization as the case was transferred to the Hon. Judith Wizmur, who presided in Camden, New Jersey. The Reorganized Debtors provide no evidence that Judge Wizmur was aware of the panoply of potential conflicts of interest with the current clients listed in the Debtors' Counsels' application. To the contrary, it is difficult to believe that Judge Wizmur would have confirmed a reorganization plan that, for example, paid post-petition interest to the Senior Lenders had she been aware of the extensive inclusion of Senior Lenders as current clients of Debtors' Counsel, and that Debtors' Counsel negotiated this contingency with Goldman and Mellon, Senior Lenders who were also its clients.

It is also unclear as to whether Judge Wizmur was aware that Weil Gotshal disclosed that it had received $1.4 million for pre-petition representation of Genesis from March 6, 2000 to June 22, 2000, perhaps not coincidently when their client Goldman became interested in pushing Genesis into bankruptcy. According to Haskell complaint:

> Goldman inserted itself into these proceedings in about March of 2000, at a time when Genesis management was optimistic about Genesis' prospects and was projecting EBITDA for the Company in the $200 million range. First, it joined the senior lender steering committee. Its

7

attitude manifested itself immediately: at the March meeting of Genesis with the steering committee, management proposed that Genesis' debts be restructured so that the junior bonds could be repurchased at a deep discount to market. The response of the Goldman representative, Jody La Nassa, as recorded in his notes, was "R U Nuts?" This revealing comment unmasks Goldman's intent to enrich itself, as much as possible, at the expense of the debenture holders.

C. 162.

Judge Wizmur did not become aware of the details in *Haskell* complaint until sometime after July 2004 and it is not clear when she studied it carefully. But even then it is unlikely that she would have tied the *Haskell* allegations of Goldman's pushing Genesis into bankruptcy with obscure 234(a) disclosures suggesting this effort was really a collaboration between Weil Gotshal and Goldman four years before she was assigned to the case.

The First Circuit makes it clear that counsel has a continuing obligation to make supplemental disclosures – "...the need for professionals self scrutiny and avoidance of conflicts of interest does not end on appointment." *Rome v. Braunstein*, 19 F. 3d. 54, 57 (1st Cir. 1994) The First Circuit explanation continues:

> As with other prophylactic ethical rules constraining attorney conduct, sections 327(a) and 328(c) cannot achieve their purpose unless court-appointed counsel police themselves in the first instance, especially in circumstances... where nominal applicant for [counsel's] appointment is corporate debtor in possession who can only act through its officers... and *may not command appointee's primary loyalty*.... Thus, as soon as counsel acquires even constructive knowledge reasonably suggesting an actual or potential conflict, a bankruptcy court ruling should be obtained.
>
> . . .
>
> Absent the spontaneous, timely, and complete disclosure required by 327(a) and Bankruptcy Rule 2104(a), court-appointed counsel proceed *at their own risk*. (Emphasis in the opinion)

*Rome v. Braunstein*, 19 F. 3d. 54, 59 (1st Cir. 1994)

. The Reorganized Debtors' Counsels' response does not indicate that any supplemental disclosures were made and consequently their assertion that the Motion to Disqualify is devoid of merit is patently false.

## CONCLUSION

Richards Layton and Weil Gotshal as Debtors/Reorganized Debtors' Counsel by acting on their conflicts of interest with current clients Goldman Sachs, Mellon Bank and numerous other Senior Lenders has throughout this bankruptcy favored the Senior Lenders' interest over the interests of the Debtors' estate. Third Circuit precedent requires disqualification for any further representation of Reorganized Debtors' estate.

Dated: May 25, 2006
Annandale, VA 22003

Respectfully Submitted,

*James J. Hayes*

James J. Hayes, Pro Se
4024 Estabrook Dr.
Annandale, VA 22003
(703) 941-4694

## CERTIFICATE OF SERVICE

I certify a copy of the foregoing Motion was mailed from the Northern Virginia Regional Post Office on May 25, 2006 to the following counsel:

Russell C. Silberglied
Richards Layton and Finger P.A.
One Rodney Square
Wilmington, DE 19899; and

Adam P. Strochak
Weil, Gotshal & Manges LLP
1300 Eye Street, NW, Suite 900
Washington, DC 20005; and

Katherine B. Gresham
Assistant General Counsel
Bankruptcy and Appellate Litigation
Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549

_____
James J. Hayes



4024 Estabrook Dr.
Annandale, VA 22003

Clerk's Office
U.S. District Court
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801



U.S.M.S. X-RAY