# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | **Chapter 11** |
| | : | |
| **GENESIS HEALTH VENTURES, INC.,** | : | **Bankruptcy Case No. 00-2692-PJW** |
| **et al.,** | : | |
| | : | |
| **Debtors.** | : | |
| | : | |
| | : | |
| **JAMES J. HAYES,** | : | |
| | : | |
| **Appellant,** | : | |
| | : | |
| **v.** | : | **Civil Action No. 06-103-JJF** |
| | : | |
| **GENESIS HEALTH VENTURES, INC.,** | : | |
| **et al.,** | : | |
| | : | |
| **Appellees.** | : | |
| | : | |

## APPELLEE MELLON BANK, N.A.'s
## ANSWERING BRIEF ON APPEAL

Menachem O. Zelmanovitz
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York  10178
(212) 309-6000

Teresa K.D. Currier (3080)
KLETT ROONEY LIEBER &
SCHORLING, P.C.
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, Delaware  19801
(302) 552-4200

Attorneys for Appellee Mellon Bank, N.A.

Dated: June 22, 2006
        Wilmington, Delaware

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT.................................................................................... 1

STATEMENT OF FACTS........................................................................................... 2

THE RECONSIDERATION MOTION......................................................................... 3

STANDARD OF APPELLATE REVIEW..................................................................... 4

ARGUMENT............................................................................................................. 5

      I.     HAYES HAS FAILED TO SHOW CAUSE FOR
            RECONSIDERATION OF THE SENIOR LENDER CLAIMS................ 5

            1.    Creditors Who Purchase Notes At a Discount Are
                 Entitled to Claims in the Face Value of the Notes........................ 6

            2.    The Unproven, Conclusory Allegations of Third Parties
                 in the Haskell Litigation Are Not Cause for
                 Reconsideration of the Claims............................................... 7

      II.    ALTERNATIVELY, HAYES' APPEAL MUST BE DISMISSED
            AS EQUITABLY MOOT................................................................ 8

CONCLUSION......................................................................................... 10

## TABLE OF AUTHORITIES

### Federal Cases

In re After Six, Inc., 177 B.R. 219 (Bankr. E.D. Pa. 1995) . . . . . . . . . . . . . . . 6

Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims, 160 F.3d 982 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

In re Claxton, 76 B.R. 539 (Bankr. E.D. Va. 1987) . . . . . . . . . . . . . . . . . . . 6

In re Colley, 814 F.2d 1008 (5th Cir.), cert. denied, 484 U.S. 898 (1987). . . . 4, 5, 8, 10

In re Continental Airlines, 91 F.3d 553 (3d. Cir. 1996) (en banc) . . . . . . . . . . 8, 9

In re Fairfield Exec. Assocs., 161 B.R. 595 (D.N.J. 1993) . . . . . . . . . . . . . . . 6

In re Genesis Health Ventures, Inc., 266 B.R. 591 (Bankr. D. Del. 2001), appeal dismissed, 280 B.R. 339 (D. Del. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

In re Genesis Health Ventures, Inc., 324 B.R. 510 (Bankr. D. Del. 2005) . . . . . . . . 7

In re Genesis Health Ventures, Inc., Civil Action No. 01-718-JJF (D. Del. Sep. 30, 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

In re Genesis Health Ventures, Inc., Civil Action No. 01-718-JJF (D. Del. Mar. 12, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

In re Genesis Health Ventures, Inc., Civil Action No. 01-718-JJF (D. Del. Feb. 26, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

In re Genesis Health Ventures, Inc., Civil Action No. 02-16-JJF (D. Del. Sep. 30, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

In re Genesis Health Ventures, Inc., Civil Action No. 04-0477-JJF, 2005 U.S. Dist. Lexis 14904 (D. Del. July 23, 2005) (op. attached in annex of unreported cases) . . . . 2, 3, 9

In re Genesis Health Ventures, Inc., Civil Action No. 05-427-KAJ, 2006 U.S. Dist. Lexis 18177 (D. Del. Mar. 29, 2006) (op. attached in annex of unreported cases) . . . . . . . 7

In re Inacom Corp., Civil Action No. 04-390-GMS, 2004 U.S. Dist. Lexis 20822 (D. Del. Oct. 4, 2004) (op. attached in annex of unreported cases) . . . . . . . . . . . . . . . 4

Morse v. Lower Merion Sch. Dist., 132 F.3d 902 (3d Cir. 1997) . . . . . . . . . . . 4

In re Motor Freight Express, 91 B.R. 705 (Bankr. E.D. Pa. 1988) . . . . . . . . . 5, 8

In re Pittsburgh Rys. Co., 159 F.2d 630 (3d Cir. 1946), cert. denied 331
U.S. 819 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

In re Rabzak, 79 B.R. 960 (Bankr. E.D. Pa. 1987)  . . . . . . . . . . . . . . . . . . . 5

Securities Investor Protection Corp. v. Stratton Oakmont, Inc., 234 B.R. 293 (Bankr.
S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

In re W.F. Hurley, Inc., 612 F.2d 392 (8th Cir. 1980)  . . . . . . . . . . . . . . . . . 4

**Statutory Provisions**

11 U.S.C. § 502(j) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3, 4, 5, 6

11 U.S.C. §510(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

11 U.S.C. §1144 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

Fed. R. Bankr. P. 3008 . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

Fed. R. Bankr. P. 7001(7) . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

Fed. R. Bankr. P. 8002(a) . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

Fed. R. Civ. P. 59 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

Fed. R. Civ. P. 60(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

Appellee Mellon Bank, N.A. ("Mellon"), administrative agent for the senior secured lenders (the "Senior Lenders") to Genesis Health Ventures, Inc. ("Genesis") and Multicare AMC, Inc. ("Multicare"), hereby submits this memorandum of law in opposition to Appellant James J. Hayes' appeal of the March 2, 2006 order (the "March 2 Order") of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), Judge Judith H. Wizmur, which denied Hayes' motions for the appointment of a pre-final decree equity committee and for reconsideration of the orders allowing the Senior Lender claims, and granted Appellees' cross-motion for sanctions.[1]

## PRELIMINARY STATEMENT

This appeal is but another chapter in Hayes' continued pursuit of frivolous litigation in these bankruptcy cases. Hayes' motion for reconsideration of the Senior Lender claims (the "Reconsideration Motion"), coming more than four years after such claims were allowed and paid pursuant to the confirmed joint plan of reorganization in the Genesis and Multicare bankruptcy cases (the "Plan"), set forth no cognizable grounds for reconsideration of these claims. Creditors who purchase notes at a discount are entitled to claims in the full face value of such notes. Moreover, Hayes cannot satisfy the statutory requirement of "cause" with the bare, conclusory and unproven allegations of third parties in a litigation to which he is not a party. Finally, the doctrine of equitable mootness mandates rejection of Hayes' appeal of the order that denied his patently stale motion.

---

[1] To avoid burdening the Court with duplicative arguments, this memorandum addresses only Hayes' appeal of the denial of his motion for reconsideration of the Senior Lender claims. Mellon joins in and incorporates by reference the arguments set forth in the Reorganized Debtors' answering brief with respect to the Bankruptcy Court's denial of Hayes' motion for appointment of a pre-final decree equity committee and its granting of the cross-motion for sanctions against Hayes.

Accordingly, this Court should affirm the Bankruptcy Court's March 2 Order denying the Reconsideration Motion or, alternatively, dismiss Hayes' appeal as equitably moot. The Court should further consider appropriate sanctions against Hayes for this utterly meritless appeal.

## STATEMENT OF FACTS

Mellon acted as administrative agent for the Senior Lenders under Genesis' and Multicare's prepetition and post-petition credit agreements. In re Genesis Health Ventures, Inc., 266 B.R. 591, 604 (Bankr. D. Del. 2001), appeal dismissed, 280 B.R. 339 (D. Del. 2002). At confirmation of the Plan, in excess of $1.2 billion and $443 million were due and outstanding under Genesis' and Multicare's prepetition credit agreements, respectively. Id. at 597-98. In addition, under the post-petition credit agreements, Mellon, as administrative agent, and certain of the Senior Lenders provided Genesis and Multicare with debtor-in-possession financing up to the respective maximum amounts of $250,000,000 and $50,000,000. See Disclosure Statement for Debtors' Joint Plan of Reorganization at 66-67, A56-57.[2]

The Plan was confirmed by the Bankruptcy Court by order entered on September 20, 2001. Genesis Health Ventures, 280 B.R. at 342. The Plan became effective and was substantially consummated on or about October 2, 2001. Id.

Hayes is a former common stock holder of Genesis who has litigated pro se against the Plan continuously and unsuccessfully since prior to the confirmation hearings. See, e.g., In re Genesis Health Ventures, Inc., Civil Action No. 04-0477-JJF, 2005 U.S. Dist. Lexis 14904, at

---

[2] References to the Appendix to Appellee Mellon Bank, N.A.'s Answering Brief on Appeal are denoted as "A" with numerical page references.

*6-7 (D. Del. July 23, 2005).[3]  Among other things, Hayes filed an objection to the Plan, several

motions for the appointment of an equity committee, and numerous appeals from the

confirmation order and other orders of the Bankruptcy Court and this Court, all of which were

denied or dismissed.  Id.

## THE RECONSIDERATION MOTION

In the Reconsideration Motion, Hayes for the first time sought reconsideration of the

Senior Lenders' claims pursuant to 11 U.S.C. § 502(j), more than four years after the Plan was

substantially consummated, A1-9.

The only purported grounds proffered by Hayes for reconsideration of the Senior Lender

claims appear to be the following:  (a) the claims asserted against three of the Senior Lenders in

the action captioned Haskell, et al. v. Goldman, Sachs & Co., et al., Adv. No. 04-53375 (PJW)

(the "Haskell Litigation"), to which Hayes is not a party; and (b) Hayes' allegation that certain of

the Senior Lenders reaped "windfall profits" by purchasing their claims from the original lenders

at a discount.

At the hearing held on January 19, 2006, the Bankruptcy Court denied the

Reconsideration Motion, stating:

> There are 2 motions presented here.  One is a motion to reconsider
> the order allowing the Genesis and Multicare senior lender claims.
> And we understand that 502(j) requires that cause be established in
> order to justify such a reconsideration, if you will, and no such

---

[3]  See also In re Genesis Health Ventures, Inc., Civil Action No. 01-718-JJF (D. Del. Sep. 30, 2002) (order denying motion for appointment of equity committee for purpose of appealing confirmation of the Plan), A47-48; In re Genesis Health Ventures, Inc., Civil Action No. 02-16-JJF (D. Del. Sep. 30, 2002) and Civil Action No. 01-718-JJF (D. Del. Mar. 12, 2003) (orders dismissing appeal from confirmation order), A49-51; In re Genesis Health Ventures, Inc., Civil Action No. 01-718-JJF (D. Del. Feb. 26, 2004) (order denying motion to reopen), A52-54.

cause has been provided here.  One suggestion is that because there are allegations in a complaint that has been dismissed that one senior lender, or several senior lenders, who were senior lenders at the time of the confirmation achieved their position at a discount, that there is a basis to warrant a re-prioritization of the entire plan that was confirmed over 4 years ago.  That's mind boggling.  That's not available as an opportunity for relief.  There is no opportunity to reclassify into speculative and non-speculative portions.  There's no provision of the Bankruptcy Code that allows for that . . . .  Right now we're operating in the framework that [the Bankruptcy Code] does not permit a division of a claim based on the price at which the holder of the claim achieved that interest.  Not to mention that it's 4 years after confirmation and what's sought is a complete revision of the confirmed plan, which has been affirmed on appeal and which cannot be disturbed at this point.  So that motion must be denied.

