## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------

IN RE:

GENESIS HEALTH VENTURES, INC., et al.,

        Debtors,

---------------------------------------------------------

JAMES J. HAYES,

        Appellant,

   v.

GENESIS HEALTH VENTURES, INC., et al.,

        Appellees.

---------------------------------------------------------

Chapter 11

Bankr. Case No. 00-2692 (PJW)
(Jointly Administered)

Civil Action No.: 06-103 (JJF)

### CERTIFICATE OF SERVICE

    I, hereby certify that on June 22, 2006, I electronically filed the Appendix to Appellee Mellon Bank, N.A.'s Answering Brief of Appeal with the Clerk of the Court using CM/ECF which will send notification of such filing to registered participants.  I further certify that on June 22, 2006, I have caused to be mailed the document by United States Postal Service to

James J. Hayes
4024 Estabrook Dr
Annandale, VA 22003

Russell C. Silberglied, Esq.
Richards, Layton & Finger
One Rodney Square
Wilmington, DE 19899

/s/Teresa K.D. Currier
Teresa K.D. Currier (No. 3080)
KLETT ROONEY LIEBER & SCHORLING
A Professional Corporation
1000 West Street, Suite 1410
Wilmington, DE 19801
(302) 552-4200
Counsel to Mellon Bank, N.A.

KRLS WILM 65768

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| GENESIS HEALTH VENTURES, INC., | : | Bankruptcy Case No. 00-2692-PJW |
| et al., | : | |
| | : | |
| Debtors. | : | |
| | : | |
| ———————————————— | : | |
| JAMES J. HAYES, | : | |
| | : | |
| Appellant, | : | |
| | : | |
| v. | : | Civil Action No. 06-103-JJF |
| | : | |
| GENESIS HEALTH VENTURES, INC., | : | |
| et al., | : | |
| | : | |
| Appellees. | : | |
| ———————————————— | : | |

APPENDIX TO APPELLEE MELLON BANK, N.A.'s
ANSWERING BRIEF ON APPEAL

Menachem O. Zelmanovitz
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York  10178
(212) 309-6000

Teresa K.D. Currier (3080)
KLETT ROONEY LIEBER &
SCHORLING, P.C.
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, Delaware  19801
(302) 552-4200

Attorneys for Appellee Mellon Bank, N.A.

# TABLE OF CONTENTS

**Page**

Motion for Reconsideration of the Orders Allowing
   the Genesis and Multicare Senior Lender Claims;
   and the Genesis and Multicare Senior Subordinated
   Note Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A1

Objection of Mellon Bank, N.A. to Motion for
   Reconsideration of the Senior Lender Claims . . . . . . . . . . . . . . . . A10

Transcript of Proceedings Before the Honorable
   Judith H. Wizmur, United States Bankruptcy
   Judge on Jan. 19, 2006 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A16

Order Granting Reorganized Debtors' Cross-Motion for
   Sanctions and Denying (1) Motion for Reconsideration
   of the Orders Allowing the Genesis and Multicare Senior
   Lender Claims; and the Genesis and Multicare Senior
   Subordinated Note Claims and (2) Motion for Appointment
   of Pre-Final Decree Equity Committee dated Mar. 2, 2006 . . . . . . . . . A45

Memorandum Order Denying Motion for Appointment of Equity
   Committee for Purpose of Appealing Confirmation of the
   Plan, Civil Action No. 01-718-JJF (D. Del. Sep. 30, 2002) . . . . . . . . . A47

Memorandum Orders Dismissing Appeal from Confirmation
   Order, Civil Action No. 02-16-JJF (D. Del. Sep. 30, 2002)
   and Civil Action No. 01-718- JJF (D. Del. Mar. 12, 2003) . . . . . . . . . A49

Memorandum Order Denying Motion to Reopen,
   Civil Action No. 01-718 JJF (D. Del. Feb. 26, 2004) . . . . . . . . . . . . . A52

Disclosure Statement for Debtors' Joint Plan of Reorganization
   dated July 6, 2001, excerpts, pp. 66-67 . . . . . . . . . . . . . . . . . . . . A55

Hayes' Notice of Appeal from Mar. 2, 2006 Order
   dated Jan. 30, 2006 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A58

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GENESIS HEALTH VENTURES, INC., et al., | ) | Case No. 00-2692 (JHW) |
| | ) | |
| | ) | |
| | ) | |
| Reorganized Debtors | ) | |
| | ) | |
| | ) | Chapter 11 |
| In re: | ) | |
| | ) | Case No. 00-2494(JHW) |
| MULTICARE AMC, INC., et al. | ) | |
| | ) | |
| | ) | |
| | ) | |
| Reorganized Debtors | ) | |
| | ) | |

## NOTICE OF MOTION

To:    Reorganized Debtors Genesis Health Ventures, Inc.
       Reorganized Debtors Multicare AMC, Inc.

Please take notice that the Genesis Common Stock Class by one of its members, James J. Hayes, has today filed the attached **Motion for Reconsideration of the Orders Allowing the Genesis and Multicare Senior Lender Claims; and the Genesis and Multicare Senior Subordinated Note Claims** with the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801.

Dated: December 7, 2005
       Annandale, Virginia

James J. Hayes
4024 Estabrook Drive
Annandale, VA 22003

Member of the Genesis Equity Class

A1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                          )        Chapter 11
                                                )
GENESIS HEALTH VENTURES, INC., et al.,          )        Case No. 00-2692 (JHW)
                                                )
                                                )
                                                )
        Reorganized Debtors                     )
_____ )
                                                )        Chapter 11
In re:                                          )
                                                )        Case No. 00-2494(JHW)
MULTICARE AMC, INC., et al.                     )
                                                )
                                                )
                                                )
        Reorganized Debtors                     )
_____ )

### GENESIS COMMON STOCK CLASS'S
### MOTION FOR RECONSIDERATION OF THE GENESIS AND MULTICARE
### SENIOR LENDER CLAIMS; AND THE GENESIS AND MULTICARE SENIOR
### SUBORDINATED NOTE CLAIMS

Pursuant to section 502(j) of chapter 11 of title 11 of the United States

Code, 11 U.S.C. 101-1330, Rule 3008 of the Federal Rules of Bankruptcy Procedure, the

Genesis Common Stock Class respectfully requests that the Court reconsider the orders

allowing the Genesis and Multicare Senior Lender Claims; and the Genesis and Multicare

Senior Subordinated Note Claims.

### Background

1.    On November 23, 2005, Reorganized Debtors filed their *Motion for Entry of*

*a Final Decree* in the cases of Genesis Health Ventures, Inc. (Case No. 00-2692) and

Multicare AMC Inc. (Case No. 00-2494)

A2

2.   On August 31, 2005, James J. Hayes, a member of the Genesis common

equity class, filed an appeal of this Court's denial of a post-confirmation equity

committee: *James J. Hayes v. Genesis Health Ventures*, 3rd Cir. (Case No. 05-4005) An

appellate briefing schedule has not been issued.

3.   This motion will be followed by a *Motion for a Pre- Final Decree Equity

Committee*, to represent the interests of the Genesis Common Stock Class: 1) in

proceedings on the instant motion; and 2) a Motion for Sanctions for Professional

Misconduct pursuant to Rule 9001 of the Federal Rules of Bankruptcy Procedure.

4.   On May 3, 2005, this Court issued an opinion:  *In the matter of GENESIS

HEALTH VENTURES INC.*, Debtors: Richard HASKELL, et al., Plaintiffs v.

GOLDMAN, SACHS & CO.; Genesis Health Ventures, Inc.; Mellon Bank, N.A.;

Highland Capital Management, L.P.; George V. Hager Defendants.  This Court's

dismissal has been appealed to the district court.

5.   The Haskell complaint alleged the following facts: a) by the summer of

2000, a group of investment banks and other financial institutions led by defendant

Goldman Sachs & Co. had purchased from the original lending consortium about half of

the outstanding Genesis Senior Loans at a massive discount from face value; b) the

investment banks had acquired over 75% of the Genesis and Multicare Senior Lender

Claims by the time the reorganization plan was confirmed; and c) the confirmed

reorganization plan provided the investment banks with about 70% of the new equity in

the reorganized Genesis.  The alleged facts imply that the confirmed Plan provided the

investment banks an additional $133 million in cash, $79 million in new senior notes and

$22 million in new convertible preferred stock.  The Senior Lenders distribution provided

2

investment banks, who never loaned Genesis anything, windfall profits of several hundred million dollars on an investment made shortly before and during the bankruptcy.

6. The plaintiffs in the Haskell suit included 275 investors who collectively held about 53% of the Genesis Senior Subordinated Note Claims. Like Goldman, many of the Haskell plaintiffs were drawn to their Genesis investment in the months preceding the bankruptcy. These purchases in the secondary markets were an even more "massive discount" to face value than Goldman's purchase of the Senior Loans. It is not known if the Haskell plaintiffs acquired any "Claims" subsequent to the bankruptcy. The confirmed Plan provided the Note Claims 3.2% of the new Genesis common stock.

7. The Table below shows end of month prices for the Genesis and Multicare Senior subordinated notes. Two facts are important to this Court's reconsideration of Genesis and Multicare Claims: 1) the 2009 notes (Bold type in Table.) were issued at a discount in a private placement; and consequently 2) did not trade in the public markets. The Disclosure Statement recognizes the "original issue discount" and the claim for this issue was reduced by about $ 4 million.[1] All other Senior Loan and Subordinated Note Claims are equal to the instrument's face or contractual value.

| Genesis Notes | Moody's | 2000 Prices | | | | | |
|---|---|---|---|---|---|---|---|
| | Rating | May | June | July | Hi | Low | Issued |
| Sr. sub. nt. 9.75 2005 | C | 16 5/8 | 15 1/2 | 20 1/2 | 37 3/8 | 11 1/2 | 6/15/95 |
| Sr. sub. nt. 9.25 2006 | C | 15 | 14 | 11 | 41 | 9 1/2 | 10/7/96 |
| **Sr. sub. nt. 9.875 2009\*** | **C** | ~ | ~ | ~ | ~ | ~ | **12/19/98** |
| | | | | | | | |
| Multicare Notes | | | | | | | |
| Sr. sub. nt. 9.00 2007 | C | 5 | 4 | 6 | 20 | 2 1/5 | 8/4/97 |

\* Private placement issued at 96.16

*Mergent Bond Record*, U.S. Corporate Bonds Section (end of month prices)

---

[1] *Disclosure Statement for Debtors' Joint Plan of Reorganization*, July 6, 2001, p. 23.

