IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

```
----------------------------------------------x
In re:                                :    Chapter 11
                                      :
GENESIS HEALTH VENTURES, INC., :          Case No. 00-2692 (PJW)
et al.,                               :
                                      :
          Reorganized Debtor.         :
----------------------------------------------x
JAMES J. HAYES,                       :
                                      :
          Appellant,                  :
                                      :
     v.                               :    C.A. No. 06-103 (JJF)
                                      :
GENESIS HEALTH VENTURES, INC., :
et al.                                :
                                      :
          Appellees.                  :
----------------------------------------------x
```

## ANSWERING BRIEF OF APPELLEES GENESIS HEALTH VENTURES, INC. AND ITS FORMER DEBTOR AFFILIATES

Michael F. Walsh
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153

and

Adam P. Strochak
Joanne M. Guerrera
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, NW
Suite 900
Washington, D.C. 20005

Dated:  June 22, 2006
          Wilmington, Delaware

Mark D. Collins (No. 2981)
Russell C. Silberglied (No. 3462)
Michael J. Merchant (No. 3854)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
*Collins@rlf.com*
*Silberglied@rlf.com*
*Merchant@rlf.com*

Attorneys for Appellees Genesis
Health Ventures, Inc. and Its
Former Debtor Affiliates

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................... ii

NATURE AND STAGE OF PROCEEDINGS ............................................................ 1

SUMMARY OF ARGUMENT ............................................................................ 1

FACTUAL BACKGROUND .............................................................................. 3

    A.    The First and Second Equity Committee Motions ............................................ 3

    B.    The Third Equity Committee Motion ...................................................... 5

    C.    The 502(j) Motion and the Fourth Equity Committee Motion ....................... 6

ARGUMENT ............................................................................................... 8

    I.    The Bankruptcy Court Correctly Denied the Fourth Equity Committee Motion .... 8

        A.    Mr. Hayes' Request for the Appointment of a Pre-Final Decree Equity Committee Is Barred By the Doctrine of *Res Judicata* ....................... 8

        B.    Mr. Hayes' Request for the Appointment of a Pre-Final Decree Equity Committee Is Barred by the Doctrine of Collateral Estoppel .............. 12

        C.    Mr. Hayes' Request for the Appointment of a Pre-Final Decree Equity Committee Is Moot .......................................................... 12

            (i)    The Plan Has Been Substantially Consummated ........................... 14

            (ii)    Hayes Did Not Obtain a Stay of the Confirmation Order ............. 15

            (iii)    The Requested Relief Would Affect Rights of Third Parties ........ 15

            (iv)    The Requested Relief Would Effect the Success of the Plan ........ 16

            (v)    Public Policy Favors Denial of the Appeal ................................ 17

    II.    The Bankruptcy Court Properly Exercised Its Inherent Authority in Granting the Reorganized Debtors' Cross-Motion for Sanctions ...................................... 17

    III.    The Reorganized Debtors Join In Mellon Bank, N.A.'s Answering Brief ......... 20

CONCLUSION ........................................................................................... 21

i

## TABLE OF AUTHORITIES

### *Cases*

Cede & Co. v. Technicolor, Inc., 848 A.2d 26 (Del. 2005)............................................................ 8

Chambers v. NASCO, Inc., 501 U.S. 32 (1991)........................................................... 18, 19

In re Continental Airlines, 91 F.3d 553 (3d Cir. 1996)............................................ 13, 14, 15, 17

CoreStates Bank, N.A. v. Huls America, Inc., 176 F.3d 187 (3rd Cir. 1999) ................................. 8

In re Deville, 280 B.R. 483 (9th Cir. B.A.P. 2002) ................................................................ 19

In re Docteroff, 133 F.3d 210 (3d Cir. 1997)....................................................................... 12

In re Downs, 103 F.3d 472 (6th Cir. 1996)......................................................................... 18

Federated Dept. Stores, Inc. v. Moitie, 452 U.S. 394 (1981) ...................................................... 8

Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc., 57 F.3d 1215 (3d Cir. 1995) ................................................................................................................... 19

In re Genesis Health Ventures, Inc., 266 B.R. 591 (Bankr. D. Del. 2001), appeal dismissed, 280 B.R. 339 (D. Del. 2002).................................................................................... 9

In re Genesis Health Ventures, Inc., 280 B.R. 339 (D. Del. 2002)............................................. 14

Haskell v. Goldman, Sachs & Co., 2006 U.S. Dist. LEXIS 18177 (D. Del. Mar. 29, 2006) ........ 13

Hayes v. Genesis Health Ventures Inc., 2005 U.S. Dist. LEXIS 14904 (D. Del. July 23, 2005)............................................................................................... 9, 14

Hayes v. Genesis Health Ventures, Inc., 125 S. Ct. 2947 (2005).............................................. 5

In re John F. Minniti, 242 B.R. 843 (Bankr. E.D. Pa. 2000) .................................................. 19

Knepper v. Skekloff, 154 B.R. 75 (N.D. Ind. 1993)............................................................. 18

Krahmer v. Christie's Inc., 2006 WL 1566566 (Del. Ch. June 2, 2006)....................................... 15

Nordhoff Invs., Inc. v. Zenith Elecs. Corp., 258 F.3d 180 (3d Cir. 2001)........................ 13, 15, 16

In re Volpert, 177 B.R. 81 (N.D. Ill. 1995), aff'd, 110 F.3d 494 (7th Cir. 1997) ....................... 18

In re Zenith Elecs. Corp., 250 B.R. 207 (D. Del. 2000), aff'd, 258 F.3d 180 (3d Cir. 2001) ........ 15

ii

***Statutes***

10 Del. C. § 8106 ................................................................................................................ 12

