

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GENESIS HEALTH VENTURES, INC., et al., | ) | Case No. 00-2692 (PJW) |
|     Debtors. | ) | |
| | ) | |
| | ) | |
| ——————————————————— | ) | |
| | ) | |
| JAMES J. HAYES | ) | |
|     Appellant, | ) | |
| | ) | |
|        v. | ) | C.A. No. 06-103 JJF |
| | ) | |
| | ) | |
| GENESIS HEALTH VENTURES, INC., et al., | ) | |
|     Appellees. | ) | |
| ——————————————————— | ) | |

FILED

JUL −5 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

BD scanned

## APPELLANT'S REPLY BRIEF

James J. Hayes, Pro Se
4024 Estabrook Dr.
Annandale, VA 22003
(703) 941-4694

Dated: July 2, 2006

# TABLE OF CONTENTS

Table of Authorities ............................................................................... ii

Introduction ........................................................................................... 1

Argument............................................................................................... 3

I.  The Bankruptcy Court Erred By Not Considering Whether the Equity
    Class Was Adequately Represented Before Denying a Pre-Final
    Decree Equity Committee........................................................................ 3

   A.  The Doctrine of Res Judicata Does Not Apply In This Case .............. 3

   B.  The Doctrine of Collateral Estoppel Does Not Apply In This Case.... 6

   C.  Mootness Is Not a Reason To Deny The Appointment Of A Pre
       Final Decree Equity Committee ...................................................... 7

   D.  Equitable Mootness Is Not a Reason to Deny the Appointment of a
       Pre Final Decree Equity Committee............................................... 10

II. The Bankruptcy Court Was Misinformed About Legal Standards for
    Establishing Cause and Erred In Finding that Cause Had Not Been
    Provided ............................................................................................. 11

III. The Bankruptcy Court Did Not Properly Exercise Its Inherent
     Authority or Establish Bad Faith before Granting Monetary Sanctions .. 14

Conclusion .......................................................................................... 19

Certificate of Service ........................................................................... 20

Addendum:  Syllabus *United States v. Gonzalez-Lopez*................................... 21

## TABLE OF AUTHORITIES

**Cases:**

*Bright v. Westmorland County*, 380 F. 3d 729 (3rd Cir. 2004) ...................................5,19

*Matter of Colley*, 814 F. 2d 1008, 1010 (5th Cir. 1987) ....................................................11

*In re Combustion Engineering, Inc.* 391 F. 3d 190 (3rd Cir. 2004) .............n.3,p.5, n.7.p.15

*In re Continental Airlines*, 91 F. 3d 553, (3rd Cir. 1996) (en banc 7-6) .........................10

*Chambers v. NASCO, Inc.* 501 U.S. 32 (1991) ......................................................16,17

*In re Docteroff*, 133 F. 3d 210 (3rd Cir. 1979) ................................................................6,7

*Ex parte Burr*, 9 Wheat, 529  (1824) .............................................................................17

*FE & B  v. Charter Technologies, Inc.*, 57 F. 3d 1215, (3rd Cir. 1995)....................n.9,p.18

*Federated Dept. Stores, Inc., v. Moitie*, 452 U.S. 394 (1981) .......................................3,5

*In Re Gold & Silversmiths, Inc.*, 170 B. R. 538 (Bkrtcy. W. D. N.Y. 1994)....................12

*Jones v. Pittsburgh Nat'l Corp.*, 899 F. 2d 1350 (3d. Cir. 1990) ............................n.9, p.18

*Nordhoff Invs. Inc. v. Zenith Elecs. Corp.*, 258 F. 3d 180 (3rd Cir. 2001) ......................10

*Pennsylvania Environmental Defense v. Cannon-McMillan*, 152 F. 3d 228
(3rd Cir. 1998).....................................................................................................................5

*United States v. Gonzalez-Lopez*, 548 U.S. ___ (2006) (Syllabus attached.)......................9

*In Re Willoughby*, 324 B.R. 66 (Bkrtcy. S.D. Ind. 2005) ..................................................12

*Woodward v. June Dicks (In re Dicks)*, 306 B. R. 700 (Banker. M.D. Fla. 2004 .............15

*In Re Zenith Electronics Corp.*, 329 F. 3d 338 (3rd Cir. 2003) ...........................................10

**Constitution:**

Amendment V (1791) .....................................................................................................3,7,9

Amendment VI (1791)..........................................................................................................9

**Statutes:**

Bankr. Code, 11 U.S.C.

105......................................................................................................................14,16,18

502(j)..................................................................................................................11,12,14

506(b)...........................................................................................................................8,10

1102(a) (2) ....................................................................................................................3,4,9

1103(c)(5) ...........................................................................................................................7

1109(b)..................................................................................................................................7

28 U.S.C. 1927................................................................................................14,16,17,18

## INTRODUCTION

Before this Court considers the arguments of the Reorganized Debtors in support of the Bankruptcy Court's denial of a Pre-Final Decree equity committee and its award of monetary sanctions to Reorganized Debtors and Senior Lenders counsel it should know that these arguments are based on misstated facts. According to the Reorganized Debtors, "this Court affirmed the Bankruptcy Court's denial of Mr. Hayes' first motion for the appointment of an equity committee based on the doctrine of equitable mootness [and] [t]he Third Circuit affirmed this Court's decision in its entirety and later denied a motion for rehearing en banc." (A. Br. p.1-2) This Court knows that the first motion for the appointment of an equity committee was not appealed and there are no court rulings affirming this decision on the basis of equitable mootness. This and other misstated facts invalidate every argument the Reorganized Debtors use to support of the Bankruptcy Court's denial of a Pre-Final Decree equity committee and award of sanctions. Consequently the Reorganized Debtors' arguments should be disregarded in their entirety.

