IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| GENESIS HEALTH VENTURES, INC., et al., ) | Case No. 00-2692 (JHW) |
| Debtors, ) | |
| ) | |
| JAMES J. HAYES, ) | |
| Appellant, ) | |
| ) | C.A. No. 06-103 JJF |
| v. ) | |
| ) | |
| GENESIS HEALTH VENTURES, INC., et al., ) | |
| Appellees. ) | Re: Docket No. 33 |

**Reply to Genesis Health Ventures, Inc.'s Objection to Motion for Extension of Time to File Notice of Appeal**

James J. Hayes, pro se, replies to the Genesis Objection to the Motion for Extension of Time to File Notice of Appeal.

### INTRODUCTION

Genesis argues in the Introduction of their Objection that the "Extension Motion is simply the latest in a long line of harassing pleadings... for the appointment of an equity committee." (O. 1) The attached motion for a Pre-Final Decree Equity Committee listed several matters requiring the appointment of an equity committee that include pursuing sanctions for professional misconduct against the Genesis Debtors' counsel; and damages on behalf of the Debtor against senior lenders as a result of a fraud on the bankruptcy court as alleged by a group of Genesis junior bond holders led by Richard

Notice was mailed from that facility three days before the deadline; or that counsel received their Notice, which was mailed at the same time, after the filing deadline. Rather Genesis reasons that a late delivery "is simply the foreseeable consequence of only mailing the *Notice of Appeal* one business day before it was due." [2] (O.8, #16)  To the contrary, the foreseeable consequence of the mailing documented in the Extension Motion is for a timely delivery of the Notice.

    WHEREFORE, James J. Hayes respectfully requests the entry of an order granting the Extension Motion.

Dated: April 30, 2007
       Annandale, VA 22003

                                 Respectfully Submitted,

                                 */s/ James J. Hayes*
                                 James J. Hayes, Pro Se

---

[2] By premising their conclusions on the "business day" Genesis incorrectly assumes that processing and transfer of mail stops on weekend days. This is not correct. The Northern Virginia Regional Post Office in Merrifield is open until 12 PM on Friday and 8 PM on Saturday. Processing and transfer of mail from one postal facility to another occurs throughout the night on both Friday and Saturday. The normal processing and transfer of mail from Northern Virginia on Friday would deliver mail to the main Wilmington post office on Friday night. On this basis, the United States Post Office determines that one day is the normal time for delivery to Wilmington for first class mail deposited on Friday or Saturday. Genesis' arguments would only be valid if the mail was posted on Sunday as the Merrifield Post Office receives but does not process or transfer mail on Sunday.

5

## CERTIFICATE OF SERVICE

I certify a copy of the foregoing Motion was mailed from the Northern Virginia Regional Post Office on April 30, 2007 to the following counsel:

Russell C. Silberglied
Richards Layton and Finger P.A.
One Rodney Square
Wilmington, DE 19899

Teresa K. D. Currier
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

_____
James J. Hayes

# EXHIBIT

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GENESIS HEALTH VENTURES, INC., et al., | ) | Case No. 00-2692 (JHW) |
| | ) | |
| | ) | |
| | ) | |
| Reorganized Debtors | ) | |
| | ) | |

### MOTION FOR APPOINTMENT OF PRE-FINAL DECREE EQUITY COMMITTEE

Pursuant to section 1102(a)(2) of chapter 11 of title 11 of the United States Code, 11 U.S.C. 101-1330, and the due process clause of Amendment V of the United States Constitution, James J. Hayes, a member of Genesis Equity Class respectfully requests this Court to appoint a Pre-Final Decree Equity Committee to represent the interests of the Genesis Common Stock Class: 1) in proceedings on the recently filed Motion For Reconsideration of the Genesis and Multicare Senior Lender Claims; and the Genesis and Multicare Senior Subordinated Note Claims; 2) a new Motion for Sanctions for Professional Misconduct pursuant to Rule 9001 of the Federal Rules of Bankruptcy Procedure; 3) a potential suit for damages on behalf of the Debtor against the Haskell defendants pursuant to 1103(c)(5) and 1109(b);, and a 4) potential Constitutional challenge to the confirmation pursuant to the Takings and Just Compensation Clauses of the Fifth Amendment.