See Transcript of January 19, 2006 Hearing at 24-25, A39-40.  The Bankruptcy Court thereafter entered the March 2 Order (A45-46), from which the present appeal was taken.[4]

## STANDARD OF APPELLATE REVIEW

A district court reviews a bankruptcy court's ruling on a motion to reconsider claims pursuant to 11 U.S.C. § 502(j) under the abuse of discretion standard.  See In re Colley, 814 F.2d 1008, 1010 (5th Cir.), cert. denied, 484 U.S. 898 (1987) (citing In re W.F. Hurley, Inc., 612 F.2d 392 (8th Cir. 1980)); see also In re Inacom Corp., Civil Action No. 04-390-GMS, 2004 U.S. Dist. Lexis 20822, *8 (D. Del. Oct. 4, 2004).

Moreover, the Bankruptcy Court's decision may be upheld on any theory finding support in the record even if not relied on by the Court below.  See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 903 (3d Cir. 1997).

---

[4] In fact, Hayes filed his notice of appeal (A58) after the hearing and before entry of the March 2 Order.  However, Fed. R. Bankr. P. 8002(a) provides that "[a] notice of appeal filed after the announcement of a decision or order but before entry of the … order, … shall be treated as filed after such entry and on the day thereof."  Thus, Hayes' notice of appeal is treated as filed after entry of the March 2 Order.

**ARGUMENT**

## I.    HAYES HAS FAILED TO SHOW CAUSE FOR RECONSIDERATION OF THE SENIOR LENDER CLAIMS.

Section 502(j) of the Bankruptcy Code provides that claims in bankruptcy that have been allowed or disallowed may be "reconsidered for cause". See 11 U.S.C. § 502(j); Fed. R. Bankr. P. 3008. In order for such a motion for reconsideration to be granted, "cause" invoking in a timely manner "at least one" of the grounds set forth in either Fed. R. Civ. P. 59 or Fed. R. Civ. P. 60(b) must be articulated. See, e.g., Colley, 814 F.2d at 1010; In re Motor Freight Express, 91 B.R. 705, 711 (Bankr. E.D. Pa. 1988); In re Rabzak, 79 B.R. 960, 964 (Bankr. E.D. Pa. 1987). Further, as the court in Colley stated and as evidenced in the Advisory Committee Note to Bankruptcy Rule 3008, "the bankruptcy court's discretion in deciding whether to reconsider a claim is virtually plenary, as the court may decline to reconsider without a hearing or notice to the parties involved." Colley, 814 F.2d at 1010.

Hayes appears to assert that the fact that certain Senior Lenders allegedly purchased their notes at a discount, together with the unproven, conclusory and irrelevant allegations asserted in the Haskell Litigation against three of the Senior Lenders, justifies reconsideration of the Senior Lenders' claims more than four years after the Plan was consummated. See Appellant's Opening Brief at 8-9, 20-21. Setting aside the patent staleness of the Reconsideration Motion, Hayes' assertions clearly do not satisfy the statutory requisite of cause to permit reconsideration of the Senior Lenders' claims. Thus, the motion was properly denied by the Bankruptcy Court.

1.    Creditors Who Purchase Notes At a Discount Are Entitled to
      Claims in the Face Value of the Notes.

Hayes asserts that certain Senior Lenders reaped "windfall profits" because they purchased notes at a discount. See Appellant's Opening Brief at 9. Hayes argues that "the equities of the case" and the principles of equitable subordination under 11 U.S.C. § 510(c)(1)[5] justify the reconsideration of such creditors' claims so as to deprive them of the benefit of their bargain and business acumen. Id. at 21.

However, the draconian remedy of equitable subordination is "not to be invoked lightly" and requires that there have been some form of egregious or inequitable conduct by the creditor whose claim is to be subordinated. See, e.g., Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims, 160 F.3d 982, 986-987 (3d Cir. 1998); In re After Six, Inc., 177 B.R. 219, 231 (Bankr. E.D. Pa. 1995) (citing In re Claxton, 76 B.R. 539, 546 (Bankr. E.D. Va. 1987).

Courts have routinely held that a creditor who purchases a note at a discount is entitled to a claim in the face amount of the note. See, e.g., In re Fairfield Exec. Assocs., 161 B.R. 595, 602 (D.N.J. 1993); see also In re Pittsburgh Rys. Co., 159 F.2d 630, 632-33 (3d Cir. 1946), cert. denied, 331 U.S. 819 (1947) (a claim is determined by the consideration received by the debtor not the amount paid by the current holder of the claim). By purchasing their notes at a discount, the Senior Lenders were guilty of no egregious or inequitable conduct and were entitled to allowed claims in the full face amount of the notes they acquired.

---

[5]  The form by which Hayes sought such relief was also improper. A proceeding to equitably subordinate a claim must be brought as an adversary proceeding. See Fed. R. Bankr. P. 7001(7).

2.    The Unproven, Conclusory Allegations of Third Parties in the Haskell Litigation Are Not Cause for Reconsideration of the Claims.

The Bankruptcy Court initially dismissed the Haskell Litigation in its entirety on grounds of res judicata, collateral estoppel, and the limitations period for revocation of confirmation orders set forth in Section 1144 of the Bankruptcy Code. See In re Genesis Health Ventures, Inc., 324 B.R. 510, 529 (Bankr. D. Del. 2005). Although the District Court vacated the dismissal of the Haskell Litigation as to the Senior Lender defendants and remanded to the Bankruptcy Court, it did so simply because it was uncertain as to whether the Bankruptcy Court had considered all of the allegations of the complaint. In re Genesis Health Ventures, Inc., Civil Action No. 05-427-KAJ, 2006 U.S. Dist. Lexis 18177, at *12 (D. Del. March 29, 2006). The District Court expressly did not rule on any of the grounds asserted for dismissal and instead remanded the case to the Bankruptcy Court "for further proceedings consistent with [its] opinion, including consideration of whether [11 U.S.C.] § 1144 bars relief against all Defendants." Id. at *13-14. Defendants' renewed motion to dismiss is currently pending before the Bankruptcy Court. See Defendants' Joint Motion to Dismiss Plaintiffs' Complaint dated June 9, 2006 (Docket No. 59) in the Haskell Litigation.

Simply stated, the bare unproven, conclusory and, indeed, irrelevant allegations in the Haskell Litigation against only three of the Senior Lenders[6] cannot constitute "cause" for reconsideration of the Senior Lender claims. Hayes' fanciful allegation of a "Wall Street takeover" (Appellant's Opening Brief at 21) is based solely on the Haskell Litigation – to which he is not a party, in which there has been no discovery, and in which the claims are subject to a

---

[6]  Hayes concedes that the Senior Lender defendants in the Haskell Litigation received no more than 22.7% of the Reorganized Debtor's stock (Appellant's Opening Brief at 6) out of the 94% issued to the Senior Lenders. Id. at 1.

pending motion to dismiss. Because of the interest in finality, parties seeking reconsideration of claims cannot merely "rehash . . . original objections to the claims," but rather must make specific factual allegations. Colley, 814 F.2d at 1010; Motor Freight Express, 91 B.R. at 711. Indeed, fraud allegations cannot be based upon mere information and belief. Securities Investor Protection Corp. v. Stratton Oakmont, Inc., 234 B.R. 293, 310 (Bankr. S.D.N.Y. 1999). A fortiori, mere reference to another party's unproven allegations cannot suffice.

Hayes' arguments are all premised on his original objection to the Plan, specifically, his objection to the prior valuation of the Debtors on which the Plan distributions were based. The grounds of that prior objection cannot constitute cause for reconsideration of claims at this late date. Hayes has failed to enunciate any new grounds for reconsideration of the Senior Lender claims and, accordingly, the March 2 Order should be affirmed.

## II. ALTERNATIVELY, HAYES' APPEAL MUST BE DISMISSED AS EQUITABLY MOOT.

As this Court previously stated:

> Under the doctrine of equitable mootness, "[a]n appeal should . . . be dismissed as moot, even though effective relief could conceivably be fashioned, where implementation of that relief would be inequitable." In re Continental Airlines, 91 F.3d 553, 559 (3d Cir. 1996) (en banc). The equitable mootness doctrine is aimed at "prevent[ing] a court from unscrambling complex bankruptcy reorganizations when the appealing party should have acted before the plan became extremely difficult to retract." Nordhoff Investments, Inc. v. Zenith Elecs. Corp., 258 F.3d 180, 185 (3d Cir. 2001). As adopted by the Third Circuit in Continental, the doctrine of equitable mootness requires the court to balance five factors which are unique to bankruptcy proceedings:
>
> > (1) whether the reorganization plan has been substantially consummated; (2) whether a stay has been obtained; (3) whether the relief requested would

> affect the rights of parties  not before the court; (4)
> whether the relief requested would affect the success
> of the plan; and (5) the public policy of affording
> finality to bankruptcy judgments.
>
> Continental, 91 F. 3d at 560.  The manner in which these factors
> are weighed depends on the facts and circumstances of each case.
> Id.

Genesis Health Ventures, 2005 U.S. Dist. Lexis 14904, at *4-5.

This Court has twice before dismissed appeals in these bankruptcy cases as equitably moot, including a prior appeal by Hayes.  The Court's dismissal of Hayes' appeal of the confirmation order on such grounds was affirmed by the Third Circuit Court of Appeals and appellant's application for certiorari was denied by the United States Supreme Court. Id. at *6. Similarly, this Court previously dismissed Hayes' appeal of the Bankruptcy Court's order denying his motion for a post-confirmation equity committee as equitably moot. Id.

In dismissing these prior appeals, the Court's conclusions regarding the application of the Continental factors applies with equal force to this appeal.  In denying the Reconsideration Motion, the Bankruptcy Court correctly recognized that "it's 4 years after confirmation and what's sought is a complete revision of the confirmed plan, which has been affirmed on appeal and which cannot be disturbed at this point." Transcript of January 19, 2006 Hearing at 25, A40.

The Plan was substantially consummated and Hayes neither sought nor obtained a stay of the confirmation order.  Genesis Health Ventures, 2005 U.S. Dist Lexis 14904, at *5-6. "Because the confirmation order cannot be challenged," Hayes' request for reconsideration of the Senior Lender claims is equitably moot. Id. at *6.

As one court stated in denying a motion to reconsider claims, "[a]lthough old bankruptcy cases, like old soldiers, never die, we shall endeavor to put this one at rest." Colley, 814 F.2d at 1009. It is high time that this case and Hayes' continuous, repetitive and vexatious litigation be put to rest.

## CONCLUSION

For all the foregoing reasons, and the reasons stated in the Reorganized Debtors' answering brief on appeal, Mellon respectfully requests that this Court affirm the Bankruptcy Court's March 2 Order or, alternatively, dismiss Hayes' appeal from said Order as equitably moot, and grant such other and further relief as the Court deems just and proper, including appropriate sanctions against Hayes for his continuing frivolous and vexatious litigation.

Dated: June 22, 2006
      Wilmington, Delaware

                              Teresa K.D. Currier (3080)
                              KLETT ROONEY LIEBER &
                              SCHORLING, P.C.
                              The Brandywine Building
                              1000 West Street, Suite 1410
                              Wilmington, Delaware  19801
                              (302) 552-4200

                              -and-

                              Menachem O. Zelmanovitz
                              MORGAN, LEWIS & BOCKIUS LLP
                              101 Park Avenue
                              New York, New York  10178
                              (212) 309-6000

                              Attorneys for Appellee Mellon Bank, N.A.

## **ANNEX OF UNREPORTED CASES**

In re Genesis Health Ventures, Inc., Civil Action No. 04-0477-JJF, 2005 U.S. Dist. Lexis 14904 (D. Del. July 23, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 9

In re Genesis Health Ventures, Inc., Civil Action No. 05-427-KAJ, 2006 U.S. Dist. Lexis 18177 (D. Del. Mar. 29, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In re Inacom Corp., Civil Action No. 04-390-GMS, 2004 U.S. Dist. Lexis 20822 (D. Del. Oct. 4, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . 4

Service: **Get by LEXSEE®**
Citation: **2005 U.S. Dist. Lexis 14904**

*2005 U.S. Dist. LEXIS 14904, \**

IN RE: GENESIS HEALTH VENTURES, INC., et al., Debtors. JAMES J. HAYES, Appellant, v. GENESIS HEALTH VENTURES, INC., et al., Appellees.