3

8. Based on estimates in the Disclosure Statement, the confirmed Plan provided the Subordinated note holders about 6.9% of their face value.[2] Thus, the speculators in the Genesis notes, including the Haskell plaintiffs, lost 56% of their investment in the bankruptcy, based on the average price of the two issues at the end of May 2000. (See Table above.) Investors who provided Genesis capital for its business in the December 1998 private placement lost 93% of their investment.

## Argument

9. The confirmed Plan produced results that, on their face, are manifestly unfair both among members of the same class and between classes. Speculators in Senior Loans like Goldman gained windfall profits of hundreds of millions of dollars, while the original lenders, who provided Genesis the capital to build its business, incurred devastating losses. Original lenders in the Subordinated Note private placement lost 93% of their investment while the speculators' in this class lost only 56% of their investment. Speculators in the common and preferred stock lost their entire investment. The investment bank speculators enormous windfall profits from their Senior Loans comes at the expense of the members of every other securities class.

10. The maldistribution of assets in bankruptcy is becoming increasingly common as speculators in bankruptcy debt become knowledgeable in gaming or manipulating the bankruptcy process to produce enormous profits for themselves while increasing the losses of every other impaired creditor. This summer, for example, the U.S. Bankruptcy Court for the Southern District of New York confirmed a bankruptcy plan that exchanged new Loral stock for $ 2 billion in old debt leaving nothing for the

---

[2] Based on 41 million shares of new common stock and an estimated value of $20.33 per share. *Disclosure Statement for Debtors' Joint Plan of Reorganization*, July 6, 2001 p. 34.

common stock interests.[3]  The CEO of Loral Space and Communications, who argued at the confirmation hearing that his company was seriously undervalued by the debtors' experts summarized the inequity: "[t]here's something wrong with a system where one class of the constituency comes out with absolutely zero and another class – the creditors – gets a multiple of their investment back." [4]

11.     Section 502(j) of the Bankruptcy Code provides that a claim that has been allowed or disallowed may be reconsidered for "cause" and that a reconsidered claim may be allowed or disallowed according to the "equities of the case."[5]  The enormous windfall profits captured by Goldman and other Senior Loan speculators at the expense every other creditor and shareholder is certainly cause for reconsideration.  The equities of the case require reconsideration of the debt securities claims that exceed the price the claimant paid to acquire the debt security or claim.  Under principles of equitable subordination, this Court may, after notice and a hearing, subordinate all or part of an allowed claim to all or part of another claim. 11 U.S.C. 510 (c) (1)

12.     Speculators who acquired Genesis Senior Loans and Subordinated Notes in secondary transactions are masquerading as Genesis creditors and have filed claims based on the amount of money provided Genesis by the original lenders.  Treating the entire claim of speculators as equal in priority to the claims of the original lenders is contrary to every fairness provision in the Bankruptcy Code.  The speculative gain – the difference between the amount of the loan and the secondary sale price –  is equivalent to equity

---

[3]  Debtors' Fourth Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, June 3, 2005, *In re Loral Space & Communications, et al., Debtors*, U.S. Bankruptcy Court S.D.N.Y. Lead case 03-41710 (RRD)

[4]  The Little Guy Loses Out In Loral's Bankruptcy Reorganization, *Barron's* Aug. 1, 2005, p. 25.

[5]  The terms "cause" and "equities of the case" are not defined and will be determined on a case by case basis.

and is properly provided an equity priority. A prospective subordination hearing might consider dividing the claims of speculative creditors into two parts: 1) a priority claim with the same bankruptcy priority as the original instrument; and 2) a non-priority claim that would not participate in the distribution until the common and preferred stock holders recovered the pre-bankruptcy trading value of their issues.[6] After the recovery by equity holders, the remaining non-priority debt claims would be divided among the speculative debt holders and the common and preferred stockholder's, pro-rata, based on the pre-bankruptcy trading values of the respective financial instruments.

13.    The re-prioritization of the speculative part of debt creditors' claims would preserve the pre-bankruptcy market assessment of the contractual value of the firm's debt instruments. Re-prioritization is important to prevent debt class speculators with the highest bankruptcy priorities from gaming bankruptcy rules to extract windfall profits at the expense of debt creditors and stockholders with lower bankruptcy priorities.

14.    Gaming the bankruptcy process has devastating public policy implications. It creates opportunities for speculators to entice firms like Genesis with cash flows sufficient to meet current obligations, but relatively high amounts of distressed debt, to declare bankruptcy. Even the Debtor's counsel affirmed that: "obviously solvent entities may file for bankruptcy", confirming the opportunity for powerful speculators like Goldman to game the bankruptcy process.[7]    But putting solvent companies into bankruptcy to generate windfall profits for speculators comes at high public cost. For example, the Genesis bankruptcy's accumulated costs for legal,

---

[6] Under principles of equitable subordination, the court may, subordinate part of an allowed claim to all or part of another claim. 11 U.S.C. 510 (c) (1)

[7] Transcript of Hearing Before The Honorable Judith H. Wizmur, May 13, 2004, p. 16:23-25

6

investment banking and accounting professionals has exceeded $37 million.[8]    Then there are additional unquantifiable costs of usurping the resources of an overburdened Federal judiciary, and the high opportunity costs of employing highly talented professionals in work that substantially damages the national economy.

15.    The diminution of National wealth – caused by the undervaluation of firms with weak balance sheets or relatively high amounts of debt in the market is the biggest cost of speculators gaming the bankruptcy process.  This country is blessed with many astute investment professionals who – knowing the devastating consequences a bankruptcy has on the value of equity and junior debt – pre-emotively cause lower market prices of all firms with a possibility of a bankruptcy.[9]    Allowing speculators the full priority of a creditor's bankruptcy claim only enlarges the number of firms that are undervalued in the market.  Conversely, reducing the incentives to game the bankruptcy process by re-prioritizing the speculative portion of high priority debt claims reduces the number of "at risk" companies and increases National wealth.

### Conclusion

16.    WHEREFORE, the Genesis Common Stock Class respectfully requests this Court a) reconsider the orders allowing the Genesis and Multicare Senior Lender Claims; and the Genesis and Multicare Senior Subordinated Note Claims and b) grant such other and further relief as is necessary and proper.

---

[8] And this does not include the substantial costs generated by the Haskell fraud on the bankruptcy court litigation.

[9] Genesis is a good example how an efficient market works preemptively to depreciate the value of companies with a possibility of bankruptcy.  From the beginning of February to the end of March 2000, three months before the firm filed for bankruptcy, the Genesis common stock dropped 74% to levels it traded at during bankruptcy.  This example shows how the efficient market would depreciate the value of other firms with the possibility of a bankruptcy and in aggregate reduce National wealth.

7

A8

Dated: December 7, 2005
Annandale, VA.

Respectfully Submitted,

James J. Hayes
Pro Se
4024 Estabrook Dr.
Annandale, VA 22003
(703) 941-4694

## CERTIFICATE OF SERVICE

I certify a copy of the foregoing Motion was mailed from the Northern Virginia Regional Post Office on December 7, 2005 to the following counsel:

Russell C. Silberglied
Richards Layton and Finger P.A.
One Rodney Square
Wilmington, DE 19899; and

Robert S. Brady
Young Conaway Stargatt & Taylor LLP
1000 West Street, 17th floor
Wilmington, DE 19801