11 U.S.C. § 1144 ................................................................................................................ 13

28 U.S.C. § 1927 ................................................................................................................ 17

iii

## NATURE AND STAGE OF PROCEEDINGS

On December 15, 2005 and December 12, 2005, respectively, James J. Hayes ("Hayes") filed the following motions (collectively, the "Hayes' Motions") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"): (i) Motion for Appointment of Pre-Final Decree Equity Committee (the "Fourth Equity Committee Motion") and (ii) Genesis Common Stock Class's Motion for Reconsideration of the Genesis and Multicare Senior Lender Claims; and the Genesis and Multicare Senior Subordinated Note Claims (the "502(j) Motion"). Appellees Genesis Health Ventures, Inc. and its former debtor affiliates (the "Reorganized Debtors") filed an objection to the Hayes' Motions and contemporaneously cross-moved for sanctions against Mr. Hayes in an effort to put an end to his abuse of the legal system and the costs being inflicted in defending against his frivolous, repetitive motions. The Reorganized Debtors' senior lenders (the "Senior Lenders") filed their own objection to the Hayes' Motions and joined in the Reorganized Debtors' cross-motion. At a hearing held on January 19, 2006, Judge Wizmur denied both of the Hayes' Motions and granted the Reorganized Debtors' cross-motion for sanctions. Mr. Hayes has appealed the Bankruptcy Court's January 19, 2006 ruling.[1]

## SUMMARY OF ARGUMENT

In what must seem like a bad case of déjà vu, this is the third time that this Court is being asked to consider on appeal a motion by Mr. Hayes for the appointment of an equity committee. In connection with the first appeal, this Court affirmed the Bankruptcy Court's denial of Mr. Hayes' first motion for the appointment of an equity committee based on the

---

[1] A more detailed discussion of the procedural background relating to this appeal, including a discussion of the many duplicative and frivolous pleadings filed by Mr. Hayes, is set forth herein.

doctrine of equitable mootness. The Third Circuit affirmed this Court's decision in its entirety

and later denied a motion for rehearing en banc. Mr. Hayes subsequently petitioned for certiorari

in the U.S. Supreme Court, raising certain constitutional due process issues -- the same issues he

purports to be raising here for the first time. In connection with the second appeal, this Court

affirmed the Bankruptcy Court's denial of Mr. Hayes' third motion[2] for the appointment of an

equity committee, noting, among other things, that the appeal was actually moot given that Mr.

Hayes had exhausted all avenues to challenge confirmation of the Reorganized Debtors' chapter

11 plan (the sole basis for seeking appointment of an equity committee).

This appeal relates to the Bankruptcy Court's denial of Mr. Hayes' fourth motion

for the appointment of an equity committee. While Mr. Hayes has attempted to distinguish the

Fourth Equity Committee Motion from his prior requests for relief, this is simply more of the

same from Mr. Hayes. This latest appeal involves the same parties and issues (i.e., appointment

of an equity committee) as were before the Court in each of the prior appeals. Accordingly, the

Bankruptcy Court's denial of the Fourth Equity Committee Motion should be affirmed based on

the doctrines of *res judicata* and collateral estoppel. Moreover, as this court has determined in

connection with each of the prior appeals, Mr. Hayes' request for the appointment of an equity

committee is both actually and equitably moot.

This Court should also affirm the Bankruptcy Court's award of costs and

attorneys' fees to the Reorganized Debtors and the Senior Lenders in responding to the Fourth

Equity Committee Motion and the 502(j) Motion. The sanctions issued by the Bankruptcy Court

---

[2]    As discussed below, in connection with his first appeal, Mr. Hayes filed a motion in this Court (defined herein as the Second Equity Committee Motion) seeking the appointment of an equity committee in the first instance. This Court denied such motion on the ground that it had no authority to appoint an equity committee.

2

are well supported by the record in this matter and constitute a proper exercise of the Bankruptcy Court's inherent authority to control its own docket.

## FACTUAL BACKGROUND

### A.    The First and Second Equity Committee Motions

In August 2001, at the hearing to consider confirmation of the Reorganized Debtors' joint plan of reorganization (the "Plan"), Mr. Hayes objected to the Plan and, for the first time, moved for the appointment of an equity committee (the "First Equity Committee Motion"). (RD1-2; RD3-5).[3] On September 12, 2001, the Bankruptcy Court issued an opinion in which it concluded that it would confirm the Plan, overruled Mr. Hayes' objection and denied the relief requested in the First Equity Committee Motion. (RD11-55). Mr. Hayes immediately filed a notice of appeal (prior to the Bankruptcy Court entering an order). Mr. Hayes subsequently filed an amended notice of appeal following entry of the order confirming the Plan (the "Confirmation Order"). Through a clerical error, however, the two notices of appeals resulted in the docketing of two separate appeals: (i) Civil Action No. 02-216; and (ii) Civil Action No. 01-718. The docketing of separate, duplicative appeals generated considerable confusion among the parties and the Court. The Reorganized Debtors proceeded under the impression that case number 02-016 was the operative appeal. (RD56-59). Mr. Hayes, and in some instances, this Court, however, filed certain papers in case number 01-718.

On January 2, 2002, this Court established a briefing schedule in case number 01-718, requiring appellant's brief to be filed by January 18, 2002. Instead of filing an appeal brief on that date, Mr. Hayes filed a motion seeking the appointment of an equity committee (the

---

[3]    References to the Appendix to the Answering Brief of Appellees Genesis Health Ventures, Inc. and Its Former Debtor Affiliates are cited herein as "(RD__)".