Mellon Bank's Answering Brief that argues in support of the Bankruptcy Court's denial of the 502(j) motion to reconsider the Claims of the Senior Lenders and Subordinated Debenture Holders must also be disregarded. First, the arguments in the Mellon brief are premised entirely on its misstatement of the law. Thus, Mellon Bank argues that "'at least one' of the grounds set forth in either Fed. R. Civ. P. 59 or Fed. R. Civ. P. 60 must be articulated [in a timely manner]" to establish the 'cause' needed for a bankruptcy court to reconsider claims. (MB A. Br. p. 5) This standard, however, applies only to instances where the claims have previously been contested, and not in this case

where the claims have never been contested. The "cause" that courts have adopted in reconsidering claims not previously contested is an examination of "any relevant factor to determine whether equity warrants reconsideration." *In Re Willoughby*, 324 B.R. 66, 74 (Bkrtcy. S.D. Ind. 2005)

A second equally serious reason to disregard the Mellon brief is its conflict of interest in simultaneously representing the Senior Lenders who would benefit from the reconsideration of claims and the investment bank speculators who acquired senior secured claims at massive discounts. The speculators who acquired 75 per cent of the more than $1.6 billion in senior secured claims could have the priority of the "speculative part" of their claims reduced if the Motion for Reconsideration is granted. Thus, Mellon Bank is hopelessly conflicted in its role as administrative agent for the Senior Lenders.

The reduction in priority of the senior secured claims, by itself, could provide an additional $600 million to higher priority claims. This amount would fully satisfy the deficiencies the non-speculative Senior Lenders and Subordinated Note holders who only received 7.5% of their claims; the unsecured trade creditors, who received only 7.5% of their claims; equity holders, who received no recovery; and still leave a nice recovery for the speculators. (See the motion in Appendix C of Appellant's Opening Brief) An equity committee would be required to provide adequate representation, which would include expert analysis, to argue a claim reprioritization proposal that provides equity to all classes.

Mellon's obvious conflict of interest raises the question: why the Reorganized Debtors' didn't include the arguments for not reconsidering the Senior Lender claims in their own Answering Brief? The answer seems obvious considering that Mellon's

2

counsel was awarded $15,000 in monetary sanctions for their fees by the Bankruptcy Court, three times the amount awarded to Reorganized Debtors' counsel. Bringing in expensive New York counsel is clearly part of the Reorganized Debtors' counsel's vexatious scheme to intimidate a pro se shareholder to drop his efforts to have equity holders adequately represented in a bankruptcy which is as fraudulent and corrupt as anyone could possibly imagine.

## ARGUMENT

### I. The Bankruptcy Court Erred By Not Considering Whether the Equity Class Was Adequately Represented Before Denying a Pre-Final Decree Equity Committee

The legitimacy of any bankruptcy reorganization depends on the adequate representation of the creditor and equity classes at critical points in the bankruptcy proceedings. Section 1102(a)(2) provides representation by a committee that would employ counsel to represent any class that is not adequately represented. As owners of the company seeking bankruptcy protection, shareholders are additionally protected by the due process and compensation clauses of the Fifth Amendment.

In this case, the bankruptcy court has denied requests for the appointment of an equity committee at three critical times in this lengthy proceeding simply by avoiding its duty to decide whether or not the equity class was adequately represented. The need for such a determination is not obscure nor the analysis difficult.[1] Yet, neither the Bankruptcy Court's bench decision nor Genesis Answering Brief ever addresses the adequacy of the equity class's representation.

---

[1] It is easy to determine for example, whether the company's officers or directors, with a fiduciary obligation to shareholders or large shareholders, in fact, represented shareholders in the bankruptcy proceedings. Such efforts could be judged, in the court's discretion, as adequate representation.

## A. The Doctrine of Res Judicata Does Not Apply In This Case

Under the doctrine of *res judicata* "[a] final judgment on the merits of an action

precludes the parties or their privies from relitigating issues that were or could have been

raised in that action." *Federated Dept. Stores, Inc., v. Moitie*, 452 U.S. 394, 398 (1981).

In this case, the action is the bankruptcy proceedings initiated by Genesis and its

Multicare subsidiary on June 22, 2000 and have continued to date as no Final Decree has

been issued in this case.

Upon the application for a final decree, the appellant, a member of the Genesis

equity class, requested the Bankruptcy Court to appoint a Pre-Final Decree equity

committee pursuant to section 1102(a) (2) of the Bankruptcy Code and the due process

clause of the Fifth Amendment. The motions sought to preempt the application of *res*

*judicata* in the event the bankruptcy court issued a final decree. Genesis, however, argues

that a Pre-Final Decree committee is precluded on the basis of *res judicata*. The

Bankruptcy Court adopted Genesis argument in denying a Pre-Final Decree equity

committee.