## Background[1]

1. On November 23, 2005, Reorganized Debtors filed their *Motion for Entry of a Final Decree* in the cases of Genesis Health Ventures, Inc. (Case No. 00-2692) and Multicare AMC Inc. (Case No. 00-2494)

2. On December 5. 2005, Hayes filed by U.S. Mail a letter to this Court opposing the issuance of a Final Decree in the lead Genesis case, no. 00-2692 (JHW); and on December 7, Hayes sent the same letter opposing the issuance of a Final Decree in Multicare, case no. 00-2494(JHW). Also on December 7, Hayes filed a *Motion For Reconsideration of the Genesis and Multicare Senior Lender Claims; and the Genesis and Multicare Senior Subordinated Note Claims.*

3. The Motion for Reconsideration noted Hayes' intention to file a *Motion for Sanctions for Professional Misconduct* pursuant to Rule 9001 of the Federal Rules of Bankruptcy Procedure.

4. On July 18, 2004, two days after a hearing on the defendant's motion to dismiss the Haskell fraud complaint, Hayes sent a confidential letter to this Court. This letter enclosed an August 6, 2001 confidential letter to Genesis' President, Michael Walker, which criticized Debtors' counsel as showing "a serious lack of perception and competence... in the preparation and advocacy of their reorganization plan." The letter to this Court noted that the letter to Mr. Walker was provided to Genesis CFO, George Hager, an alleged conspirator in the Haskell fraud suit, who then provided the letter to Debtor's Counsel. My letter concluded: "the fact that the chairman ignored the

---

[1] The Background only includes information after this Court's May 13, 2004 bench decision denying a post-confirmation equity committee. At the hearing this Court noted that it had been apprised that case In *the matter of GENESIS HEALTH VENTURES INC.*, Debtors: Richard HASKELL, et al., Plaintiffs v. GOLDMAN, SACHS & CO. et al., has been referred to the Court.

increasing equity values of health care stocks and breached his fiduciary obligations to shareholders is circumstantial evidence there were illicit understandings among Genesis management and the Senior Lenders and that the Debtor's Counsel was a tacit co-conspirator in the alleged scheme."

5. On May 3, 2005, this Court dismissed the case: *Richard HASKELL, et.al, Plaintiffs v. GOLDMAN, SACHS & Co.; Genesis Health Ventures. Inc.; Mellon Bank, N.A.; Highland Capital Management, L. P., George V. Hager Defendants in* its entirety. The opinion held the case against the debtor is time barred by *section 1144* and violated the order of confirmation, which enjoined claimants from prosecuting claims that occurred prior to the Effective Date. The defendants have appealed to the district court.

6. The complaint listed a number of allegations that certain senior lenders had caused the understatement of Genesis' EBITDA that in turn caused the investment bankers to undervalue Genesis by hundreds of millions of dollars. The individual allegations and associated EBITDA reductions are shown in the table below:

| Bondholder Allegation | EBITDA Adj. ($ millions) | LT Care | Pharmacy | Reference p. no. |
|---|---|---|---|---|
| a) excessive insurance reserves | 16.7 | 7.5 | 9.2 | 68 |
| b) Multi Care management fees | 11.6 | 11.6 | 0.0 | 9 & 107 |
| c) Manor Care pharmacy sales | 11.0 | 0.0 | 11.0 | 117 |
| d) Mariner contract | 13.4 | 0.0 | 13.4 | 129 |
| g) discontinued health plan | 13.0 | 5.8 | 7.2 | 9 & 141 |
| h) pharmacy costs of goods sold | 26.0 | 0.0 | 26.0 | 146 |
| I) increased Medicare mix | 4.0 | 4.0 | 0.0 | 151 |
| j) additional personnel costs | 35.0 | 15.7 | 19.3 | 152 |
| f) management retention bonus | 6.0 | 2.7 | 3.3 | 39 |
| e) AGE loss | 3.0 | 1.3 | 1.7 | 135 |
| Total Adjustments | 123.0 | 41.1 | 81.9 | |
| Valuation Increase (Chilmark multiples) | 1,045.3 | 287.7 | 757.5 | |

3

The potential billion dollar understatement[2] is sufficient to fully pay all creditor claims and leave a substantial recovery for the equity class.