Civil Action No. 04-0477-JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2005 U.S. Dist. LEXIS 14904

July 23, 2005, Decided

**PRIOR HISTORY: [\*1]** Chapter 11. Bankruptcy Case No. 00-2692-JHW.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Appellant challenged the order of the United States Bankruptcy Court for the District of Delaware which denied the appellant's for appointment of a post-confirmation equity committee. Appellee debtors filed a motion for damages and costs for frivolous appeal pursuant to Fed. R. Bankr. P. 8020.

**OVERVIEW:** Appellant claimed that the bankruptcy court erred in declining to appoint a post-confirmation equity committee, inter alia. The debtors claimed that the appeal should be dismissed under the doctrine of equitable mootness because the bankruptcy plan had been substantially consummated and appellant did not obtain a stay of the confirmation order. The court held that the bankruptcy plan was substantially consummated and appellant neither sought nor obtained a stay of the confirmation order. Because the confirmation order could not be challenged, appellant's request for the appointment of a post-confirmation equity committee to support the appeal of the bankruptcy court's confirmation order was equitably moot. The bankruptcy court's finding that debtors were completely insolvent was supported by the valuation evidence presented to the bankruptcy court, and the court concurred with the bankruptcy court's conclusion that the appointment of an equity committee was not warranted in the circumstances of this case. In these circumstances and given appellant's status as a pro se litigant, the court declined to award damages and costs under Fed. R. Bankr. P. 8020.

**OUTCOME:** The court dismissed the appeal and, in the alternative, affirmed the bankruptcy court's order. In addition, the motion for damages and costs was denied.

**CORE TERMS:** confirmation, moot, post-confirmation, appointment, equitable, mootness, reasons discussed, shareholder, consummated, relief requested, new evidence, equitably, appoint, plenary, precepts, affirming, insolvent

### LexisNexis(R) Headnotes ♦ Hide Headnotes

Bankruptcy Law > Practice & Proceedings > Appeals > Jurisdiction

Bankruptcy Law > Practice & Proceedings > Appeals > Standards of Review > Clear Error Review

Bankruptcy Law > Practice & Proceedings > Appeals > Standards of Review > De Novo Review

*HN1* ± A federal district court has jurisdiction to hear an appeal from the bankruptcy court pursuant to 28 U.S.C.S. § 158(a). In undertaking a review of the issues on appeal, the court applies a clearly erroneous standard to the bankruptcy court's findings of fact and a plenary standard to its legal conclusions. With mixed questions of law and fact, the court must accept the bankruptcy court's finding of historical or narrative facts unless clearly erroneous, but exercises plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts. The appellate responsibilities of the court are further understood by the jurisdiction exercised by the Third Circuit, which focuses and reviews the bankruptcy court decision on a de novo basis in the first instance. More Like This Headnote

Bankruptcy Law > Practice & Proceedings > Appeals > General Overview 🔸

Civil Procedure > Appeals > Dismissals of Appeals > Involuntary Dismissals 🔸

*HN2* ± Under the doctrine of equitable mootness, an appeal should be dismissed as moot, even though effective relief could conceivably be fashioned, where implementation of that relief would be inequitable. The equitable mootness doctrine is aimed at preventing a court from unscrambling complex bankruptcy reorganizations when the appealing party should have acted before the plan became extremely difficult to retract. More Like This Headnote

Bankruptcy Law > Practice & Proceedings > Appeals > General Overview 🔸

*HN3* ± The doctrine of equitable mootness requires the court to balance five factors which are unique to bankruptcy proceedings: (1) whether the reorganization plan has been substantially consummated; (2) whether a stay has been obtained; (3) whether the relief requested would affect the rights of parties not before the court; (4) whether the relief requested would affect the success of the plan; and (5) the public policy of affording finality to bankruptcy judgments. The manner in which these factors are weighed depends on the facts and circumstances of each case. More Like This Headnote

**COUNSEL:** James J. Hayes, Pro se, for Appellant.

Mark D.Collins, Esquire, Russell C. Silberglied, Esquire and Christina M. Houston, Esquire of RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware. Of Counsel: Adam P. Strochak, Esquire and Lisa R. Fine, Esquire of WEIL, GOTSHAL & MANGES LLP, Washington, D.C. Michael F. Walsh, Esquire and Gary T. Holtzer, Esquire of WEIL, GOTSHAL & MANGES LLP, New York, New York, for Appellees.

**JUDGES:** Farnan, District Judge.

**OPINIONBY:** Joseph J. Farnan Jr.

**OPINION: MEMORANDUM OPINION**

July 23, 2005
Wilmington, Delaware

Joseph J. Farnan Jr.
**Farnan, District Judge.**

Pending before the Court is an appeal of the May 13, 2004 Order of the United States Bankruptcy Court for the District of Delaware denying the motion of Appellant, James J. Hayes, for appointment of a post-confirmation equity committee. In addition, the Debtors, Genesis Health Ventures, Inc. and its affiliates ("Genesis") have filed a Motion For Damages And Costs For Frivolous Appeal Pursuant To Bankruptcy Rule 8020 (D.I. 15). For the reasons discussed, the Court will dismiss this appeal, and in the alternative, affirm the May 13, 2004 Order **[\*2]** of the Bankruptcy Court. In addition, the Court will deny the Motion For Damages And Costs filed by Genesis.

## I. Parties Contentions

By his appeal, Hayes contends that the Bankruptcy Court erred in declining to appoint a post-confirmation equity committee. Hayes contends that the Bankruptcy Court failed to consider whether the equity shareholders were adequately represented, whether the shares were widely held and publicly traded, the size and complexity of the bankruptcy proceeding, the timing of his request vis-a-vis the status of the case, and "new evidence" in the Haskell Complaint. Hayes also contends that the Bankruptcy Court's decision violates shareholders' due process rights under the Fifth Amendment.

In response, Genesis contends that Hayes' appeal should be dismissed under the doctrine of equitable mootness, because the Plan has been substantially consummated and Hayes did not obtain a stay of the confirmation order. Genesis also contends that Hayes' appeal is barred by the doctrine of res judicata and collateral estoppel. Specifically, Genesis refers the Court to two prior appeals filed by Hayes and dismissed by the Court. In addition, Genesis points out that **[\*3]** the Third Circuit has affirmed this Court's dismissal of Hayes' appeal of the confirmation order, and therefore, Hayes' request to appoint an equity committee to litigate the appeal of the confirmation order is moot.

In the alternative to its procedural arguments in support of dismissal, Genesis contends that Hayes' appeal should be dismissed on the merits, because Genesis is "hopelessly insolvent." As a result, Genesis contends that the costs associated with the appointment of an equity committee outweigh the concern for shareholder representation.

## II. STANDARD OF REVIEW

*HN1*⊤The Court has jurisdiction to hear an appeal from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a). In undertaking a review of the issues on appeal, the Court applies a clearly erroneous standard to the Bankruptcy Court's findings of fact and a plenary standard to its legal conclusions. See Am. Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 80 (3d Cir. 1999). With mixed questions of law and fact, the Court must accept the Bankruptcy Court's finding of "historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review **[\*4]** of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" Mellon Bank. N.A. v. Metro Communications, Inc., 945 F.2d 635, 642 (3d Cir. 1991) (citing Universal Minerals, Inc. v. C. A. Hughes & Co., 669 F.2d 98, 101-02 (3d Cir. 1981)). The appellate responsibilities of the Court are further understood by the jurisdiction exercised by the Third Circuit, which focuses and reviews the Bankruptcy Court decision on a de novo basis in the first instance. Baroda Hill Inv., Inc. v. Telegroup, Inc. (In re Telegroup, Inc.), 281 F.3d 133, 136 (3d Cir. 2002).

## III. DISCUSSION

A. Whether Hayes' Is Entitled To Relief On The Issues Raised In His Appeal Of The Bankruptcy Court's May 13, 2004 Order

*HN2*⊤Under the doctrine of equitable mootness, "an appeal should . . . be dismissed as moot,

Case 1:06-cv-00103-JJF    Document 24-2    Filed 06/22/2006    Page 5 of 28

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 14904                Page 4 of 6

even though effective relief could conceivably be fashioned, where implementation of that relief would be inequitable." In re Continental Airlines, 91 F.3d 553, 559 (3d Cir. 1996) (en banc). The equitable mootness doctrine is aimed at "preventing a court from unscrambling complex bankruptcy reorganizations when the **[*5]** appealing party should have acted before the plan became extremely difficult to retract." Nordhoff Investments, Inc. v. Zenith Elecs. Corp., 258 F.3d 180, 185 (3d Cir. 2001). As adopted by the Third Circuit in Continental, $^{HN3}$ the doctrine of equitable mootness requires the court to balance five factors which are unique to bankruptcy proceedings:

> (1) whether the reorganization plan has been substantially consummated; (2) whether a stay has been obtained; (3) whether the relief requested would affect the rights of parties not before the court; (4) whether the relief requested would affect the success of the plan; and (5) the public policy of affording finality to bankruptcy judgments.

Continental, 91 F.3d at 560. The manner in which these factors are weighed depends on the facts and circumstances of each case. Id.

In Grimes v. Genesis Health Ventures, Inc., 280 B.R. 339, the Court concluded that an appeal of the confirmation order in the Genesis bankruptcy cases was equitably moot based on the Continental factors. The Court's conclusions in Grimes regarding the application of the Continental factors **[*6]** applies with equal force to this case. The Plan has been substantially consummated, and Appellant neither sought nor obtained a stay of the confirmation order. Because the confirmation order cannot be challenged, Appellant's request for the appointment of a post-confirmation equity committee to support the appeal of the Bankruptcy Court's September 20, 2001 confirmation order is equitably moot. n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 Appellant refers to "new evidence" in the form of the Haskell Complaint. However, the Haskell Complaint has been dismissed by the Bankruptcy Court in its entirety, and therefore, the Court is not persuaded that the allegations of the Haskell Complaint have relevance for this appeal.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

In addition, the Court notes that the United States Supreme Court has denied Appellant's application for certiorari review of the Third Circuit's decision affirming the Court's dismissal of his appeal of the confirmation order in Civil Action No. 01-718-JJF. Because there is no avenue of appeal left for Appellant to pursue with respect **[*7]** to the confirmation order, Appellant's challenge to the Bankruptcy Court's denial of a post-confirmation equity committee to guide the appeal of the confirmation order, i.e. the underlying basis for this appeal, is also actually moot.

In the alternative, the Court concludes that the Bankruptcy Court correctly denied Hayes' request for the appointment of a post-confirmation equity committee. The Bankruptcy Court's finding that Genesis is completely insolvent is supported by the valuation evidence presented to the Bankruptcy Court, and the Court concurs with the Bankruptcy Court's

Case 1:06-cv-00103-JJF    Document 24-2    Filed 06/22/2006    Page 6 of 28

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 14904    Page 5 of 6

conclusion that the appointment of an equity committee is not warranted in the circumstances of this case. Accordingly, the Court will, in the alternative, affirm the May 13, 2004 Order of the Bankruptcy Court.

B. Whether Genesis Is Entitled To Damages And Costs In Connection With Litigating This Appeal

As for Genesis' Motion For Damages And Costs, the Court will deny Genesis' Motion. Although Hayes presented this issue to the Bankruptcy Court three times, and presented it to the Court by motion in 01-718, Hayes did not specifically appeal an Order of the Bankruptcy Court addressing this issue until **[*8]** the instant appeal. Hayes' appeal was also not rendered actually moot until June 20, 2005, when the Supreme Court denied his application for certiorari review of the Third Circuit's decision affirming the Court's Order in Civil Action 01-0718-JJF. In these circumstances and given Hayes' status as a pro se litigant, the Court declines, at this juncture, to award damages and costs. Accordingly, the Court will deny Genesis' Motion For Damages And Costs.

## IV. CONCLUSION

For the reasons discussed, the Court will dismiss this appeal, and in the alternative, affirm the May 13, 2004 Order of the Bankruptcy Court. In addition, the Motion For Damages And Costs filed by Genesis will be denied.