James J. Hayes

8

A9

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------x
In re:                              :       Chapter 11
                                    :
GENESIS HEALTH VENTURES, INC.,      :       Case No. 00-2692 (JHW)
et al.,                             :
                                    :
            Reorganized Debtors     :
                                    :
------------------------------------------------x
------------------------------------------------x
In re:                              :       Chapter 11
                                    :
MULTICARE AMC, INC., et al.         :       Case No. 00-2494 (JHW)
                                    :
                                    :
            Reorganized Debtors     :
                                    :
                                    :
------------------------------------------------x
```

## OBJECTION OF MELLON BANK, N.A. TO MOTION FOR
## RECONSIDERATION OF THE SENIOR LENDER CLAIMS

Mellon Bank, N.A. ("Mellon"), by its counsel, Morgan, Lewis & Bockius LLP and Klett Rooney Lieber & Schorling P.C., for its Objection to the Motion for Reconsideration of the Genesis and Multicare Senior Lender Claims and the Genesis and Multicare Senior Subordinated Claims dated December 12, 2005 (the "Motion"), filed by James J. Hayes ("Hayes"), respectively represents as follows:[1]

---

[1]  Mellon is responding to the Motion although it was never served with the Motion.  Mellon also joins in the Debtors' responses to this Motion and to Hayes' separate Motion for Appointment of Pre-Final Decree Equity Committee dated December 11, 2005.

## **RELEVANT FACTS**

1.      Mellon acted as administrative agent for the senior secured lenders (the "Senior Lenders") under the prepetition and post-petition credit agreements of Genesis Health Ventures, Inc. ("Genesis") and Multicare AMC, Inc. ("Multicare").  At confirmation of Genesis' and Multicare's joint plan of reorganization (the "Plan"), in excess of $1.2 billion and $443 million were due and outstanding under Genesis' and Multicare's prepetition credit agreements, respectively.  In addition, under the post-petition credit agreements, Mellon, as administrative agent, and certain of the Senior Lenders provided Genesis and Multicare with debtor-in-possession financing up to the respective maximum amounts of $250,000,000 and $50,000,000.

2.      The Plan was confirmed by this Court by order entered on September 20, 2001.  The Plan became effective and was substantially consummated on or about October 2, 2001.

3.      Hayes is a former common stock holder of Genesis who has litigated pro se against the Plan continuously and unsuccessfully since prior to the confirmation hearings.  Among other things, Hayes filed an objection to the Plan, several motions for the appointment of an equity committee, and numerous appeals from the confirmation order and other orders of this Court, all of which were denied or dismissed.

## THE MOTION

4.     In the instant Motion,[2] Hayes for the first time seeks reconsideration of the Senior Lenders' claims pursuant to Section 502(j) of the Bankruptcy Code, more than four years after the Plan was substantially consummated.

5.     Many grounds, both substantive and procedural, exist requiring the denial of the Motion.  However, the Court need look no further than the basic requirement of Section 502(j) - - that a claim may be reconsidered only "for cause" - - to determine that the Motion is utterly without merit.

6.     The only discernable arguments that Hayes proffers as "cause" for reconsideration of the Senior Lender claims essentially reduce down to two points:  (a) the claims asserted in the action captioned Haskell, et al. v. Goldman, Sachs & Co., et al., Adv. No. 04-53375 (JHW) (the "Haskell Litigation") are a sufficient basis for reconsideration; and (b) certain of the Senior Lenders reaped "windfall profits" by purchasing their claims from the original lenders at a discount and should, therefore, be equitably subordinated.  (Motion ¶¶ 4-5, 9).  As set forth below, neither of these arguments constitutes cause for this Court's reconsideration of the Senior Lender claims.

## ARGUMENT

7.     Section 502(j) of the Bankruptcy Code provides that claims in bankruptcy that have been allowed or disallowed may be "reconsidered for cause".  See 11 U.S.C. § 502(j); Fed. R. Bankr. P. 3008.  In order for such a motion for reconsideration to be

---

[2] Hayes has styled the Motion as brought by the "Genesis Common Stock Class" although no other former equityholder has joined in his Motion.

granted, "cause" invoking in a timely manner "at least one" of the grounds set forth in either Fed. R. Civ. P. 59 or Fed. R. Civ. P. 60(b) must be articulated. See, e.g., In re Colley, 814 F.2d 1008 (5th Cir.), cert. denied, 484 U.S. 898 (1987); In re Motor Freight Express, 91 B.R. 705, 711 (Bankr. E.D.Pa. 1988); In re Rabzak, 79 B.R. 960, 964 (Bankr. E.D.Pa. 1987).

8.    Setting aside the patent staleness of the Motion, no grounds have been asserted for reconsideration of the Senior Lender claims.

## I. The Haskell Litigation Has Been Dismissed
## And Is Not Cause For Reconsideration of the Claims

9.    This Court dismissed the Haskell Litigation in its entirety on grounds of res judicata, collateral estoppel, and the limitations period for revocation of confirmation orders set forth in Section 1144 of the Bankruptcy Code. See In re Genesis Health Ventures, Inc., 324 B.R. 510 (Bankr. D. Del 2005). Accordingly, the Haskell Litigation and the claims asserted therein cannot in any manner constitute "cause" for reconsideration of the Senior Lender claims.

## II. Creditors Who Purchase Notes At a Discount
## Are Entitled to Claims in the Face Value of the Notes

10.    Hayes asserts that certain Senior Lenders reaped windfall profits because they purchased notes at a discount and then were treated as "equal in priority to the claims of the original lenders". (Motion ¶ 12). Hayes alleges that purchase of the notes at a discount constitutes cause for reconsideration of the Senior Lender claims and the

equitable subordination of such claims under Section 510(c) of the Bankruptcy Code.[3] Id.

11.    However, the draconian remedy of equitable subordination is "not to be invoked lightly" and requires that there have been some form of egregious or inequitable conduct by the creditor whose claim is to be subordinated. See, e.g., Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims, 160 F.3d 982, 986-987 (3d Cir. 1998); In re After Six, Inc., 177 B.R. 219, 231 (Bankr. E.D.Pa. 1995).

12.    Courts have routinely held that a creditor who purchases a note at a discount is entitled to a claim in the face amount of the note. See, e.g., In re Fairfield Exec. Assocs., 161 B.R. 595 (D.N.J. 1993); see also In re Pittsburgh Rys. Co., 159 F.2d 630 (3d Cir. 1946), cert. denied, 331 U.S. 819 (1947) (a claim is determined by the consideration received by the debtor not the amount paid by the current holder of the claim). By purchasing their notes at a discount, the Senior Lenders were guilty of no egregious or inequitable conduct and were entitled to allowed claims in the full face amount of the notes they acquired.

13. Thus, Hayes has failed to enunciate any cause for reconsideration of the Senior Lender claims, and the Motion is patently devoid of any merit.

---

[3] The form by which Hayes seeks such relief is also improper. A proceeding to equitably subordinate a claim must be brought as an adversary proceeding. See Fed. R. Bankr. P. 7001(7).

1-NY/1986469.4                                    4

## CONCLUSION

14.    For the reasons noted above, the Motion should be denied, and the Court should consider appropriate sanctions against Hayes pursuant to Fed. R. Bankr. P. 9011(b)(2) and 9011(c)(1)(B), together with such other and further relief as the Court deems just and proper.

Dated: January 10, 2006
      Wilmington, Delaware

                      Teresa K.D. Currier (3080)
                      KLETT ROONEY LIEBER &
                      SCHORLING, PC
                      The Brandywine Building
                      1000 West Street, Suite 1410
                      Wilmington, Delaware  19801
                      (302) 552-4200

                      -and-

                      Richard S. Toder
                      Menachem O. Zelmanovitz
                      MORGAN, LEWIS & BOCKIUS LLP
                      101 Park Avenue
                      New York, New York  10178
                      (212) 309-6000

                      Attorneys for Mellon Bank, N.A.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | . | Chapter 11 |
| | . | |
| GENESIS HEALTH VENTURES, INC., | . | Case No. 00-2692(JHW) |
| *et al.,* | . | |
| | . | |
| Reorganized Debtors. | . | |
| | . | |
| IN RE: | . | Chapter 11 |
| | . | |
| GENESIS ELDERCARE CORP. | . | Case No. 00-2564(JHW) |
| | . | |
| Reorganized Debtors. | . | |
| IN RE: | . | Chapter 11 |
| | . | |
| NORRISTOWN NURSING AND | . | Case No. 00-2716(JHW) |
| REHABILITATION ASSOCIATES, L.P. | . | |
| | . | |
| | . | |
| Reorganized Debtors. | . | January 19, 2006 |
| | . | 9:30 a.m. |
| | . | (Wilmington) |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JUDITH H. WIZMUR
UNITED STATES BANKRUPTCY COURT JUDGE

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

1           THE CLERK: All rise.

2           THE COURT: Please be seated.

3           MR. SILBERGLIED: Good morning, Your Honor.

4           THE COURT: Good morning.

5           MR. SILBERGLIED: For the record, Russ Silberglied

6   of Richards, Layton, and Finger on behalf of the Reorganized

7   Debtors.  We have a short agenda for today.  The first matter

8   on the agenda is continued.  A brief word as to why it's

9   continued in case Your Honor wanted an update, that is the

10  motion for entry of a final decree itself.  The US Trustee

11  has pointed out that there are some quarterly operating

12  reports that were not filed, and we are working with the

13  company to get those quarterly operating reports filed.

14  There's been a series of post confirmation transactions at

15  the company, so employees are a little bit harder to find

16  than they once were.  But we're working on it, and we hope to

17  go forward with that at the next hearing which actually Ms.

18  Collins reminded me on our way over here we don't have a next

19  hearing.  So I don't know if Your Honor knows the next time

20  you're going to be in Delaware.

21          THE COURT: Turns out March 2nd might work.  I might

22  be here on February 16th.  It sounds like March 2nd might be

23  better for you.

24          MR. SILBERGLIED: March 2nd would be fine.  Thank

25  you, Your Honor.

A17

1           THE COURT: Let's make that 9 o'clock.

2           MR. SILBERGLIED: Thank you, Your Honor.  The next

3   two items on the agenda are both motions of Mr. Hayes.  He's

4   here.  The first is with respect to the lenders themselves,

5   and the second is with respect to the appointment of an

6   equity committee, so I will cede the podium to Mr. Hayes.

7           THE COURT: Mr. Hayes.

8           MR. HAYES: Good morning, Your Honor.

9           THE COURT: Good morning.  You've filed 2 motions.

10  One, to reconsider the order allowing the senior lender

11  claims and two, to appoint an equity security committee.  At

12  this point I am more than puzzled, disturbed, by these

13  motions, because, as I've read the amazing post confirmation

14  history of these issues, I'm appalled, really, that the

15  issues are coming back.  And I say that with an understanding

16  that the reconsideration motion on the claims is really aimed

17  at, from your description of what you're looking for, a

18  restructuring of the plan, a re-prioritization of the

19  position of the secured lenders, a focus on your claim of

20  windfall on their part, of unfairness, of improper

21  allocations, and an adjustment of claims on those bases.  In

22  terms of the equity security holder committee, it was well

23  laid out by the objection to your motion that you - - this is

24  the 4th time that you're here on that.  Not - - perhaps 3

25  times before the Bankruptcy Court and one before the District

4

1    Court, with appeals to the Circuit. I'm not sure about the

2    status of the last appeal. That was apparently filed on the

3    denial of the District Court I think for – – on the motion

4    for appointment of an equity security committee. I could be

5    corrected on that. But you've been there, you've done that,

6    you've been denied your relief. Why should I consider this

7    again? What's different now? How many times, how many bites

8    at the apple do you get?

9         MR. HAYES: Your Honor, the equity clients in this

10   – – throughout this bankruptcy has been denied

11   representation. I don't think there's any dispute that at no

12   point – – at not time in the bankruptcy has the equity

13   interest been represented. That is – –

14        THE COURT: Well, the equity interest has appeared

15   and been heard in – – at the confirmation hearing. You,

16   yourself, presented objection to the plan, and your concerns

17   were addressed and denied. Your contention is not that there

18   has been no opportunity to be heard – –

19        MR. HAYES: No.

20        THE COURT: – – but no opportunity to be paid from

21   the estate for legal fees.