3

"Second Equity Committee Motion") for purposes of pursuing his appeal. (RD56-59). On January 30, 2002, the Reorganized Debtors filed an opposition to the Second Equity Committee Motion and simultaneously moved to dismiss Mr. Hayes' appeal on the ground of equitable mootness. (RD60-72). On September 30, 2002, this Court denied the Second Equity Committee Motion in an order entered in case number 01-718, finding that the Court had no authority to appoint an equity committee. (RD75-76). On that same date, the Court granted the Reorganized Debtors' motion to dismiss Mr. Hayes' appeal in an order entered in case number 02-016, based on the doctrine of equitable mootness. Mr. Hayes did not appeal the Court's order dismissing case number 02-016. (RD73-74).

On November 6, 2002, this Court *sua sponte* entered a further scheduling order in case number 01-718 requiring Mr. Hayes to file his opening brief by November 22, 2002. The Reorganized Debtors, believing that Mr. Hayes' appeal had been fully resolved by the dismissal of case number 02-016, made an inquiry to the Clerk of the Court, who advised that the second appeal (01-718) had been docketed in error. When Mr. Hayes filed a brief in case number 01-718, the Reorganized Debtors wrote to the Court, advising the Court of its belief that 01-718 and 02-016 were in fact identical appeals from the same order of the Bankruptcy Court, and requesting guidance from the Court as to whether it was necessary to file a separate motion to dismiss case number 01-718. Mr. Hayes responded to the Reorganized Debtors' letter stating that the doctrine of equitable mootness did not apply to the second appeal. On March 12, 2003, the Court *sua sponte* entered an order in case number 01-718 concluding that case number 01-718 and case number 02-016 were in fact the same appeal, and dismissing case number 01-718 for the same reasons that it previously had dismissed case number 02-016. (RD77).

4

After this Court dismissed case number 01-718, Mr. Hayes filed a motion to reopen the case. (RD78-80). On February 26, 2004, the Court issued a Memorandum Opinion denying Mr. Hayes' motion to reopen case number 01-718. (RD81-83). Mr. Hayes appealed the February 26, 2004 Memorandum Order to the United States Court of Appeals for the Third Circuit (the "Third Circuit"). The appeal was fully briefed, and on December 6, 2004 the Third Circuit affirmed the Court's decision in its entirety and later denied a motion for rehearing en banc. Mr. Hayes subsequently petitioned for certiorari in the U.S. Supreme Court, raising certain constitutional due process issues. (RD84-99). Mr. Hayes' petition for certiorari was denied by the U.S. Supreme Court on June 20, 2005. Hayes v. Genesis Health Ventures, Inc., 125 S. Ct. 2947 (2005).

## B.    The Third Equity Committee Motion

On October 5, 2001, Mr. Hayes filed yet another motion for appointment of an equity committee (the "Third Equity Committee Motion") with the Bankruptcy Court. (RD100-102). Mr. Hayes never set the Third Equity Committee Motion for hearing and it remained undecided for approximately two and one-half years. On March 13, 2004, Mr. Hayes sent a letter to Judge Wizmur "respectfully requesting a decision on his Motion to Appoint an Official Committee of Equity Security Holders." On April 23, 2004, the Reorganized Debtors responded to the Third Equity Committee Motion. (RD109-125). On May 13, 2004, the Bankruptcy Court heard the Third Equity Committee Motion. (RD126-157). Judge Wizmur again listened to arguments on this issue from both sides and reviewed the history of Mr. Hayes' appeals. (Id.) The Bankruptcy Court ultimately denied Mr. Hayes' motion on both substantive and procedural grounds, finding that: (1) Mr. Hayes' request for appointment of an equity committee was "grossly untimely;" (2) the doctrine of equitable mootness applied to the Plan; and (3) the

5

appointment of a post-confirmation equity committee is only available in the most extraordinary situations, which was not the case here. (RD148-152). Mr. Hayes again appealed the Bankruptcy Court's denial of the appointment of an equity committee.

On July 23, 2005, this Court affirmed the Bankruptcy Court's denial of Mr. Hayes' third request for the appointment of a post-confirmation equity committee. (RD158-160). In affirming the Bankruptcy Court's decision, this Court found that Mr. Hayes had exhausted all avenues to challenge the confirmation order and that his challenge to the Bankruptcy Court's denial to appoint a post-confirmation equity committee was moot given the U.S. Supreme Court's denial of his petition for a writ of certiorari. (Id.). Undeterred by the District Court's findings, Mr. Hayes appealed this Court's July 23, 2005 ruling to the Third Circuit.[4]

### C.    The 502(j) Motion and the Fourth Equity Committee Motion

Mr. Hayes filed the Fourth Equity Committee Motion and the 502(j) Motion on December 15, 2005 and December 12, 2005, respectively. (RD161-173; RD174-182). The Reorganized Debtors objected to the Hayes' Motions and contemporaneously cross-moved for sanctions against Mr. Hayes in an effort to put an end to his abuse of the legal system and the costs being inflicted in defending against his frivolous, repetitive motions. (RD183-242). The Senior Lenders also filed an objection to the Hayes' Motions and joined in the Reorganized Debtors' cross-motion for sanctions. (RD243-245). At a hearing held on January 19, 2006, Judge Wizmur denied both of Mr. Hayes' motions and granted the Reorganized Debtors' cross-motion for sanctions, finding that the case represented "the quintessential case for the application

---

[4]    The Reorganized Debtors have filed a motion in the Third Circuit to dismiss Mr. Hayes' appeal of this Court's July 23, 2005 decision affirming the Bankruptcy Court's denial of the Third Equity Motion. The motion to dismiss is currently pending before the Third Circuit.

of sanctions." (RD274). The Bankruptcy Court, however, deferred the entry of an order so that the parties could file papers regarding the appropriate amount of attorneys' fees. (RD272-273). Prior to the entry of an order, however, Mr. Hayes commenced the Appeal by filing a notice of appeal with respect to the Bankruptcy Court's January 19, 2006 bench ruling. On March 2, 2006, the Bankruptcy Court entered an order denying Mr. Hayes' motions and granting the Reorganized Debtors' cross-motion with an award of attorneys' fees in the amount of $20,000 (the "March 2, 2006 Order"). (RD275-276).