> On the motion for the appointment of a pre-final decree equity committee,
> I will not belabor this record to recite the very lengthy and difficult history
> of attempts by Mr. Hayes to have this issue considered. I will adopt the
> recitation that has been provided in the response to the motion.... There is
> no opportunity in this system to keep coming back to the same issue.

*Bench Decision*, p.25. (RD 270)

According to Genesis, the facts were that:

> Mr. Hayes has previously filed three separate motions for the appointment
> of an equity committee. Each of his motions has been denied, both at the
> Bankruptcy Court level and on multiple levels of appeal. Notwithstanding
> such results, Mr. Hayes has filed a fourth motion for the appointment of an
> equity committee.
> *(Reorganized Debtors' Cross Motion for Sanctions*, RD 200)

4

The above facts might support the denial of a Pre-Final Decree equity committee on the basis of *res judicata*,[2] but not here as Genesis has misstated the facts. Only one of the two previous motions for an equity committee was appealed and that appeal is currently being briefed to the Third Circuit. Consequently, there is no "final judgment on the merits" (on the adequacy of representation of the equity class), which is required to satisfy the Supreme Court's prerequisite for a *res judicata* dismissal.[3] *Federated Dept. Stores, Inc.*, at 398. The doctrine of res judicata simply does not apply in this case.

Moreover, the Third Circuit has recently expressed concerns about the judging by courts who uncritically adopt one party's findings of fact.

> There is, however, an additional reason why a reversal and remand is the appropriate remedy in this case. We have made it clear that the linchpin in using findings of fact, even when they are verbatim adoptions of the parties' proposals, is evidence that they are the product of the trial court's independent judgment. *Pennsylvania Environmental Defense v. Cannon-McMillan*, 152 F. 3d 228, 233 (3rd Cir. 1998) In this case, there is no record evidence which would allow us to conclude that the District Court conducted its own independent review, or that the opinion is the product of its own judgment. In fact, the procedure used by the District Court casts doubt on the possibility of such a conclusion.

*Bright v. Westmorland County*, 380 F. 3d 729, 732 (3rd Cir. 2004)

---

[2] A request for a committee in a bankruptcy action, however, is not an action in itself. Rather, the appointment of a committee is a remedy for inadequate representation of a creditor or equity class in that action. It's doubtful whether the doctrine of *res judicata* would ever apply in this case, as the bankruptcy court never made a judgment on whether the equity class was adequately represented in the bankruptcy proceedings. *Res judicata* would at a minimum require a finding that the equity class was adequately represented at critical times in the bankruptcy.

[3] This would be true even if the Third Circuit sustains this Court's denial of a post-confirmation equity committee. This Court found that appointment of a committee was moot given the Third Circuit's affirmation of this Court's decision not to reopen the appeal of the confirmation. The Third Circuit has found, however, that: "[a] ruling or finding on a moot issue can have no precedential or collateral estoppel effect." *In re Combustion Engineering, Inc.* 391 F. 3d 190, 222 (3rd Cir. 2004) Thus even a final judgment on the denial of a Post-Confirmation equity committee would not trigger res judicata as a basis for denying a Pre-Final Decree committee.

The Third Circuit's admonishment is particularly applicable in this case where

Genesis so rushed the hearing on the *Motion To Appoint a Pre Final Decree Equity*

*Committee* that precluded Hayes from filing a written objection to the misstated the facts.

(RD 192)

### B. The Doctrine of Collateral Estoppel Does Not Apply In This Case

Under the doctrine of collateral estoppel, a party may be estopped from

relitigating an issue where four elements are present: 1) "the issue sought to be precluded

must be the same as the one involved in the prior action; 2) the issue must have been

actually litigated; 3) the issue must have been determined by a valid and final judgment;

and 4) the determination must have been essential to the prior judgment." *In re Docteroff*,

133 F. 3d 210, 214 (3rd Cir. 1979). Genesis however does not provide this Court any

analysis to support their argument that the appointment of a Pre-Final Decree equity

committee is barred by the doctrine of collateral estoppel. According to Genesis the

"arguments in support of each of [the Docteroff] factors are set forth [in the *res judicata*

arguments.] (A. Br. 12)

Thus Genesis arguments are underlain by repeating the same misstated facts that:

[t]he Bankruptcy Court has repeatedly denied Mr. Hayes' requests for the
appointment of an equity committee, with the appeals of such decisions
having been sustained by this Court and the Third Circuit. The issue of
whether an equity committee should be appointed has been fully and
finally adjudicated, including the appeals thereof.

(A. Br. p. 10)

The appeal of the post-confirmation equity committee, which is the only appeal

on the denial of an equity committee, is currently being briefed to the Third Circuit.[4] The

---

[4] Genesis states that: "[t] Reorganized Debtors are currently awaiting a decision from the Third
Circuit on their motion to dismiss Mr. Hayes' appeal of the July 23, 2005 ruling." (A. Br. 10) In

issues underlying the appointment of an equity committee have not been "fully and finally adjudicated." In fact, the issue underlying the appointment of an equity committee – the adequate representation of equity class – has never been considered by the Bankruptcy Court, this Court, or the Third Circuit. None of the *Docteroff* factors necessary for barring the appointment of a Pre-Final Decree equity committee are present in this case.