### Argument

#### A. Statutory Support for Appointment of a Committee

7. The principal inquiry in the appointment of an equity committee is whether the equity security holders are adequately represented.

> (2) ...the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders.

11 U.S.C. 1102(a) (2) (1994)

The question on whether shareholders have received adequate representation is a determination in the court's discretion.

> The statute involves two inquiries. It must first be determined whether the appointment of a committee is necessary to assure adequate representation.[3]

*In re Wang Laboratories, Inc.*, 149 B. R. 1 2 (Bankr. D. Mass. 1992)

8. In one of the few appeals on this fundamental issue, the District Court for the Southern District of New York concluded:

> the proper legal standard to apply in determining whether to appoint an official equity committee for equity shareholders is whether an official committee is necessary to provide adequate representations of the equity holders' interests.

*In Re Johns-Manville Corp.*, 68 B.R. 155 163 (S.D.N.Y. 1986)

---

[2] The allocation of adjusted EBITDA between LT Care and Pharmacy is pro rata, based on the revenue of these divisions.

[3] The second inquiry is "whether [the court] should exercise its discretion and make the appointment. Id. 2

4

9. The Genesis equity class has not been represented either formally or informally since Genesis filed for bankruptcy on June 22, 2000. No court has held to the contrary. In denying shareholders a post-confirmation equity committee this Court expressed the concern "that such a process may not be countenance within the framework of the Bankruptcy Code. And, even if it is, it would be available only in the most extraordinary of situations. And, I cannot fit this set of facts into that kind of equation."[4]

10. In reaching this conclusion, the Court is placing itself on the committee and then deciding what situations might warrant committee action. This Court concluded that a post-confirmation committee is warranted only in "extraordinary situations" and then could see no facts that would fit this situation. Sections 1103(c) (5), however, provides that an equity committee may "perform such other services as are in the interest of those represented." Section 1109(b) grants a committee the right to raise, appear, and be heard on any matter. Such language provides for a spectrum of activities from the mundane of asking the court to consider the priority of Senior Lender speculative claims, for example, to the spectacular of suing the Haskell defendants on behalf of the Debtor.

11. In the second example, the Second Circuit held that 1103(c) (5) and 1109(b) implies a qualified right for committees to initiate suit, with approval of the Bankruptcy Court:

> Most bankruptcy courts that have considered the question have found an implied, but qualified right for creditors' committees to initiate adversary proceedings in the name of the debtor in possession under 11 U.S.C. 1103(c)(5)and 1109 (b)...We agree with these bankruptcy courts.
>
> *Re STN Enterprises*, 779 F.2d 901 904 (2nd Cir. Vt. 1985)

---

[4] Transcript of Hearing Before the Honorable Judith H. Wizmur, May 13, 2004, p. 27.

5

In other words, the Bankruptcy Code provides for the committee to decide what actions are necessary to represent the interests of its class and then to seek court approval for those actions. The Code simply does not contemplate the bankruptcy court being both judge and advocate.

12. Setting aside the notion that the court needs to approve the committee's activities as a condition in appointing a committee; the instant motion requires this Court to assess whether the interests of the equity class are adequately represented by the pro se efforts of a class member. Considering the complexity of the case, the cram down confirmation, the unresolved fraud allegations and the power the Bankruptcy Code provides of a committee under 1103(c)(5) and 1109(b) and the answer is clearly "No."

13. The *Motion For Reconsideration of the Genesis and Multicare Senior Lender Claims; and the Genesis and Multicare Senior Subordinated Note Claims*, now before the court, certainly falls within the confines sections 1103(c)(5) and 1109(b) as would a Motion for Professional Misconduct. Who but a committee for the unrepresented, could be expected to file a misconduct motion against parties who agreed on the financial underpinnings of the reorganization plan before the confirmation hearing and would not renegotiate the plan after market increases in health care stocks increased the debtors' estate by hundreds of millions of dollars?