An appropriate Order will be entered.

## FINAL ORDER

At Wilmington, this 23 day of July 2005 for the reasons discussed in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1. The above-captioned appeal is **DISMISSED.**

2. In the alternative, the May 13, 2004 Order of the Bankruptcy Court is **AFFIRMED.**

3. The Motion For Damages And Costs For Frivolous Appeal Pursuant To Bankruptcy Rule 8020 (D.I. 15) is **DENIED.**

Joseph J. Farnan Jr. **[*9]**

UNITED STATES DISTRICT COURT

Service: **Get by LEXSEE®**
Citation: **2005 U.S. Dist. Lexis 14904**
View: Full
Date/Time: Thursday, June 22, 2006 - 9:40 AM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
🔲 - Questioned: Validity questioned by citing refs
⌇ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
❶ - Citation information available

\* Click on any *Shepard's* signal to *Shepardize®* that case.

 **LexisNexis·** About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights
reserved.

Service: Get by LEXSEE®
Citation: 2006 U.S. Dist. Lexis 18177

*2006 U.S. Dist. LEXIS 18177, \**

IN RE: GENESIS HEALTH VENTURES, INC., et al., Debtors. RICHARD HASKELL, et al.,
Appellants, v. GOLDMAN, SACHS & CO., et al., Appellees.

Civil Action No. 05-427-KAJ

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2006 U.S. Dist. LEXIS 18177

March 29, 2006, Decided

**PRIOR HISTORY:** [\*1]  Chapter 11. Bankr. Case No. 00-2692. Haskell v. Goldman, Sachs
& Co. (In re Genesis Health Ventures, Inc.), 324 B.R. 510, 2005 Bankr. LEXIS 703 (Bankr. D.
Del., 2005)

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff former debenture holders appealed the decision of the
bankruptcy court, which granted a motion to dismiss their complaint alleging that
defendants, a debtor and its creditors, committed fraud or made grossly negligent
misrepresentations regarding the debtor's value during the period leading up to the
confirmation of its bankruptcy reorganization plan.

**OVERVIEW:** The holders alleged that the debtor and creditors improperly decreased the
debtor's earnings before interest, taxes, depreciation, and amortization (EBITDA) through
improper deductions, which the holders did not discover until after the bankruptcy plan
was confirmed. The court held that the bankruptcy court did not err in dismissing the
claims against the debtor as time barred under 11 U.S.C.S. § 1144 after finding that an
award of money against the debtor would have "redivided the pie" to upset the confirmed
plan and negatively affected innocent parties and creditors. However, the court remanded
the case for a determination of whether § 1144 applied to the claims against the creditors.
The court vacated the dismissal of the complaint against the creditors for failure to state a
claim because, in ruling that the claims were barred by res judicata and collateral
estoppel, the bankruptcy court did not take into account the complaint's material
allegation that, after confirmation, disturbing information was disclosed that cast into
doubt the veracity of the EBITDA data used in support of the plan.

**OUTCOME:** The court affirmed the decision that the claims against the debtor were time
barred. The court vacated the decision that the claims against the other creditors were
barred by res judicata and collateral estoppel and remanded the case for further
proceedings, including consideration of whether relief against all defendants was time
barred.

**CORE TERMS:** confirmation, confirmed, collateral estoppel, revoke, independent cause of
action, res judicata, vacated, reorganization plan, misrepresentations, characterizing,
collectively, concealed, redivide, deadline, plenary, precepts, upset, pie, motion to dismiss,
judicata, disturbing, valuation, veracity, fiscal, cast

Case 1:06-cv-00103-JJF    Document 24-2    Filed 06/22/2006    Page 9 of 28

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 18177                    Page 2 of 8

## LexisNexis(R) Headnotes ♦ Hide Headnotes

Bankruptcy Law > Practice & Proceedings > Appeals > Standards of Review > Clear Error Review

Bankruptcy Law > Practice & Proceedings > Appeals > Standards of Review > De Novo Review

*HN1* ± On appeal, a clearly erroneous standard applies to the bankruptcy court's findings of fact, and a plenary review standard applies to its legal conclusions. When reviewing mixed questions of law and fact, the district court will accept the bankruptcy court's findings of historical or narrative facts unless clearly erroneous, but will exercise plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.  More Like This Headnote

Bankruptcy Law > Reorganizations > Plans > Postconfirmation > Revocation of Confirmation

*HN2* ± See 11 U.S.C.S. § 1144.

Bankruptcy Law > Reorganizations > Plans > Postconfirmation > Revocation of Confirmation

*HN3* ± The 180-day time limit of 11 U.S.C.S. § 1144 is strictly construed, and is enforced even when the alleged fraud is discovered outside the deadline. Expiration of the limitations period bars a motion to set aside the confirmation of a reorganization plan even if the fraud is not discovered until the period has passed. While on its face, § 1144 appears to apply only to efforts to revoke a confirmation order, courts have adopted a wider approach, and apply the bar in § 1144 when the complaint in question appears to do indirectly what the plaintiffs no longer may do directly because of that statutory bar.  More Like This Headnote

Bankruptcy Law > Reorganizations > Plans > Postconfirmation > Revocation of Confirmation

*HN4* ± While it is true that creditors may not attack confirmation orders by simply characterizing their attempt as an independent cause of action, rather than a motion to revoke the order, the 180-day deadline in 11 U.S.C.S. § 1144 does not act as a bar to truly independent courses of action based on a debtor's wrongful conduct. A claim is not independent where it is simply an attempt to "redivide the pie" by a disgruntled participant in the plan. An independent cause of action can be maintained, however, at least where the alleged fraud could not have been asserted in the bankruptcy proceedings, the underlying factual claims were not actually adjudicated, and the relief sought would not upset the confirmed plan of arrangement.  More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims

*HN5* ± In ruling on a motion to dismiss, a court must accept as true all material allegations in the complaint, and it must construe the complaint in favor of the plaintiff. A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint.  More Like This Headnote

**COUNSEL:** R. Bruce McNew, Esq., Taylor & McNew LLP, Greenville, Delaware, Counsel for Appellants, Of Counsel: Stanley M. Grossman, Esq., H. Adam Prussin, Esq., Leigh Handelman Smollar, Esq., Pomerantz Haudek Block Grossman & Gross LLP, New York, New York.

Russell C. Silberglied, Esq., Jason M. Madron, Esq., Richards, Layton & Finger, P.A., Wilmington, Delaware, Counsel for Appellee Genesis Health Ventures, Inc., Of Counsel: Michael F. Walsh, Esq., Diane Harvey, Esq., Gary T. Holtzer, Weil, Gotshal & Manges LLP, New York, New York; Adam P. Strochak, Joanne M. Guerrera, Weil, Gotshal & Manges LLP, Washington, D.C.

Steven K. Kortanek, Esq., Morton R. Branzburg, Esq., Klehr, Harrison, Harvey, Branzburg & Ellers LLP, Wilmington, Delaware, Counsel for Appellee Goldman, Sachs & Co., Of Counsel: Sheldon Raab, Esq., Eric A. Hirsch, Esq., Fried, Frank, Harris, Shriver & Jacobson LLP, New York, New York.

Teresa K. D. Currier, Esq., Peter J. Duhig, Esq., Klett Rooney Lieber & Schorling, PC, Wilmington, Delaware, Counsel for Appellee Mellon Bank, N.A., Of Counsel: Richard S. Toder, Esq., Menachem O. Zelmanovitz, Esq., Matthew E. Schernecke, Esq., Morgan, [*2] Lewis & Bockius LLP, New York, New York, Counsel for Appellee Mellon Bank, N.A. with respect to all Plaintiffs other than Charles L. Grimes, Louise IG Ireland Trust, C. Yvonne Cooke, Jane G. Brown, Serena R. Schwartz, and Gordon W. Chaplin. Steven Russo, Esq., Sive, Paget & Riesel, P.C., New York, New York, Counsel for Appellee Mellon Bank, N.A. with respect to Charles L. Grimes, Louise IG Ireland Trust, C. Yvonne Cooke, Jane G. Brown, Serena R. Schwartz, and Gordon W. Chaplin.

Daniel K. Hogan, Esq., The Hogan Firm, Wilmington, Delaware, Counsel for Appellee Highland Capital Management, L.P., Of Counsel: Paul B. Lackey, Esq., Michael P. Aigen, Esq., Lackey Hershman, L.L.P., Dallas, Texas.

Robert S. Brady, Esq., Young Conaway Stargatt & Taylor LLP, Wilmington, Delaware, Counsel for Appellee George V. Hager. Of Counsel: Paul V. Shalhoub, Esq., Wilkie Farr & Gallagher LLP, New York, New York.

**JUDGES:** Kent A. Jordan, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Kent A. Jordan

**OPINION: MEMORANDUM OPINION**

March 29, 2006
Wilmington, Delaware

Kent A. Jordan
**JORDAN, District Judge**

## I. INTRODUCTION

This is an appeal from an adversary proceeding before the Bankruptcy [*3] Court. The Complaint, filed by 275 former debenture holders n1 of Genesis Health Ventures ("Genesis"), alleges that Genesis and co-defendants Goldman, Sachs & Co. ("Goldman"), Mellon Bank, N.A. ("Mellon"), Highland Capital Management ("Highland") and George P. Hager ("Hager"; collectively, "Defendants") committed fraud or made grossly negligent misrepresentations to Plaintiffs and to the Bankruptcy Court regarding the value of Genesis during the period leading up to the confirmation of the reorganization plan (the "Plan") in Genesis's bankruptcy case. (Docket Item ["D.I."] 9 at A48-52.) Plaintiffs allege that those misrepresentations caused Goldman, Mellon, and Highland to receive almost all of the equity in the reorganized company, while Plaintiffs received almost nothing under the Plan. (*Id.* at A49-54, PP3-12.) The Bankruptcy Court confirmed the Plan on October 2, 2001, based at least in part on the allegedly fraudulent information. (*Id.* at A51.) Plaintiffs filed their Complaint on January 27,



Case 1:06-cv-00103-JJF   Document 24-2   Filed 06/22/2006   Page 11 of 28
Get a Document - by Citation - 2006 U.S. Dist. LEXIS 18177                    Page 4 of 8

2004 n2 (D.I. 9 at A127), and Defendants moved to dismiss the Complaint for failure to state a claim. *In re Genesis Health Ventures, Inc.,* 324 B.R. 510, 513 (Bankr. D. Del. 2005). **[\*4]** The Bankruptcy Court granted the Motion to Dismiss. *Id.* Before me now is Plaintiffs' appeal from that decision.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 The names of the 275 plaintiffs appear on the face of the Complaint. (D.I. 9 at A42-A47.) They will be referred to here collectively as "Plaintiffs."

n2 Plaintiffs initially filed their Complaint in the Supreme Court for the State of New York. (D.I. 9 at A34.) Defendants removed the case to the United States District Court for the Southern District of New York, and then it was transferred to this court and referred to the Bankruptcy Court. *In re Genesis Health Ventures, Inc.,* 324 B.R. 510, 513 (Bankr. D. Del. 2005).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

Jurisdiction is appropriate under 28 U.S.C. § 158(a). For the reasons that follow, the decision of the Bankruptcy Court will be affirmed-in-part, vacated-in-part, and remanded for proceedings consistent with this opinion.

## II. BACKGROUND

The background of this case was set out in the opinion of the Bankruptcy Court dismissing **[\*5]** the Complaint, and will not be repeated here. *In re Genesis,* 324 B.R. at 513-15. However, in its recitation of the facts and its discussion of the merits of the case, the Bankruptcy Court left out certain relevant allegations in the Complaint, which I will briefly discuss here.