22        MR. HAYES: The equity class has not been adequately

23   represented.

24        THE COURT: Do you contend that there is an absolute

25   right to representation paid for by the estate in every case

5

1     for equity?

2            MR. HAYES: No.  But in this case, since there was

3     no - - I mean, adequate representation, there are a number of

4     ways that it can be provided.  The normal way, I mean, you

5     know, the shareholders are normally represented by company

6     management who has a fiduciary obligation to represent

7     shareholders interests.  And in a normal case, the company

8     officers, in fulfillment of the fiduciary obligations provide

9     representations for the equity class.  I mean, in the recent

10    Morale (phonetic) bankruptcy, which I cited, the chairman of

11    the company, Chairman Schwartz, argued that the valuations

12    prepared by the investment bankers were low.  But in this

13    case, which is rather unusual, the officers of the company

14    have now been charged with conspiracy to commit fraud.

15            THE COURT: Have now been charged in the Haskell

16    (phonetic) matter?  Is that what they're - -

17            MR. HAYES: Well, that was the allegations.

18            THE COURT: Those are - -

19            MR. HAYES: In the Haskell matter.

20            THE COURT:  - - the allegations, and that complaint

21    I dismissed, I believe.

22            MR. HAYES: But you - -

23            THE COURT: I think the District Court has affirmed,

24    if I'm not incorrect.

25            MR. SILBERGLIED: No, Your Honor.  We're in the

A20

6

1    middle of briefing in the District Court.

2              THE COURT: I see.  So that's under appeal.

3              MR. HAYES: But your dismissal didn't address any of

4    the allegations.

5              THE COURT: That's correct.  So how can I address

6    the allegations here.  There were issues of *res judicata* and

7    collateral estoppel.  Issues under 1144.  What's different

8    here?  Why - -

9              MR. HAYES: Well, the shareholders have a

10   constitutional right.  Among all the creditors and

11   participants, the shareholders are the only ones whose

12   property rights are protected by the 5th Amendment of the

13   Constitution.  And as - -

14             THE COURT: And have you - -

15             MR. HAYES:  - - a protected right - -

16             THE COURT:  - - addressed that issue before?  Have

17   you - - is this the first time that you've raised the

18   constitutional dimensions of the shareholders opportunities?

19             MR. HAYES: I have attempted to raise it throughout.

20   But none - -

21             THE COURT: And you've been rejected.

22             MR. HAYES:  - - of the courts - -

23             THE COURT: Have you not?

24             MR. HAYES: None of the courts have addressed the

25   constitutional issue.

1          THE COURT: So that because they didn't address the

2     constitutional issue, because they decided that you were not

3     entitled, for any reason, to assert, because - - for a number

4     of reasons, including the timing of your request, that you

5     were not entitled to an equity security committee, including

6     back in September of 2001, including as late as May of 2004,

7     all of those times you had the opportunity - - you raised - -

8     you took the opportunity, whether you had it or not is

9     another question, you took the opportunity to raise the issue

10    of equity security committee on various grounds.  I don't

11    recall that you raised the constitutional grounds in front of

12    me, but you might have raised it otherwise.  It doesn't

13    matter whether it was taken up or not.  You're quite right to

14    assert that as a basic proposition constitutional issues

15    don't go away by the passage of time.  That's a valid

16    proposition.  But in this context you can't just keep coming

17    back and thinking up new theories to raise the same request

18    for relief that you have all along.

19          MR. HAYES: I'm not raising new theories.  I mean,

20    both the law and the constitution require that adequate

21    representation be provided to the equity class.  No court has

22    said that the equity class has been provided adequate

23    representation.

24          THE COURT: There has, there was - - I did say, in

25    my confirmation opinion, that the value in the company - -

8

1   you may disagree with it, other people have disagreed with it
2   - - the proofs as I found them to be were that there was no
3   value to reach equity, and therefore equity could be - - the
4   plan as proposed could be confirmed, and the plan proposed
5   that there would be no distribution to equity.  That was the
6   decision.  If - - and that's the decision, I believe, was
7   appealed and approved.  And there it stands right or wrong.
8   And nobody can say whether a particular decision, in
9   retrospect, was right or wrong.  But there it stands as a
10  final judgment.  If that's so, then how can we say that the
11  equity was not adequately represented?
12          MR. HAYES: Well, adequate representation requires
13  some form of representation.
14          THE COURT: Well you represented the equity, didn't
15  you?  I mean you - -
16          MR. HAYES: I - -
17          THE COURT:  - - took it upon yourself.
18          MR. HAYES: Well nobody has said that it's adequate.
19  Everybody is saying my representation has been quite
20  inadequate.
21          THE COURT: Did you contemplate hiring an attorney
22  to help you make your presentation in the first instance?
23          MR. HAYES: Yes I did.  I have talked to attorneys.
24          THE COURT: Um-hum.
25          MR. HAYES: $34 million is spent on professional

1    fees in this case.  I'm an individual shareholder.  I am not

2    wealthy.  As part of adequate representation is having

3    representation equivalent to what, to what the other side

4    has.  And I - - even if I'm considered to be representing, I

5    - - and I guess I don't see objecting.  When I objected, I

6    didn't have any - - couldn't cross examine a witness,

7    couldn't present any evidence, couldn't do anything but

8    complain.

9              THE COURT: You didn't have the chance to cross

10    examine witnesses or - -

11              MR. HAYES: No.

12              THE COURT:  - - at the hearing?  At the

13    confirmation hearing?

14              MR. HAYES: No.

15              THE COURT: Did you - -

16              MR. HAYES:  All the objectors were told that their

17    objections would be heard at the end of the proceeding.  I

18    mean, it was kind of a - -

19              THE COURT: There was testimony presented, cross

20    examination of witnesses.  Did you stand up and say, I would

21    like to cross examine a particular witness?

22              MR. HAYES: No.  Because the Debtors' counsel said

23    - - told me what the procedure was.

24              THE COURT: I see.

25              MR. HAYES: Even the objectors - - well.

1           THE COURT: We did consider experts presented by

2     some of the objectors.  Let me remind myself that - -

3           MR. HAYES: But they weren't equity members.

4           THE COURT: They weren't equity.  Did you have - -

5     do you understand that you had a chance to present expert

6     witnesses if you chose to do that?

7           MR. HAYES: No I didn't.

8           THE COURT: Let me ask you another question just to

9     round out the record.  Before - - when was the first time

10    that you raised the issue of an equity committee?  You'll

11    recall that you filed a motion before confirmation that was

12    ruled on in the context of confirmation asking for that

13    relief.  That was in August of 2001.  Did you raise the issue

14    before then?

15          MR. HAYES: The issue of an equity committee?

16          THE COURT: Yes.

17          MR. HAYES: No.  I raised the issue of an equity

18    committee after - - immediately - - fairly soon after I had

19    gotten the disclosure statement that indicated that

20    shareholders were not going to participate in the

21    distribution.  And I - - and almost on the same day.  It was

22    kind of fortuitous.  I'm not an attorney, and I don't - - I'm

23    an investor.  I don't follow the bankruptcies of the

24    companies I happen to own.  But it was somewhat fortuitous

25    that I was notified of the bankruptcy at the same time that I

11

1   had gotten a new copy of my Investor's Daily Graphs

2   (phonetic). As a part of the daily graphs, it shows stock

3   appreciation at certain indexes. And the leading performer

4   had been the healthcare index. And that's when I started

5   looking, reading the disclosure statement. Seeing that the

6   valuation of the company was done in April, and that since

7   April, the Healthcare index that I was looking at had

8   appreciated by 60%. I mean that told - - that significant

9   thing said, you know, everything in this disclosure statement

10  is inaccurate. Everything that it's based on.

11          THE COURT: And you did address me at confirmation,

12  did you not?

13          MR. HAYES: Yes.

14          THE COURT: And I considered your comments. Let me

15  ask you this, you've - - the level of litigation that you've

16  conducted since then is quite impressive. You've traveled to

17  the District Court and to the Court of Appeals. On several

18  occasions you've asked for *en banc* consideration. You've

19  tried to have the Supreme Court weigh in on these issues.

20  You've really tried to exhaust your opportunities to have

21  these issues considered. How can I - - why wouldn't the - -

22  the attorneys are seeking sanctions against you saying enough

23  is enough, he's dragging us into this again, we've briefed

24  these issues up and down the chart of the Federal court

25  system, and we've received the same answer. Why shouldn't we

1    impose upon Mr. Hayes to pay our court fees at this point in

2    light of the fact that he's dragging us, again, yet again,

3    into court?  What's my answer to that?  Why shouldn't I say,

4    You know, you're right?  I'm amazed at this history of up and

5    down.  And back again.

6              MR. HAYES: I think their motion for sanctions is

7    completely out of order at this time.

8              THE COURT: Why?

9              MR. HAYES: Because it's prejudicing the Court

10   against the merits of the case.

11             THE COURT: In other words, I shouldn't consider the

12   fact that this - - these issues have been up and down and

13   around and through?  That these issues have been - - don't I

14   have to consider that?  Isn't there such a thing as finality,

15   and principles that govern the way that we do business in the

16   court system?

17             MR. HAYES: You know, there cannot be any finality

18   until the courts address the constitutional issues.  Let me

19   - - this isn't in my brief, but it's part of what I prepared.

20   This Court cannot avoid the constitutional issues of adequate

21   representation of the equity clients.  In <u>Marlboro versus</u>

22   <u>Madison</u> (phonetic) Chief Justice Marshall's opinion stated,

23   It is emphatically the province and the duty of the judicial

24   department to say what the law is.  Those who apply the rules

25   to a particular case must, of necessity, expound and

1    interpret that rule.  If two laws conflict with each other,

2    the courts must decide on the operation of each.  So if a law

3    be in opposition to the constitution and both the law and the

4    constitution apply to a particular case so that the court

5    must either decide that a case conforming to the law,

6    disregarding the constitution, or conforming to the

7    constitution disregarding the law, the court must decide

8    which of these conflicting rules govern the case.  This is

9    the very essence of judicial duty.  None of the courts have

10   addressed one, whether the 5th Amendment applies to, or

11   whether the property of an equity holder is the property

12   that's under the definition of the 5th Amendment.  There's no

13   opinion that talks about whether adequate representation is

14   required by the constitution.  About what adequate

15   representation is.

16           THE COURT: Understood.  Thank you Mr. Hayes.

17           MR. SILBERGLIED: For the record again, Russ

18   Silberglied on behalf of Genesis.  I'm not going to take a

19   lot of time, Your Honor.  I'm going to respond to a couple of

20   points briefly, and then talk about the sanctions motion.  I

21   don't think Your Honor needs to hear much more from me about

22   the background of this, because it's quite clear Your Honor

23   has read the papers.  A couple of points raised by Mr. Hayes.

24   One, this issue of nobody has addressed the constitutional

25   argument.  Leaving aside for a minute that there simply is no

1    constitutional argument here, and it's not a constitutional

2    issue, let's leave that aside for a moment.  I believe what

3    Mr. Hayes read is word for word out of his brief to the 3rd

4    Circuit Court of Appeals.  He briefed this to the 3rd Circuit

5    Court of Appeals.  I don't recall specifically on what

6    grounds the 3rd Circuit rejected his argument, but suffice it