On March 15, 2006, Mr. Hayes filed a motion (the "Stay Motion")[5] in this Court seeking to stay the briefing schedule with respect to this appeal so that he could, among other things, file a motion to disqualify the Reorganized Debtors' counsel from representing the Reorganized Debtors in connection with the appeal. (RD277-329). Indeed, on March 30, 2006, prior to the Court's ruling on the Stay Motion, Mr. Hayes filed a motion (the "Disqualification Motion") seeking to disqualify the undersigned counsel pursuant to section 327(a) of the Bankruptcy Code. (RD338-341). On May 23, 2006, the Court issued a memorandum opinion and related order (i) denying the Stay Motion and the Disqualification Motion and (ii) granting the Reorganized Debtors' related cross-motion, in part, by precluding Mr. Hayes from filing further motions in connection with this appeal without first obtaining leave of Court. (RD342-350; RD351-353).

---

[5]  Mr. Hayes contemporaneously filed a motion in the Bankruptcy Court seeking to stay the March 2, 2006 Order due to the pendency of this appeal, asserting, among other things, the nonsensical argument that his appeal of the bench ruling divested the Bankruptcy Court of its jurisdiction to enter the March 2, 2006 Order. (RD330-335). On May 15, 2006, the Bankruptcy Court entered an order (the "Stay Denial Order") denying the motion. (RD336-337). On May 30, 2006, Mr. Hayes commenced yet another appeal by filing a notice of appeal with respect to the Stay Denial Order. This new appeal has yet to be docketed in this Court. Upon docketing of the appeal, the Reorganized Debtors intend to file a motion seeking to dismiss the appeal as having been untimely filed under Rule 8002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

## ARGUMENT

### I.    The Bankruptcy Court Correctly Denied the Fourth Equity Committee Motion.

#### A.    Mr. Hayes' Request for the Appointment of a Pre-Final Decree Equity Committee Is Barred By the Doctrine of *Res Judicata*.

Mr. Hayes' motion for the appointment of a pre-final decree equity committee is barred by the doctrine of *res judicata*.[6] Under the doctrine of *res judicata*, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Federated Dept. Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981); see also CoreStates Bank, N.A. v. Huls America, Inc., 176 F.3d 187, 191 (3rd Cir. 1999) ("Claim preclusion bars a party from litigating a claim that it could have raised or did raise in a prior proceeding in which it raised another claim based on the same cause of action."). The doctrine of *res judicata* applies to bar a subsequent suit based on the same cause of action where there is final judgment on the merits in a prior suit involving the same parties. See CoreStates Bank, 176 F.3d at 194. The present case presents perhaps the clearest example of an instance in which the doctrine of *res judicata* should be applied.

Mr. Hayes' repeated requests for the appointment of an equity committee have been denied at every level. The Bankruptcy Court first denied Mr. Hayes' request for such relief in connection with the Reorganized Debtors' chapter 11 plan, noting as follows:

> Both [shareholder] objections are untimely and unrealistic and at this point, would only serve to unduly delay these cases. The

---

[6]    It is unclear as to whether Mr. Hayes' numerous appeals should be treated as separate litigations or as separate proceedings arising from the same litigation. To the extent that they are to be treated as separate proceedings arising from the same litigation, the Reorganized Debtors submit that Mr. Hayes' latest appeal is subject to "the law of the case" doctrine. Under the law of the case doctrine, "findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the trial court or in a later appeal." Cede & Co. v. Technicolor, Inc., 884 A.2d 26, 39 (Del. 2005). Accordingly, the findings of fact and conclusions of law determined by this Court in connection with each of Mr. Hayes' prior appeals are binding upon him with respect to this latest appeal.

> motions for a trustee and/or another committee come at the point of confirmation of the debtors' plan. Neither objector has offered any evidence of the existence of value beyond the position of Senior Lenders and junior creditors. I have concluded that the debtors are insolvent and that there is no possibility of a recovery for equity interests. At this late date, the appointment of additional professionals and their associated administrative costs cannot be viewed as a benefit to the debtors' estates. The objections are overruled and the related motions denied.

In re Genesis Health Ventures, Inc., 266 B.R. 591, 620 (Bankr. D. Del. 2001), appeal dismissed, 280 B.R. 339 (D. Del. 2002). Mr. Hayes' appeal of the Bankruptcy Court's order was then dismissed by this Court on the ground of equitable mootness -- a decision which was later affirmed by the Third Circuit. On June 20, 2005, the U.S. Supreme Court denied Mr. Hayes' petition for certiorari.