## C. Mootness Is Not a Reason to Deny the Appointment of a Pre Final Decree Equity Committee

Genesis argues that the request for a Pre-Final Decree equity committee is moot because "there is no conceivable action that an equity committee could take in the Reorganized Debtors' chapter 11 cases." (A. Br. 12) This is yet another instance where Reorganized Debtors misstate the facts in order to make their argument.

The Genesis mootness analysis omits discussion of potential actions that could, considering that a final decree has yet to issue, recover value for the benefit of the Genesis estate. The motion for a Pre Final Decree equity committee lists four such actions: 1) the 502(j) Motion For Reconsideration of the Senior Lender, and the Subordinated Note Claims; 2) a new motion to recover millions in professional fees from Reorganized Debtors' counsel for their conflict of interest with the Senior Lenders; 3) an action for damages on behalf of the Debtor against the Senior Lenders pursuant to 1103(c)(5) and 1109(b); and 4) a Constitutional challenge to the confirmation pursuant to the Takings and Compensation Clauses of the Fifth Amendment.

---

that motion, Genesis argued that: "[t]his appeal should be dismissed under the doctrines of mootness, equitable mootness, and res judicata." (at p. 3) The arguments presented to the Third Circuit on these issues are essentially the same ones presented here in the Answering Brief. The Third Circuit declined to grant the motion to dismiss when the court set a briefing schedule for the appeal.

In addition, there is the $112 million in post-petition interest paid to the Senior Lenders in contravention of Section 506(b) that could be recovered for the Genesis estate by an equity committee. The Reorganized Debtors' counsel, who acquiesced to this unlawful payment due to their conflict of interest with the Senior Lenders, has not surprisingly failed to initiate an action to recover these payments.

Moreover, the limited analysis that Genesis presents to dismiss the potential actions a committee could pursue for recovering value for the Genesis estate is superficial at best. The statute of limitation analysis that could deny the estate the opportunity to recover the Senior Lender windfall gains identified in the Haskell complaint, for example, depends entirely on Hayes being on "inquiry notice" of the alleged fraudulent conduct simply because he viewed the Genesis estate as significantly undervalued at the confirmation. (A. Br. n7, p.13) This is a dubious proposition considering that Hayes' views on Genesis' undervaluation were premised entirely on the increases in stock market valuations of an index of health care companies following formulation of the reorganization plan. Hayes had no knowledge or suspicion that a second reason which caused an even more massive undervaluation of the estate was the understatement Genesis' EBITDA earnings underlying the formulation of the reorganization plan.[5]

In any event, the equity class was not represented in the bankruptcy proceedings, did not have access to the fraudulent financial information and cannot be deemed to have "inquiry notice" of the fraudulent activity therein. The equity class is not subject to the

---

[5] The statute of limitations analysis serves only to underscore the conflict of interest that Debtor's counsel had with the Senior Lenders, particularly Goldman Sachs and Mellon Bank in which counsel favored the Senior Lenders interests over the interests of the unsecured creditor class, the subordinated debenture holder class, and the equity class. Debtors' counsel with a fiduciary duty to the defrauded classes was best positioned to have "inquiry notice" of the fraud. The fact they did not act would moot the argument with respect to the defrauded classes. It is also further evidence of that Debtors' counsel acted on its conflict of interest with the Senior Lenders.

statute of limitations difficulties described by Genesis. In this respect, an equity committee is better positioned to recover fraud losses than the Haskell plaintiffs, who were represented on the unsecured creditors committee from the beginning of the bankruptcy and retained separate counsel at the confirmation hearings.

The mootness arguments only serve to obscure the fact that an equity committee is required to insure the legitimacy of these bankruptcy proceedings. The confirmation of the reorganization cannot have legitimacy unless the equity class is adequately represented in at least one determinative point in the proceedings. Adequate representation is required by both Section 1102(a)(2) and the Fifth Amendment.

The Supreme Court invalidated a criminal conviction in a recently decided Sixth Amendment case because the defendant did not have his choice of counsel; a right the Court found necessary to protect the legitimacy of the Sixth Amendment. *United States v. Gonzalez-Lopez* 548 U.S. ___ (2006) (Syllabus attached.) The same principles of constitutional interpretation apply to the Fifth Amendment in this case. Equity holders must be adequately represented for the confirmation order to have legitimacy.

The failure of the Bankruptcy Court to address the adequacy of representation issue is a de facto admission that the equity class has not been adequately represented in the bankruptcy proceedings. In any event, the equity class is not being adequately represented now, an especially critical time before the Bankruptcy Court issues a final decree. In this regard, courts should not evaluate the actions a committee could undertake to recover value for the equity class. This is a determination for the committee in consultation with its counsel that is the essence of adequate representation.

Viewed completely and objectively, the request for a Pre-Final Decree equity committee is not moot. Several potential actions offer an opportunity to recover substantial value for the Genesis estate. In any event, the analysis of these actions lies with the committee's counsel and not with the hopelessly conflicted Reorganized Debtors who following the confirmation were 95 per cent owned by the Senior Lenders.

### D. Equitable Mootness Is Not a Reason To Deny The Appointment Of A Pre Final Decree Equity Committee

Finally, Genesis argues that appointment of a Pre Final Decree equity committee would be "inequitable" because a committee would affect: 1) the rights of parties not before the court; 2) the success of the plan; and 3) finality to bankruptcy judgments. *In re Continental Airlines*, 91 F. 3d 553, 559 (3d Cir. 1996) (en banc 7-6). Genesis does not explain, however, how the appointment of a committee would affect any of these factors. The facts, however, show the appointment of an equity committee is the only way to now provide equity in this case.