14. This Court should appoint a committee even if it believes there is nothing for the committee to do.[5] Ethically, a newly appointed committee counsel could not pursue frivolous actions against the probity of the confirmation. If this is the case, then ratification of the confirmation by an equity committee would set the stage for a Final

---

[5] With $37 million authorized to pay compensation and expenses for parties supporting the plan, the relatively small additional cost of an equity committee cannot be a factor in resolving a continuing controversy with hundreds of millions of dollars at stake.

6

Decree that would really be final and not just another intermediate point in this saga. Given the complexities of the case; the challenges to the confirmation; the allegations of fraud; and continuing appeals: a final review of the case by an equity committee that has not participated in the confirmation would be a prudent exercise of this Court's discretion.[6]

### B. Constitutional Support for Appointment of a Committee

15. This Court simply avoided the representational issues in its previous denials. It cannot do so now at the point of issuing a final decree. The Fifth Amendment provides in part that *"No person shall... be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."* The confirmed plan deprived the equity class of its ownership of Genesis in bankruptcy proceedings where it was not represented. The equity class was also denied an equity committee to undertake an appeal.

16. Although no authority has commented on what constitutes Constitutional due process in a chapter 11 bankruptcy proceeding, it must, at a minimum, require the representation by a committee provided by 1102(a) (2) at some point in the bankruptcy process. Having failed to appoint a Committee earlier, the instant motion is the final opportunity to respect the equity holders Constitutional rights.

17. Whether appointing an equity committee at the very end of a bankruptcy is sufficient to pass Constitutional muster will only be determined after the committee pursues all its remedies. If unsuccessful, the committee would then be the first to test the

---

[6] Both Hayes and the Haskell plaintiffs' for independent reasons believe that the confirmed plan did not satisfy the fair and equitable provisions of subsection 1129(b) (2).

7

meaning of Fifth Amendment Due Process in a direct challenge to the confirmation; a challenge that could not dismissed by the judicial doctrine of equitable mootness.

18. While not considering an appellant with a constitutionally protected right, the dissenting opinion in the 7-6 en banc *Continental* decision has serious doubts about the judicially crafted remedy of equitable mootness. Writing for the dissent, it is Judge Alito's view that:

> The majority's decision in this case creates a bad precedent for our circuit. The majority adopts the curious doctrine of "equitable mootness," which it interprets as permitting federal district courts of appeals to refuse to entertain the merits of live bankruptcy appeals over which they indisputably possess statutory jurisdiction and in which they can plainly provide relief. According to the majority there is no clear rule for determining when a bankruptcy appeal is "equitably moot" Instead, this is said to be a discretionary determination to be made in the first instance by the district court based on a weighing of five factors that the majority has culled from the opinions of our "sister circuits." **In my view, if the doctrine has any validity, it is more limited than the majority holds (Emphasis added.)**

*In re Continental Airlines*, 91 F. 3d 553 567 (3rd Cir. 1996) en banc.

19. The undefined relationship between the Bankruptcy Code and the Constitution is illustrated by the *Marshall* case, where the Bankruptcy Court for the Central District of California found:

> There is a significant difference, with respect to the Bankruptcy Power, between property interests and contract rights. In the bankruptcy context, property rights enjoy at least a measure of protection under Due Process and Just Compensation Clauses of the Fifth Amendment.

*In re Marshall,* 300 BR 507 525 (Bkrtcy. C.D. Cal. 2003)

The *Marshall* court explained that "a measure of protection" was defined by a 1937 Supreme Court opinion:

8

> But if Congress is acting within its bankruptcy power, it may authorize the bankruptcy court to affect those property rights, provided the limitations of the due process clause are observed.