In the Complaint, Plaintiffs allege that Defendants "improperly decreased the debtors' EBITDA n3 by deducting a host of unsubstantiated and unwarranted items." *In re Genesis,* 324 B.R. at 514. In addition to their allegations of improper deductions from Genesis's EBITDA (D.I. 9 at A75-110, PP57-161), Plaintiffs also allege that they did not discover that the improper deductions were made until after the Plan was confirmed. Specifically, Plaintiffs claim that:

> Subsequent to confirmation of the Plan, disturbing information was disclosed, over a period of months, that cast into doubt, for the first time, the veracity of the EBITDA data that had been used in support of the Plan: a. In November of 2001, Genesis disclosed for the first time the massive increases in insurance revenues that Liberty had taken, and expensed, during the relevant valuation period. In its 10-K issued **[\*6]** on December 28, 2001, well after Plan confirmation, showed that reserves had shot up by $ 23.7 million, doubling in a single year. b. In its 10-Q for the first quarter of fiscal 2002, dated February 12, 2002, Genesis disclosed that it had not lost the Mariner/APS business, because the service agreement had been extended through 2002. This had happened even though another company had actually acquired APS. c. In its 10-Q for the second quarter of fiscal 2002, dated May 15, 2002, Genesis disclosed that its cost of goods sold in its pharmacy operations was 59.2% of revenues, rather than 62.5% of revenues, the percentage used to calculated the historical LTM n4 data

used for valuation prusposes; and it also disclosed for the first time that 10% of Manorcare revenues had been excluded from income (and EBITDA) during the LTM period.

(D.I. 9 at A121, P178.) Thus, Plaintiffs allege that this "red flag" was raised for the first time after the plan was confirmed, and that they could not have raised these issues during the confirmation process. (*Id.* at A122, P179.)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 EBITDA is an acronym for "earnings before interest, taxes, depreciation, and amortization," *In re Genesis,* 324 B.R. at 513, and is used as a measure of financial performance. **[*7]**

n4 LTM stands for "last twelve months," and is a historical measuring period for EBITDA. (See D.I. 9 at A51, P6.)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## III. STANDARD OF REVIEW

<sup>HN1</sup>On appeal, a clearly erroneous standard applies to the Bankruptcy Court's findings of fact, and a plenary review standard applies to its legal conclusions. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.,* 197 F.3d 76, 80 (3d Cir. 1999). When reviewing mixed questions of law and fact, this court will accept the Bankruptcy Court's findings of "historical or narrative facts unless clearly erroneous, but [will] exercise plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts." *Mellon Bank, N.A. v. Metro Communications, Inc.,* 945 F.2d 635, 642 (3d Cir. 1991) (internal citations omitted).

## IV. DISCUSSION

A. *11 U.S.C. § 1144*

The Bankruptcy Court dismissed Plaintiffs claims against Genesis, the debtor, as time barred under 11 U.S.C. § 1144. *In re Genesis,* 324 B.R. at 516-17. **[*8]** That statute states, in relevant part: <sup>HN2</sup>"On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud." <sup>HN3</sup>The 180 day time limit is strictly construed, and is enforced even when the alleged fraud is discovered outside the deadline. *See In re Midstate Mortgage Investors, Inc.,* 105 Fed. Appx. 420, 423 (3d Cir. 2004) ("Expiration of the limitations period bars a motion to set aside the confirmation of a reorganization plan even if the fraud is not discovered until the period has passed.") (quoting *In re Orange Tree Assocs., Ltd.,* 961 F.2d 1445, 1447 (9th Cir. 1992)). While on its face, § 1144 appears to apply only to efforts to revoke a confirmation order, courts have adopted a wider approach, and have applied the bar in § 1144 when the complaint in question appears "to do indirectly what [the plaintiffs] no longer may do directly" because of that statutory

bar. *Hotel Corp. of South v. Rampart 920, Inc.,* 46 B.R. 758, 770-71 (E.D. La. 1985), *aff'd,* 781 F.2d 901 (5th Cir. 1986). **[*9]**

*HN4*"While it is true that creditors may not attack confirmation orders by simply characterizing their attempt as an independent cause of action, rather than a motion to revoke the order, the 180 day deadline in Section 1144 does not act as a bar to truly independent courses of action based on a debtor's wrongful conduct." *In re Coffee Cupboard, Inc.,* 119 B.R. 14, 19 (E.D.N.Y. 1990) (internal citations omitted); *see also In re Emmer Bros. Co.,* 52 B.R. 385, 391 (D. Minn. 1985) ("creditors may not attack confirmation orders by simply characterizing the attempt as an independent cause of action rather than a motion to revoke the order"). A claim is not independent where it is simply "an attempt to 'redivide the pie' by a disgruntled participant in the Plan." *In re Coffee Cupboard,* 119 B.R. at 19. An independent cause of action can be maintained, however, "at least where the alleged fraud could not have been asserted in the bankruptcy proceedings, the underlying factual claims were not actually adjudicated, and the relief sought would not upset the confirmed plan of arrangement." *Id.* (quoting *Matter of Newport Harbor Associates,* 589 F.2d 20, 24 (1st Cir. 1978)). **[*10]**

Here, the Bankruptcy Court did not commit error when it found that to award money damages against Genesis would be to "'redivide the pie', to upset the confirmed plan, and to negatively affect innocent parties and creditors". *In re Genesis,* 324 B.R. at 517. Accordingly, that portion of the Bankruptcy Court's decision regarding claims against Genesis will be affirmed. However, the Bankruptcy Court did not address whether the time bar of § 1144 should also apply to bar claims against Goldman, Mellon, Highland, and Hager. Therefore, I remand for a determination of whether that provision applies to the claims against those Defendants.

B. *Res Judicata and Collateral Estoppel*

*HN5*In ruling on a Motion to Dismiss, a court must "accept as true all material allegations in the complaint, and it must construe the complaint in favor of the plaintiff." *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,* 140 F.3d 478, 483 (3d Cir. 1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set **[*11]** of facts consistent with the allegations of the complaint." *Id.*

Here, the Bankruptcy Court dismissed the complaint against Goldman, Mellon, Highland, and Hager on the grounds of res judicata and collateral estoppel, finding that the Plaintiffs "raised many of the issues reflected in the complaint, including various EBITDA assumptions and adjustments" during the Plan confirmation hearings. *In re Genesis,* 324 B.R. at 520. The Court held that the claims asserted in the Complaint were "so close to the claim actually litigated at confirmation" that they should have been brought in that forum, and that the Complaint simply tried to "add additional factual bases to the allegation that the debtor was misvalued." *Id.* at 523-24. Furthermore, the Court stated that

> The plaintiffs do not contend that the defendants' wrongfully concealed material facts from them prior to confirmation. Rather, the plaintiffs contend that the documents produced by the defendants prior to confirmation were too voluminous to review adequately, that there was insufficient time to review the materials thoroughly, and that the materials were not reviewed to ferret out fraud, **[*12]** because the prospect that fraud had been committed in connection with management assumptions and adjustments to EBITDA was not yet apparent.

Case 1:06-cv-00103-JJF    Document 24-2    Filed 06/22/2006    Page 14 of 28

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 18177                                Page 7 of 8

*In re Genesis,* 324 B.R. at 526.

However, in ruling that Plaintiffs' claims are barred by res judicata and collateral estoppel, the Bankruptcy Court did not appear to take into account all of the allegations in the Complaint, particularly the allegation that, "subsequent to the confirmation of the Plan, disturbing information was disclosed ... that cast into doubt, for the first time, the veracity of the EBITDA data that had been used in support of the Plan[,]" (D.I. 9 at A121, P178; *see also supra* at 2-3), and related allegations (*see* D.I. 8 at 19-20; D.I. 19 at 13-14). The Bankruptcy Court never acknowledged Plaintiffs allegation that information about the fraud was concealed until after the Plan was confirmed. Thus, the Bankruptcy Court did not "accept as true all material allegations in the complaint," when it ruled on the motion to dismiss. The Bankruptcy Court's ruling therefore must be vacated and the case remanded for the Bankruptcy Court to consider the motion to dismiss in light of all of the allegations **[*13]** in the Complaint. n5

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 I emphasize that I imply nothing about the merits of the Plaintiffs' allegations and their ultimate disposition.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

C. *Other Grounds*

Defendants Goldman, Highland, and Mellon urge that, in addition to the grounds relied on by the Bankruptcy Court, the decision of the Bankruptcy Court can be affirmed on various other grounds, including failure to plead with specificity and the Defendants' lack of any duty to Plaintiffs. (*See* D.I. 16, 17, 18.) However, I decline to address those arguments for the first time on appeal.

## V. CONCLUSION

Accordingly, the decision of the Bankruptcy Court that Plaintiffs' claims against Genesis are barred by 11 U.S.C. § 1144 will be affirmed. However, the Bankruptcy Court's decision that the claims against the other creditors are barred by res judicata and collateral estoppel will be vacated, and this case will be remanded for further proceedings consistent with this opinion, including consideration of whether § 1144 bars **[*14]** relief against all Defendants.

ORDER

For the reasons set forth in the Memorandum Opinion of today's date in this matter,

IT IS HEREBY ORDERED that the decision of the Bankruptcy Court that Plaintiffs' claims against Genesis are barred by 11 U.S.C. § 1144 is AFFIRMED. However, the Bankruptcy Court's decision that the claims against the other creditors are barred by res judicata and collateral estoppel is VACATED, and this case is REMANDED for further proceedings consistent with this opinion, including consideration of whether § 1144 bars relief against all Defendants.

Kent A. Jordan

Case 1:06-cv-00103-JJF     Document 24-2     Filed 06/22/2006     Page 15 of 28

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 18177                    Page 8 of 8

UNITED STATES DISTRICT JUDGE

March 29, 2006
Wilmington, Delaware

Service: **Get by LEXSEE®**
Citation: **2006 U.S. Dist. Lexis 18177**
View: Full
Date/Time: Thursday, June 22, 2006 - 9:42 AM EDT

\* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available

\* Click on any *Shepard's* signal to *Shepardize*® that case.

 **LexisNexis**®

About LexisNexis  |  Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights
reserved.

Case 1:06-cv-00103-JJF    Document 24-2    Filed 06/22/2006    Page 16 of 28

Get a Document - by Citation - 2004 U.S. Dist. LEXIS 20822                     Page 1 of 13

Service: **Get by LEXSEE®**
Citation: **2004 U.S. Dist. LEXIS 20822**

*2004 U.S. Dist. LEXIS 20822, \**

IN RE: INACOM CORP., et al., Debtors, PRO-TEC SERVICES, LLC, Appellants, v. INACOM CORP., et al., Appellees.

Chapter 11, Case No. 00-2426 (PJW), Civil Action No. 04-390-GMS

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2004 U.S. Dist. LEXIS 20822

October 4, 2004, Decided
October 4, 2004, Filed

**DISPOSITION:** Bankruptcy court's decision reversed and remanded.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Appellant creditor challenged a decision of the United States Bankruptcy Court for the District of Delaware that denied the creditor's motion to reconsider the allowance of its claims against appellee debtor.

**OVERVIEW:** The creditor and a corporation were parties to a computer repair services agreement. The debtor purchased the corporation and the creditor continued to provide services under the agreement. When the debtor filed Chapter 11, the creditor filed a claim and the debtor objected. The bankruptcy disallowed the claims because the creditor's counsel did not respond to the objection. The creditor sought relief under Fed. R. Civ. P. 60(b). The court reversed the ruling of the bankruptcy court, holding that considering the O'Brien factors, the debtor would not be prejudiced in that (1) the debtor was fully aware of the creditor's claim and thus would not be surprised; (2) because the debtor was still negotiating with other creditors, the value of many unsecured claims was unknown and thus any disputed claim was paid without regard to what other claims existed; (3) there was no evidence as to whether payment of the claim would jeopardize the success of the debtor's reorganization or that allowing the claim would cause a "flood" of motions. In view of the agreement of the parties, the court found that the creditor and its counsel acted in good faith.