7    to say it did.  It rejected it again *en banc*.  He made the

8    same constitutional argument in his petition for cert.

9    (phonetic) to the United States Supreme Court, and cert. was

10   denied.  This issue is finished.  It's not equitably moot,

11   it's actually moot in the words of Judge Farnan.  Second,

12   Your Honor, the point that Mr. Hayes made that he couldn't

13   cross examine witnesses and that he couldn't present

14   evidence.  Frankly I don't remember whether he cross examined

15   or not, it's too long ago in my memory to remember that level

16   of detail.  I do remember that he made oral argument.  I do

17   remember, obviously, that counsel for Mr. Grimes, counsel for

18   GMS cross examined our witnesses and put on their own

19   witnesses as well.  Cross examined Mr. Zelmonvitz's witnesses

20   as well.  And what I would additionally add to the record,

21   Your Honor might recall that Mr. Hayes in fact did attempt to

22   introduce evidence to this Court in the form of the famous

23   cartoons that he submitted.  Not only did Your Honor admit

24   those cartoons into evidence, but Your Honor - - but Mr.

25   Hayes has also attached them to pretty much every appellate

1    brief he has filed since then.  So it's flatly incorrect that

2    he didn't have the opportunity to present evidence.  It's

3    flatly incorrect that he didn't present evidence.  So I will,

4    then, skip over, in the remainder of my argument, why his two

5    motions today ought to be denied.  I'm sure Mr. Zelmonvitz

6    might want to say something more on the motion leveled to his

7    client.  I'm going to skip right to the sanctions portion,

8    unless Your Honor has questions about the first portion.

9            THE COURT: Please proceed.

10            MR. SILBERGLIED: Thank you, Your Honor.  You know,

11    in short this does has to stop.  Have to stop, excuse me.  It

12    doesn't cost Mr. Hayes anything to file these motions because

13    he's not paying an attorney, but it most assuredly does cost

14    my client something.  Courts expect responses.  And that

15    means that my client must pay me or Weil Gotshal or somebody

16    else to respond to these motions.  And it is inflicting a

17    cost upon us.  It's inflicting a cost also on the federal

18    system because Your Honor has to keep hearing these, the

19    District Court has to keep hearing these, the 3rd Circuit has

20    to keep hearing these.  And in short Mr. Hayes needs a

21    message that this is time to stop.  If Your Honor has any

22    doubts whatsoever about what Mr. Hayes' intentions are if he

23    is not sanctioned today, all you have to do is open up to

24    paragraph 14 of his motion itself, and look at the sentence

25    that starts in the second to last line of page 6 in paragraph

16

1    14 where he says, quote, "Ratification of the - - and this is

2    the motion for today.  Quote, "Ratification of the

3    confirmation by an equity committee would set the stage for a

4    final decree that would really be final and not just another

5    intermediate point in this saga."  End quote.  In other

6    words, he has absolutely no intention of letting a final

7    decree, if entered by Your Honor at the March hearing, stand

8    in his way of continuing to file these motions.  He thinks

9    that that would be an intermediate point in the saga.  That's

10   exactly why we need an order from your court awarding

11   sanctions.

12          THE COURT: As a point of procedure, if the appeals

13   are still pending, what opportunities do I have to enter a

14   final decree?

15          MR. SILBERGLIED: And that's - - perhaps that's for

16   the March hearing.  We have put that in the motion.  That

17   there was case law on the subject of being able to enter a

18   final decree when there's nothing currently pending in the

19   Bankruptcy Court as opposed to things that are on appeal to

20   appellate courts from the Bankruptcy Court.  While I guess I

21   didn't necessarily spell it - - there are cases - -

22          THE COURT: I'm sure there are, and - -

23          MR. SILBERGLIED:  - - and they're cited in that

24   motion.

25          THE COURT:  - - I'm not deciding the issue.  My

A31

17

1    facial expression is that there may be some doubt on the

2    issue since the jurisdictional opportunity to hear the case

3    comes up as it's opened, as it's referred from the District

4    Court.  And so it's an interesting issue.

5           MR. SILBERGLIED: Well, understood, Your Honor.  And

6    I'll be prepared to speak more to those cases at the March

7    hearing.  But suffice it to say that I believe the proper

8    remedy would be - - we really don't think the Haskell case is

9    coming back.  We really don't think that the Hayes motion is

10   coming back on remand.  But that's my opinion, obviously.  If

11   it does, there's always the ability to reopen the bankruptcy

12   case.  Just as if somebody needs to file a motion.  You know,

13   if you enter the final decree in March and some creditor

14   comes and violates the confirmation order, and violates the

15   discharge injunction in May, well then what I would do, like

16   is done in many, many cases, is I would file a motion that

17   asks for the Court to reopen the case for the sole purposes

18   of hearing a motion for sanctions for violating discharge

19   injunction and confirmation order, or something of the like.

20          THE COURT: Yeah.  You've cited §1927 - -

21          MR. SILBERGLIED: Yes, Your Honor.

22          THE COURT:  - - of Title 28 as a basis for awarding

23   sanctions, and you're aware that there is some controversy

24   about whether the Bankruptcy Court qualifies as any court of

25   the United States.  There is case law around the country that

18

1    disagrees with that proposition.  I gather that you're also

2    relying, for instance, on the United States Supreme Court

3    Chambers case for inherent authority of a court to address an

4    abuse of the process, if you will.  In a limited way.

5    Because we're not talking about 9011, it's not a separate

6    motion.  Well, it is, I guess.  But it's - -

7              MR. SILBERGLIED: It's a cross motion.  It is a

8    separate motion.  I mean, we could have done it as 9011.

9    Frankly, Your Honor, the main reason why we didn't do 9011 is

10   because the hearing was in 2 weeks, and 9011 doesn't

11   translate that well to a contested matter in a Bankruptcy

12   Court because you have to give it 20 days safe - - I think

13   it's 20 days - - whatever it is safe harbor notice.  We would

14   have been more than happy to file a safe harbor notice and

15   proceed under 9011, but we didn't have sufficient time before

16   today's hearing.  I think that the principles of 9011 apply.

17   I think 1927 itself, there is case law that supports it under

18   - -

19             THE COURT: I don't recall that the 3rd Circuit has

20   ever weighed in on the issue of whether a Bankruptcy Court

21   can utilize 1927.  Am I right?

22             MR. SILBERGLIED: You're right, Your Honor.  Or, at

23   least we uncovered no such case.

24             THE COURT: Yeah.  I'm not aware of any, but anyhow.

25             MR. SILBERGLIED: So there are those principles.

A33

1   And, you know, and of course there is the inherent power of

2   the Court, and there's equitable principles in 105 for Your

3   Honor to be able to control your own docket.  And as we just

4   read from paragraph 14 of Mr. Hayes own motion, he's

5   admitting to the Court that he's going to keep filing

6   motions.  And I think that, you know, 105 would also support

7   - - would support the issue in terms of the Court controlling

8   its own docket.

9           THE COURT: Indeed it would.  I'm confident of that.

10  Thank you Mr. Silberglied.

11          MR. SILBERGLIED: Thank you, Your Honor.

12          THE COURT:  Other comments?  Sir.

13          MR. ZELMONVITZ: Menachem Zelmonvitz of Morgan Lewis

14  on behalf of Mellon Bank, the agent for the senior lenders.

15  I'll be very brief, Your Honor.  I just wanted to touch on

16  first of all the reconsideration motion, which is addressed

17  not only to our clients, but also actually to our opponents

18  in the Haskell litigation.  Because he's seeking to

19  essentially have their claims also reconsidered.  The basic

20  requirement, as we've noted in our short objection, is that

21  there has to be cause for reconsideration.  Absolutely no

22  cause has been shown.  The only one even suggested would be

23  either the Haskell litigation, which has been dismissed, and

24  secondly really the ability of some of the senior lenders, or

25  the other lenders, who have gotten a so-called windfall.  But

1    that is not the test.  As the 3rd Circuit has said, a claim is

2    determined by the consideration received by the Debtor, not

3    the amount paid by the current holder of the claim.  That's

4    been upheld by every case that I'm aware of.  So that if you

5    purchase a note, you're entitled to a claim in the amount of

6    that note, not the amount of what you paid for that

7    particular claim.

8             THE COURT: What about cause in terms of

9    constitutional impairment?

10             MR. ZELMONVITZ: Well that really deals with also

11    the equity committee motion.  And I don't understand where

12    there is a constitutional issue here.  There's a right to

13    counsel.  No one has deprived Mr. Hayes that right of

14    counsel.  He could have gone out and retained his own

15    counsel.  The issue here is do you pay for that counsel out

16    of the estate?  The estate was not his money.  The estate was

17    our client's money.  And that's what Your Honor actually

18    found in the valuation part of the confirmation hearing.  The

19    equity holders actually had no stake left in this company.

20    And therefore, it was not right to even suggest that they, or

21    their counsel, be paid from the estate.  No one deprived him

22    of counsel.  He had every right to go out and retain counsel.

23    Therefore, I don't see any issue here.  Any constitutional

24    issue here whatsoever.  And that was the second point which I

25    really wanted to get to, Your Honor.  And the final thing I

21

1    wanted to mention is what Your Honor touched upon on the

2    final decree.  We actually had a conversation yesterday.  The

3    senior lenders are, to some extent, a little bit concerned to

4    make sure that this Court retains jurisdiction until the

5    Haskell litigation is over and done with.  We do agree with

6    Mr. Silberglied that there is law out there which would allow

7    for the reopening of the case in the unlikely event of a

8    remand, which we agree with Mr. Silberglied is very, very

9    unlikely.  However, it may be for consideration by the Court

10   to at least leave one of the cases open so that there is

11   continuing jurisdiction.  We can leave this of course for

12   further discussion for March 2nd.

13            THE COURT: Indeed.

14            MR. ZELMONVITZ: Thank you, Your Honor.

15            THE COURT: Thank you.  If there are no other - -

16            MR. HAYES: May I respond to these?

17            THE COURT: You may, Mr. Hayes.  Come on up.  Last

18   comment.

19            MR. HAYES: On the motion for reconsideration.  I

20   mean, they're misreading what I propose in the

21   reconsideration.  I am not saying - - I am not reducing the

22   claims of the secondary purchasers.  They're retaining their

23   claims.  I'm just dividing a claim into 2 parts.  That's the

24   reconsideration proposal.  Part of the claim would be - -

25   maintain the same priority as it has now, what I call the

1   speculative part of the claim would still remain a claim.  It

2   would be given a lower priority in a separate class with all

3   the speculative claims, which include the subordinated note

4   holders and the shareholders.  So I'm not reducing the claim.

5   And in the very case that, the Richfield Property Case, I

6   mean this parallels the way in which a mortgage obligation

7   which was secured by property as treated.  A valuation of the

8   property was less than the mortgage, and part of the claim is

9   considered as secured and part of it is considered as

10  unsecured.  I mean, this parallels that in every respect.

11          THE COURT: Understood.

12          MR. HAYES: And the second thing on cause.  These

13  claims, the assertion is made in the cases cited that cause

14  has to be from a Rule 60 cause, because Rule 60 is the normal

15  means for reconsideration.  But that only applies in cases

16  where the claims were considered in the first place.  These

17  claims were never considered, these claims were merely

18  asserted as - - and it didn't come out until, as far as I

19  know, until the Haskell litigation, that the secondary

20  claims, or secondary transactions in the loans was to the

21  extent that it is.  I mean, Haskell they just - - 75% of the

22  senior loan were acquired secondarily.  That these senior

23  lenders, and these are the investment banks and these are the

24  defendants in the Haskell litigation, never paid Genesis

25  anything.  They acquired these claims in the secondary