Mr. Hayes' Third Equity Committee Motion sought identical relief -- the appointment of an equity committee. To be sure, Mr. Hayes attempted to call it something else -- a so called limited purpose committee solely to prosecute his appeal. As no such denomination actually exists, the Bankruptcy Court properly treated this a distinction without a difference. On May 13, 2004, the Bankruptcy Court denied the Third Equity Committee Motion, finding that: (i) Mr. Hayes' request for appointment of an equity committee was "grossly untimely"; (ii) the doctrine of equitable mootness applied to the Plan; and (iii) this case did not present the "extraordinary circumstances" necessary to warrant appointment of a post-confirmation equity committee. (RD148-152). On July 23, 2005, this Court affirmed the Bankruptcy Court's denial of the Third Equity Committee Motion, finding that Mr. Hayes' request for the appointment of a post-confirmation equity committee for purposes of pursuing his appeal of the Confirmation Order was equitably moot. See Hayes v. Genesis Health Ventures Inc., 2005 U.S. Dist. LEXIS 14904, at *7 (D. Del. July 23, 2005). This Court stated, in pertinent part, as follows:

9

In addition, the Court notes that the United States Supreme Court has denied Appellant's application for certiorari review of the Third Circuit's decision affirming the Court's dismissal of his appeal of the confirmation order in Civil Action No. 01-718-JJF.  Because there is no avenue of appeal left for Appellant to pursue with respect to the confirmation order, Appellant's challenge to the Bankruptcy Court's denial of a post-confirmation equity committee to guide the appeal of the confirmation order, i.e., the underlying basis for this appeal, is also actually moot.

In the alternative, the Court concludes that the Bankruptcy Court correctly denied Hayes' request for the appointment of a post-confirmation equity committee.  The Bankruptcy Court's finding that Genesis is completely insolvent is supported by the valuation evidence presented to the Bankruptcy Court, and the Court concurs with the Bankruptcy Court's conclusion that the appointment of an equity committee is not warranted in the circumstances of this case.  Accordingly, the Court will, in the alternative, affirm the May 13, 2004 Order of the Bankruptcy Court.

Id. at *6-7.  The Reorganized Debtors are currently awaiting a decision from the Third Circuit on their motion to dismiss Mr. Hayes' appeal of the July 23, 2005 ruling.

Mr. Hayes' latest request for the appointment of an equity committee is no different from each of his prior requests.  While Mr. Hayes seems to identify a new role for his committee in every motion that he files (i.e., to pursue his appeal of the Confirmation Order, to move to disqualify counsel, to pursue an action against the Senior Lenders), the underlying relief requested is always the same -- the appointment of an equity committee.  The Bankruptcy Court has repeatedly denied Mr. Hayes' requests for the appointment of an equity committee, with the appeals of such decisions having been sustained by this Court and the Third Circuit.  The issue of whether an equity committee should be appointed has been fully and finally adjudicated, including the appeals thereof.  Thus, Mr. Hayes has had his day in court and the Fourth Equity Committee Motion should be barred under the doctrine of *res judicata*.

Mr. Hayes asserts that the Third Equity Committee Motion is not barred by the doctrine of *res judicata* because a court has yet to address his constitutional argument that the

10

equity holders have not been adequately represented. This simply is not the case. Mr. Hayes has

raised the same due process argument at every level, the argument has been considered and

rejected.    For example, the following exchange took place at the hearing before the Bankruptcy

Court on Mr. Hayes' Third Equity Committee Motion:

> MR. HAYES:    Your Honor, the equity holders have a basic
> constitutional right to their property under the Fifth Amendment.
> Property cannot be taken without due process and without
> compensation. It's been done both in this case -- in this hearing.
>
> I mean, I -- I cannot believe that the Constitution does not
> apply to Bankruptcy Court, the Constitution does not apply to
> these principals of equity -- equitable mootness, the Constitution
> does not apply to this priority scheme that leaves the shareholders
> out.
>
> THE COURT:    Well, there's no doubt that the Constitution
> applies. There's no doubt that due process was afforded in this
> context.
>
> MR. HAYES: It was not.
>
> THE COURT: Well, I beg to differ. Indeed, these concerns were
> seriously considered at the confirmation hearing, and decisions
> were made, and appeals were taken, and stays were rejected, --
> [sic]quests for stays, and the plan was consummated.    That is
> procedural due process, and it was afforded in this case. I thank
> you, Mr. Hayes.

(RD154-155). Indeed, this same constitutional due process argument is the only issue identified

by Mr. Hayes in his petition for certiorari to the U.S. Supreme Court. More specifically, Mr.

Hayes' petition to the U.S. Supreme Court identified the following as the "question presented":

> Can federal courts ignore Fifth Amendment Due Process and
> Takings issues in dismissing a bankruptcy appeal on the basis of
> the judicial doctrine of equitable mootness or does the judicial duty
> to protect and defend the Constitution require federal courts to
> consider constitutional issues?

11

(RD84). Thus, Mr. Hayes has had his opportunity to pursue this issue, multiple times, before the Bankruptcy Court and on appeal. He should not be permitted to raise such issues a third time simply because he does not like the prior results.

B.    **Mr. Hayes' Request for the Appointment of a Pre-Final Decree Equity Committee Is Barred by the Doctrine of Collateral Estoppel.**

The Fourth Equity Committee Motion and the appeal thereof is also barred by the doctrine of collateral estoppel. Under the doctrine of collateral estoppel, a party may be estopped from relitigating an issue where the following elements are present: "(1) the issue sought to be precluded must be the same as the one involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment." In re Docteroff, 133 F.3d 210, 214 (3d Cir. 1997) (citing In re Ross, 602 F.2d 604, 608 (3d Cir. 1979)). The Reorganized Debtors will not burden the Court with any additional discussion here, as the arguments in support of each of these factors are set forth above.

C.    **Mr. Hayes' Request for the Appointment of a Pre-Final Decree Equity Committee Is Moot.**

As this Court held in its July 23, 2005 Memorandum Opinion, Mr. Hayes' request for the appointment of a post-confirmation equity committee is actually moot. See Hayes, 2005 U.S. Dist. LEXIS, at *7. The denial of certiorari by the U.S. Supreme Court was the final review of Mr. Hayes' appeal of the Confirmation Order. Thus, the issue of plan confirmation has been fully and finally decided and there is no conceivable action that an equity committee could take in the Reorganized Debtors' chapter 11 cases. Indeed, other than the duplicative, frivolous motions filed by Mr. Hayes, the only pending matter in the chapter 11 cases is the Reorganized Debtors' motion for a final decree. Mr. Hayes seems to suggest that an equity committee should be appointed for purposes of pursuing a cause of action against the Senior Lenders. What Mr.