The appointment of an equity committee will not affect the reliance by third parties including, lenders who extended exit financing or non-parties who have bought or sold shares or cause these transactions to be unwound.(A. Br. 16) Nor would it "obliterate all of the work done by the Reorganized Debtors to emerge from bankruptcy." Id. Appointing an equity committee would only negatively affect the Senior Lenders who could be ordered to repay the Genesis estate for value they received in excess of their claims. The situation is similar to what the Third Circuit observed in *Zenith*: "the underlying purpose of the equitable mootness doctrine which exists to prevent [] a court from unscrambling complex bankruptcy reorganizations... is not implicated here." *In Re*

*Zenith Electronics Corp.*, 329 F. 3d 338, 347 (3rd Cir. 2003) (citing *Nordhoff Invs. Inc.* v.
Zenith Elecs. Corp., 258 F. 3d 180, 185 (3rd Cir. 2001).

The parties benefiting from the recovery of the Senior Lender's windfall gains are
the trade creditors and subordinated debenture holders of Genesis and Multicare who,
according to the Plan, recovered only 7.5 per cent on $106 and $645 million in respective
claims; and Genesis equity holders who received no distributions.  Fair treatment of these
parties is very much in the public interest as it positively affects the confidence of the
public to invest in and service companies in financial stress.  Improved investor
confidence would increase national wealth.  Appointing an equity committee would have
exactly the opposite effects as the baseless speculation in Genesis Answering Brief.

### II. The Bankruptcy Court Was Misinformed About Legal Standards for Establishing Cause and Erred In Finding that Cause Had Not Been Provided

Mellon Bank informed the Bankruptcy Court that in order for a motion for
reconsideration of claims under 502(j) to be granted, " 'cause' invoking in a timely
manner 'at least one' of the grounds set forth in either Fed. R. Civ. P. 59 or Fed. R. Civ.
P. 60(b) must be articulated."  (Citing *Matter of Colley*, 814 F. 2d 1008, 1010 (5th Cir.
1987) ( MB A. Br. p. 5) But *Colley* determined that the Rule 60 standards apply only
"when a proof of claim has in fact been litigated between parties to a bankruptcy
proceeding." Id. 1010. The claims of the Senior Lenders and Subordinated Debenture
holders have not been previously been contested and the timeliness considerations and
the grounds set forth in the Civil Procedure rules are not required to establish cause in
this case.  Application of the incorrect legal standard requires that the determination of
"cause" be remanded to the Bankruptcy Court.

The correct standard for establishing cause must include an assessment of the equities. "Rather, the equities must be examined in connection with the Court's determination of whether it will grant reconsideration in the exercise of its discretion." *In Re Gold & Silversmiths, Inc.*, 170 B. R. 538, 547 (Bkrtcy. W. D. N.Y. 1994)  In 2005, after reviewing the significant body of case law devoted to the appropriate standard for cause under 502(j); an Indiana bankruptcy court concluded that: "the court may also consider any relevant factor to determine whether equity warrants reconsideration of the claim." *In Re Willoughby*, 324 B.R. 66 (Bkrtcy. S.D. Ind. 2005)

In this case, however, the Bankruptcy Court concluded that the court did not have the authority to examine the equities of the claims. "[Y]ou seek that I basically rewrite the Bankruptcy Code: [t]hat I inject my own sense of what I think is fair, what I think is appropriate, what I think may have been unfair in the process..." (*Bench Decision*, p. 24) (RD 234).  Section 502(j), however, provides that claims be considered on the basis of the "equities of the case."  Courts interpreting 502(j) have concluded that "the equities must be determined in connection with the request for reconsideration."  (*In Re Gold* at 547)  The Bankruptcy Court erred in deciding that it did not have the authority to consider the equities in establishing, for example, the priority of the speculative portion of the Senior Lender and Subordinated Note claims.

The Bankruptcy Court decision not to reconsider the claims was  based on the court's conclusion that "no such cause has been provided here [and] that because there are allegations in a complaint that has been dismissed that one senior lender or several senior lenders,...achieved their position at a discount....that that is a basis [for cause]" (*Bench Decision*, p.24) (RD 234). The court found it "mind boggling" that such a

"suggestion" would warrant a reprioritization of a confirmed plan. This hardly describes the facts in the complaint that outline massive inequities that provide the cause to reconsider the claims.

The pertinent facts, cited in the complaint, are that investment bank speculators, who were not senior lenders, bought substantial amounts of senior loan participations sufficient to gain membership to the exclusive Senior Lender Steering Committee. [6] Membership in this committee provided access to detailed financial information that other investment banks acting as financial advisors used to determine the enterprise values that formed the basis for the reorganization plan. The access to the detailed financial information with the knowledge how it would be evaluated provided the investment bank speculators "insider information" which led to the acquisition of 75 per cent of the more than $1.6 billion senior loan claims at about 50 per cent discount to the claim by the investment banks. These facts leave little doubt that the massive claims transfer while the companies were in bankruptcy resulted from a scheme among the investment banks.