*Wright v. Union Central Life Ins. Co.*, 304 U.S. 502 518 (1937)

20. With respect to the Just Compensation clause, the Rehnquist court favorably cited *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555 (1935):

> The bankruptcy power is subject to the Fifth Amendment's prohibition against taking private property without compensation.
>
> . . .
>
> [T]he Fifth Amendment commands that, however great the Nation's need, private property shall not be thus taken even for a wholly public use without just compensation. If the public interest requires, and permits, the taking of property of individual mortgagees in order to relieve the necessities of individual mortgagors, resort must be had to proceedings by eminent domain; so that, through taxation, the burden of the relief afforded in the public interest may be borne by the public.
>
> Id 602.
>
> . . .
>
> The foregoing discussion satisfies us that there is substantial doubt whether the retroactive destruction of appellees' liens in this case comports with the Fifth Amendment.

*United States v. Security Industrial Bank*, 459 U.S. 70 74 (1982)

21. But Congress in "establish[ing] ...uniform Laws on the subject of Bankruptcies..."[7] and the Federal Courts interpreting these laws both must respect the Constitution. In 1957, for example, the Supreme Court examined the denial of passports to certain groups on the question whether this denial violated the Fifth Amendment rights of liberty to these citizens.

> We deal here with a constitutional right of the citizen, a right which we must assume Congress will be faithful to respect. We would be faced with important constitutional questions were we to hold that

---

[7] Article I, Section 8, Clause 4 of the Constitution

9

Congress...had given the Secretary authority to withhold passports to citizens because of their beliefs or associations.

Kent v. Dulles, 357 U.S. 116 130 (1957)

22. Both the Rehnquist Court and the Burger Court follow the statutory interpretation presumption that Congress intends to respect the Constitution in constructing its laws:

> We consider the statutory question because of the "'cardinal principal that this Court will first ascertain whether a construction of the statute is fairly possible by which the constitution question can be avoided.'"

*United States v. Security Industrial Bank*, 70 78 (1982) citing: *Lorillard v. Pons*, 434 U.S. 575 578 (1978)

23. We do not need to know how the potential conflicts between the Bankruptcy Code and the Constitution will ultimately be resolved to know that the Constitution supports the appointment of an equity committee on the instant motion. This Court's timeliness concerns in denying previous motions simply evaporate under Constitutional Due Process.

24. In hindsight, perhaps it would have been better had the U.S. Trustee appointed an equity committee at the beginning, or failing that, had the Securities and Exchange Commission intervened to request the appointment of an equity committee. Perhaps the addition of another committee and additional lawyers and investment bankers would not have brought anymore clarity to a complicated and allegedly fraudulent situation. Perhaps now, with only the securities claims under challenge and specific fraud allegations on the table, is the best time to consider a final resolution. Whatever.

25. The Constitutional right to representation does not expire. There is no

statute of limitations on the Constitution. *In re Kendavis Holdings Co.*, 249 F 3rd 383 (5th Cir. 2001), the court reviewed and upheld due process claims in a bankruptcy case fifteen years after the bankruptcy court's order confirming the reorganization plan:

> Protection of an individual's due process right to adequate notice requires more than a cursory review...
>
> Id. 386

26. The equity holders were not represented in the negotiations that produced the reorganization plan; they were not represented at the confirmation hearings; they were not represented in the appeal; but because their property was taken and they were not provided due process under the Fifth Amendment they must now be represented by a committee.

27. WHEREFORE, James J. Hayes respectfully requests a) that this Court appoint a Pre-Final Decree Equity Committee, and b) grant such other and further relief as is necessary and proper.


Dated: December 11, 2005
Annandale, VA.

Respectfully Submitted,

James J. Hayes
Pro Se
4024 Estabrook Dr.
Annandale, VA 22003
(703) 941-4694

11

## CERTIFICATE OF SERVICE

I certify a copy of the foregoing Motion was mailed from the Northern Virginia Regional Post Office on December 11, 2005 to the following counsel:

Russell C. Silberglied
Richards Layton and Finger P.A.
One Rodney Square
Wilmington, DE 19899; and

Katherine B. Gresham
Assistant General Counsel Bankruptcy and Appellate Litigation
Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549, and

Joseph McMahon
Office of the United States Trustee
844 King Street, Suite 2313
Wilmington, DE 19801, and

Roberta A. DeAngelis
Acting United States Trustee
833 Chestnut Street, Suite 500
Philadelphia, PA 19107

James J. Hayes

12