**OUTCOME:** The court reversed the decision of the bankruptcy court.

**CORE TERMS:** excusable neglect, reconsideration, notice, litigating, allowance, weigh, Ninth Amendment, confirmed, failure to respond, adversely impact, money to pay, scheduled, excusable, neglect, potential prejudice, alphabetical, disallowing, floodgates, motion to reconsider, danger of prejudice, reasonable control, de novo, reorganization, reconsidering, reconsidered, articulated, jeopardize, surprised, finality, default

## LexisNexis(R) Headnotes ♦ Hide Headnotes

Bankruptcy Law > Practice & Proceedings > Appeals > Standards of Review > Abuse of Discretion

Bankruptcy Law > Practice & Proceedings > Appeals > Standards of Review > Clear Error Review

Bankruptcy Law > Practice & Proceedings > Appeals > Standards of Review > De Novo Review

*HN1* In reviewing a case on appeal, the district court reviews the bankruptcy court's legal determinations de novo, its factual findings for clear error, and its exercise of discretion for abuse. A bankruptcy court abuses its discretion when its ruling is founded on an error of law or misapplication of law to the facts. In determining whether an error exists, the bankruptcy court's application of the law to the facts is reviewed de novo. More Like This Headnote

Bankruptcy Law > Claims > Reconsideration

Civil Procedure > Judgments > Relief From Judgment > Motions to Alter & Amend

*HN2* See 11 U.S.C.S. § 502(j).

Bankruptcy Law > Claims > Reconsideration

Civil Procedure > Judgments > Relief From Judgment > Excusable Neglect & Mistakes > Excusable Neglect

Civil Procedure > Judgments > Relief From Judgment > Motions to Alter & Amend

*HN3* See Fed. R. Civ. P. 60(b).

Bankruptcy Law > Claims > Reconsideration

*HN4* The determination of what type of neglect would be considered "excusable" when a creditor fails to respond to a debtor's objection to a claim is an equitable one taking account of all relevant circumstances surrounding the party's omission. There are four factors to consider in making the excusable neglect determination: the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. More Like This Headnote | *Shepardize:* Restrict By Headnote

Bankruptcy Law > Claims > Reconsideration

*HN5* Regarding a bankruptcy court's reconsideration of a denied claim, prejudice is not an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on facts in evidence. Under Third Circuit case law, a detailed analysis of more than whether the plan set aside money to pay the claim at issue is required. Thus, the relevant factors for analysis of prejudice under O'Brien include: whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated; whether the payment of the claim would force the return of amounts already paid out under the confirmed plan or affect the distribution to creditors; whether payment of the claim would jeopardize the success of the debtor's reorganization; whether allowance of the claim would adversely impact the debt or actually or legally; and whether allowance of the claim would open the floodgates to other future claims. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Pretrial Judgments > Default > Default Judgments

Civil Procedure > Pretrial Judgments > Default > Relief From Default

Civil Procedure > Judgments > Entry of Judgments > Enforcement & Execution > General Overview

*HN6* ⊕ The cost of enforcing a judgment later vacated and the delay in realizing satisfaction on a claim rarely serves to establish the degree of prejudice sufficient to prevent the opening of a default judgment. Prejudice is not merely the loss of an advantageous position, but must be something more closely tied to the merits of the issue. More Like This Headnote

Civil Procedure > Judgments > Relief From Judgment > Excusable Neglect & Mistakes > General Overview �ⁱ

*HN7* ⊕ The concept of excusable neglect clearly anticipates neglect on the part of the party seeking to be excused. More Like This Headnote

**COUNSEL: [\*1]** For Inacom Corp., Debtor: Christopher James Lhulier, Pachulski Stang Ziehl Young & Jones PC, Wilmington, DE, Duane David Werb, Werb & Sullivan, Wilmington, DE, E Lyle Kinley, Jr, Omaha, NE, Jean R Robertson, McDonald, Hopkins, Burke & Haber Co. LPA, Cleveland, OH, Kathleen Marshall DePhillips, Pachulski Stang Ziehl Young & Jones PC, Wilmington, DE, Laura Davis Jones, Pachulski Stang Ziehl Young & Jones, Wilmington, DE, Rosalie L. Spelman, Pachulski Stang Ziehl Young Jones, Wilmington, DE, Rosalie L. Spelman, Potter Anderson & Corroon LLP, Wilmington, DE, Sandra G McLamb, Pachulski Stang Ziehl Young Jones, Wilmington, DE.

For Tantara Transportation Group, Inc., Defendant: Daniel J. Anker, Wilmington, DE.

AQUA SYSTEMS USA, INC., Defendant, Pro Se.

For Sun MicroSystems, Inc., Defendant: Regina A. Iorii, Ashby & Geddes, Wilmington, DE.

For Ingram Micro, Inc., Defendant: James E. Huggett, Flaster Greenberg, Wilmington, DE, USA.

For Kingston Technology Company, Inc., Defendant: Rachel B. Mersky, Monzack & Monaco, P. A., Wilmington, DE, USA.

For The Computer Merchant, Ltd., Avantegarde Computer Services, Inc., Defendant: Charles J. Brown, Elzufon Austin Reardon **[\*2]** Tarlov & Mondell, Wilmington, DE.

Joseph J. McMahon Jr., Office of the U.S. Trustee, U.S. Trustee.

For Blank Rome Comisky & McCauley, LLP, Creditor Committee: Bonnie Glantz Fatell, Blank Rome LLP, Wilmington, DE, Deborah Cirilla Sellis, Esq, Akin & Herron, PA, Wilmington, DE.

For Official Committee of Unsecured Creditors, Creditor Committee: William J. Burnett, Blank Rome LLP, Wilmington, DE.

For Statutory Committee of Unsecured Creditors, Creditor Committee: William J. Burnett, Blank Rome LLP, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION: MEMORANDUM**

**I. INTRODUCTION**

On June 16, 2000 (the "Petition Date"), Inacom Corp., et al. ("Inacom") filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code. Pro-Tec Services, LLC ("Pro-Tec") filed a timely Proof of Claim on November 2, 2000. On June 13, 2001, Inacom filed its Fifth Omnibus Objection to Claims -- Objections to Claims filed Against Inacom, Inc. or Its Affiliates (the "Objection"). On July 13, 2001, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order disallowing **[\*3]** Pro-Tec's claim pursuant to Inacom's Objection. Inacom's plan of liquidation was confirmed on May 23, 2003.

On April 2, 2004, Pro-Tec filed a motion to reconsider its claim. The motion was denied at a hearing before the Bankruptcy Court on April 20, 2004. Because the court agrees that Pro-Tec has made a satisfactory showing of excusable neglect, its motion to reconsider the allowance of its claims should have been granted by the Bankruptcy Court. Further, because the court disagrees with the Bankruptcy Court's analysis of *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 123 L. Ed. 2d 74, 113 S. Ct. 1489 (1993), as it applies to the facts of this case, the court will reverse the ruling of the Bankruptcy Court and remand the matter for further proceedings consistent with this opinion.

## II. STANDARD OF REVIEW

$^{HN1}$In reviewing a case on appeal, the district court reviews the Bankruptcy Court's legal determinations *de novo*, its factual findings for clear error, and its exercise of discretion for abuse. *Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)* 188 F.3d 116, 122 (3d Cir. 1999). A bankruptcy court abuses its discretion when its ruling is founded on **[\*4]** an error of law or misapplication of law to the facts. *Id.* In determining whether an error exists, the bankruptcy court's application of the law to the facts is reviewed *de novo. Id.*

## III. BACKGROUND

The basic facts pertinent to Pro-Tec's motion to reconsider the allowance of its claims are not in dispute. On September 18, 1997, Pro-Tec and Vanstar Corporation ("Vanstar") were parties to a computer and communication repair services agreement (the "Agreement"). Subsequent to the execution of the Agreement, Inacom purchased Vanstar, and Pro-Tec continued to provide services to Inacom under the Agreement. From February 1999 to June 2000, Inacom incurred charges for services rendered by Pro-Tec under the Agreement. On June 16, 2000, Inacom filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the District of Delaware. On August 1, 2000, Inacom filed its Schedules of Assets and Liabilities (the "Schedules"). Pro-Tec was listed on Exhibit F-3 of Inacom's Schedules as a creditor holding unsecured non-priority claims in the amount of $ 195,823.20.

On November 2, 2000, Pro-Tec's counsel timely filed a Proof of Claim (the "Claim"), in the amount **[\*5]** of $ 330,115.61, with Bankruptcy Services, Inc, ("B.S.I."), Inacom's claims agent. On November 6, 2000, B.S.I. stamped the Claim as received, timely, and numbered the Claim 6647. On June 13, 2001, Inacom filed its Objection. The Objection contests approximately 412 claims spread over 96 pages of exhibits. The exhibits are lettered A through H, with some exhibits containing multiple alphabetical listings of objections. Pro-Tec was listed on the first alphabetical list of Exhibit E to the Objection. The Objection contained a Proof of Service, indicating that it was served on Pro-Tec's counsel, William Sullivan, at his office address. Pro-Tec's counsel did not respond to the Objection. On July 13, 2001, the Bankruptcy Court entered an Order Disallowing Claims, Expunging Claims, Altering the Status of Claims, or Allowing the Claims in a Reduced Amount (the "Order").

On July 22, 2002, Inacom filed the Notice of Debtors Twenty-Ninth Amendment of Schedules (the "Twenty-Ninth Amendment"), seeking to amend the Claim from $ 195,823.20 to $ 0.00.

Case 1:06-cv-00103-JJF    Document 24-2    Filed 06/22/2006    Page 20 of 28

Get a Document - by Citation - 2004 U.S. Dist. LEXIS 20822                                Page 5 of 13

On May 23, 2003, Inacom's Joint Plan of Liquidation (the "Plan") was confirmed. In February 2004, after Pro-Tec did not receive a distribution under **[\*6]** the Plan (which was expected on or about January 30, 2004), Pro-Tec's counsel inquired into the status of distributions. After contacting B.S.I., Pro-Tec was advised of the July 13, 2001 Order disallowing the Claim. Accordingly, Pro-Tec filed its Motion for Reconsideration on April 2, 2004. A hearing on Pro-Tec's motion was held before the Bankruptcy Court on April 20, 2004. The Bankruptcy Court denied Pro-Tec's motion. On April 30, 2004, Pro-Tec appealed the decision.

## IV. DISCUSSION

As a result of the Bankcruptcy Court's July 13, 2001 Order, Pro-Tec's Claim in connection with the Agreement was disallowed. It is undisputed that Pro-Tec received the Objection but failed to respond prior to the July 13, 2001 Order, or prior to the May 23, 2003 confirmation of the Plan. Pro-Tec filed a motion for reconsideration pursuant to 11 U.S.C. 502(j) and Fed. R. Bankr. P. 3008. Section 502(j) provides that *HN2*"a claim that has been allowed or disallowed may be reconsidered for cause." Pro-Tec asserts that a motion for reconsideration based on a claim disallowed as a result of the claimant's failure to appear or to produce evidence is usually decided based on whether **[\*7]** the claimant is able to show "excusable neglect." Pro-Tec, therefore, seeks relief from the July 13, 2001 Order under Federal Rule of Civil Procedure Rule 60(b), made applicable to bankruptcy cases by Bankruptcy Rule 9024. Rule 60(b) states, in pertinent part, *HN3*"on motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for mistake, inadvertence, or excusable neglect." The factors a court must consider when determining whether a party has failed to appear or to produce evidence because of excusable neglect were articulated by the Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 123 L. Ed. 2d 74, 113 S. Ct. 1489 (1993). The *Pioneer* factors were adopted and applied by the Third Circuit in *In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116, 125 (3d Cir. 1999). Pro-Tec asserts that its failure to respond to the Objection was the result of excusable neglect, and that the Bankruptcy Court made an inadequate excusable neglect analysis under *Pioneer*. As previously noted, the basic facts pertinent to Pro-Tec's motion are not in dispute. **[\*8]** Thus, the court must review *de novo* whether the Bankruptcy Court engaged in a proper analysis under *Pioneer* to make its excusable neglect determination, and whether the Bankruptcy Court abused its discretion in determining that there was no excusable neglect warranting reconsideration of Pro-Tec's claim.