```
 1   market.  And the claims were, senior lender claims are like

 2   $1.4 billion, and 75% of that, and the allegation is made or

 3   alleged that these loans were picked up at 50¢ on the dollar.

 4   I mean, that's a $500 million shift in priority of claims.

 5   And it would allow money to fully compensate the other senior

 6   lenders who I think that the bankruptcy laws are trying to

 7   protect.  Creditors who actually provided capital to the

 8   corporation and are trying to recover a hundred percent of

 9   their claim, and are being prevented by doing so by

10   speculators who are asserting that their claim should be of

11   equal priority to those.

12            THE COURT: Thank you Mr. Hayes.

13            MR. HAYES: And - -

14            THE COURT: Did you - - go ahead.

15            MR. HAYES: And I think Mellon Bank has a conflict

16   of interest in representing only the defendants in the

17   Haskell litigation and ignoring the original senior lenders

18   who have a claim.  Because they would be very much in support

19   of this motion.

20            THE COURT: I don't see them here.  Thank you Mr.

21   Hayes.

22            MR. HAYES: But - -

23            THE COURT: That's enough.  Thank you, sir.  I read,

24   Mr. Hayes, your recitation and you've included these

25   comments, many of them, in your papers.  By these comments
```

1   you seek that I basically rewrite the Bankruptcy Code.  That

2   I inject my own sense of what I think is fair, what I think

3   is appropriate, what I think may have been unfair in the

4   process into the equation of who gets what and how.  That's

5   not the way it works.  I am duty bound to apply the

6   Bankruptcy Code as Congress has passed it, and that's what I

7   will do.  There are 2 motions presented here.  One is a

8   motion to reconsider the order allowing the Genesis and

9   Multicare senior lender claims.  And we understand that

10  502(j) requires that cause be established in order to justify

11  such a reconsideration, if you will, and no such cause has

12  been provided here.  One suggestion is that because there are

13  allegations in a complaint that has been dismissed that one

14  senior lender, or several senior lenders, who were senior

15  lenders at the time of the confirmation achieved their

16  position at a discount, that that is a basis to warrant a re-

17  prioritization of the entire plan that was confirmed over 4

18  years ago.  That's mind boggling.  That's not available as an

19  opportunity for relief.  There is no opportunity to

20  reclassify into speculative and non-speculative portions.

21  There's no provision of the Bankruptcy Code that allows for

22  that.  Indeed, out there in the marketplace this may be an

23  area that generates abuse of one sort or another.  There have

24  been all kinds of, I think, articles and concerns expressed

25  about transfers of claims, about manipulation of the process.

1    And indeed it may be a proper area of congressional review.

2    To determine whether any, excuse me, any control should be

3    applied, any modifications of the Bankruptcy Code

4    appropriate, to control or revise the processes by which

5    investors can operate.  Right now we're operating in the

6    framework that it does not permit a division of a claim based

7    on the price at which the holder of the claim achieved that

8    interest.  Not to mention that it's 4 years after

9    confirmation and what's sought is a complete revision of the

10    confirmed plan, which has been affirmed on appeal and which

11    cannot be disturbed at this point.  So that motion must be

12    denied.  On the motion for the appointment of pre-final

13    decree equity committee, I will not belabor this record to

14    recite the very lengthy and difficult history of attempts by

15    Mr. Hayes to have this issue considered.  I will adopt the

16    recitation that has been provided in the response to the

17    motion.  Suffice it to say that Mr. Hayes has turned the

18    system inside and out to try to obtain this particular

19    relief.  Whether or not he has raised the constitutional

20    dimensions, to the extent that there are any, of the issue he

21    has had his chance, more than once and over the course of

22    years, to assert this position and it is time to stop.  There

23    is no opportunity in this system to keep coming back to the

24    same issue.  The same party, the same issue, the same

25    response.  The response being that there was no entitlement

1    to have the estate pay for representation of equity in this

2    case.   There was every opportunity to retain representation.

3    Mr. Hayes, for one, chose to present his case on his own.  He

4    was heard at confirmation, he was heard on appeal at various

5    junctures.  Enough is enough.  Indeed there is the need for

6    sanctions, there is a need to impress upon Mr. Hayes the fact

7    that he cannot continue to try to assert issues in the

8    Bankruptcy Court, or in the District Court, or in the Court

9    of Appeals, without consequences.  Once you have an answer to

10   a question that you raise, a basic tenet of of our court

11   system, or our jurisprudence, is that you cannot continue to

12   come back to assert those issues again, and again, and again.

13   The consequence here, and I do rely on 105, indeed if 1470, I

14   think it is, is available, then that may also be a basis.

15   The kinds of activities that are seen here are clearly in

16   line with the proscription of that statute.  I'm sorry, 1927.

17   I don't know where I got 1940.  Where a litigant unreasonably

18   and vexatiously multiplies the proceedings.  That's exactly

19   what we have here.  But even if, and there is frankly

20   reasonable basis to conclude that a Bankruptcy Court is not

21   quote, "any court of the United States", unquote, only

22   because - - and this I'm going on memory, I think it's 28 USC

23   451, I'm not positive about that cite - - defines, quote,

24   "any court of the United States", unquote, for purposes of

25   this statute.  And that statute does not include Bankruptcy

1    Courts.  One could argue that it should, but nevertheless,
2    that kind of analysis is fairly straightforward.  It's, you
3    know, not too complicated, and does cause a shadow to be
4    placed upon the application of this statute by the Bankruptcy
5    Court.  Nevertheless, counsel is certainly correct to reflect
6    that 105 offers, and indeed I think compels, a Bankruptcy
7    Court to control proceedings, and to address issues of
8    vexatious and unreasonable litigation.  And indeed it
9    dovetails on the Chambers' expressions in - - offered by the
10   United States Supreme Court.  And there has been, I think, I
11   could be wrong on this, but I think unanimous support for the
12   proposition that Chambers and its recitation of the inherent
13   authority of all Federal Courts, where the tools otherwise
14   available are not present to rely on its inherent authority
15   to control the processes in its court, and that includes, for
16   instance, and I think this was the context of the Chambers
17   decision, the imposition of attorney's fees where litigation
18   is unreasonable and vexatious, to use the words of 1927.  So
19   I think that that sanction is appropriate in this case.  I
20   will ask counsel to submit affidavits of services, and of
21   course with a copy to Mr. Hayes.  Mr. Hayes may respond in
22   terms of the amount of attorneys fees sought by the
23   responders, and I will then enter an award on the papers.  I
24   don't believe there will be a need to address, by further
25   argument, any issues.  So I would ask that the affidavit of

1    services be filed within 20 days, perhaps.  If that's doable.

2          MR. SILBERGLIED: We can certainly do that, Your

3    Honor.

4          THE COURT: And then Mr. Hayes, you're welcome to

5    take another 15 days to respond to those affidavits, if you

6    choose to do that.  Any questions?

7          MR. HAYES: May I be heard?

8          THE COURT: Your last comment, sir.  Come on up.

9          MR. HAYES: Before you assess sanctions, I would

10   request that you refer to the case in re: <u>Ken Davis Holdings</u>

11   <u>Company</u> 249 f3rd 383, 5th Circuit, 2001.  I mean, this was an

12   issue that was at the heart of that case.

13         THE COURT: I'll gladly refer to it.  I stand by my

14   ruling.  If I look at that case, and I see that there's some

15   basis to depart from it, I will do that.  I believe I'm

16   familiar with the case.  Could you give me the name of it

17   again?

18         MR. HAYES: In re: <u>Ken Davis</u>, d-a-v-i-s, <u>Holdings</u>

19   <u>Company</u>.

20         THE COURT: Oh, no.

21         MR. HAYES: 249 f3rd 383.  It's an Oklahoma

22   bankruptcy case.

23         THE COURT: Actually no, I don't recall it.  I will

24   tell you that I've certainly looked closely at this issue,

25   generally and extensively over time.  So the issue is not new

```
 1    to me.  The 1927 issue, the inherent authority issue, the 105

 2    aspects, the 9011 aspects, these are areas, these are

 3    subjects that come up, as you might imagine, and I'm quite

 4    confident that this is the quintessential case for the

 5    application of sanctions.  It is meant to, as I said, impress

 6    upon you that you cannot return again and again without

 7    consequences.  Where the issues are the same, where you're

 8    seeking the same relief, and where - - I don't want it

 9    reargued now.  I'm done.  And I've ruled.  And I thank you

10    all.  If there's nothing else, the matter is adjourned.

11             MR. SILBERGLIED: Thank you, Your Honor.

12        (Whereupon at 10:13 a.m. the hearing in this matter was

13    concluded for this date.)