12

Hayes fails to mention, however, is that the statute of limitation for pursuing such an action has passed.[7] Moreover, if he is suggesting that an equity committee should sue the Reorganized Debtors, the very opinion that Mr. Hayes trumpets, this Court's recent decision in Haskell v. Goldman, Sachs & Co., 2006 U.S. Dist. LEXIS 18177 (D. Del. Mar. 29, 2006), affirms the dismissal of a fraud suit against the Reorganized Debtors due to the prohibition against such suits contained in 11 U.S.C. § 1144. Thus, absolutely no purpose would be served by the appointment of an equity committee. The Bankruptcy Court was correct in dismissing the Fourth Equity Committee Motion as actually moot.

Assuming arguendo that the appeal is not actually moot, it still must be dismissed under the doctrine of equitable mootness. The doctrine of equitable mootness provides that "'[a]n appeal should . . . be dismissed as moot when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable.'" In re Continental Airlines, 91 F.3d 553, 559 (3d Cir. 1996) (en banc) (quoting In re Chateaugay Corp., 988 F.2d 322, 325 (2d Cir. 1993)); see also Nordhoff Invs., Inc. v. Zenith Elecs. Corp., 258 F.3d 180, 185 (3d Cir. 2001) (affirming dismissal of bankruptcy on ground of equitable mootness). The Third Circuit has established the following five-factor analysis for determining whether an appeal is equitably moot:

---

[7] Mr. Hayes' pleadings allege a potential claim for fraud against the Senior Lenders. The applicable statute of limitations, however, is 10 Del. C. § 8106 which provides a limitations period for fraud that expires three years from the time of accrual, which is calculated from the time the fraud is perpetrated. Krahmer v. Christie's Inc., 2006 WL 1566566 (Del. Ch. June 2, 2006) Although the statute of limitations may be tolled in limited circumstances where the facts underlying a claim are so hidden that a reasonable person could not have discovered the hidden facts once a party has a reason to believe that fraudulent activity may have occurred tolling ceases Id. at *3. In this instance, Mr. Hayes objected to the Debtors' Plan of Reorganization ("Plan") asserting that the Debtors enterprise valuation was undervalued and excess value existed in the enterprise to compensate other constituencies in far greater amounts than the proposed Plan contemplated. Indeed, Mr. Hayes filed the First Equity Committee Motion on August 27, 2001, challenging the enterprise value put forward by the Reorganized Debtor. Moreover, Mr. Hayes objected to the Plan, disputed the valuations put forward by the Reorganized Debtors and attended and participated in the contested confirmation hearing before the Bankruptcy Court during the fall of 2001. Clearly, by the fall of 2001, Mr. Hayes was on inquiry notice of the Debtors' alleged fraudulent conduct.

(1)     Whether the reorganization plan has been substantially consummated;

(2)     Whether a stay has been obtained;

(3)     Whether the relief requested would affect the rights of parties not before the court;

(4)     Whether the relief requested would affect the success of the plan; and

(5)     The public policy of affording finality to bankruptcy judgments.

Contintental., 91 F.3d at 560.

By the Fourth Equity Committee Motion, Mr. Hayes seeks the appointment of an equity committee to, inter alia, (i) pursue his 502(j) Motion against the Senior Lenders, (ii) file a motion for sanctions against the undersigned counsel, (ii) file a suit for damages on behalf of the Reorganized Debtors against the Haskell defendants and (iii) pursue a constitutional challenge to the Plan. As discussed above, the statutory period for commencing any suit against the Haskell defendants has expired. The proposed sanctions motion is frivolous, at best. The remaining two alleged basis both relate to confirmation of the Reorganized Debtors' Plan. As this Court has previously held on two occasions, an appeal of the Confirmation Order is equitably moot based on the Continental factors. See In re Genesis Health Ventures, Inc., 280 B.R. 339 (D. Del. 2002); Hayes v. Genesis Health Ventures, Inc., 2005 U.S. Dist. LEXIS 14904, at *5-6. The Court's prior application of the Continental factors is equally applicable here.

### (i)     The Plan Has Been Substantially Consummated.

The first Continental factor is whether the Plan has been substantially consummated. It is beyond dispute that the Reorganized Debtors' Plan has been substantially consummated. Under Bankruptcy Rule 3020(e), the Plan could and did become effective on the eleventh day after entry of the Confirmation Order, providing adequate time for any party to seek a stay. In accordance with this rule, on October 2, 2001, distributions under the Plan were made,

14

prepetition claims were discharged, and the Senior Lenders extended up to $515 million in exit

financing, an express condition of which was the absence of a stay of the Confirmation Order

and, thus, the ability to consummate the Plan.

### (ii)    Hayes Did Not Obtain a Stay of the Confirmation Order.

Second, Mr. Hayes did not obtain a stay of the Confirmation Order, nor did he

even apply for a stay. In <u>Zenith</u>, the Third Circuit squarely addressed the issue:

> Because of the nature of bankruptcy confirmations, we have held
> that it "is obligatory upon appellant . . . to pursue with diligence all
> available remedies to obtain a stay of execution of the
> objectionable order (even to the extent of applying to the Circuit
> Justice for relief . . . ), if the failure to do so creates a situation
> rendering it inequitable to reverse the orders appealed from."