Whether or not this scheme was accomplished through the fraudulent understatement of EBITDA earnings as alleged in the Haskell complaint or otherwise through trading that could be deemed as illegal insider trading are not the only issues in considering the equities of the situation. The Bankruptcy Court acknowledged that [t]here has been all kinds... of articles and concerns expressed about transfers of claims, about manipulation of the process." (*Bench Decision*, RD234) Manipulation also occurs when members Senior Lender Steering Committee act on or selectively disclose detailed

---

[6] The Haskell complaint alleges that with claims three times greater than any other senior creditor, Goldman was able to completely dominant the Senior Lender Steering Committee. (C 3 1)

financial information on the debtors' current financial position or the status of
confidential negotiations on plan negotiations based, which the buyers used to purchase
claims from sellers, who did not have access to the same information. This raises a
question of basic fairness that establishes the "cause" required for the bankruptcy court to
reconsider priority of secondarily acquired claims under section 502(j).

### III. The Bankruptcy Court Did Not Properly Exercise Its Inherent Authority or Establish Bad Faith before Granting Monetary Sanctions

The Genesis Answering Brief introduces but significantly does not endorse and
inferentially disagrees with the jurisdictional arguments adopted by the Bankruptcy Court
in assessing monetary sanctions.

At the outset of the discussion on sanctions at the January 19, 2006 hearing,
counsel for Genesis and the Bankruptcy Court disagreed on the appropriate authority to
assess monetary sanctions. Genesis, after researching the possibilities, filed a cross-
motion for monetary sanctions: "[p]ursuant to section 1927 of title 28 of the United
States Code, [which provides that] a court may assess costs against any person that
unreasonably and vexatiously multiplies the proceedings in a case." (RD 199) The
Bankruptcy Court, however, doubted that bankruptcy courts had authority under 1927
and relied instead on its inherent powers: "I think [section 105] compels a Bankruptcy
Court to address issues of vexatious and unreasonable litigation.... and I think this was the
context of the *Chambers* decision" (A. Br. 18 citing the *Bench Decision*)

Genesis counsel had previously researched the issue and had concluded that the
Bankruptcy Court did not have the inherent authority in this case to order monetary
sanctions. "**This Court has inherent authority to enjoin vexatious litigation** by

14

litigants who have settled on a course of conduct involving the repetitive filing of

duplicative legal papers rearguing a position rejected a multitude of times by numerous

trial and appellate courts, where such litigation causes needless expense to other parties,

where the litigants have no objective, good-faith expectation of prevailing, and where the

multiple filings place an unnecessary burden on the courts." (*Cross Motion for Sanctions*,

RD 200) (Emphasis added.) (Citing *Woodward v. June Dicks (In re Dicks)*, 306 B. R. 700

(Banker. M.D. Fla. 2004).

The following hearing dialog informs on the divergent views of the Bankruptcy

Court and counsel for Genesis:

The Court: You've cited 1927?

Mr. Silberglied: Yes, Your Honor.

The Court: of Title 28 as a basis for awarding sanctions, and you're aware
that there is some controversy about whether the Bankruptcy Court
qualifies as any court of the United States. There is case law around the
country that disagrees with that proposition. I gather that you're also
relying, for instance, on the United States Supreme Court Chambers case
for inherent authority of a court to address an abuse of the process, if you
will. In a limited way. Because we're not talking about 9011, it's not a
separate motion. Well, it is, I guess. But it's –

Mr. Silberglied: It's a cross motion. It is a separate motion. I mean, we
could have done it as 9011. Frankly, Your Honor, the main reason why
we didn't do 9011 is because the hearing was in 2 weeks, and 9011
doesn't translate that well to a contested matter in a Bankruptcy Court
because you have to give it 20 days safe harbor notice. We would have
been more than happy to file a safe harbor notice and proceed under 9011,
but we didn't have sufficient time before today's hearing. I think that the
principles of 9011 apply.[7] I think 1927 itself, there is case law that
supports it under --

---

[7] "When the Bankruptcy Code provides a specified means for a debtor to obtain a specific form
of equitable relief, those standards and procedures must be observed." *In re Combustion
Engineering, Inc.*, 391 F. 3d 190, 236 ( 3rd Cir. 2004)

The Court: I don't recall that the 3rd Circuit has ever weighed in on the issue of whether a Bankruptcy Court can utilize 1927. Am I right?

Mr. Silberglied: You're right Your Honor. Or, at least we uncovered no such case.

The Court: Yeah. I'm not aware of any, but anyhow.

Mr. Silberglied: So there are those principles. And, you know, and of course there is the inherent power of the Court, and there's equitable principles in 105 for Your Honor to be able to control your own docket. And as we just read from paragraph 14 of Mr. Hayes own motion,[8] he's admitting to the Court that he's going to keep filing motions. And I think that, you know, 105 would also support the issue in terms of the Court controlling its own docket.

*Hearing Discussion*, p. 17-19. (RD262-64)

The Reorganized Debtors cite *Chambers* to support their view that section 105 provides the court the power to control its own docket; but did not support the Bankruptcy Court's interpretation that *Chambers* supports the use of inherent powers to assess monetary sanctions for "unreasonable and vexatious litigation" defined in title 28, section 1927. (A. Br. 18) Indeed, the Supreme Court denies the use of inherent powers to sanction conduct defined in 1927.