### A. Did the Bankruptcy Court Engage in a Proper *Pioneer* Analysis?

Pro-Tec first argues that the Bankruptcy Court failed to review the totality of the circumstances surrounding Pro-Tec's failure to respond to the Objection and, therefore, failed to adequately apply *Pioneer's* standards for excusable neglect. The court will start with a brief review of *Pioneer* and the excusable neglect factors articulated in that case. In *Pioneer*, the Supreme Court determined that a Chapter 11 creditor was entitled to file its proof of claim after the bar date deadline because its failure to timely reply was the result of excusable neglect, within the meaning of Bankruptcy Rule 9006(b)(1). The Court held that *HN4*the determination of what type of neglect would be considered "excusable" was an equitable one "tak[ing] account of all relevant circumstances surrounding the party's **[\*9]** omission." *Pioneer*, 507 U.S. at 395. The Court listed four factors to consider in making the excusable neglect determination: "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* Under the facts of *Pioneer*, the Court held that the creditor's failure to timely file was inadvertent, and in good faith. There was no danger of prejudice to the debtor because the untimely claim was accounted for in the reorganization plan and was filed prior to the plan's effective date. Lastly, the court noted that notice of the bar date "was outside the ordinary

course" because of its "inconspicuous placement" -- a single sentence in a document regarding a creditors' meeting -- which was not accompanied by a statement of significance and "left a 'dramatic ambiguity' in the notification." *Id.* at 398.

Pro-Tec argues that, while the Bankruptcy Court considered the reason for the delay, including whether it was within the reasonable control of Pro-Tec, and the potential **[*10]** prejudice to Inacom, it did not consider the other *Pioneer* factors. After reviewing the transcript from the April 20, 2004 hearing, the court cannot agree. In making its determination, the Bankruptcy Court made the following findings of fact: (1) overturning the Order would prejudice Inacom because allowing the claims would "open the floodgates to hundreds of these [reconsideration] applications being filed;" (2) allowing the delayed claim "would be a mistake at this very late stage of this case;" and (3) Pro-Tec's counsel was fully responsible for the delay in failing to file a response to the Objection. n1 Tr. at 35-36. Thus, the Bankruptcy Court considered the prejudice to the debtor, the length of the delay and its effect on judicial proceedings, and whether the reason for the delay was in the reasonable control of the movant. The only *Pioneer* factor that the Bankruptcy Court did not consider was the good faith of Pro-Tec's counsel. Inacom, however, acknowledged Pro-Tec's good faith at the April 20, 2004 hearing, which meant that the Bankruptcy Court did not have to consider this factor. For the foregoing reasons, the court finds that the Bankruptcy Court engaged in a **[*11]** proper *Pioneer* analysis. n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 The Bankruptcy Court noted that Pro-Tec's "client's name and your [Pro-Tec's counsel's] name and address with the law firm is [the] first item on Page 11, it's the first Exhibit E in the batch. And I don't see how you could miss it." Tr. at 35:6-9.

n2 In this section of its brief, Pro-Tec argues its counsel's diligence upon receiving omnibus objections to its other clients' claims. Pro-Tec also argues that the Bankruptcy Court's Local Rule 3007-1, implemented in September 2002, addresses the difficulties created by the large omnibus claim objections by limiting them to 150, but does not ameliorate the difficulties posed by omnibus objections filed before September 1, 2002 (Inacom's Objection was filed before September 1, 2002). The court will not address these arguments because they are not material to whether the Bankruptcy Court engaged in a proper *Pioneer* analysis.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

## B. Did the Bankruptcy Court Abuse Its Discretion When It Determined There Was No Excusable Neglect? [*12]

Pro-Tec next argues that the Bankruptcy Court abused its discretion in failing to find excusable neglect. In addressing this contention, the court will analyze each of the *Pioneer* factors in turn.

## 1. Danger of Prejudice to the Debtor

The Supreme Court in *Pioneer* noted that lack of any prejudice to the debtor weighs strongly in favor of permitting a tardy claim, but provided little guidance as to what prejudice actually is in the bankruptcy context. The United States Court of Appeals for the Third Circuit has recognized that *HN5*"prejudice is not an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on facts in evidence." *In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116, 127 (3d Cir. 1999). Under Third Circuit case law, *Pioneer* requires a detailed analysis of more than "whether the Plan set aside money to pay the claim at issue."

Case 1:06-cv-00103-JJF    Document 24-2    Filed 06/22/2006    Page 22 of 28

Get a Document - by Citation - 2004 U.S. Dist. LEXIS 20822                                    Page 7 of 13

*Id.* at 126. Thus, the relevant factors for analysis of prejudice under *O'Brien* include: whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated; whether the payment of the claim would force the return of amounts already **[*13]** paid out under the confirmed Plan or affect the distribution to creditors; whether payment of the claim would jeopardize the success of the debtor's reorganization; whether allowance of the claim would adversely impact the debt or actually or legally; and whether allowance of the claim would open the floodgates to other future claims. *Id.* at 126-28. Pro-Tec argues that none of the prejudice factors articulated in *O'Brien* serve as potential prejudice to Inacom.

With regard to the first *O'Brien* factor, the court cannot conclude that Inacom was surprised or caught unaware by the assertion of a claim that it had not anticipated. Inacom listed Pro-Tec as a creditor holding unsecured non-priority claims in the amount of $ 195,823.20 in the Schedules. Pro-Tec timely filed the Claim, which was stamped as received and numbered by Inacom's claims agent. The Claim remained scheduled for more than one year after it was disallowed by default, on July 13, 2001. In fact, the Claim remained scheduled by Inacom until it filed the Twenty-Ninth Amendment on July 22, 2002, which sought to amend Pro-Tec's scheduled Claim from $ 195,823.00 to $ 0.00. Clearly then, Inacom was aware **[*14]** of the assertion of the Claim.

The second *O'Brien* factor requires the court to consider whether the payment of the claim would force the return of amounts already paid out under the confirmed Plan or affect the distribution to creditors. Pro-Tec argues that the resolution of the Claim does not impact the recovery being paid to unsecured creditors because Inacom is still litigating the value of many of the unsecured claims. Pro-Tec alleges that unsecured creditors were advised in the Plan that their recovery was uncertain, and, based on the Plan, reconsideration of its Claim will not prejudice other creditors because no creditor will have to return any distribution it may have already received and the ultimate distribution to creditors under the Plan will vary. Inacom notes that the Plan states that "each holder of a Class 4(a) Allowed General Unsecured Claim shall receive such Holder's Pro Rata Share of Available Cash," (Plan at 13, D.I. 4757). However, as Pro-Tec points out, the Plan also states that the recovery of unsecured creditors is uncertain and may vary. Because every creditor is receiving its pro rata share of available amounts, allowing another claim will affect the **[*15]** distribution to each creditor holding an allowed claim. Pro-Tec argues, however, that Inacom is still litigating the value of many of the unsecured claims and does not know at this time which unsecured creditors will recover or what amount each creditor will recover.

Pro-Tec's argument is persuasive. It is not clear how many creditors will ultimately hold an allowed claim. In addition, the final distributions to creditors will vary based on the results of litigation and the claims resolution process. Moreover, Inacom was not required to allocate funds for each disputed claim under the Plan. n3 Thus, any disputed claim that is allowed is paid without regard to what other claims exist. Lastly, absent from the record is any evidence that Inacom will have to return amounts already paid out under the Plan. Based on these facts, the court finds that payment of the claim will not affect the distribution to creditors.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n3 Pro-Tec urges that whether the plan set aside money to pay the claim at issue is a factor that the Third Circuit held should not be considered in evaluating potential prejudice. The court disagrees. The court in *O'Brien* stated that "*Pioneer* requires a more detailed analysis of prejudice which would account for more than whether the Plan set aside money to pay the claim at issue." *O'Brien*, 188 F.3d at 126. The Third Circuit, however, did not state that an analysis of prejudice should not include whether the Plan set aside money to pay the claim at issue as one of the factors to consider. Rather, the Third Circuit stated that it should not be the only factor that the Bankruptcy Court considers in determining whether there is potential

prejudice to the debtor. The Third Circuit stated "the Bankruptcy Court's prejudice analysis seemed to hinge *solely* on the fact that by virtue of Manus's failure to respond to the Application, its claim was not accounted for in the funding of the plan. We believe that *Pioneer* requires a more detailed analysis which would account for more than whether the Plan set aside money to pay the claim at issue." *Id.* (emphasis added).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*16]**

The third *O'Brien* factor is whether payment of the claim would jeopardize the success of the debtor's reorganization. There is no evidence on the record as to whether payment of the claim would jeopardize the success of Inacom's reorganization. In addition, Pro-Tec and Inacom have not made arguments, nor has the Bankruptcy Court made any findings concerning this factor. Thus, the court will treat this consideration as a neutral factor in its analysis.

The fourth *O'Brien* factor is whether allowance of the claim would adversely impact the debtor actually or legally. Pro-Tec argues that there is no prejudice to Inacom created by the delay in litigating the disallowed Claim because the inquiry to be performed in a reconsideration of the Claim is straightforward. Pro-Tec further argues that Inacom is currently reconsidering other creditors' claims. Finally, Pro-Tec asserts that Inacom scheduled its Claim at the outset of the case, a claim that remained scheduled for more than a year after the Bankruptcy Court entered the Order disallowing the Claim. Inacom could not explain why Pro-Tec was listed on the Twenty-Ninth Amendment when Pro-Tec's claim was disallowed a year earlier, **[*17]** negating the need to amend the schedule with respect to Pro-Tec. Tr. at 32:10-20. Because Pro-Tec was still listed on the Twenty-Ninth Amendment, Pro-Tec contends that Inacom ascribed some validity to its claim. n4 While this may be true, this fact is not relevant to the court's analysis of whether allowance of the claim would adversely impact the debtor actually or legally. Regardless, the court finds that Inacom has not alleged that payment of the Claim would adversely impact it. Rather, Inacom alleges only that one of the policies underlying the *Pioneer* analysis is the value of finality in judicial proceedings.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n4 At the hearing in the Bankruptcy Court, Inacom argued that it was irrelevant that Pro-Tec was listed on its Twenty-Ninth Amendment. The Bankruptcy Court agreed, acknowledging that "the debtors' 29th amendment is confusing. But, quite frankly, that was a year "after the disallowance of this claim and I think it's essentially irrelevant to the issue of excusable neglect."

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The Third Circuit has **[*18]** addressed Inacom's argument in contexts other than a bankruptcy proceeding. In *Feliciano v. Reliant Tooling Co.,* 691 F.2d 653 (3d Cir. 1982), the court held that *HN6* "the cost of enforcing a judgment later vacated and the delay in realizing satisfaction on a claim 'rarely serves to establish the degree of prejudice sufficient to prevent the opening of a default judgment.'" *Id.* at 656-57. In *O'Brien,* the court highlighted, with approval, its decision in *Feliciano,* stating that "prejudice is not merely the loss of an advantageous position, but must be something more closely tied to the merits of the issue." *O'Brien,* 188 F.3d at 127. Thus, the court finds that the value of finality in judicial proceedings is not sufficient for a finding of prejudice. In addition, there is no evidence in the record showing that payment of Pro-Tec's Claim would adversely impact Inacom or affect the finality of Inacom's judicial proceedings. To the contrary, as previously noted, Inacom is still

litigating disputed claims. However, even were there such a showing, the court cannot discern a reason why the rationale of the Court of Appeals would be inapposite **[\*19]** merely because the scene has shifted to the bankruptcy court. Under the circumstances of this case, the court concludes that allowing the Claim would not adversely impact Inacom.

The final *O'Brien* Factor is whether allowance of the claim would open the floodgates to other future claims. The Bankruptcy Court determined that allowing Pro-Tec's Claim might subject Inacom to a large number of additional claims:

> I will observe that given the massive number of claims filed in this case and the equally massive number of objections that were filed with numerous exhibits attached to the objection, I really think that to allow this claim would potentially open the floodgates to hundreds of these applications being filed. And I think that would be a mistake at this very late stage of this case.

Tr. at 35:22-36:3. The court cannot agree. There is no evidence in the record that allowing the Claim would cause a "flood" of motions. Although Inacom argues that it is inconceivable that at least a fraction of the creditors would not file motions for reconsideration if the appeal was granted, Inacom has not asserted that any other creditor whose claim was eliminated by default has **[\*20]** filed a motion for reconsideration.