14

15

16

17

18

19             I, Jennifer Ryan Enslen, approved transcriber for

20    the United States Courts, certify that the foregoing is a

21    correct transcript from the electronic sound recording of the

22    proceedings in the above-entitled matter.

23

24    _____        _____
      Jennifer Ryan Enslen
      18 Bar Drive
      Newark, DE 19702
      (302) 836-1905
```

A44

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------x
In re:                                  :    Chapter 11
                                        :
GENESIS HEALTH VENTURES, INC., :             Case No. 00-2692 (JHW)
et al.,                                 :
                                        :    Re: Docket No. 2310
          Reorganized Debtor.           :
                                        :
-----------------------------------------------x
```

### ORDER GRANTING REORGANIZED DEBTORS' CROSS-MOTION FOR SANCTIONS AND DENYING (1) MOTION FOR RECONSIDERATION OF THE ORDERS ALLOWING THE GENESIS AND MULTICARE SENIOR LENDER CLAIMS; AND THE GENESIS AND MULTICARE SENIOR SUBORDINATED NOTE CLAIMS AND (2) MOTION FOR APPOINTMENT OF PRE-FINAL DECREE EQUITY COMMITTEE

Upon consideration of the (1) *Motion for Reconsideration of the Orders Allowing the Genesis and Multicare Senior Lender Claims; and the Genesis and Multicare Senior Subordinated Note Claims*, filed by James J Hayes on December 12, 2005 (the "Motion for Reconsideration") [Dkt No. 2303]; (2) *Motion for Appointment of Pre-Final Decree Equity Committee* (the "Fourth Equity Committee Motion"), filed by James J Hayes on December 15, 2005 [Dkt No 2306]: (3) *Objection of Mellon Bank, N.A. to Motion for Reconsideration of the Orders Allowing the Genesis and Multicare Senior Lender Claims* ("Mellon Objection") [Dkt No. 2309], filed on January 10, 2006 and (4) *Reorganized Debtors' (I) Objection to (a) the Motion for Reconsideration of the Orders Allowing the Genesis and Multicare Senior Lender Claims; and the Genesis and Multicare Senior Subordinated Note Claims and (b) the Motion for Appointment of Pre-Final Decree Equity Committee; and (II) Cross-Motion for Sanctions* ("Reorganized Debtors' Objection and Cross Motion") [Dkt No. 2310], filed on January 11, 2006; the Court having reviewed the Motion for Reconsideration, Fourth Equity Committee

Motion, the Mellon Objection and the Reorganized Debtors' Objection and Cross Motion and all pleadings relating thereto, and after holding a hearing regarding the relief requested in the motions; the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (c) notice of the motions were proper and sufficient under the circumstances, and the Court having determined that just cause exists for the relief granted herein; and the Court having found that good and sufficient cause exists for denying the Motion for Reconsideration and Fourth Equity Committee Motion and for granting the Cross Motion and, it is hereby

ORDERED that the Motion for Reconsideration is denied; and it is further

ORDERED that the Fourth Equity Committee Motion is denied; and it is further

ORDERED that the Cross Motion is granted; and it is further

ORDERED that attorneys fees and costs are awarded to: (1) the Reorganized Debtors in the amount of 5000; and (2) the Lenders in the amount of 15 000. Mr. Hayes shall pay such fees and costs within 10 business days of the entry of this order, and send them to, respectively, Russell C. Silberglied, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801, on behalf of the Reorganized Debtors; and Menachem O. Zelmanovitz, Morgan Lewis & Bockius LLP, 101 Park Avenue, New York, NY 10178-0060, on behalf of the lenders.

Dated: 3/1, 2006
Wilmington, Delaware

THE HONORABLE JUDITH H. WIZMUR
UNITED STATES BANKRUPTCY JUDGE

RLF1-2973288-1

2

A46

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

2002 SEP 30 PM 1:24

RECEIVED

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | SEP 3 0 2002 |
| GENESIS HEALTH CARE | : | |
| VENTURES, INC., et al. | : | Case No. 00-2692 (JHW) |
| | : | (Jointly Administered)D. COLLINS |
| Debtors, | : | |

| | | |
|---|---|---|
| JAMES J. HAYES, | : | |
| | : | |
| Appellant, | : | |
| | : | |
| v. | : | Civil Action No. |
| | : | 01-718-JJF |
| | : | |
| GENESIS HEALTH VENTURES, INC., | : | |
| et al., | : | |
| | : | |
| Appellees. | : | |

**MEMORANDUM ORDER**

Now pending before the Court is Appellant's Motion for

Appointment of Official Committee of Equity Security Holders for

the Purpose of Appealing Confirmation of the Genesis

Reorganization Plan and Delay of Appellant's Brief Pending the

Appointment of Counsel (D.I. 7). For the reasons set out below,

the Appellant's Motion (D.I. 7) will be denied.

The Appellant provides no legal support for his contention

that this Court is empowered to appoint an Equity Committee for

the purpose of appealing a Bankruptcy Court's confirmation order.

The U.S. Trustee is the only party able to appoint an Equity

Committee.  Here, the U.S. Trustee did not do so, and the

1

A47

Bankruptcy Court upheld that decision.  The Appellant failed to appeal that decision to the district court.  Consequently, the Appellant cannot now petition the district court to appoint an Equity Commission.

NOW THEREFORE, IT IS HEREBY ORDERED this **30** day of September, 2002, that Appellant's Motion for Appointment of Official Committee of Equity Security Holders for the Purpose of Appealing Confirmation of the Genesis Reorganization Plan and Delay of Appellant's Brief Pending the Appointment of Counsel (D.I. 7) is **DENIED**.

UNITED STATES DISTRICT JUDGE

2

A48

FILED
IN THE UNITED STATES DISTRICT COURT CLERK U.S. DISTRICT COURT ̶E̶I̶V̶E̶D̶
DISTRICT OF DELAWARE

FOR THE DISTRICT OF DELAWARE    2002 SEP 30  PM 8: 21  OCT 0 3 2002

MARK D. COLLINS

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| GENESIS HEALTH VENTURES, INC.,: | | Bankruptcy Case No. 00-2692-JHW |
| et al., | : | (Jointly Administered) |
| | : | |
| Debtors. | : | |

---

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| MULTICARE AMC, INC., et al., | : | Bankruptcy Case No. 00-2494-JHW |
| | | (Jointly Administered) |
| Debtors. | : | |

---

| | | |
|---|---|---|
| JAMES J. HAYES, | : | |
| | : | |
| Appellant, | : | **CONSOLIDATED** |
| | : | |
| v. | : | Civil Action No. 02-16-JJF |
| | : | |
| GENESIS HEALTH VENTURES, INC.,: | | |
| et al., | : | |
| | : | |
| Appellees. | : | |
| | : | |

---

### MEMORANDUM ORDER

Before the Court is the Appellees' Joint Motion To Dismiss The Appeal (D.I. 7) and Memorandum In Support of Appellee's Joint Motion (D.I. 8). Appellant has not filed a response to the Motion.

Appellees contend that the appeal should be dismissed under the doctrine of equitable mootness. Appellant, James J. Hayes, a single shareholder appealed the September 20, 2001 Confirmation

A49

Order of the Bankruptcy Court.  Appellant did not obtain a stay of the Order and the Plan became effective on October 2, 2001. From the Appellees' papers, the Court understands that Appellant objected to the confirmation of the Plan contending that there was sufficient enterprise value to permit a distribution to pre-petition shareholders.  The Bankruptcy Court rejected Appellant's objection.

In the circumstances presented, the Court concludes that the instant motion must be granted.  The Confirmed Plan has been implemented and distribution has occurred, thus prohibiting Appellant from obtaining the remedy he sought before the Bankruptcy Court.  Further, the lack of a response to Appellees' Motion from Appellant indicates to the Court that Appellant understands his inability to obtain relief.

NOW THEREFORE, IT IS HEREBY ORDERED that Appellees' Joint Motion To Dismiss The Appeal (D.I. 7) is GRANTED.

9/30/02
_____
DATE

_____
UNITED STATES DISTRICT JUDGE

A50

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2003 MAR 12 PM 2:23

IN RE:                              :    Bank. No. 00-2692      RECEIVED
    GENESIS HEALTH VENTURES,  :
    INC.,                           :                           MAR 1 3 2003
                                    :
        Debtor                      :                           MARK D. COLLINS
─────────────────────────────────
JAMES J. HAYES,                     :
                                    :
        Appellant                   :    Civil Action. No. 01-718 JJF
                                    :
        v.                          :
                                    :
GENESIS HEALTH VENTURES, INC.,:
                                    :
        Appellee                    :

## O R D E R

WHEREAS, the above-captioned matter was fully briefed
and was decided under Civil Action No. 02-016 JJF;

NOW THEREFORE, IT IS HEREBY ORDERED that:

1) This case is **DISMISSED**.

2) If any party disagrees with the dismissal of this
action, they shall file a motion to reopen within (20) twenty
days of the date of this Order.

3 - 12 - 03
DATE

UNITED STATES DISTRICT JUDGE

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2004 FEB 26  PM 12: 13

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                                : Chapter 11
                                      :
GENESIS HEALTH VENTURES, INC.,        : Bankruptcy Case No. 00-2692 JHW
et al.,                               : (Jointly Administered)
                                      :
          Debtors.                    :

---

                                      :
IN RE:                                : Chapter 11
                                      :
MULTICARE AMC, INC., et al.,          : Bankruptcy Case No. 00-2494 JHW
                                      : (Jointly Administered)
          Debtors.                    :

---

                                      :
JAMES J. HAYES,                       :
                                      :
          Appellant,                  : **CONSOLIDATED**
                                      :
     v.                               : Civil Action No. 01-718 JJF
                                      :
GENESIS HEALTH VENTURES, INC.,        :
et al.,                               :
                                      :
          Appellees.                  :

## MEMORANDUM ORDER

By his Motion (D.I. 18), the Appellant asks the Court to
reopen Civil Action Number ("C.A. No.") 01-718 JJF.  For the
reasons discussed, the Court will deny the Motion.

## I.    Background

This is an appeal of the Bankruptcy Court's September 20,
2001, opinion on confirmation.  By mistake, the Clerk of the
Court double docketed this case in C.A. Nos. 01-718 JJF and 02-
016 JJF.  On September 30, 2002, the Court granted Appellees'
unopposed motion to dismiss the appeal in C.A. No. 02-016 JJF as
equitably moot.  (D.I. 10 in C.A. No. 02-016 JJF.)