<u>Zenith</u>, 258 F.3d at 186-87 (<u>quoting</u> <u>In re Highway Truck Drivers & Helpers Local Union #107</u>,

888 F.2d 293, 297 (3d Cir. 1989)). Moreover, "there is a procedure under Bankruptcy Rule 8005

to seek to preserve the status quo and the party who appeals without seeking to avail himself of

that protection does so at his own risk." <u>Continental</u>, 91 F.3d at 562 (quotation omitted). Thus,

"it would seem that a Plan would typically be 'substantially consummated' only if the appellant

had failed to obtain a stay." <u>In re Zenith Elecs. Corp.</u>, 250 B.R. 207, 214-15 (D. Del. 2000),

<u>aff'd</u>, 258 F.3d 180 (3d Cir. 2001). Accordingly, this factor weighs heavily in favor of equitable

mootness.

### (iii)    The Requested Relief Would Affect Rights of Third Parties.

The third <u>Continental</u> factor is whether the relief requested would affect the rights

of parties not before the court. "High on the list of prudential considerations taken into account

by courts considering whether to allow an appeal following a consummated reorganization is the

reliance by third parties, in particular investors, on the finality of the transaction." <u>Continental</u>,

91 F.3d at 562 (finding that "the record is replete with evidence that the Investors relied on the

15

bankruptcy court's unstayed Confirmation Order in making the decision to proceed to close the transaction"). In this case, it is clear that third parties have relied on the finality of the Confirmation Order. This is particularly true with respect to the lenders who extended exit financing as well as the interests of non-parties who have bought or sold shares in the Reorganized Debtors in the four years since the effective date. Mr. Hayes offers no justification for violating these parties' reliance on Reorganized Debtors' reorganization for the sake of his continued assault on the Plan.

Moreover, the company that emerged from chapter 11 on October 2, 2001 has now been split in two. Thus, the value that was distributed to creditors under the Plan now has been divided among the shareholders (and creditors) of two separate, publicly-traded corporations. There is no feasible way that these transactions could be unwound such that distributions of the initial value could be made to former shareholders like Mr. Hayes, and to even attempt to do so would be grossly unfair to third parties.

### (iv)    The Requested Relief Would Effect the Success of the Plan.

The fourth <u>Continental</u> factor is whether the relief requested would affect the Plan. There is no question that granting Mr. Hayes the relief he seeks jeopardizes the Plan itself as a negotiated arrangement. It would doubtlessly "knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court." <u>Zenith</u>, 258 F.3d at 189 (quoting <u>In re Chateaugay Corp.</u>, 10 F.3d 944, 952 (2d Cir. 1993)). Put simply, it would obliterate all of the work done by the Reorganized Debtors to emerge from bankruptcy.

(v)    **Public Policy Favors Denial of the Appeal.**

The final Continental factor emphasizes the importance of the finality of bankruptcy judgments. The public interest, as expressed in the Bankruptcy Code, is furthered by the prompt and fair reorganization of financially distressed companies. As this Court has explained, "[t]he strong public policy in favor of maximizing debtors' estates and facilitating successful reorganization, reflected in the Code itself, clearly weighs in favor of encouraging" reliance by investors and others on the "finality of bankruptcy confirmation orders." Continental, 91 F.3d at 565. Unwinding the Plan would substantially impair the public interest in this case, jeopardizing a plan of reorganization that was approved by every major constituency save one class of bondholders. Reliance on the finality of the Confirmation Order has spurred the Reorganized Debtors to consummate the Plan, recipients under the Plan to accept distributions, third parties to trade reorganization securities in the secondary market, lenders to extend credit to the Reorganized Debtors, vendors to provide goods and services, employees to remain employed by the Reorganized Debtors and patients to remain in the Reorganized Debtor's care.

II.    **The Bankruptcy Court Properly Exercised Its Inherent Authority in Granting the Reorganized Debtors' Cross-Motion for Sanctions.**

Mr. Hayes asserts that the Bankruptcy Court erred in awarding the Reorganized Debtors and the Senior Lenders reimbursement of their attorneys' fees and costs on the following grounds: (i) the Bankruptcy Court lacked jurisdiction to issue sanctions under 28 U.S.C. § 1927; and (ii) the Bankruptcy Court did not make the prerequisite finding of "bad faith" necessary to sanction Mr. Hayes. Mr. Hayes is wrong on both points.

First, Mr. Hayes seems to ignore the entirety of the Bankruptcy Court's ruling in raising his jurisdictional arguments. The Reorganized Debtors submit that sufficient authority

17

exists for a Bankruptcy Court to act under 28 U.S.C. § 1927. <u>See</u> <u>In re Volpert</u>, 177 B.R. 81 (N.D. Ill. 1995), <u>aff'd</u>, 110 F.3d 494 (7th Cir. 1997) (holding that bankruptcy court has jurisdiction to award sanctions under 28 U.S.C. § 1927); <u>Knepper v. Skekloff</u>, 154 B.R. 75 (N.D. Ind. 1993) (same). However, they additionally requested relief under section 105 of the Bankruptcy Code and the Bankruptcy Court's inherent authority to control its own docket as discussed by the U.S. Supreme Court in <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 43 (1991). Those are the grounds on which the Bankruptcy Court rested its ruling. The Bankruptcy Court stated, in pertinent part, as follows:

> [C]ounsel is certainly correct to reflect that 105 offers, and indeed I think it compels, a Bankruptcy Court to control proceedings, and to address issues of vexatious and unreasonable litigation. And indeed it dovetails on the <u>Chambers</u>' expressions in -- offered by the United States Supreme Court. And there has been, I think, I could be wrong on this, but I think unanimous support for the proposition that <u>Chambers</u> and its recitation of the inherent authority of all Federal Courts, where the tools otherwise available are not present to rely on its inherent authority to control the processes in its court, and that includes, for instance, and I think this was the context of the Chambers decision, the imposition of attorney's fees where litigation is unreasonable and vexatious, to use the words of 1927. So I think that that sanction is appropriate in this case.