According to the *Chambers* 5-4 majority opinion:

A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees. [cite omitted] **Furthermore, when there is bad-faith conduct in the course of**

---

[8] "This Court should appoint a committee even if it believes there is nothing for the committee to do. [footnote omitted] Ethically, a newly appointed committee counsel could not pursue frivolous actions against the probity of the confirmation. If this is the case, then ratification of the confirmation by an equity committee would set the stage for a Final Decree that would really be final and not just another intermediate point in this saga. Given the complexities of the case; a final review of the case by an equity committee that has not participated in the confirmation would be a prudent exercise of this Court's discretion." [footnote omitted] Motion for a Pre Final Decree Equity Committee, p. 7.

**litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.** [Much of the bad-faith conduct by Chambers, however, was beyond the reach of the Rules;] **(emphasis added)**

*Chambers v. NASCO, Inc.* 501 U.S. 32, 50 (1991) (Opinion by White joined by Marshall, Blackmum, Stevens and O'Conner)

Compare the boldface language above with that found in the dissenting opinion:

[A]t the very least a court need not exercise inherent power if Congress has provided a mechanism to achieve the same end. Consistent with our unaltered admonition that inherent powers must be exercised 'with great caution' *Ex parte Burr*, 9 Wheat, 529, 531 (1824), **the necessity predicate limits the exercise of inherent powers to those exceptional instances in which Congressionally authorized powers fail to protect the processes of the court. Inherent powers can be exercised only when necessary, and there is no necessity if a Rule or statute provides a basis for sanctions. It follows that a district court should rely on text-based authority derived from Congress rather than inherent power in every case where the text-based authority applies.**

*Chambers v. NASCO, Inc.* 501 U.S. 32, 63-64 (1991) (Dissenting opinion by Kennedy joined by Rehnquist, and Souter)

The bold faced language from the majority and minority *Chambers* opinions emphasizes that eight justices, including the chief, would limit the use of the court's inherent power to situations showing "bad faith" conduct that is not defined in the statutes and Rules. In this case, both the Reorganized Debtors and the Bankruptcy Court have expressed the view that the sanctionable conduct in question is limited to "vexatious" and "unreasonable" litigation that falls squarely within title 28 section 1927. Consequently, the Supreme Court actually prohibits the Bankruptcy Court from using its inherent powers to assess monetary sanctions in this case.[9]

---

[9] In addition, the Bankruptcy Court did not provide Hayes an opportunity to respond to its use of inherent powers to apply monetary sanctions as is required by the Third Circuit. "We have

17

The opposing arguments between the Reorganized Debtors' counsel and the Bankruptcy Court with respect to a bankruptcy court's authority to order monetary sanctions for vexatious and unreasonable litigation informs this Court that a bankruptcy court does not have such authority both under section 1927 of title 28 and the inherent powers provided under section 105 of title 11.

Most importantly, however, is the findings of bad faith are based on: 1) misstatements of key facts by Genesis' counsel that were adopted by the Bankruptcy Court as its findings of fact; and 2) the Bankruptcy Court's misunderstanding that inadequate representation of the equity class in the pre-confirmation proceedings requires the appointment of a committee in the post-confirmation proceedings.

It is not bad faith for an equity holder to request the appointment of an equity committee at critical points in the bankruptcy proceedings where the equity class is not being adequately represented and property rights are at stake. However, a bad faith finding was assured with the Bankruptcy Court's adoption of Genesis' false factual assertions as its factual findings: "I will adopt the recitation that has been provided in the response to the motion." (*Bench Decision*, p. 25) (RD 270) This recitation concluded that: "Mr. Hayes has previously filed three separate motions for the appointment of an equity committee [and] [e]ach of his motions has been denied, both at the Bankruptcy Court level and on multiple levels of appeal." (*Cross Motion for Sanctions*, RD 200) In

previously held that '[p]rior to sanctioning an attorney, a court must provide the party to be sanctioned with notice of and some opportunity to respond to the charges' in order to satisfy the requirements of due process. (citing *Jones v. Pittsburgh Nat'l Corp.*, 899 F. 2d 1350, 1357 (3d. Cir. 1990) Moreover, we have stated that 'we think particularized notice is required to comport with due process.' Id. [citation omitted] FE & B has raised a fairly significant argument here as the bankruptcy court never indicated that it was acting under its inherent sanction power in this case. Indeed, neither the motion for sanctions nor the bankruptcy court ever mentioned any ground for sanctions other than Rule 11 or Bankruptcy Rule 9011." *FE & B v. Charter Technologies, Inc.*, 57 F. 3d 1215, 1225 (3rd Cir. 1995)

fact, the first appeal of the Bankruptcy Court's denial of an equity committee is just now being briefed to the Third Circuit.

In 2004, the Third Circuit reversed and remanded a case because there was no record evidence that the adopted findings of fact were "the product of the trial court's independent judgment." *Bright v. Westmorland County*, 380 F. 3d 729, 732 (3rd Cir. 2004) In this case, the record before this Court demonstrates that the adopted facts are false and definitely not the Bankruptcy's Court independent judgment. It also suggests the Bankruptcy Court's decision the same day with respect to the motions 1) to appoint a Pre-Final Decree equity committee and 2) to Reconsider the Orders Allowing the Genesis and Multicare Senior Lender Claims and Senior Subordinated Note Claims were not a result of the independent judgment of the Bankruptcy Court and thus provides another reason to reverse those decisions.