Considering all of the *O'Brien* factors, the court determines that Inacom would not be prejudiced by reconsidering Pro-Tec's Claim. Inacom was not surprised by, or unaware of, the Claim. Inacom is still litigating the value of many of its claims, and still litigating claims objections. Moreover, Inacom has not shown through evidence in the record that it will be adversely impacted if Pro-Tec's claim is reconsidered. Finally, Inacom has not alleged that any other creditor whose motion was denied by default has filed a motion for reconsideration. The court, therefore, finds that there is no prejudice to Inacom.

## 2. Length of Delay and Potential Impact on Judicial Proceedings

The court next considers the length of the delay and its impact on the judicial proceedings. The Bankruptcy Court found that "it would be a mistake" to allow the Claim because the case was at "a very late stage." While the Bankruptcy Court considered the delay's effect on the judicial proceedings, it did not "consider the length of the delay in absolute terms." *O'Brien,* 188 F.3d at 130. In the present case, Inacom filed the Objection on June 13, 2001. Pro-Tec **[\*21]** did not respond. The Order disallowing the Claim issued on July 13, 2001. Pro-Tec still had not responded, Inacom's Twenty-Ninth Amendment was filed on July 22, 2002. Pro-Tec did not respond. n5 Inacom's Plan was confirmed on May 23, 2003, and, as of that time, there was still no response from Pro-Tec. Pro-Tec did not respond until February 2004, after it did not receive its expected distribution under the Plan. On April 2, 2004, Pro-Tec then filed its motion for reconsideration. Pro-Tec's motion was filed almost two years and ten months after the Objection, almost two years and nine months after the Order was served, and nine months after the Plan was confirmed. Pro-Tec argues that the length of the delay has no impact on the implementation of the Plan. Specifically, Pro-Tec asserts that Inacom is still litigating claims subject to the Objection and that creditors have been advised that distributions under the Plan are dependent on the claims resolution process. Pro-Tec also asserts that distributions to unsecured creditors are expected to occur between June 2003 and June 2008, and will be adjusted depending on Inacom's progress in resolving the claims. Lastly, Pro-Tec argues that **[\*22]** Inacom is partly responsible for the delay because of the

time it took for Inacom to move through the confirmation process. Inacom's Plan was confirmed almost three years after Inacom filed its petitions.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 Pro-Tec alleges that the Twenty-Ninth Amendment was not served on its counsel.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Inacom argues that Pro-Tec's counsel's failure to respond, in and of itself, weighs in favor of denying the appeal. Inacom further argues that Pro-Tec's failure to respond after the Order warrants denying the appeal. In addition, Inacom argues that Pro-Tec should have attempted to contact Inacom to inquire about the Claim. Lastly, Inacom contends that the fact that it is still litigating and negotiating claims indicates that reconsidering Pro-Tec's Claim will delay closure of the case. The court agrees with Pro-Tec and finds Inacom's arguments unpersuasive. Nowhere in *Pioneer* or *O'Brien,* do the Supreme Court or the Third Circuit find that failure to respond, in and of itself, weighs in favor of denying the Claim. Additionally, **[*23]** there is no finding that the creditor must attempt to make contact with the debtor. When considering the delay's effect on the judicial proceedings in absolute terms, as *O'Brien* instructs, the court concludes that this *Pioneer* factor weighs in favor of Pro-Tec because Inacom is still litigating disputed claims and distributions to creditors are based on Inacom's progress in resolving the claims.

## C. The Reason for the Delay

The Bankruptcy Court determined that the cause of the delay was in Pro-Tec's control, because it is undisputed that Pro-Tec's counsel received the Objection and read it, but missed the objection to Pro-Tec's Claim. The Bankruptcy Court found that Pro-Tec's neglect did not fall within the *Pioneer* standard for excusable neglect:

> In looking at this document, I think it would probably take maybe 15 or 20 minutes for an informed person to review the document to find out if any of its clients were affected by the objection. And as I pointed out, your client's name and your name and address with the law firm is first item on Page 11, it's the first Exhibit E in the batch. And I don't see how you could miss it. But apparently you did miss it - I don't **[*24]** say you, someone in your office did, or they didn't even look at the document. And so I don't think that that falls within the *Pioneer* standard for excusable neglect. Presumably it is neglect. Indeed, there's no basis for knowing what the young associate did, including the possibility that he lost the document before he ever looked at it or he just put it in a circular file and didn't look at it. Or that he was otherwise plain remiss in performing his duties.

Tr. at 35:3-17. It is clear in this case, that the delay was due to Pro-Tec's lack of care. However, *HN7* the concept of excusable neglect clearly anticipates neglect on the part of the party seeking to be excused. *See Pioneer,* 507 U.S. at 388; *O'Brien,* 188 F.3d at 128. The court, therefore, must decide whether Pro-Tec's delay was excusable.

Pro-Tec urges the court to follow *Pioneer* and *O'Brien,* in which the Supreme Court and the Third Circuit held that the debtors' inadequate notice contributed to the creditors' delay. Pro-Tec argues that its delay in responding to the Objection was due in part to inadequate notice provided by Inacom. Pro-Tec asserts that Inacom's Objection contested **[*25]** approximately 412 claims spread over 96 pages plus exhibits A through H. Pro-Tec further asserts that the exhibits contained multiple lists, some of which were not in alphabetical order. Pro-Tec argues that this type of notice is ambiguous and that even though its counsel failed to find the objection to its Claim, Inacom is partly responsible, like the debtors in *Pioneer* and *O'Brien.* Inacom argues that Pro-Tec's comparison of the present case to the facts in *Pioneer* and *O'Brien* "misses the mark." The Bankruptcy Court recognized that there are multiple schedules within the various exhibits attached to the Objection, some of which were not in alphabetical order, but determined that Inacom's notice was adequate, noting that "your ['Pro-Tec's counsel's] client's name and your name and address with the law firm is [the] first item on page 11, it is the first Exhibit E in the batch. And I don't see how you could miss it." Tr. at 35:6-9. The court agrees with the Bankruptcy Court and Inacom.

The notice that Inacom provided Pro-Tec is distinguishable from the notice provided by the debtors in both *Pioneer* and *O'Brien.* In *Pioneer,* the Supreme Court held that **[*26]** the debtor's notice was inadequate because the bar date was placed in a notice regarding a creditors' meeting "without any indication of the significance of the bar date." *Pioneer,* 507 U.S. at 398. In *O'Brien,* the debtor gave notice in an application that was twelve pages long, consisting of twenty-four paragraphs. The three important paragraphs, which would provide notice to the contracting parties, were buried in the middle of the document and did not list the relevant contracting parties' names or claims. *O'Brien,* 188 F.3d at 129. The present case is distinguishable from *Pioneer* and *O'Brien* because Inacom's notice was not inconspicuous. Inacom provided notice in its Fifth Omnibus Objection to Claims. Unlike *Pioneer,* in which the bar date appeared in a notice of a creditors' meeting, the title of Inacom's document, which included the word "objection," should have alerted Pro-Tec that its Claim may be affected. Furthermore, unlike *O'Brien,* in which the contracting parties' names and claims were not provided in the relevant document, Pro-Tec's name and address and its counsel's name and address is the first item on Page 11 of the **[*27]** first Exhibit E. The court agrees with the Bankruptcy Court that "it would probably take maybe 15 or 20 minutes for an informed person to review the document to find out if any of its clients were affected by the objection." n6 Tr. at 35:4-6. The court finds that this *Pioneer* factor weighs in favor of Inacom.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n6 The court is not in accord, however, with the Bankruptcy Court's view that if the notice of objection to Pro-Tec's Claim had been on the second or third Exhibit E list, instead of the first, then it "might be excusable." Tr. at 26:3-6. This seems to suggest that Pro-Tec would have less responsibility for the delay if it had been in the middle of Exhibit E. However, as the Bankruptcy Court noted, "it would probably take maybe 15 to 20 minutes for an informed person to review the document to find out if any of its clients were affected by the objection." Tr. at 35:4-6. Thus, the court cannot see how Pro-Tec's inadvertence would be any more excusable if the notice had been on the second or third Exhibit E list.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*28]**

## 4. Good Faith

The Bankruptcy court did not make any determination on the issue of whether Pro-Tec acted in good faith because Inacom acknowledged Pro-Tec's good faith at the April 20, 2004 hearing. In view of the agreement of the parties, the court finds that Pro-Tec and its counsel acted in good faith.

## V. CONCLUSION

In the present case, the court cannot say that the Bankruptcy Court failed to apply the *Pioneer* factors. In light of the Bankruptcy Court's consideration and weighing of the facts, the court concludes that the Bankruptcy Court engaged in a proper analysis under *Pioneer*. However, considering the *Pioneer* factors, the facts of the this case, and the equitable nature of excusable neglect, the court concludes that the Bankruptcy Court abused its discretion when it determined that Pro-Tec was not entitled to reconsideration of its Claim based upon excusable neglect. As the court in *Pioneer* observed, "the lack of any prejudice to the debtor or to the interests of efficient judicial administration, combined with . . . good faith . . . [of the appellant and its counsel], weigh strongly in favor of permitting the tardy claim." *Pioneer*, 507 U.S. at 398. **[*29]** In the present case, Pro-Tec has shown that there will be no prejudice to Inacom if its Claim is reconsidered, the delay's effect on judicial proceedings in absolute terms will not prejudice Inacom, and Pro-Tec has acted in good faith. The only *Pioneer* factor that weighs against Pro-Tec is the reason for the delay, for which Pro-Tec was fully responsible.

The court, therefore, will reverse the Bankruptcy Court's ruling denying Pro-Tec reconsideration of its Claim and remand this case to the Bankruptcy Court for proceedings consistent with this opinion.

Dated: October 4, 2004

Gregory M. Sleet
UNITED STATES DISTRICT JUDGE

### ORDER

For the reasons stated in the court's Memorandum Opinion of this same date, IT IS HEREBY ORDERED that:

1. The April 20, 2004 decision of the Bankruptcy Court for the District of Delaware is REVERSED and REMANDED.

Dated: October 4, 2004

Gregory M. Sleet
UNITED STATES DISTRICT JUDGE

Service:  **Get by LEXSEE®**
Citation:  **2004 U.S. Dist. LEXIS 20822**
View:  Full
Date/Time:  Thursday, June 22, 2006 - 9:42 AM EDT

\* Signal Legend:
● - Warning: Negative treatment is indicated
🇶 - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
🅐 - Citing Refs. With Analysis Available
🅞 - Citation information available
\* Click on any *Shepard's* signal to *Shepardize®* that case.

 LexisNexis™

About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights
reserved.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------

IN RE:

GENESIS HEALTH VENTURES, INC., et al.,

        Debtors,

---------------------------------------------------------

JAMES J. HAYES,

        Appellant,

    v.

GENESIS HEALTH VENTURES, INC., et al.,

        Appellees.

---------------------------------------------------------

Chapter 11

Bankr. Case No. 00-2692 (PJW)
(Jointly Administered)

Civil Action No.: 06-103 (JJF)

### CERTIFICATE OF SERVICE

    I, hereby certify that on June 22, 2006, I electronically filed the Appellee Mellon

Bank, N.A.'s Answering Brief of Appeal with the Clerk of the Court using CM/ECF which will

send notification of such filing to registered participants. I further certify that on June 22, 2006, I

have caused to be mailed the document by United States Postal Service to

James J. Hayes
4024 Estabrook Dr
Annandale, VA 22003

Russell C. Silberglied, Esq.
Richards, Layton & Finger
One Rodney Square
Wilmington, DE 19899

/s/Teresa K.D. Currier
Teresa K.D. Currier (No. 3080)
KLETT ROONEY LIEBER & SCHORLING
A Professional Corporation
1000 West Street, Suite 1410
Wilmington, DE 19801
(302) 552-4200

Counsel to Mellon Bank, N.A.

KRLS WILM 65768