A52

On December 4, 2002, the Appellees submitted a letter to the Court stating that C.A. No. 02-016 JJF was the same appeal as the instant case, and therefore, contended that the Court should apply its Memorandum Order dismissing C.A. No. 02-016 JJF to this case. On March 12, 2003, the Court entered an Order dismissing the instant case because the appeal was fully briefed and decided under C.A. No. 02-016 JJF. (D.I. 17 in C.A. No. 01-178 JJF.) This is the Appellant's Motion to Reopen the Court's dismissal and closure of C.A. No. 01-718 JJF.

## II.  Appellant's Contentions

The Appellant contends that the Court should reopen the instant case because it would violate his due process rights to dismiss this case based upon the Court's conclusions in a "spurious" case.  The Appellant also contends that applying the judgment in C.A. No. 02-016 JJF to this case would be inappropriate because, at the time of entry of the Court's Memorandum Order in C.A. No. 02-016 JJF, he had not "made any filings in this case[.]"  (D.I. 19 at 6.)

## III.  Decision

The Court granted the Appellees' motion to dismiss in C.A. No. 02-016 JJF on the grounds that the appeal was equitably moot. The Appellant does not contend that he did not receive notice of the Appellees' motion to dismiss in C.A. No. 02-016 JJF. However, he did not file an opposition brief and has offered no

2

A53

explanation. Because the Appellant is the appellant in both C.A. No. 02-016 JJF and C.A. No. 01-718 JJF, the Court concludes that the dismissal in C.A. No. 02-016 JJF controls the decision here. The Appellant cannot litigate issues in this case that he should have litigated in C.A. No. 02-016 JJF merely because of a clerical error.

NOW THEREFORE, IT IS HEREBY ORDERED that the the Appellant's Motion to Reopen (D.I. 18) is **DENIED**.


February 26, 2004
DATE

UNITED STATES DISTRICT COURT


3

A54

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

```
----------------------------------------x
                                        :
In re                                   :        Chapter 11 Cases No.
                                        :
GENESIS HEALTH VENTURES INC., et al.,   :        00-2692 (JHW)
                                        :
              Debtors.                  :
                                        :        (Jointly Administered)
----------------------------------------x
                                        :
In re                                   :        Chapter 11 Cases No.
                                        :
MULTICARE AMC, INC., et al.,            :        00-2494 (JHW)
                                        :
              Debtors.                  :
                                        :        (Jointly Administered)
----------------------------------------x
```

## DISCLOSURE STATEMENT FOR
## DEBTORS' JOINT PLAN OF REORGANIZATION

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

RICHARDS, LAYTON & FINGER P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 658-6541

Co-Attorneys for the Genesis Debtors
  as Debtors and Debtors in Possession

Co-Attorneys for the Genesis Debtors
  as Debtors and Debtors in Possession

WILLKIE FARR & GALLAGHER
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

YOUNG CONAWAY STARGATT &
TAYLOR LLP
11th Floor, Wilmington Trust Company
P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6600

Co-Attorneys for the Multicare Debtors
  as Debtors and Debtors in Possession

Co-Attorneys for the Multicare Debtors
  as Debtors and Debtors in Possession

Dated: July 6, 2001

1979

1965

2335325_1.DOC

A55

The Bank of New York
101 Barclay Street
Floor 21W
New York, New York 10286

The Genesis creditors' committee has retained Akin, Gump, Strauss, Hauer & Feld, L.L.P., 590 Madison Avenue, New York, New York 10022, and Pachulski Stang Ziehl Young & Jones PC, 919 N. Market Street, 16th Floor, P.O. Box 8075, Wilmington, Delaware 19899-8705, as its attorneys, and Houlihan Lokey Howard & Zukin, 2 First National Plaza, 20 South Clark Street, 21st Floor, Chicago, Illinois 60603-1881, as its financial advisors. The Genesis creditors' committee has actively participated in all aspects of the Genesis reorganization cases.

> 2.    *Multicare Creditors' Committee*

The Multicare creditors' committee currently consists of the following three members:

Mackay-Shields Financial Corp.
9 West 57th Street
New York, NY 10019

HSBC Bank USA, as Indenture Trustee
452 Fifth Avenue
New York, NY 10018-2706

Gulf South Medical Supply, Inc.
4345 Southpoint Blvd
Jacksonville, FL 3216

The Multicare creditors' committee has retained Kasowitz, Benson, Torres & Friedman LLP, 1633 Broadway, New York, New York 10019, and Saul, Ewing, Remick & Saul LLP, 222 Delaware Avenue, Suite 1200, P.O. Box 1266, Wilmington, Delaware 19899-1266, as its attorneys, and Chanin Capital Partners, 11100 Santa Monica Blvd, Suite 830, Los Angeles, California 90025, as its financial advisors. The Multicare creditors' committee has actively participated in all aspects of the Multicare reorganization cases.

**C.    DIP Credit Agreements**

> 1.    *Genesis Debtors*

On July 18, 2000, the Bankruptcy Court entered a final order (i) authorizing the Genesis Debtors to (a) obtain postpetition financing and (b) utilize cash collateral, and (ii) granting adequate protection to certain prepetition secured parties. In particular, the Bankruptcy Court approved that certain Revolving Credit and Guaranty Agreement, dated as of June 22, 2000, among Genesis, as borrower, the other Genesis Debtors, as guarantors, Mellon Bank, N.A., as agent, and the lender parties thereto. This agreement provided for maximum borrowings of $250 million and terminates on December 21, 2001. The obligations of the Genesis Debtors under this agreement are secured by substantially all the assets of the Genesis Debtors, subject to certain existing mortgages and inventory liens. The liens granted to the postpetition lenders are senior to the liens securing the Genesis Senior Lender Claims. As of the date hereof, the Debtors have drawn approximately $180,000,000 under their debtor in possession credit facility. The

borrowings under this facility have been used to make payments to the holders of the Genesis Senior Lender Claims, to issue letters of credit, to make payments to Cardinal Distribution, and to make other miscellaneous payments. See section II.E.2, above, for a description of those claims and the payments made. The Genesis Debtors amended certain covenants under their debtor in possession credit facility as of February 14, 2001, to bring those covenants into line with current performance and projections.

       2.     *Multicare Debtors*

On July 18, 2000, the Bankruptcy Court entered a final order (i) authorizing the Multicare Debtors to (a) obtain postpetition financing and (b) utilize cash collateral, and (ii) granting adequate protection to certain prepetition secured parties. In particular, the Bankruptcy Court approved that certain Revolving Credit and Guaranty Agreement, dated as of June 22, 2000, among Multicare, as borrower, the other Multicare Debtors, as guarantors, Mellon Bank, N.A., as agent, and the lender parties thereto. This agreement provided for maximum borrowings of $50 million and terminates on December 21, 2001. The obligations of the Multicare Debtors under this agreement are secured by substantially all the assets of the Multicare Debtors, subject to certain existing mortgages and inventory liens. The liens granted to the postpetition lenders are senior to the liens securing the Multicare Senior Lender Claims. As of the date hereof, the Debtors have not drawn any funds under this debtor in possession credit facility, although letters of credit for approximately $2 million issued under the facility are outstanding. The Multicare Debtors have been paying the Genesis Debtors under the various service agreements on a current basis postpetition. The Multicare Debtors amended certain covenants under their debtor in possession credit facility as of February 14, 2001, to bring those covenants into line with current performance and projections.

**D.     Cash Collateral Protection**

       1.     *Genesis Debtors*

At the commencement of these chapter 11 cases, a number of third-party lenders, including the holders of the Genesis Senior Lender Claims, had an interest in the Genesis Debtors' receivables or other cash collateral. In order to provide for the continued use of such cash collateral, the Genesis Debtors agreed to provide certain protections to those third-party lenders. For the holders of the Genesis Senior Lender Claims, the protections consisted of the following:

- a superpriority administrative claim against the Genesis Debtors, immediately junior to the claims of the lenders under the debtor in possession credit facility

- liens on substantially all the property of the Genesis Debtors immediately junior to the claims of the lenders under the debtor in possession credit facility and existing third party liens

- payment of an amount equal to interest on the Genesis Senior Lender Claims at the contractual nondefault rate

- reimbursement for the reasonable fees and disbursements of counsel and consultants to the holders of the Genesis Senior Lender Claims and payment of certain administrative fees

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE:  GENESIS HEALTH VENTURES INC. et al., | )  Chapter 11 |
|  | ) |
|  | )  Bankruptcy Case No. 00-____2 JH__ |
|  | ) |
| Reorganized Debtors. | )  (Jointly Administered) |

FILED
2006 FEB -2 AM 11: 58
CLERK
US BANKRUPTCY
DISTRICT OF DEL

### NOTICE OF APPEAL

Notice is hereby given that James J. Hayes, a member of the equity class in this

bankruptcy  appeals to the United States District Court for the District of Delaware the

bench decisions on Thursday January 19, 2006 of the United States Bankruptcy Court for

the District of Delaware denying:

1) reconsideration of the Orders allowing the Genesis and Multicare Senior Lender Claims; and the Genesis and Multicare Senior Subordinated Note Claims; and

2) the appointment of Pre-Final Decree Equity Committee; and granting

3) the Reorganized Debtors' sanctions.

Dated:  January 30, 2006

James J. Hayes
40?4 Estabrook Dr.
Annandale, VA 22003
(703) 941-4694

A58

JAMES J. HAYES
4024 ESTABROOK DR.
ANNANDALE, VA 22003

January 30, 2006



Office of Clerk
U. S. Bankruptcy Court, District of Delaware
824 Market Street, 5ᵗʰ Floor
Wilmington, Delaware 19801

Re: In re: GENESIS HEALTH VENTURES, INC., et al., Reorganized Debtors,
    Case No. 00-2692/JHW

Dear Sir or Madam:

     Enclosed is a Notice of Appeal and a check for $255 in the above captioned case.

     The service list for this Notice is as follows:

Russell C. Silberglied
Richards Layton and Finger P.A.
One Rodney Square
Wilmington, DE 19899; and


Teresa K. D. Currier
Klett Rooney Lieber & Schorling, PC
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, DE 19801


                        Yours Sincerely,

                        James J. Hayes