(RD272).

As the Supreme Court held in <u>Chambers</u>, courts have the inherent power to enforce decorum and to sanction those who pursue vexatious litigation. More specifically, the U.S. Supreme Court stated as follows:

> Courts of justice are universally acknowledged to be vested, by their very creation, with the power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates . . . . These powers are governed not by rule or statute, but by the control necessarily vested in courts to manage their own affairs so at to achieve the orderly and expeditious disposition of cases.

Chambers, 501 U.S. at 43 (internal citations omitted). Courts in this Circuit have repeatedly upheld the authority of bankruptcy courts to impose monetary sanctions on litigants and their counsel under the inherent power of the court. See Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc., 57 F.3d 1215, 1224-25 (3d Cir. 1995); In re John F. Minniti, 242 B.R. 843, 849 (Bankr. E.D. Pa. 2000); see also In re Downs, 103 F.3d 472, 477 (6th Cir. 1996). This power includes the power to sanction parties that pursue multiple and bad faith filings. "The inherent power to sanction bad-faith conduct is a separate and distinct source of authority, which is not displaced by the federal statutes and rules. It is broader than [Bankruptcy] Rule 9011 sanctions and 'extends to a full range of litigation abuses.'" See In re Deville, 280 B.R. 483, 495 (9th Cir. B.A.P. 2002) (internal citations omitted), aff'd, 361 F.3d 539 (9th Cir. 2004).

Second, the record is clear that the Bankruptcy Court made the prerequisite finding of "bad faith" necessary to sanction Mr. Hayes. At the January 19, 2006 hearing, the Bankruptcy Court stated, in pertinent part, as follows:

> Suffice it to say that Mr. Hayes has turned the system inside and out to try to obtain this particular relief. Whether or not he has raised the constitutional dimensions, to the extent that there are any, of the issue he has had his chance, more than once and over the course of years, to assert this position and it is time to stop. There is no opportunity in this system to keep coming back to the same issue. The same party, the same issue, the same response. The response being that there was no entitlement to have the estate pay for representation of equity in this case. There was every opportunity to retain representation. Mr. Hayes, for one, chose to represent his case on his own. He was heard at confirmation, he was heard on appeal at various junctures. Enough is enough. Indeed there is the need for sanctions, there is a need to impress upon Mr. Hayes the fact that he cannot continue to try to assert issues in the Bankruptcy Court, the District Court, or in the Court of Appeals, without consequences. Once you have an answer to a question that your raise, a basic tenet of our court system, or our jurisprudence, is that you cannot continue to come back to assert those issues again, and again, and again.

19

(RD270-271). Indeed, the Bankruptcy Court went on to find that Mr. Hayes had "unreasonably and vexatiously" multiplied the proceedings in the Reorganized Debtors' chapter 11 cases. (RD271). Clearly, it was reasonable to award the Reorganized Debtors costs and attorneys' fees based on this record.

### III.    The Reorganized Debtors Join In Mellon Bank, N.A.'s Answering Brief.

Mellon Bank, N.A., acting as administrative agent for the Senior Lenders, has filed an answering brief relating to Mr. Hayes' appeal of the Bankruptcy Court's denial of the 502(j) Motion. The Reorganized Debtors hereby join in the Senior Lenders' answering brief and incorporate by reference the positions adopted therein.

[Remainder of Page Intentionally Left Blank]

RLF1-3028084-2

## CONCLUSION

For the reasons set forth above, the Reorganized Debtors respectfully request that the Court enter an order affirming the Bankruptcy Court's March 2, 2006 Order and granting such other and further relief as is just.

Dated: June 22, 2006
        Wilmington, Delaware

Mark D. Collins (No. 2981)
Russell C. Silberglied (No. 3462)
Michael J. Merchant (No. 3854)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
*Collins@rlf.com*
*Silberglied@rlf.com*
*Merchant@rlf.com*

and

Michael F. Walsh
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153

and

Adam P. Strochak
Joanne M. Guerrera
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, NW
Suite 900
Washington, D.C. 20005

Attorneys for Appellees Genesis
Health Ventures, Inc. and Its
Former Debtor Affiliates

21

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I, Michael J. Merchant, hereby certify that on the 22nd day of June, 2006, I electronically

filed the **Answering Brief of Appellees Genesis Health Ventures, Inc. and Its Former Debtor**

**Affiliates** with the Clerk of the Court using CM/ECF which will send notifications of such filing

to the following :

> Teresa K. D. Currier
> currier@klettrooney.com
>
> Russell C. Silberglied
> Silberglied@rlf.com
>
> Cynthia L. Collins
> ccollins@rlf.com

I, Michael J. Merchant, hereby certify that on the 22nd day of June, 2006, I sent via First

Class Mail (Non-Local) and Federal Express (Non-Local) the **Answering Brief of Appellees**

**Genesis Health Ventures, Inc. and its Former Debtor Affiliates** to the following participants:

> **Via First Class Mail**
>
> Menachem O. Zelmanovitz
> Morgan, Lewis & Bockius LLP
> 101 Park Avenue
> New York, NY 10178
> (Counsel for Mellon Bank, N.A.)
>
> Michael F. Walsh
> Weil, Gosthal & Manges LLP
> 767 Fifth Avenue
> New York, NY 10153

Adam P. Strochak
Joanne M. Guerrera
Weil, Gotshal & Manges LLP
1300 Eye Street, NW
Suite 900
Washington, DC 20005

**Via Federal Express**

James J. Hayes
4024 Estabrook Dr.
Annandale, VA 22003

Michael J. Merchant (No. 3854)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
merchant@rlf.com