In any event, its not bad faith for a shareholder to request an equity committee in response to Genesis' Motion for a Final Decree considering the unresolved appeals for appointment of a committee, the allegations that the reorganization was fraudulently confirmed and evidence that the Reorganized Debtors' counsel was complicit in this fraud.

## CONCLUSION

For the reasons set forth above, James J. Hayes respectfully requests this Court to reverse the Bankruptcy Court's denial of the motions for: 1) a Pre Final Decree equity committee, 2) reconsideration of the Senior Lender and Subordinated Debenture claims, and 3) granting monetary sanctions.

Dated July 2, 2006
        Annandale, VA 22003

                                        Respectfully Submitted,


                                        *James J. Hayes*, Pro Se
                                        4024 Estabrook Dr.
                                        Annandale, VA 22003
                                        (703) 941-4694


## CERTIFICATE OF SERVICE

        I certify a copy of the foregoing brief was mailed from the Northern

Virginia Regional Post Office on July 2, 2006 to the following counsel:

    Russell C. Silberglied
    Richards Layton and Finger P.A.
    One Rodney Square
    Wilmington, DE 19899; and

    Teresa K. D. Currier
    Klett Rooney Lieber & Schorling, PC
    1000 West Street, Suite 1410
    Wilmington, Delaware 19801

    Katherine B. Gresham
    Assistant General Counsel Bankruptcy and Appellate Litigation
    Securities and Exchange Commission
    100 F Street, N.E.
    Washington, DC 20549, and

    Joseph McMahon
    Office of the United States Trustee
    844 King Street, Suite 2313
    Wilmington, DE 19801

20

(Slip Opinion)          OCTOBER TERM, 2005                    1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.*, 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## UNITED STATES *v.* GONZALEZ-LOPEZ

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR
THE EIGHTH CIRCUIT

No. 05–352.  Argued April 18, 2006—Decided June 26, 2006

Respondent hired attorney Low to represent him on a federal drug charge.  The District Court denied Low's application for admission *pro hac vice* on the ground that he had violated a professional conduct rule and then, with one exception, prevented respondent from meeting or consulting with Low throughout the trial.  The jury found respondent guilty.  Reversing, the Eighth Circuit held that the District Court erred in interpreting the disciplinary rule, that the court's refusal to admit Low therefore violated respondent's Sixth Amendment right to paid counsel of his choosing, and that this violation was not subject to harmless-error review.

*Held:* A trial court's erroneous deprivation of a criminal defendant's choice of counsel entitles him to reversal of his conviction. Pp. 3–12.

(a) In light of the Government's concession of erroneous deprivation, the trial court's error violated respondent's Sixth Amendment right to counsel of choice.  The Court rejects the Government's contention that the violation is not "complete" unless the defendant can show that substitute counsel was ineffective within the meaning of *Strickland* v. *Washington*, 466 U. S. 668, 691–696—*i.e.,* that his performance was deficient and the defendant was prejudiced by it—or the defendant can demonstrate that substitute counsel's performance, while not deficient, was not as good as what his counsel of choice would have provided, creating a "reasonable probability that . . . the result . . . would have been different," *id.,* at 694.  To support these propositions, the Government emphasizes that the right to counsel is accorded to ensure that the accused receive a fair trial. *Mickens* v. *Taylor*, 535 U. S. 162, 166, and asserts that a trial is *not* unfair unless a defendant has been prejudiced.  The right to counsel

Syllabus

of choice, however, commands not that a trial be fair, but that a particular guarantee of fairness be provided—to wit, that the accused be defended by the counsel he believes to be best. Cf. *Crawford* v. *Washington*, 541 U. S. 36, 61. That right was violated here; no additional showing of prejudice is required to make the violation "complete." Pp. 3–7.

(b) The Sixth Amendment violation is not subject to harmless-error analysis. Erroneous deprivation of the right to counsel of choice, "with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as 'structural error.'" *Sullivan* v. *Louisiana*, 508 U. S. 275, 282. It "def[ies] analysis by 'harmless error' standards" because it "affec[ts] the framework within which the trial proceeds" and is not "simply an error in the trial process itself." *Arizona* v. *Fulminante*, 499 U. S. 279, 309–310. Different attorneys will pursue different strategies with regard to myriad trial matters, and the choice of attorney will affect whether and on what terms the defendant cooperates with the prosecution, plea bargains, or decides to go to trial. It is impossible to know what different choices the rejected counsel would have made, and then to quantify the impact of those different choices on the outcome of the proceedings. This inquiry is not comparable to that required to show that a counsel's deficient performance prejudiced a defendant. Pp. 8–11.

(c) Nothing in the Court's opinion casts any doubt or places any qualification upon its previous holdings limiting the right to counsel of choice and recognizing trial courts' authority to establish criteria for admitting lawyers to argue before them. However broad a trial court's discretion may be, this Court accepts the Government's concession that the District Court erred. Pp. 11–12.

399 F. 3d 924, affirmed and remanded.

SCALIA, J., delivered the opinion of the Court, in which STEVENS, SOUTER, GINSBURG, and BREYER, JJ., joined. ALITO, J., filed a dissenting opinion, in which ROBERTS, C. J., and KENNEDY and THOMAS, JJ., joined.

7... 4 2Taocook Dr.
Annandale, VA 22003

Office of Clerk
U.S. District Court
844 N. King Street, Lockbox 18
Wilmington, DE 19801